# EXHIBIT "D" TO DEFENDANT BRIEFLY STATED, INC. PROFIT SHARING PLAN'S ANSWER TO PLAINTIFF'S COMPLAINT

 To Rob Smith

SAMUEL BREZEL

ATTORNEY AT LAW

44 WALL STREET
NEW YORK, NY 10005

TEL: (212) 797-9700 • FAX: (212) 797-9701
EMAIL: SAMBREZEL@BENEFITLAWS.COM

December 4, 2007

**VIA CERTIFIED MAIL**
Mr. Alan Beckerman
Briefly Stated, Inc.
1359 Broadway
New York, N.Y. 10018

Re: Briefly Stated, Inc. Profit Sharing Plan (*formerly known as the Briefly Stated, Inc.,
Employee Stock Ownership Plan) (hereinafter, the "Plan")*

Dear Mr. Beckerman:

The following is in reply to the November 19, 2007 benefit denial letter written
on behalf of the Retirement Committee of the Briefly Stated, Inc. Profit Sharing Plan (the
"Committee") in response to Mr. Lavin's claim for additional benefits under the Plan.

The Committee's decision to deny Mr. Lavin's claim for additional benefits under
the Plan was based on its determination that a complete discontinuance of contributions
did not occur. We disagree with the Committee's determination for the reasons stated
below.

In accordance with the claims procedures set forth in Section 503 of the
Employee Retirement Income Security Act of 1974, as amended ("ERISA") and pursuant
to the procedures set forth in Section 14.12 of the Plan, this letter constitutes a formal
request for review on appeal of the benefit denial.

Neither the statutory provisions in Section 411(d)(3) of the Internal Revenue
Code of 1986 (the "Code") nor the regulations promulgated thereunder, offer specific
guidance for determining whether an employer's cessation of contributions constitutes "a
complete discontinuance of contributions" for purposes of triggering the full vesting
requirements under Code Section 411(d)(3)(B). Indeed, in an apparent effort to avoid
issuing specific guidance under Code Section 411(d)(3) which would serve to restrict its
application to a limited set of circumstances, the regulations more readily define "a
complete discontinuance of contributions" by *what it is not.* The regulations at Treas.
Reg. §1.411(d)-2(d) contrast "a complete discontinuance of contributions" with a
"temporary suspension of contributions," which does not trigger the full vesting
requirements described in Code Section 411(d)(3)(B). Although the regulations list a
number of factors to be considered in determining whether an employer's cessation of
contributions constitutes "a complete discontinuance of contributions" for purposes of
Code Section 411(d)(3)(B), the regulations maintain that such a determination is
ultimately based on a consideration of *all of the facts and circumstances* of the particular
case.

Alan Beckerman
Briefly Stated, Inc.
December 4, 2007
Page 2 of 5

      Mr. Lavin's claim for additional benefits is based on his assertion that the Company's failure to make contributions to the Plan following its acquisition by Li & Fung USA constituted "a complete discontinuance of contributions" under Code Section 411(d)(3). As a result, he became fully vested in his account balance under the Plan.

      In rejecting Mr. Lavin's claim, the Committee contends that a complete discontinuance of contributions did not occur following the Company's acquisition and that Mr. Lavin is therefore not entitled to become fully vested in his account balance. The Committee draws support for its position from language contained in the Internal Revenue Manual (IRS Manual or IRM). Section 7.12.1.2.6 of Part 7, Chapter 12 of the IRM states, *in relevant part,* as follows:

    A. *A determination that contributions have been discontinued and the date upon which such discontinuance occurred requires consideration of all the relevant facts and circumstances.*

    B. *A discontinuance of contributions may occur although some amounts are contributed by the employer under the plan if such amounts are not substantial enough to reflect the intent on the part of the employer to continue to maintain the plan. See Reg. 1.411(d)–2(d).*

    C. *If the employer has failed to make substantial contributions in 3 out of 5 years, and there is a pattern of profits earned, consider the issue of discontinuance of contributions.*

      Paragraphs A. and B. of the IRM are consistent with the regulations under Code Section 411(d)(3) which adopt a *facts and circumstances* test for purposes of determining whether a complete discontinuance of contributions has occurred. Nevertheless, in denying Mr. Lavin's claim for additional benefits under the Plan, the Committee relies solely on the language in paragraph C. above, which the Committee misconstrues to stand for the proposition that "a complete discontinuance of contributions cannot occur unless and until substantial contributions are not made for 3 out of 5 years." We disagree.

      Pursuant to the Committee's interpretation of the referenced IRM, an employer's failure to make contributions cannot become a complete discontinuance for purposes of Code Section 411(d)(3) unless such failure occurs in at least 3 out of 5 years. Thus, according to the Committee, the IRM establishes a minimum threshold requirement (or safe harbor) which would serve to negate a determination that a complete discontinuance has occurred unless there has been a failure by the employer to make substantial contributions in 3 out of 5 years. Such an interpretation is not supported by the plain language of paragraph C. and is incompatible with the *facts and circumstances* test set forth in the regulations. Nor can the Committee's interpretation be sustained under the IRS' limited authority to independently establish a safe harbor test for determining whether an employer's failure to contribute to a plan constitutes "a complete discontinuance" in the absence of a grant of authority from Congress or the Treasury.

Alan Beckerman
Briefly Stated, Inc.
December 4, 2007
Page 3 of 5

The IRS Manual is an internal agency guidebook which contains a compilation of the policies, procedures and guidelines relating to the organization, functions, administration and operations of the Internal Revenue Service.  It is written and designed by the IRS to provide guidance and instruction to revenue agents and other IRS employees who administer the federal income tax laws.  Procedures set forth in the IRS Manual are not binding on the IRS, do not have the effect of a rule of law, and are not promulgated pursuant to any delegation of authority by Congress.

As a handbook and guide for IRS personnel, the IRM includes "processing" and "examination" steps that are designed to *alert* IRS personnel to potential compliance issues when they encounter certain factual situations.  It is in this context that paragraph C. of the referenced IRM must be read.  In contrast to the Committee's interpretation, paragraph C. of the referenced IRM is not a statement reflecting the IRS' official ruling position regarding when an employer's cessation of contributions constitutes a complete discontinuance of contributions under Code Section 411(d)(3).  Rather, the provision is intended to *alert* IRS personnel who are responsible for reviewing qualified employee plans to a potential issue which may be triggered by an otherwise profitable employer's failure to make contributions in 3 out of 5 years.  Hence, the use of the term "consider" in paragraph C. of the IRM.  Under the Committee's reading of paragraph C., the use of such term is not only inappropriate and misleading, but also inconsistent with the *facts and circumstances* test set forth in the regulations and adopted in paragraphs A. and B. of the referenced IRM.

The Committee further contends that a complete discontinuance of contributions did not occur given the Company's history of making recurring and substantial contributions for the six consecutive year period ending in 2005.  The Committee's argument fails to take into account the factors listed in Treas. Reg. §1.411(d)-2(d)(1) that need to be considered when determining whether a complete discontinuance of contributions has occurred.  Among the factors listed in the regulations is "whether there is any reasonable probability that the lack of contributions will continue indefinitely."  As explained in the initial claim letter, as a result of the Company's acquisition by Li & Fung USA, the likelihood that the discontinuance of contributions will continue indefinitely is highly compelling given the level of contributions that would be required to maintain the Plan's qualified status following the acquisition and given the lack of economic benefit to be derived from the Company's contribution to the accounts of participants who were never employed by the Company.

The Committee next contends that the potential allocation of forfeitures has the same effect as a Plan contribution thus eliminating the claim that there was a complete discontinuance of contributions under the Plan pursuant to Code Section 411(d)(3).  This argument is flawed for several reasons.  First, to date, forfeitures have not been allocated to the accounts of participants who have not had a termination of employment.  In accordance with the terms of the Plan, such an allocation cannot occur prior to the time a terminated participant incurs five (5) consecutive one-year breaks in service or the earlier receipt of a "cash out" of the participant's vested accrued benefit under the Plan.  Second, the Committee's assertion that an allocation of forfeitures constitutes a contribution for

Alan Beckerman
Briefly Stated, Inc.
December 4, 2007
Page 4 of 5

purposes of Code Section 411(d)(3) is wrong. For purposes of avoiding a complete discontinuance of contributions under Code Section 411(d)(3), the regulations require an employer to make substantial and recurring contributions. Unlike actual contributions by an employer, the allocation of forfeitures represents employer contributions that were previously made and are simply being reallocated among remaining participants. The allocation of contributions previously made by an employer cannot be used to satisfy the "substantial and recurring contribution" requirement of Code Section 411(d)(3).

Lastly, in support of Mr. Lavin's claim, we once again note that no provisions were made under the terms of the acquisition agreement for Li & Fung USA to either adopt the Plan or to resume making substantial and recurring contributions thereto. In fact, as mentioned in the initial claim letter, every effort has been made to disassociate Li & Fung USA from the Plan, as evidenced in written communications to Plan participants which made a point of emphasizing that the Plan is being administered separately from the Li & Fung USA 401(k) Plan.

The Committee points to Section 6.8(b) of the stock purchase agreement which requires Li & Fung USA to "continue to maintain, and not to terminate" the Plan for a period of three years, as evidence to the contrary. The Committee's response, however, misses the point entirely. Mr. Lavin's claim for additional benefits under the Plan is not based on an allegation that the Plan was terminated or that Li & Fung USA failed to continue to maintain the Plan following the acquisition. Rather, Mr. Lavin's claim of entitlement to the balance of his accrued benefit (i.e., 100% of his account balance) is based on the statutory provisions contained in Code Section 411(d)(3) and the regulations thereunder. Under those provisions, all that is required to trigger the full vesting requirement of a participant's account balance is a showing, based on a consideration of all of the *facts and circumstances*, that there was a complete discontinuance of contributions to the Plan. We believe that we have met that burden. As explained in our initial claim letter, following the Company's acquisition by Li & Fung USA in September of 2005, participants were notified in writing that no further contributions of employer stock would be made to the Plan. While the initial claim letter acknowledged that the notice only referred to contributions of *employer stock*, the letter correctly points out that neither contributions of employer stock nor contributions of cash or other property were, in fact, made to the Plan following the Company's acquisition by Li & Fung USA. It is Mr. Lavin's contention that *actions speak louder than words.*

Pursuant to Mr. Lavin's right under ERISA and the Plan's Claim Procedures to appeal the Committee's benefit denial decision and to obtain copies of documents relevant to his claim for benefits under the Plan, request is hereby made for a copy of Section 6.8(b) of the stock purchase agreement referenced in the Committee's benefit denial letter and described as being part of the Documentary Record upon which the benefit denial was based. In addition, please furnish the undersigned with copies of any other provisions contained in such agreement or any other agreement pertaining to the Plan or the benefits payable thereunder.

Alan Beckerman
Briefly Stated, Inc.
December 4, 2007
Page 5 of 5

      In closing, it is our position, based on a consideration of *all of the facts and circumstances*, that the Company's cessation of contributions following its acquisition by Li & Fung USA, was intended to continue indefinitely and resulted in "a complete discontinuance of contributions" under the Plan.  Accordingly, Mr. Lavin became fully vested in his accrued benefit (i.e., account balance) under the Plan and is entitled to a distribution of the entire balance credited to his account thereunder.

                                   Sincerely,

                                   Samuel Brezel

SB:rb

cc: John Lavin