# EXHIBIT "E" TO DEFENDANT BRIEFLY STATED, INC. PROFIT SHARING PLAN'S ANSWER TO PLAINTIFF'S COMPLAINT

# jackson lewis
Attorneys at Law

March 31, 2008

Representing Management Exclusively in Workplace Law and Related Litigation

Jackson Lewis LLP
One North Broadway
White Plains, New York 10601
Tel 914 328-0404
Fax 914 328-1882
www.jacksonlewis.com

| | | |
|---|---|---|
| ATLANTA, GA | LONG ISLAND, NY | PORTLAND, OR |
| BIRMINGHAM, AL | LOS ANGELES, CA | PROVIDENCE, RI |
| BOSTON, MA | MIAMI, FL | RALEIGH-DURHAM, NC |
| CHICAGO, IL | MINNEAPOLIS, MN | RICHMOND, VA |
| CLEVELAND, OH | MORRISTOWN, NJ | SACRAMENTO, CA |
| DALLAS, TX | NEW YORK, NY | SAN FRANCISCO, CA |
| DENVER, CO | ORANGE COUNTY, CA | SEATTLE, WA |
| GREENVILLE, SC | ORLANDO, FL | STAMFORD, CT |
| HARTFORD, CT | PHILADELPHIA, PA | WASHINGTON, DC REGION |
| HOUSTON, TX | PITTSBURGH, PA | WHITE PLAINS, NY |

**VIA FEDERAL EXPRESS AND**
**EMAIL (*SAMBREZEL@BENEFITLAWS.COM*)**
Samuel Brezel, Esq.
44 Wall Street
New York, N.Y. 10005

                                  Re:    John Lavin

Dear Mr. Brezel:

The Administrative Committee of the Briefly Stated, Inc. Profit Sharing Plan (the "Committee[1]" and the "Plan[2]", respectively) has asked us to communicate their determination of the appeal of the previously denied claim for benefits by John Lavin ("Lavin" or "Claimant") to you.

For the reasons and based upon the documentary record below, the appeal is denied.

                                  \*      \*      \*

## BACKGROUND

By letter dated May 30, 2007 (the "Claim"), you advanced a formal claim for additional benefits from the Plan on behalf of Claimant. The Claim asserted that Claimant became fully vested in his accrued benefit under the Plan as a result of the complete discontinuance of contributions to the Plan by Briefly Stated, Inc. (the "Company") following the Company's acquisition by Li & Fung USA ("Li & Fung"). The Claim further asserted that, since Claimant had received a distribution of 40%[3] of his accrued benefit under the Plan, Claimant was entitled to additional benefits based upon full (as opposed to 40%) vesting.

By letter dated November 19, 2007 (the "Denial"), the Committee denied the Claim. The Committee interpreted Section 15.03 of the Plan, entitled "Consequences of Termination," as applying to both a formal plan termination and a complete discontinuance of contributions. The Committee further determined that a complete

---

[1] The Company is designated as the Plan's administrator. The Company has appointed a committee to perform certain duties, including the determination of benefit claims and the appeal of denial claims.
[2] Prior to January 1, 2006, the Plan was known as the Briefly Stated, Inc. Employee Stock Ownership Plan. Effective as of that date, the Plan was amended and restated and renamed the Briefly Stated, Inc. Profit Sharing Plan. Unless otherwise specified to the contrary, any references to sections of the Plan refer to the January 1, 2006 amendment and restatement.
[3] As discussed below, this represents Claimant's vested percentage under the Plan's vesting schedule in effect on his date of termination.



discontinuance of contributions had not occurred, and that Lavin received his entire vested Plan benefit when he received his distribution in March 2007.

By letter dated December 4, 2007 (the "Appeal"), you appealed the Denial on behalf of Claimant. The Appeal asserts the same theory as the Claim, specifically that the failure to make contributions to the Plan following the Company's acquisition by Li & Fung resulted in a complete discontinuance of contributions under Section 411(d)(3) of the Internal Revenue Code (the "Code"). No additional information or documentation was presented to the Committee for consideration in deciding the Appeal.

## *DOCUMENTARY RECORD*

The Committee bases its determination of the Appeal on the following documents:

1. The Plan document, as amended and restated effective January 1, 2006;

2. The summary plan description ("SPD") for the Plan;

3. Your letter dated May 30, 2007;

4. Your letter dated December 4, 2007;

5. Section 6.8(b) and (c) of the stock purchase agreement regarding the sale of the Company's stock to Li & Fung.

## *RELEVANT FACTS*

The Committee has determined the following facts with respect to the Appeal:

1. Claimant was hired by the Company on October 2, 2000.

2. Claimant's employment with the Company was terminated on March 30, 2005.

3. From January 1, 2000 (the "Effective Date") through December 31, 2005, the Plan was an "Employee Stock Ownership Plan", or "ESOP."

4. Prior to September 2005, the Plan's assets consisted primarily of shares of the Company's common stock.

# jackson|lewis
Attorneys at Law

Samuel Brezel, Esq.  
Page 3

March 31, 2008

5. In September 2005, all of the issued and outstanding shares of the Company's common stock, including the shares owned by the Plan, were acquired by Li & Fung.

6. When Claimant's employment with the Company was terminated on March 30, 2005, Claimant was credited with four (4) Years of Service.

7. When Claimant's employment with the Company was terminated on March 30, 2005, Claimant was 40% vested in his Plan account balance.

8. In March 2007, Claimant received a distribution from the Plan in the amount of $598,600.20, representing 40% of the Claimant's account balance of $1,496,500.50.

9. From the Effective Date through December 31, 2005, recurring and substantial contributions to the Plan were made by the Company.

10. For the year ending December 31, 2006, approximately $550,000 was funded from forfeitures and allocated to Plan participants.

11. No forfeitures have been used to pay Plan administrative expenses.

## PERTINENT PLAN PROVISIONS[4]

The Committee has determined that the following Plan provisions are relevant to the Appeal:

### VESTING

1. Sections 3.06 and 3.07 provide that a participant will be credited with a "Year of Service" for vesting purposes for each Plan Year in which the participant is credited with at least 1,000 hours of service.

2. Section 10.01(b) provides that a participant's vested interest in their account will be determined in accordance with a 3-7 year graded vesting schedule upon termination of employment prior to normal retirement. Under the schedule, a participant with 4 Years of Vesting Service has a vested interest of 40% in the Plan account.

---

[4] As noted above, references to specific Plan provisions refer to the Plan, as was amended and restated effective as of January 1, 2006, unless otherwise specified.


Attorneys at Law

Samuel Brezel, Esq.
Page 4

March 31, 2008

3. Section 15.03(a) of the Plan provides that the interest of each affected employee will become fully vested and nonforfeitable if the Plan is terminated in whole or in part.

**FORFEITURES**

4. Section 10.02 provides that the nonvested portion of a participant's account will be forfeited when the participant receives a distribution of the vested balance of their account.

**PROFIT SHARING CONTRIBUTIONS**

5. Section 2.19 defines "Profit Sharing Contributions" as "the contributions, if any, made pursuant to Section 6.01."

6. Section 6.01(a) of the Plan provides that the Company, at its sole discretion, will determine if and to what extent a Profit Sharing Contribution is appropriate for a Plan Year.

7. Section 10.04(a) provides that forfeitures are used to either pay administrative expenses or to reduce the amount of Profit Sharing Contributions to be made by the Company for the Plan Year.

**PLAN ADMINISTRATION**

8. Section 2.02 of the Plan defines "Administrator" or "Plan Administrator" as the Company or such other person or committee as may be appointed to administer the Plan in accordance with Article 14.

9. Section 14.01 of the Plan provides that the Company may appoint a committee to perform the duties of the Plan Administrator on behalf of the Company.

10. Section 14.14 provides that the Administrator or its designee has full and absolute discretion and authority to determine the amount of benefits to which any person is entitled under the Plan. Section 14.14 further provides that any such determination will be final and binding on all parties, and may not be set aside in any judicial proceeding unless found to be arbitrary and capricious by a court of competent jurisdiction.


Attorneys at Law

Samuel Brezel, Esq.
Page 5

March 31, 2008

## *ANALYSIS*

### BACKGROUND

Claimant was employed by the Company from October 2, 2000 until March 30, 2005. Claimant was therefore credited with four (4) Years of Service for vesting purposes. (Plan, Sections 3.06 and 3.07). In accordance with the Plan's vesting schedule for the relevant period[5], Claimant therefore had a vested interest in his account balance of 40%. (Plan, Section 10.01(b)). On this basis, Claimant received a March 2007 distribution of $598,600.20, representing 40% of the Claimant's account balance of $ 1,496,500.50.

Notwithstanding the foregoing, you assert that Claimant became fully (that is, 100%) vested in his accrued benefit under the Plan as a result of "complete discontinuance of contributions" under Section 411(d)(3) of the Internal Revenue Code. Under the terms of the Plan, the nonvested portion of a participant's account balance is forfeited when the participant receives a distribution of their vested account balance. (Plan, Section 10.02). As a result, the alleged complete discontinuance of contributions must have occurred prior to March 2007 for Claimant to have become fully vested as a result thereof.

### COMPLETE DISCONTINUANCE OF CONTRIBUTIONS

**IRS Regulations**

Code Section 411(d)(3) requires, as a condition of tax qualification, a plan to provide that the rights of all affected employees become fully vested and nonforfeitable upon the termination of the plan (Code Section 411(d)(3)(A)) or, with respect to a plan to which section 412 does not apply[6], upon complete discontinuance of contributions under the plan (Code Section 411(d)(3)(B)). Code Section 411(d)(3) would require the Plan to provide for full vesting of all affected employees upon a "complete discontinuance of contributions."[7]

The relevant IRS regulations provide as follows:

> **General rule.** For purposes of this section, **a complete discontinuance of contributions under the plan is contrasted with a suspension of**

---

[5] The Plan provides a different vesting schedule for amounts attributable to Profit Sharing Contributions made for Plan Years beginning on and after January 1, 2007. Plan, Section 10.01(c). This vesting schedule is not relevant to the Appeal.
[6] Section 412 of the Code does not apply to profit sharing plans such as the Plan. Code Section 412(h)(1).
[7] The Plan provides for full vesting upon termination. Plan, Section 15.03(a). The Committee interprets Section 15.03(a) as encompassing a "complete discontinuance of contributions" as well as a termination.

# jackson|lewis
Attorneys at Law

Samuel Brezel, Esq.  
Page 6

March 31, 2008

> contributions under the plan which is merely a **temporary cessation of contributions by the employer.** A complete discontinuance of contributions may occur although some amounts are contributed by the employer under the plan if such amounts are not substantial enough to reflect the intent on the part of the employer to continue to maintain the plan. **The determination** of whether a complete discontinuance of contributions under the plan has occurred **will be made with regard to all the facts and circumstances in the particular case**, and without regard to the amount of any contributions made under the plan by employees. Among the factors to be considered in determining whether a suspension constitutes a discontinuance are:
>
> (i) Whether the employer may merely be calling an actual discontinuance of contributions a suspension of such contributions in order to avoid the requirement of full vesting as in the case of a discontinuance, or for any other reason;
>
> (ii) Whether contributions are recurring and substantial; and
>
> (iii) Whether there is any reasonable probability that the lack of contributions will continue indefinitely.
>
> Reg. § 1.411(d)-2(d)(1)(emphasis added).

This regulation does not provide an objective test as to what constitutes a "complete discontinuance of contributions." The regulation contrasts a *suspension of contributions* (referred to as a "temporary cessation") with a *complete discontinuance*, with full vesting required only upon the latter. While the regulation further specifies a number of nonexclusive factors to be considered, the determination is ultimately based upon the relevant facts and circumstances.


Attorneys at Law

Samuel Brezel, Esq.
Page 7

March 31, 2008

**IRS Manual**

Additional guidance is also found in the Internal Revenue Service Manual ("IRS Manual").[8] In this regard, the IRS Manual provides that "[i]f the employer has failed to make substantial contributions in 3 out of 5 years, consider the issue of discontinuance of contributions." IRS Manual, Section 7.12.1.2.6-1(c)(emphasis added).

The IRS Manual, therefore, provides that a complete discontinuance of contributions is not an audit issue unless and until substantial contributions are lacking for 3 out of five years. Agents are instructed to "consider" the issue of a complete discontinuance of contributions once this minimum threshold is met.

**Summary of IRS Guidance**

The IRS guidance regarding the determination of whether a complete discontinuance of contributions has occurred is sparse. It is clear, however, that substantial contributions must be lacking for *some* period of years[9], and that such period must be sufficient to exceed a *suspension* (for which full vesting is not required) and reach the level of a *complete discontinuance* (for which full vesting is required)[10]. In this regard, the IRS Manual provides a "three out of five" year threshold; the regulations are silent on this point. It is also clear that the intent of the sponsoring employer to maintain the plan is relevant.

## A COMPLETE DISCONTINUANCE OF CONTRIBUTIONS DID NOT OCCUR

The Committee has determined that a complete discontinuance of contributions did not occur.

**Recurring and Substantial Contributions Were Made From 2000-2005**

---

[8] The IRS Manual is the official compilation of policies, procedures, instructions, and guidelines relating to the organization, functions, administration, and operations of IRS. Although it is not legally binding, the IRS Manual has been cited by several courts as a useful interpretive tool.

[9] See, e.g., Reg. § 1.411(d)-2(d)(1)(iii) (discussing whether the lack of contributions will "continue indefinitely").

[10] Consistent with this, the IRS Manual instructs its agents to "consider" the issue of a complete discontinuance of contributions where contributions are not made for three out of five years. Contrary to your assertion, the Committee does not interpret this provision as requiring a three out of five year suspension at a minimum in all cases. The Committee does interpret this provision, however, as requiring *some* period of suspension.


Attorneys at Law

Samuel Brezel, Esq.  March 31, 2008
Page 8

The Committee has found a history of recurring and substantial contributions to the Plan. Specifically, the Committee determined that the Company funded recurring and substantial contributions to the Plan for each Plan Year 2000 through and including 2005.

**A Substantial Contribution Was Made For 2006**

The Committee disagrees with your contention that "the last substantial contribution made to the Plan was in 2005." To the contrary, the Committee has determined that a substantial contribution was made for 2006.

*Interpretation of Plan Provisions*

The Company has reserved the discretion to determine if and to what extent a Profit Sharing Contribution is appropriate for each Plan Year beginning on and after January 1, 2006.[11]. The amount of such Profit Sharing Contribution is then reduced by amounts that become forfeitures during the current or prior Plan Year,[12] with the balance required to be funded by the Company.

The Committee interprets these provisions as providing a mechanism for forfeitures to function as deemed Profit Sharing Contributions. Consistent with this interpretation, the Plan's SPD provides that forfeitures may, at the Company's discretion, "either be used to pay administrative expenses or to fund Employer Contributions.[13]" In this regard, the Committee notes that the Plan does not provide any formula for allocating forfeitures; forfeitures are allocated in the same manner as are Profit Sharing Contributions[14].

*2006 Allocation*

For the 2006 Plan Year, approximately $550,000, representing the maximum allocation permissible under Section 415 of the Internal Revenue, was allocated to eligible Plan participants. Your statements that this mechanism represents a *potential* allocation of forfeitures, and that forfeitures have not been so allocated, are clearly incorrect.

---

[11] Plan Section 6.01(a)
[12] Amounts that become forfeitures will be used to either pay administrative expenses or to reduce the amount of Profit Sharing Contributions to be made by the Company for the Plan Year. Plan Section 10.04(a). As noted above, no forfeitures have been used to defray administrative expenses.
[13] SPD p. 7.
[14] Plan, Section 6.01.

**jackson|lewis**
Attorneys at Law

Samuel Brezel, Esq.  March 31, 2008
Page 9

To the contrary, the Committee interprets the foregoing Plan provisions as providing for forfeitures to fund Profit Sharing Contributions. As a result, the Committee has determined that a substantial Profit Sharing Contribution was made for 2006[15].

### Absent a 2006 Contribution, a Complete Discontinuance Still Did Not Occur

The Committee has also considered whether, had they not determined (as discussed in the preceding section) that a substantial contribution was made for 2006, a complete discontinuance of contributions would have occurred. The Committee has determined that it would not have.

*Contribution History*

As discussed below, the Company made substantial contributions to the Plan for the six consecutive years prior to 2006. Further; a complete discontinuance of contributions would have had to have occurred prior to March 2007 for Claimant to prevail. The Committee has determined that the alleged failure to make a contribution in 2006, after having made recurring and substantial contributions for the six prior consecutive years, coupled with the absence of any lack of intent to permanently cease contributions (as more fully discussed in the next section) does not constitute a complete discontinuance of contributions. The Committee therefore further determines that a termination of the Plan did not occur on this basis under Plan Section 15.03(a).[16]

*Lack of Intent*

The Appeal also asserts that a complete discontinuance of contributions occurred based upon the Company's intention to permanently cease making contributions. In support, you cite (1) the absence of any provisions in the acquisition agreements requiring Li & Fung USA (as opposed to the Company) to "adopt the Plan or to resume making substantial and recurring contributions thereto"; (2) a letter to participants advising them that contributions of employer stock would no longer be made to the Plan; and (3) the fact that the Plan is administered separately from Li & Fung USA's 401(k) Plan. The Committee has considered your arguments and does not find them at all persuasive[17].

---

[15] You argue without any substantiation that the allocation of forfeitures cannot satisfy the "substantial and recurring" contribution requirement of Section 411(d)(3). The Committee does not find this argument persuasive.

[16] As noted above, the Committee interprets Section 15.03(a) as encompassing a "complete discontinuance of contributions" as well as a formal termination. This interpretation is consistent with your letter, which states that "the discontinuance of contributions to the Plan constitutes a termination of the Plan."

[17] To the contrary, the Committee finds that the letter regarding the lack of future allocations of employer stock entirely consistent with the Plan's sale of shares and conversion to a profit sharing plan following such sale, as there were no shares owned by the Plan and therefore no shares to allocate to Plan



Samuel Brezel, Esq.
Page 10

March 31, 2008

To the contrary, the Committee has found that the asset purchase agreement authorized the conversion of the Plan from an ESOP to a profit sharing plan and *required* Li & Fung to continue to maintain the Plan for a period of three years. The Committee further notes that the terms of the Plan provide for employer contributions, at the Company's discretion.[18]

Lastly, with respect to the alleged significance of the Company's failure to describe the contribution status as temporary, we note that the Claimant, not the Company or the Plan, bears the burden of establishing that there was a complete discontinuance of contributions. Steiner Corp. Retirement Plan v. Bertoldo, 31 F. 3d 935, 941-42 (10th Cir. 1994).

We have considered the other arguments you raised and find them similarly unavailing.

## *CONCLUSIONS*

Based on the foregoing, the Committee has made the following determinations:

(1)   The Committee interprets Section 15.03 of the Plan, entitled "Consequences of Termination," as applying to both a formal Plan termination and a complete discontinuance of contributions.

(2)   For the reasons set forth above, a complete discontinuance of contributions to the Plan has not occurred. Accordingly, the Claimant's interest in his Plan account balance did not become fully vested and nonforfeitable pursuant to Plan Section 15.03(a).

(3)   When Claimant received a March 2007 distribution of $598,600.20, representing 40% of the Claimant's account balance of $ 1,496,500.50, Claimant received his entire vested benefit under the Plan. The balance of his account was forfeited at that time.

The Appeal is therefore denied.

\*   \*   \*

---

participants. Similarly, we are unaware of any requirement that a parent sponsor all benefit plans in which employees of its subsidiaries participate, or that all such plans be administered together.

[18] As noted above, a substantial contribution was in fact made for 2006, the year *after* the closing took place.



Samuel Brezel, Esq.  
Page 11

March 31, 2008

Please note that this Appeal constitutes the final administrative review of Claimant's denied claim for benefits under the Plan. Claimant may, however, further contest this denial by timely bringing an action pursuant to Section 502(a) of ERISA.

Lastly, Claimant is also entitled to receive, upon request and free of charge, copies of all documents relevant to the Appeal.

Sincerely,

JACKSON LEWIS LLP

Robert R. Perry

## Answers to Complaints
1:09-cv-08610-CM Lavin v. Briefly Stated, Inc. et al
ECF

### U.S. District Court

### United States District Court for the Southern District of New York

## Notice of Electronic Filing

The following transaction was entered by Kozak, Jonathan on 1/6/2010 at 5:15 PM EST and filed on 1/6/2010

**Case Name:** Lavin v. Briefly Stated, Inc. et al
**Case Number:** 1:09-cv-8610
**Filer:** Briefly Stated Inc. Profit Sharing Plan
**Document Number:** 6

**Docket Text:**
**ANSWER to Complaint. Document filed by Briefly Stated Inc. Profit Sharing Plan. (Attachments: # (1) Exhibit A, # (2) Exhibit B, # (3) Exhibit C, # (4) Exhibit D, # (5) Exhibit E)(Kozak, Jonathan)**

**1:09-cv-8610 Notice has been electronically mailed to:**

Jani Karen Rachelson    jrachelson@cwsny.com

Jonathan Marc Kozak    kozakj@jacksonlewis.com

Peter Dante DeChiara    pdechiara@cwsny.com

Zachary Nathan Leeds    zleeds@cwsny.com

**1:09-cv-8610 Notice has been delivered by other means to:**

The following document(s) are associated with this transaction:

]
(
]

(
]
]