# EXHIBIT D

# BRIEFLY STATED, INC.
# PROFIT SHARING PLAN

*Formerly Known as the Briefly Stated, Inc.*
*Employee Stock Ownership Plan*
*As amended and restated effective January 1, 2006*

NEWYORK.534277.2

**D-001**

# TABLE OF CONTENTS

ARTICLE 1.  INTRODUCTION ...................................................................1
    1.01    PURPOSE ..........................................................................1
    1.02    PLAN ESTABLISHMENT AND HISTORY ........................1
    1.03    APPLICABILITY ..............................................................2

ARTICLE 2.  DEFINITIONS ......................................................................3
    2.01    ACCOUNT .........................................................................3
    2.02    ADMINISTRATOR .............................................................3
    2.03    BENEFICIARY ...................................................................3
    2.04    BOARD OF DIRECTORS ...................................................3
    2.05    CODE .................................................................................3
    2.06    COMPANY .........................................................................3
    2.07    COMPENSATION ..............................................................3
    2.08    EFFECTIVE DATE .............................................................4
    2.09    ELIGIBLE EMPLOYEE ....................................................4
    2.10    EMPLOYEE .......................................................................4
    2.11    ERISA ...............................................................................5
    2.12    INVESTMENT FUND .........................................................5
    2.13    LEASED EMPLOYEE ........................................................5
    2.14    NORMAL RETIREMENT DATE ........................................5
    2.15    PARTICIPANT ...................................................................5
    2.16    PARTICIPATING EMPLOYER .........................................5
    2.17    PLAN .................................................................................6
    2.18    PLAN YEAR .......................................................................6
    2.19    PROFIT SHARING CONTRIBUTION ...............................6
    2.20    RELATED COMPANY .......................................................6
    2.21    TOTAL DISABILITY .........................................................6
    2.22    TRUST AGREEMENT ........................................................6
    2.23    TRUST FUND .....................................................................6
    2.24    TRUSTEE ...........................................................................6
    2.25    VALUATION DATE ...........................................................6

ARTICLE 3.  DEFINITIONS AND RULES FOR DETERMINING SERVICE ...........................7
    3.01    APPROVED ABSENCE .....................................................7
    3.02    ONE-YEAR BREAK-IN-SERVICE ...................................7
    3.03    EMPLOYMENT COMMENCEMENT\RECOMMENCEMENT DATE .............7
    3.04    HOURS OF SERVICE .......................................................7
    3.05    MATERNITY/PATERNITY ABSENCE ...........................8
    3.06    YEAR OF SERVICE .........................................................8
    3.07    VESTING SERVICE ..........................................................8

ARTICLE 4.  PARTICIPATION IN THE PLAN .......................................10
    4.01    PARTICIPATION REQUIREMENTS ...............................10
    4.02    CESSATION OF PARTICIPATION ..................................10

i

ARTICLE 5.  PARTICIPANT CONTRIBUTIONS ............................................11
   5.01    ROLLOVER CONTRIBUTIONS. ..........................................................11

ARTICLE 6.  EMPLOYER CONTRIBUTIONS ............................................12
   6.01    PROFIT SHARING CONTRIBUTIONS....................................12
   6.02    TRANSFER OF FUNDS ...............................................................12

ARTICLE 7.  LIMITATIONS ON CONTRIBUTIONS ................................13
   7.01    DEFINITIONS..................................................................................13
   7.02    LIMITATION ON ANNUAL ADDITIONS.............................13
   7.03    DEDUCTION LIMITATION........................................................13

ARTICLE 8.  PARTICIPANTS' ACCOUNTS...............................................14
   8.01    SEPARATE ACCOUNTS...............................................................14
   8.02    CONTRIBUTIONS TO ACCOUNT ...........................................14
   8.03    VALUATION OF ACCOUNTS ....................................................14

ARTICLE 9.  TRUST FUND AND INVESTMENT OF ACCOUNTS ..........15
   9.01    TRUST FUND AND TRUSTEES.................................................15
   9.02    INVESTMENT FUNDS .................................................................15
   9.03    INVESTMENT DIRECTION .......................................................15

ARTICLE 10.  VESTING AND FORFEITURE...............................................17
   10.01   VESTING ........................................................................................17
   10.02   FORFEITURE ................................................................................17
   10.03   RESTORATION OF FORFEITURES ........................................18
   10.04   APPLICATION OF FORFEITURES .........................................18
   10.05   CHANGE IN VESTING SCHEDULE........................................18

ARTICLE 11.  LOANS TO PARTICIPANTS...................................................20
   11.01   EFFECTIVE DATE .......................................................................20
   11.02   GENERAL.......................................................................................20
   11.03   MAXIMUM LOAN AMOUNT ...................................................20
   11.04   LOAN TERMS ...............................................................................20
   11.05   COLLATERAL ...............................................................................21
   11.06   TREATMENT OF LOAN PAYMENTS.....................................21
   11.07   DEFAULT .......................................................................................21
   11.08   LOAN PAYABLE FOLLOWING TERMINATION OF EMPLOYMENT.............22

ARTICLE 12.  WITHDRAWALS BEFORE TERMINATION OF EMPLOYMENT ...............23
   12.01   WITHDRAWALS NOT PERMITTED.......................................23

ARTICLE 13.  DISTRIBUTIONS AFTER TERMINATION OF EMPLOYMENT ..................24
   13.01   TERMINATION PRIOR TO NORMAL RETIREMENT DATE ............................24
   13.02   TERMINATION AT OR AFTER NORMAL RETIREMENT DATE...................24
   13.03   DEATH.............................................................................................25
   13.04   BENEFICIARY DESIGNATION ...............................................25
   13.05   FORM OF PAYMENT..................................................................26

D-003

13.06  DIRECT TRANSFER OF ELIGIBLE ROLLOVER DISTRIBUTION ...................26

ARTICLE 14.  ADMINISTRATION .........................................................................................27
14.01  ADMINISTRATOR ..............................................................................................27
14.02  ADMINISTRATOR'S AUTHORITY AND POWERS............................................27
14.03  DELEGATION OF DUTIES AND EMPLOYMENT OF AGENTS ......................27
14.04  CHARGES ON PARTICIPANTS' ACCOUNTS....................................................27
14.05  EXPENSES ..........................................................................................................28
14.06  COMPENSATION ..............................................................................................28
14.07  EXERCISE OF DISCRETION ............................................................................28
14.08  FIDUCIARY LIABILITY ....................................................................................28
14.09  INDEMNIFICATION BY PARTICIPATING EMPLOYERS ...............................28
14.10  PLAN PARTICIPATION BY FIDUCIARIES ......................................................29
14.11  MISSING PERSONS ...........................................................................................29
14.12  CLAIMS REVIEW PROCEDURE ......................................................................29
14.13  LIMITATION ON SUITS FOR BENEFITS........................................................30
14.14  STANDARD OF JUDICIAL REVIEW OF COMMITTEE ACTIONS..................30

ARTICLE 15.  AMENDMENT AND TERMINATION OF PLAN...........................................31
15.01  AMENDMENT....................................................................................................31
15.02  RIGHT TO TERMINATE PLAN ........................................................................31
15.03  CONSEQUENCES OF TERMINATION .............................................................31

ARTICLE 16.  PARTICIPATION BY RELATED COMPANIES...........................................32
16.01  PARTICIPATION ...............................................................................................32
16.02  DELEGATION OF POWERS AND AUTHORITY..............................................32
16.03  TERMINATION OF PARTICIPATION ..............................................................32

ARTICLE 17.  TOP-HEAVY PLAN PROVISIONS..............................................................33
17.01  APPLICABILITY................................................................................................33
17.02  DEFINITIONS....................................................................................................33
17.03  MINIMUM CONTRIBUTION ...........................................................................35
17.04  VESTING ...........................................................................................................36

ARTICLE 18.  GENERAL PROVISIONS ............................................................................37
18.01  TRUST FUND SOLE SOURCE OF PAYMENTS FOR PLAN ............................37
18.02  EXCLUSIVE BENEFIT.......................................................................................37
18.03  NON-ALIENATION ...........................................................................................37
18.04  QUALIFIED DOMESTIC RELATIONS ORDER ...............................................37
18.05  EMPLOYMENT RIGHTS ...................................................................................37
18.06  EMPLOYEE TRANSFERS..................................................................................38
18.07  RETURN OF CONTRIBUTIONS .......................................................................38
18.08  MERGER, CONSOLIDATION OR TRANSFER .................................................38
18.09  VETERANS' RE-EMPLOYMENT RIGHTS UNDER USERRA ..........................38
18.10  APPLICABLE LAW ............................................................................................38
18.11  ACTION BY THE COMPANY ............................................................................39
18.12  RULES OF CONSTRUCTION............................................................................39

iii

18.13   RECEIPT AND RELEASE FOR PAYMENTS....................................................39

APPENDIX A.  ADDITIONAL REQUIREMENTS FOR TAX QUALIFICATION .................40
   A1.     PURPOSE.................................................................................................40
   A2.     DIRECT TRANSFER OF ELIGIBLE ROLLOVER DISTRIBUTION ...................40
   A3.     MINIMUM DISTRIBUTION REQUIREMENTS....................................................41

# ARTICLE 1.  INTRODUCTION

## 1.01    PURPOSE

The purpose of the Briefly Stated, Inc. Profit Sharing Plan is to provide Plan participants with the opportunity to accumulate retirement income.

Prior to January 1, 2006, the Plan was an "employee stock ownership plan," or ESOP, called the Briefly Stated, Inc. Employee Stock Ownership Plan.  In this document, the Plan is being converted from an ESOP to a profit sharing plan.

The Plan, as amended and restated herein, is intended to (a) qualify as a profit-sharing plan for purposes of Sections 401(a), 402, 412, and 417 of the Internal Revenue Code of 1986, as amended (the "Code"), and (b) comply with the requirements of the Employee Retirement Income Security Act of 1974, as amended.

## 1.02    PLAN ESTABLISHMENT AND HISTORY

On December 20, 2000, Briefly Stated, Inc. established the "Briefly Stated, Inc. Employee Stock Ownership Plan," effective January 1, 2000.

The Internal Revenue Service issued a favorable determination letter dated July 20, 2001 (DLN 17007121000001) with respect to the Plan as adopted December 20, 2000 and as amended July 30, 2001.

The Plan was subsequently amended on November 28, 2001, effective January 1, 2001, to modify the Plan's eligibility requirements.

The Plan was subsequently amended on December 13, 2001, effective January 1, 2001, to comply with the Community Renewal Tax Relief Act of 2001.

The Plan was subsequently amended on December 12, 2002, to modify the definition of "annual additions."

The Plan was subsequently amended on December 30, 2002, to comply with certain provisions of the Economic Growth and Tax Relief Reconciliation Act of 2001 ("EGTRRA").

The Plan was subsequently amended on December 31, 2003, to comply with the minimum required distribution rules in Code Section 401(a)(9) and the regulations thereunder.

The Plan was subsequently amended on April 29, 2004 to eliminate the money purchase component of the Plan.

The Plan was subsequently amended on December 22, 2005, to modify the eligibility and contribution allocation provisions of the Plan for the 2005 Plan Year.

## 1.03    APPLICABILITY

This plan document sets forth the provisions of the Plan as amended and restated effective January 1, 2006.

All issues arising with respect to participation and rights and benefits under the Plan for any period prior to January 1, 2006 shall be determined by the terms and provisions of the Plan as in effect prior to January 1, 2006 except as otherwise specifically provided in the Plan.

NEWYORK.534277.2

**D-007**

## ARTICLE 2.  DEFINITIONS

Wherever used herein, the following terms shall have the following meanings:

**2.01   ACCOUNT**

"Account" means the entire interest of a Participant in the Trust Fund.

**2.02   ADMINISTRATOR**

"Administrator" or "Plan Administrator" means the Company or such other person or committee as may be appointed from time to time by the Board of Directors to administer the Plan in accordance with Article 14.

**2.03   BENEFICIARY**

"Beneficiary" means any person entitled to receive payment of a Participant's Account pursuant to Section 13.04 as a result of the death of the Participant.

**2.04   BOARD OF DIRECTORS**

"Board" or "Board of Directors" means the Board of Directors of the Company.

**2.05   CODE**

"Code" means the Internal Revenue Code of 1986, as amended.

**2.06   COMPANY**

"Company" means Briefly Stated, Inc. and any successor to Briefly Stated, Inc. by merger, consolidation, purchase or otherwise.

**2.07   COMPENSATION**

"Compensation" means the total wages that are paid by a Participating Employer to a Participant during the Plan Year for employment with the Participating Employer and that are required to be reported on Internal Revenue Service Form W 2 (in the "wages, tips and other compensation" box) for that year subject to the following inclusions and exclusions:

(a)     Including employer contributions made pursuant to a compensation reduction agreement which are not includible in the gross income of a Participant under Sections 125, 132(f)(4), 402(a)(8), 402(h), 403(b) or 457 of the Code;

(b)     Excluding amounts realized from the exercise of a non-qualified stock option, amounts realized when restricted stock (or property) held by the employee either becomes freely transferable or is no longer subject to a substantial risk of forfeiture, reimbursements or other expense allowances, fringe benefits (cash and noncash), moving expenses, deferred

3

D-008

compensation (other than deferrals specifically included herein), and welfare benefits (other than contributions to a cafeteria plan as provided herein), even if any such items are includable in gross income.

The maximum amount of Compensation that may be taken into account in any Plan Year shall not exceed the dollar limitation contained in Section 401(a)(17) of the Code in effect as of the beginning of the Plan Year.

## 2.08    EFFECTIVE DATE

"Effective Date" means January 1, 2000, the date as of which the Plan was originally established.

## 2.09    ELIGIBLE EMPLOYEE

"Eligible Employee" means any Employee employed by a Participating Employer who has attained age 21 but excluding

(a)    Any individual who is covered by a collective bargaining agreement to which a Participating Employer is a party, and which agreement does not provide for participation in the Plan;

(b)    Except as otherwise provided by the Administrator, any individual who is a nonresident alien (within the meaning of Section 7701(b) of the Code) and who does not receive any earned income from a Participating Employer which constitutes income from sources within the United States (within the meaning of Section 861(a)(3) of the Code); and

(c)    Any individual who is a "leased employee" within the meaning of Section 414(n)(2) of the Code;

(d)    Any individual who is a "payroll service or agency employee".  For purposes of this paragraph (d), the term "payroll service or agency employee" means an individual (i) for whom the direct payor of compensation with respect to the performance of services for a Participating Employer is any outside entity, including but not limited to a payroll service or temporary employment agency, rather than by the Participating Employer's internal corporate payroll system; or (ii) who is paid directly by a Participating Employer, but not through an internal corporate payroll system (e.g., through purchase order accounts); or (iii) designated by a Participating Employer as an independent contractor, either through the terms of an agreement with such individual or otherwise.  The determination whether an individual is a "payroll service or agency employee" shall be made by the Administrator, in its sole discretion, based solely upon these criteria, without regard to whether the individual is considered a common law employee of a Participating Employer for any other purpose.

## 2.10    EMPLOYEE

"Employee" means any individual who is a common law employee or a "leased employee" (within the meaning of Section 414(n)(2) of the Code) of the Company or any Related Company.

4

### 2.11    ERISA

"ERISA" means the Employee Retirement Income Security Act of 1974, as amended.

### 2.12    INVESTMENT FUND

"Investment Fund" means one or more of the investment vehicles made available to Participants for investment of their Accounts pursuant to Article 8.

### 2.13    LEASED EMPLOYEE

"Leased Employee" means, effective for Plan Years beginning after December 31, 1996, any person (other than an employee of the recipient) who pursuant to an agreement between the recipient and any other person ("leasing organization") has performed services for the recipient (or for the recipient and related persons determined in accordance with Section 414(n)(6) of the Code) on a substantially full time basis for a period of at least one year, and such services are performed under primary direction or control by the recipient. Contributions or benefits provided a leased employee by the leasing organization which are attributable to services performed for the recipient employer shall be treated as provided by the recipient employer.

A leased employee shall not be considered an employee of the recipient if:

(a)    such employee is covered by a money purchase pension plan providing:  (i) a nonintegrated employer contribution rate of at least 10 percent of compensation, as defined in Section 415(c)(3) of the Code, but including amounts contributed pursuant to a salary reduction agreement which are excludable from the employee's gross income under Section 125, section 402(e)(3), Section 402(h)(1)(B) or Section 403(b) of the Code, (ii) immediate participation, and (iii) full and immediate vesting; and

(b)    leased employees do not constitute more than 20 percent of the recipient's nonhighly compensated work force.

### 2.14    NORMAL RETIREMENT DATE

"Normal Retirement Date" means the later of (a) the first day of the month after a Participant's 65th birthday or (b) the 5th anniversary of the Participant's date of entry into the Plan.

### 2.15    PARTICIPANT

"Participant" means any Eligible Employee who has met the participation requirements set forth in Article 4 and who has an Account under the Plan, both as of December 31, 2005.

### 2.16    PARTICIPATING EMPLOYER

"Participating Employer" means (a) the Company and (b) any Related Company which is designated as a Participating Employer by the Board of Directors and which has adopted the Plan by proper corporate action.

NEWYORK.534277.2

D-010

### 2.17   PLAN

"Plan" means the Briefly Stated, Inc. Profit Sharing Plan (formerly known as the Briefly Stated, Inc. Employee Stock Ownership Plan) as set forth herein, and any amendments thereto.

### 2.18   PLAN YEAR

"Plan Year" means the twelve (12) month period commencing each January 1.

### 2.19   PROFIT SHARING CONTRIBUTION

"Profit Sharing Contribution" means the contribution, if any, made pursuant to Section 6.01.

### 2.20   RELATED COMPANY

"Related Company" means any corporation which is a member of a controlled group of corporations (as defined in Section 414(b) of the Code) which includes the Company; any trade or business (whether or not incorporated) which is under common control (as defined in Section 414(c) of the Code) with the Company; any organization (whether or not incorporated) which is a member of an affiliated service group (as defined in Section 414(m) of the Code) which includes the Company; and any other entity required to be aggregated with the Company pursuant to regulations under Section 414(o) of the Code.

### 2.21   TOTAL DISABILITY

"Total Disability" means a Participant's total and permanent disability as determined for purposes of the Social Security Act.

### 2.22   TRUST AGREEMENT

"Trust Agreement" means an agreement between the Company and the Trustee under which the Plan's assets are held, administered and managed.

### 2.23   TRUST FUND

"Trust Fund" means all assets under the Plan held by the Trustee.

### 2.24   TRUSTEE

"Trustee" means any person, bank, or such other trustee or trustees under the Trust Agreement as may be appointed by the Board of Directors to hold, invest and disburse the funds of the Plan.

### 2.25   VALUATION DATE

"Valuation Date" means the last day of the Plan Year and such other dates as may be selected by the Administrator for valuing the Trust Fund.

NEWYORK.534277.2

D-011

## ARTICLE 3.  DEFINITIONS AND RULES FOR DETERMINING SERVICE

### 3.01   APPROVED ABSENCE

"Approved Absence" means an Employee's approved leave of absence from employment with the Company or a Related Company because of military service, illness, disability, pregnancy, service as a juror, or other leave of absence approved by the Company or Related Company.  An Approved Absence also includes any leave of absence in accordance with the requirements of the Family and Medical Leave Act of 1993.  The Company or Related Company shall determine the first and last days of any Approved Absence.

### 3.02   ONE-YEAR BREAK-IN-SERVICE

A "One Year Break-in-Service" means a Plan Year in which an Employee fails to complete more than five hundred (500) Hours of Service with the Company or any Related Company.  Solely for purposes of determining whether an Employee has a Break-in-Service, Hours of Service shall be recognized during an Approved Absence or a Maternity/Paternity Absence.  During such absence, the Employee shall be credited with the Hours of Service which would have been credited but for the absence, or, if such hours cannot be determined, with eight hours per day.

### 3.03   EMPLOYMENT COMMENCEMENT\RECOMMENCEMENT DATE

(a)     "Employment Commencement Date" means the first day on which an Employee first performs an Hour of Service for the Company or a Related Company.

(b)     "Employment Recommencement Date" means the first day following a One Year Break-in-Service on which an Employee first performs an Hour of Service for the Company or a Related Company.

### 3.04   HOURS OF SERVICE

"Hour of Service" means:

(a)     Each hour for which an Employee is directly paid, or entitled to payment, for the performance of duties for a Participating Employer or a Related Company.  These hours shall be credited to the Employee for the computation period in which the duties are performed.

(b)     Each hour for which an Employee is directly paid, or entitled to payment, by a Participating Employer or a Related Company on account of a period of time during which no duties are performed (irrespective of whether the employment relationship has terminated) due to vacation, holiday, illness, incapacity (including disability), layoff, jury duty, military duty, or leave of absence.  No more than 501 hours of service will be credited under this paragraph for any single continuous period (whether or not such period occurs in a single computation period). Hours under this paragraph will be calculated and credited pursuant to section 2530.200b-2 of the Department of Labor Regulations which is incorporated herein by this reference.

7

D-012

(c)    Each hour for which back pay, irrespective of mitigation of damages, is either awarded or agreed to by a Participating Employer or a Related Company.  The same Hours of Service shall not be credited both under paragraph (a) or paragraph (b), as the case may be, and under this paragraph (c).  These hours shall be credited to the Employee for the computation period or periods to which the award or agreement pertains rather than the computation period in which the award, agreement, or payment is made.

(d)    Hours of Service also shall include a leave of absence in accordance with the requirements of the Family and Medical Leave Act of 1993.  During this absence, the Employee shall be credited with the Hours of Service which have been credited but for such absence, or, if such hours cannot be determined, with eight hours per day.

## 3.05    MATERNITY/PATERNITY ABSENCE

"Maternity/Paternity Absence" means an absence from work by reason of the Employee's pregnancy, birth of a child of the Employee, placement of a child with the Employee in connection with adoption, or any absence for purposes of caring for such a child for a period immediately following such birth or placement.

## 3.06    YEAR OF SERVICE

(a)    For eligibility purposes, a Year of Service means:

(i)     The twelve-month period beginning on the Employee's Employment Commencement Date or Reemployment Commencement Date, as applicable, in which the Employee completes at least 1,000 Hours of Service; or

(ii)    if the Employee fails to complete 1,000 Hours of Service in such twelve-month period, the Plan Year beginning after the Employee's Employment Commencement Date or Reemployment Commencement Date, as applicable, in which he completes at least 1,000 Hours of Service.

(iii)   Notwithstanding the foregoing, for purposes of eligibility, no credit will be given for Hours of Service for any period beginning on or after January 1, 2006.

(b)    For vesting purposes, a Year of Service means a Plan Year in which the Employee completes at least 1,000 Hours of Service.

## 3.07    VESTING SERVICE

(a)    "Vesting Service" means the Years of Service credited to an Employee pursuant to this Section for purposes of determining his or her vested interest in his or her Account.

(b)    If a Participant's employment with the Company is terminated and the Participant is reemployed by the Company prior to a One Year Break-in-Service, the Participant's Vesting Service shall be determined as if the termination of employment had not occurred.

8

(c)   If a Participant's employment with the Company is terminated and the Participant is reemployed by the Company after a One Year Break-in-Service, Vesting Service shall include Years of Service prior to the One Year Break-in-Service subject to the following rules:

    (i)   Years of Service prior to the One Year Break-in-Service shall not be credited until the Participant has completed a Year of Service following his Employment Recommencement Date.

    (ii)   A Participant who does not have any nonforfeitable interest in the Plan will not receive credit for any Years of Service prior to a One Year Break-in-Service if the number of consecutive One Year Breaks-in-Service exceeds the greater of (A) five or (B) the aggregate number of the Participant's pre-break Years of Service.

    (iii)   After a Participant incurs five consecutive One Year Breaks-in-Service, the Participant's nonforfeitable interest in his Account attributable to pre-break service will not be increased as a result of any Years of Service credited after such One Year Breaks-in-Service.

(d)   An Employee shall not receive credit for Vesting Service for any Year of Service prior to the Effective Date of the Plan.

NEWYORK.534277.2

D-014

## ARTICLE 4.  PARTICIPATION IN THE PLAN

**4.01    PARTICIPATION REQUIREMENTS**

(a)      Each Participant as of December 31, 2005 shall continue as a Participant.

(b)      On and after January 1, 2006, individuals who were not Participants on December 31, 2005 will not be eligible to become Plan Participants.

**4.02    CESSATION OF PARTICIPATION**

Each Participant shall continue to be a Participant with respect to the allocation of earnings, losses and expenses made in accordance with Article 8 until the balance credited to his or her Account is distributed.

NEWYORK.534277.2

D-015

## ARTICLE 5.  PARTICIPANT CONTRIBUTIONS

**5.01    ROLLOVER CONTRIBUTIONS.**

Rollover contributions to the Plan are not permitted.

NEWYORK.534277.2

D-016

### ARTICLE 6.  EMPLOYER CONTRIBUTIONS

**6.01     PROFIT SHARING CONTRIBUTIONS**

(a)     For each Plan Year, each Participating Employer may (but is not obligated to) make a Profit Sharing Contribution to the Plan.

(b)     If and to the extent that the Board of Directors, in its sole discretion, determines that a Profit Sharing Contribution is appropriate for a Plan Year:

    (i)     A Participant will be eligible to receive an allocation of Profit Sharing Contributions for a Plan Year if:

        (A)     The Participant is actively employed by the Participating Employer on the last day of the Plan Year, and

        (B)     The Participant has completed a Year of Service during the Plan Year.

    (ii)     Profit Sharing Contributions, if any, for a Plan Year shall be allocated to each Participant eligible to receive an allocation of Profit Sharing Contributions pursuant to (i) above, based upon the ratio of their Compensation for the Plan Year to the Compensation of all Participants eligible to receive an allocation of Profit Sharing Contribution for the Plan Year.

**6.02     TRANSFER OF FUNDS**

Profit Sharing Contributions, if any, shall be paid by the Company in cash to the Trust Fund not later than the due date (including extensions) prescribed by law for filing the Company's federal income tax return for the taxable year for which the Profit Sharing Contributions are claimed as an income tax deduction.

**D-017**

## ARTICLE 7.  LIMITATIONS ON CONTRIBUTIONS

**7.01    DEFINITIONS**

The following definitions shall apply for purposes of this Article 7:

(a)    "**Annual Additions**" means the contributions and forfeitures described in Section 415(c)(2) of the Code.

(b)    "**Limitation Year**" means the Plan Year.

**7.02    LIMITATION ON ANNUAL ADDITIONS**

(a)    Notwithstanding any provision of the Plan to the contrary, the Annual Additions to any Participant's Accounts for any Limitation Year may not exceed the lesser of:

   (i)    the applicable dollar limitation (as described in (b) below) for the Plan Year; and

   (ii)    100 percent of the Participant's Compensation for the Plan Year.

(b)    The applicable dollar limitation is $40,000, as adjusted annually for increases in the cost of living pursuant to Section 415(d)(1)(C) of the Code.

(c)    To the extent necessary to comply with the foregoing limitation on Annual Additions, and notwithstanding any other provision in the Plan to the contrary, the Administrator may, acting in a uniform and nondiscriminatory manner, take any of (or combination of) the following actions:

   (i)    refrain from making Profit-Sharing Contributions to a Participant's Account if such contributions would generate an excess under Section 415 of the Code;

   (ii)    credit excess Profit Sharing Contributions to an unallocated suspense account to be applied against future Employer contributions to the Plan in accordance with Treasury Reg. Section 1.415-6(b)(6)(i).

**7.03    DEDUCTION LIMITATION**

In no event shall the amount of Profit Sharing Contributions for any Plan Year exceed the amount deductible with respect to such Plan Year under Section 404 of the Code.

NEWYORK.534277.2

D-018

## ARTICLE 8.  PARTICIPANTS' ACCOUNTS

**8.01    SEPARATE ACCOUNTS**

An Account in the Trust Fund shall be established and maintained for each Participant.  The records of each such Account shall reflect the manner in which each Account is invested and the value of such investments, any withdrawals by or distributions to the Participant or other persons, any charges or credits made to such Account, and such other information as the Administrator or the Trustee may deem appropriate.

**8.02    CONTRIBUTIONS TO ACCOUNT**

All contributions made on behalf of a Participant shall be paid to the Trustee and shall be allocated to the Participant's Account in accordance with the provisions of this Plan.

**8.03    VALUATION OF ACCOUNTS**

The value of each Participant's Account shall be determined as of each Valuation Date, at which time the Administrator shall adjust the balance of each Participant's Account to reflect any of the following which have occurred since the last Valuation Date:

(a)    contributions, withdrawals, distributions and other charges or credits attributable to the Participant's Account;

(b)    the net earnings, gains, losses and expenses and any appreciation or depreciation in market value of the Investment Funds selected by the Participant for investment of his or her Account; and

(c)    with respect to any amounts credited to the Participant's Account which are not invested in any of the Investment Funds, the net increase or decrease, as the case may be, in the value of the Trust Fund due to investment earnings, gains or losses and any expenses of the Trust Fund, which adjustment shall be made in the same proportion that the balance in the Participant's Account as of the last Valuation Date (reduced by any withdrawals, distributions or transfers from such Account since the last Valuation Date) bore to the total balance of all Participants' Accounts (as so reduced) as of such last Valuation Date.

14

D-019

## ARTICLE 9.  TRUST FUND AND INVESTMENT OF ACCOUNTS

### 9.01    TRUST FUND AND TRUSTEES

The Company may execute a Trust or Trusts with a Trustee or Trustees to establish a Trust Fund under the Plan.  Any Trust Agreement is designated as, and shall constitute, a part of this Plan and all rights which may accrue to any person under the Plan shall be subject to the terms and conditions of such Trust Agreement.  The Company may modify the Trust Agreement from time to time to accomplish the purposes of the Plan.

### 9.02    INVESTMENT FUNDS

The provisions of this Section 9.02 will be effective as of March 1, 2007.

(a)    The Administrator shall select such investment vehicles as it determines appropriate to meet the requirements of Section 404(c) of ERISA and the regulations thereunder relating to the investment of Participants' Accounts at the direction of the Participants.  The Administrator may select such additional investment vehicles as it determines appropriate for the investment of Participants' Accounts.

(b)    The Administrator may prescribe such rules and restrictions on the investment of Participants' Accounts in any such investment vehicle as it deems appropriate.

(c)    In the event that the fees of any investment manager or investment advisor are attributable to a particular investment vehicle, the Administrator may, in its discretion, determine how such expenses shall be allocated among Participants' Accounts.

### 9.03    INVESTMENT DIRECTION

The provisions of this Section 9.02 will be effective as of March 1, 2007.

(a)    The Administrator, or its designees, shall provide Participants with such information and materials with respect to the Investment Funds as may be required by Section 404(c) of ERISA.

(b)    A Participant shall have the right to direct the Administrator to invest his or her Account in any of the Investment Funds.  A Participant's investment direction (or any change in his or her investment direction) shall be made in the manner and in such form as the Administrator shall direct.

(c)    A Participant's investment election shall remain in effect until the Participant properly files a change of election with the Administrator.  In the event that any Participant shall not have directed the investment of all or a portion of the balance in his or her account at any time, the Participant shall be deemed to have directed that such balance be invested in a money market (or equivalent) fund and such assets shall remain in such Investment Fund until such time as the Participant directs otherwise.

15

D-020

(d)    Investment elections and changes thereto shall be given in such manner, at such times and subject to such conditions as may be prescribed by the Administrator (or its designee), consistent with the provisions of DOL Reg. § 2550.404c-1.

(e)    In the absence of a properly-transmitted investment election, the amounts in a Participant's (or Beneficiary's) Account will be invested in a default investment alternative that will comply with Section 404(c) of ERISA (as amended by the Pension Protection Act of 1996) and any regulations thereunder.

16

## ARTICLE 10.  VESTING AND FORFEITURE

**10.01  VESTING**

(a)     Upon a Participant's Total Disability, death or attainment of age 65 while an Employee, his or her interest in his or her Account shall be fully vested and nonforfeitable.

(b)     If a Participant terminates employment occurs his or her Normal Retirement Date for any reason other than Total Disability or death, his or her vested interest in their Account shall be determined in accordance with the following schedule:

| Years of Vesting Service | Vested Interest |
|---|---|
| Less than 3 Years | 0% |
| After 3 Years but less than 4 | 20% |
| After 4 Years but less than 5 | 40% |
| After 5 Year but less than 6 | 60% |
| After 6 Years but less than 7 | 80% |
| 7 Years or more | 100% |

(c)     Notwithstanding anything herein to the contrary, if and to the extent that the value of a Particpant's Account is attributable to Profit Sharing Contributions made with respect to Plan Years beginning on and after January 1, 2007, his or her vested interest in their Account (to the extent so attributable) shall be determined in accordance with the following schedule:

| Years of Vesting Service | Vested Interest |
|---|---|
| Less than 2 Years | 0% |
| After 2 Years but less than 3 | 20% |
| After 3 Years but less than 4 | 40% |
| After 4 Years but less than 5 | 60% |
| After 5 Years but less than 6 | 80% |
| 6 Years or more | 100% |

**10.02  FORFEITURE**

(a)     If a Participant who is not 100% vested in his or her Account,

    (i)     Terminates his or her employment and receives (or is deemed to receive) a distribution of his or her entire vested balance of his or her Account, or

    (ii)     incurs a 5 year Break-in-Service,

then the nonvested portion of his or her Account, if any, will be treated as a forfeiture.

17

D-022

**(b)**     For purposes of this Section 10.02, if the value of a Participant's vested Account is zero, then such Participant shall be deemed to have received a distribution of his or her entire vested Account as of the date of his or her termination of employment.

## 10.03   RESTORATION OF FORFEITURES

A former Participant who has incurred a forfeiture in accordance with Section 10.03 and who is reemployed by the Company shall have such forfeited amounts restored to his or her Account, without adjustment for interim gains or losses experienced by the Trust, if:

**(a)**     he or she returns to employment with a Participating Employer or a Related Company before the end of the 5-year period beginning on the later of the date of his or her termination of employment or the date he or she received distribution of the vested interest in his or her Account; and

**(b)**     if he or she received distribution of his or her vested interest in his or her Account, he or she repays to the Plan the full amount of such distribution before the end of the 5-year period beginning on the date he or she is reemployed.

A Participant who does not satisfy these requirements or who is reemployed after the occurrence of 5 year Break-in-Service shall not have any restoration rights with respect to the previously forfeited balance in his or her Account.

## 10.04   APPLICATION OF FORFEITURES

**(a)**     Forfeitures shall be used to pay administrative expenses of the Plan and/or to reduce the amount of Profit Sharing Contributions which are to be made by a Participating Employer for the current or following Plan Year.

**(b)**     If an amount must be restored to a reemployed Participant's Account in accordance with Section 10.03, such restoration shall be made, as directed by his or her Participating Employer, from forfeitures attributable to, or net income of the Trust which would otherwise by allocated to Participants employed by such Participating Employer, and/or from a contribution made by such Participating Employer for that purpose.

## 10.05   CHANGE IN VESTING SCHEDULE

If the Plan's vesting schedule is amended, or the Plan is amended in any way that directly or indirectly affects the calculation of a Participant's vested interest in his or her Account, each Participant with at least three (3) years of Vesting Service may elect to have his or her vested interest calculated under the Plan without regard to such amendment or change. A Participant's election under this section must be made during the period beginning with the date the amendment is adopted or deemed to be made and ending on the latest of:

**(a)**     sixty (60) days after the amendment is adopted;

**(b)**     sixty (60) days after the amendment becomes effective; or

18

D-023

(c)    sixty (60) days after the Participant is issued written notice of the amendment by the Company.

NEWYORK.534277.2

D-024

## ARTICLE 11.  LOANS TO PARTICIPANTS

**11.01    EFFECTIVE DATE**

The provisions of this Article 11 are effective March 1, 2007.

**11.02    GENERAL**

All Participants who are Eligible Employees shall be eligible to receive loans from the Plan.  The Administrator shall prescribe the terms and conditions for making loans to Participants from their Accounts consistent with the provisions of this Article and the prohibited transaction exemption requirements of the Code and ERISA and other applicable law.

(a)    All Plan loans shall be administered by the Administrator.

(b)    A Participant with an existing loan may not apply for another loan until the existing loan is paid in full and may not refinance an existing loan or attain a second loan for the purpose of paying off the existing loan.

(c)    A Participant may not apply for more than one loan during each Plan Year.

**11.03    MAXIMUM LOAN AMOUNT**

In no event shall any loan made pursuant to this Article 11 be in an amount which would cause the outstanding aggregate balance of all loans made to the Participant under this Plan and all other qualified plans maintained by the Company or any Related Company to exceed the lesser of (a) or (b):

(a)    $50,000 reduced by the excess (if any) of

(i)    the highest outstanding balance of loans from the Plan to the Participant during the one-year period ending on the day before the date the loan is made, over

(ii)    the outstanding balance of loans from the Plan to the Participant on the date the loan is made; or

(b)    50% of the current balance of the vested portion of the Participant's Account, determined as of the date on which the loan is approved.

**11.04    LOAN TERMS**

Loans shall be made to Participants in accordance with the following terms:

(a)    A loan to a Participant shall be evidenced by the Participant's recourse promissory note in the form prescribed by the Administrator.

(b)    The minimum amount of a loan shall be at least $1,000.

NEWYORK.534277.2

D-025

(c)    The period for repayment of a loan shall not exceed 5 years; provided, however, that a loan used to acquire a dwelling unit which within a reasonable time is to be used (determined at the time the loan is made) as the Participant's principal residence may be repaid over a period of up to 10 years.

(d)    Interest shall be charged on the loan at a reasonable rate to be determined by the Administrator at the time the loan is made.

(e)    The following rules shall apply to loan repayments on principal and interest:

    (i)    Except as otherwise provided in this subsection, loan repayments shall be amortized in level payments over payment periods to be determined by the Administrator in its discretion, but not less frequently than quarterly, over the term of the loan.

    (ii)    In the event that a Participant is on an Approved Absence, loan repayments may be suspended under this Plan as permitted under Section 72(p) of the Code and Section 1.72(p)-1 of the Income Tax Regulations as applicable to leaves of absence, Section 414(u)(4) of the Code as applicable to qualified military service, and any guidance issued by the Internal Revenue Service under such provisions.

(f)    No loan may be made to a Participant unless the Participant's spouse, if any, consents in writing to the making of the loan.

## 11.05   COLLATERAL

Notwithstanding anything to the contrary in Section 18.03, a Participant who accepts a Plan loan shall be deemed to have assigned to the Trustee, as security for the loan, all of his or her right, title and interest in the Plan.  The Administrator may require such additional security for the loan as it deems necessary or prudent.

## 11.06   TREATMENT OF LOAN PAYMENTS

A loan shall be considered to be an investment of the Trust Fund.  Any payment to the Plan of interest on a loan to a Participant, as well as repayments of loan principal, shall be credited to the Participant's Account and shall be accounted for as investment earnings or return of principal, as the case may be, on that Account.

## 11.07   DEFAULT

(a)    A loan shall be considered to be in default if

    (i)    any scheduled repayment remains unpaid more than 90 days, or

    (ii)    there is an outstanding principal balance existing on a loan after the last scheduled repayment date.

21

D-026

Upon default, the entire outstanding principal and accrued interest shall be immediately due and payable.

(b)     If not paid as and when due, in addition to any other remedies permitted by law, any outstanding Plan loan (including interest accrued and unpaid thereon) to a Participant may be charged against the Participant's Account.  The outstanding loan balance shall be treated as repaid to the extent of such charge.

(c)     The Administrator may elect to charge the unpaid loan balance against the Participant's Account whether or not the Participant has attained age 59-1/2 or terminated employment, and whether or not such charge is on account of any financial hardship of the Participant.

## 11.08   LOAN PAYABLE FOLLOWING TERMINATION OF EMPLOYMENT

The unpaid balance of a loan shall be immediately become payable in full upon a termination of employment, unless the Participant elects to continue making loan repayments in accordance with the procedures established by the Administrator.

NEWYORK.534277.2

D-027

## ARTICLE 12.  WITHDRAWALS BEFORE TERMINATION OF EMPLOYMENT

### 12.01   WITHDRAWALS NOT PERMITTED

Withdrawals are not permitted prior to a Participant's termination of employment.

23

D-028

## ARTICLE 13.  DISTRIBUTIONS AFTER TERMINATION OF EMPLOYMENT

### 13.01   TERMINATION PRIOR TO NORMAL RETIREMENT DATE

**(a)**    In the event a Participant terminates employment with the Company or a Related Company prior to his or her Normal Retirement Date for any reason other than death or Total Disability, he or she shall be entitled to receive a distribution of their vested interest in their Account.

**(b)**    Distributions will commence on the Participant's Normal Retirement Date, subject to (c) and (d), below.

**(c)**    Notwithstanding the foregoing, if a Participant who has terminated employment with the Company or a Related Company prior to his or her Normal Retirement Date for any reason other than death or Total Disability subsequently dies or incurs a Total Disability prior to his or her Normal Retirement Date:

    **(i)**    In the event of Total Disability, the Participant will be deemed to have attained his or her Normal Retirement Date and be entitled to elect to receive a distribution in accordance with Section 13.02.

    **(ii)**   In the event of death, distribution of the Participant's Account will be made in accordance with Section 13.03.

**(d)**    Notwithstanding the foregoing, a Participant who has terminated employment with the Company or a Related Company prior to his or her Normal Retirement Date for any reason other than death or Total Disability may elect to receive a distribution of his or her Account commencing sixty (60) months after the date of the Participant's termination of employment.

**(e)**    Notwithstanding any provision in the Plan to the contrary, effective March 1, 2007, a Participant who has terminated employment with the Company or a Related Company prior to his or her Normal Retirement Date for any reason other than death or Total Disability may elect to receive a distribution of their vested interest in his or her Account, commencing as soon as is administratively practicable following the later of March 1, 2007 or the Participant's termination of employment.

### 13.02   TERMINATION AT OR AFTER NORMAL RETIREMENT DATE

In the event a Participant terminates employment with the Company or a Related Company at or after his or her Normal Retirement Date, or by reason of Total Disability, he or she may elect to receive a distribution of his or her Account beginning as soon as is practicable following the earlier of:

**(a)**    the date on which the Administrator receives a properly completed distribution election form; or

**(b)**   the expiration of the 90-day period beginning on the date on which the Administrator provides the notices required by Section 402(f) of the Code and Section 1.411(a)-11(c) of the Income Tax Regulations to the Participant.

## 13.03   DEATH

**(a)**   Upon the death of a Participant, distribution of the Participant's Account shall be made to the Participant's Beneficiary (or his or her estate, as applicable), determined in accordance with Section 13.04.

**(b)**   In the event a Participant dies after payment of his or her Account has begun but before the entire Account has been distributed, the remaining balance of the Account shall be distributed to his or her designated Beneficiary (or his or her estate, as applicable) at least as rapidly as under the method of distribution in effect as of the date of death.

**(c)**   In the event a Participant dies before payment of his or her Account has begun, the distribution of the Account to his or her designated Beneficiary (or his or her estate, as applicable) shall begin as soon as practicable following the earlier of:

    **(i)**   the date on which the Administrator receives a properly completed distribution election form; or

    **(ii)**   the expiration of the 90-day period beginning on the date on which the Administrator provides the notices required by Section 402(f) of the Code and Section 1.411(a)-11(c) of the Income Tax Regulations to the designated Beneficiary.

**(d)**   Notwithstanding anything herein to the contrary, distributions upon the death of a Participant shall be made in accordance with the provisions of Appendix A.3 and shall otherwise comply with Section 401(a)(9) of the Code and the regulations promulgated thereunder.

## 13.04   BENEFICIARY DESIGNATION

**(a)**   Each Participant may designate, in the form and manner prescribed by the Administrator, one or more persons as the Beneficiary of his or her Account; provided, however, that if the Participant is survived by a spouse, such spouse shall be the Participant's sole Beneficiary unless the spouse consents, in writing, to the Participant's designation of one or more other persons to be the Beneficiary of all or a portion of the Participant's Account. Any Beneficiary designation made by a Participant may be changed or revoked by the Participant at any time or from time to time during his or her lifetime; provided, however, that any such change or revocation shall not reduce the portion of the Account payable to his or her spouse without the written consent of the spouse. Any written consent required of a Participant's spouse shall acknowledge the effect of the consent and shall be witnessed by a representative of the Plan or a notary public. The consent of a spouse shall not be required if the Administrator determines that the spouse cannot be located or that the Code and ERISA otherwise do not require such consent.

25

(b)     If no Beneficiary is designated or survives the Participant, the balance of his or her Account shall be paid to his or her estate.

### 13.05   FORM OF PAYMENT

(a)     Pursuant to the election of the Participant (or the Participant's Beneficiary, as applicable), distribution of a Participant's Account shall be made in equal monthly, quarterly, semiannual or annual payment or payments over a period not in excess of five (5) years.

(b)     Elections shall be made in accordance with the form and manner prescribed by the Plan Administrator.

### 13.06   DIRECT TRANSFER OF ELIGIBLE ROLLOVER DISTRIBUTION

A Participant or a designated Beneficiary who is the Participant's spouse may elect to have all or any portion of his or her Account (but in no event less than $500 unless the Administrator provides otherwise) which is eligible for rollover distribution under Section 402(c) of the Code transferred directly to an eligible retirement plan as determined in accordance with the procedures set forth in Appendix A.

26

**D-031**

# ARTICLE 14.  ADMINISTRATION

## 14.01  ADMINISTRATOR

The Company shall be the "Administrator" of the Plan within the meaning of Section 3(16)(A) of ERISA and the "Named Fiduciary" for purposes of Section 402(a)(2) of ERISA.  Such duties shall be performed on behalf of the Company by the Retirement Committee or such other person or committee as may be appointed by the Board of Directors.

## 14.02  ADMINISTRATOR'S AUTHORITY AND POWERS

(a)     The Administrator shall have full authority and power to administer and construe the Plan, subject to applicable requirements of law.  Without limiting the generality of the foregoing, the Administrator shall have the following powers and duties:

    (i)     To make and enforce such rules and regulations as it deems necessary or proper for the efficient administration of the Plan;

    (ii)    To interpret the Plan, and to construe any ambiguities or omissions, its interpretation thereof to be final and conclusive on all persons claiming benefits under the Plan;

    (iii)   To decide all questions concerning the Plan, including questions of fact respecting Plan benefits, the eligibility of any person to participate in the Plan and the status and rights of any Participant or Beneficiary under the Plan; and

    (iv)    To exercise all other powers specified in the Plan.

(b)     The Administrator may adopt such rules for the conduct of its affairs as it deems appropriate.

## 14.03  DELEGATION OF DUTIES AND EMPLOYMENT OF AGENTS

The Administrator may delegate such of its duties and may employ such accountants, actuaries, legal counsel, investment advisors, investment managers, claims administrators, specialists and other persons as the Administrator deems appropriate in connection with administering the Plan. The Administrator shall be entitled to rely conclusively upon, and shall be fully protected in any action taken by them in good faith in reliance upon any opinions or reports furnished them by any such experts or other persons.

## 14.04  CHARGES ON PARTICIPANTS' ACCOUNTS

To the extent permitted under ERISA, the Administrator may, in its discretion, charge Participants' Accounts for the reasonable expenses of carrying out a Participant's investment instructions, distributing benefits from a Participant's Account, or providing a loan from a Participant's Account.

### 14.05  EXPENSES

All expenses incurred in connection with the administration of the Plan, including, without limitation, administrative expenses and compensation and other expenses and charges of any person who shall be employed by the Administrator pursuant to Section 14.03, shall be paid from the Trust Fund unless paid separately by the Participating Employers.

### 14.06  COMPENSATION

No person or member of a committee serving as the Administrator who is a full-time employee of a Participating Employer shall receive any compensation for his or her services as Participant of the Administrator.  Any expenses of the Administrator shall be paid from the Trust Fund, unless paid by the Participating Employees.

### 14.07  EXERCISE OF DISCRETION

Any person with any discretionary power in the administration of the Plan shall exercise such discretion in a nondiscriminatory manner and shall discharge his or her duties with respect to the Plan in a manner consistent with the provisions of the Plan and with the standards of fiduciary conduct contained in Title I, Part 4, of ERISA.

### 14.08  FIDUCIARY LIABILITY

In administering the Plan, neither the Administrator nor any person or member of a committee serving as the Administrator nor any person to whom the Administrator delegates any duty or power in connection with administering the Plan shall be liable, except in the case of his or her own willful misconduct, for:

(a)     any action or failure to act,

(b)     the payment of any amount under the Plan,

(c)     any mistake of judgment made by him or on his or her behalf, or

(d)     any omission or wrongdoing of any Participant of the Administrator.  No Participant of the Administrator shall be personally liable under any contract, agreement, bond, or other instrument made or executed by him or on his or her behalf as a Participant of the Administrator.

### 14.09  INDEMNIFICATION BY PARTICIPATING EMPLOYERS

To the extent not compensated by insurance or otherwise, the Participating Employers shall indemnify and hold harmless each person and each member of a committee serving as the Administrator, and each employee of a Participating Employer designated by the Administrator to carry out fiduciary responsibility with respect to the Plan from any and all claims, losses, damages, expenses (including counsel fees approved by the Company) and liabilities (including any amount paid in settlement with the approval of the Company), arising from any act or omission of such Participant, except where the same is judicially determined to be due to willful

28

D-033

misconduct of such Participant or employee.  Anything herein to the contrary notwithstanding, no assets of the Plan may be used for any such indemnification.

## 14.10   PLAN PARTICIPATION BY FIDUCIARIES

No person who is a fiduciary with respect to the Plan shall be precluded from being a Participant therein upon satisfying the requirements for eligibility.

## 14.11   MISSING PERSONS

If the Administrator is unable to locate a Participant or Beneficiary within five (5) years after an Account becomes payable, the Administrator shall mail notice by registered mail to the last known address of such person outlining the following action to be taken unless such person makes written reply to the Administrator within sixty (60) days from the mailing of such notice: the balance of Participant's Account determined as of the Valuation Date coincident with or immediately preceding such date shall be deposited in an interest bearing savings account by the Trustee.  The savings account shall be registered in the name of the person entitled to the distribution.  The establishment of the savings account shall be deemed full payment of any amounts due from the Plan.

## 14.12   CLAIMS REVIEW PROCEDURE

(a)     Whenever a claim for benefits under the Plan made by a Participant or a Beneficiary (herein referred to as the "Claimant") is denied, whether in whole or in part, the Administrator shall transmit a written notice of such decision to the Claimant within 90 days of the date the claim was filed or, if special circumstances require an extension, within 180 days of such date.  Such notice shall:

      (i)     set forth the specific reasons for the denial, making reference to the pertinent provisions of the Plan or the Plan documents on which the denial is based;

      (ii)    describe any additional material or information that should be received before the claim may be acted upon favorably, and explain why such material or information, if any, is needed; and

      (iii)   inform the Claimant of his or her right pursuant to this Section to request review of the decision by the Administrator within 60 days of the date on which he or she receives such notice.

(b)     A Claimant (or his or her authorized representative) may appeal a denial of a claim to the Administrator by submitting a written request for review to the Administrator within 60 days after the date on which such denial is received.  Such period may be extended by the Administrator for good cause.  Such request shall contain the following information:

      (i)     The specific portions of the denial of his or her claim which the Claimant requests the Administrator to review;

29

D-034

(ii)    A statement by the Claimant setting forth the basis upon which he or she believes the Claimant should reverse the previous denial of his or her claim for benefits and accept his or her claim as made; and

(iii)    any written material (offered as exhibits) which the Claimant desires the Administrator to examine in its consideration of his or her position.

(c)    The Administrator shall decide whether or not to grant the claim within 60 days after receipt of the request for review, but this period may be extended by the Administrator for up to an additional 60 days in special circumstances.  If such an extension of time for review is required because of special circumstances, written notice of the extension shall be furnished to the claimant prior to the commencement of the extension.  The Administrator's decision shall be in writing, shall include specific reasons for the decision and shall refer to pertinent provisions of the Plan or of the Plan documents on which the decision is based.

## 14.13    LIMITATION ON SUITS FOR BENEFITS.

A Claimant must follow the claims procedure in Section 14.12 before taking action in any other forum regarding a claim for benefits under the Plan.  Any suit or legal action initiated by a claimant under the Plan must be brought, if at all, no later than one year following a final decision on the claim for benefits by the Administrator.  The one-year limitation on suits or other legal actions for benefits shall apply in any forum where a Claimant initiates such suit or legal action.

## 14.14    STANDARD OF JUDICIAL REVIEW OF COMMITTEE ACTIONS.

The Administrator has full and absolute discretion in the exercise of each and every aspect of its authority under the Plan, including without limitation, the authority to determine any person's eligibility to participation in the Plan, any person's right to benefits under the Plan, the correct amount and form of any benefits, the authority to decide any appeal, the authority to review and correct the actions of any prior administrative committee, and all of the rights, powers, and authorities specified in the Plan.  Notwithstanding any provision of law or any explicit or implicit provision of this document or, any action taken, or ruling or decision made, by the Administrator in the exercise of any of its powers and authorities under the Plan shall be final and conclusive as to all parties, regardless of whether the Administrator or one or more of its members may have an actual or potential conflict of interest with respect to the subject matter of the action, ruling, or decision.  No action, ruling, or decision of the Administrator shall be subject to de novo review in any judicial proceeding; and no final action, ruling, or decision of the Administrator may be set aside unless it is held to have been arbitrary and capricious by a final judgment of a court having jurisdiction with respect to the issue.

NEWYORK.534277.2

D-035

## ARTICLE 15.  AMENDMENT AND TERMINATION OF PLAN

### 15.01  AMENDMENT

The Company may at any time and from time to time amend the Plan, without the consent of any Trustee, any other Participating Employer, or any Participant or Beneficiary.  Such amendment may be adopted by resolution or by such other action permitted by the Company's charter, by-laws, or such other method permitted by the laws of the state of the Company's incorporation.

Notwithstanding the foregoing:

(a)    no amendment that materially affects the Trustee's duties shall be effective without the written consent of the Trustee;

(b)    no amendment shall cause the Trust Fund to be used other than for the exclusive benefit of Participants and their Beneficiaries; and

(c)    no amendment may reduce or eliminate any benefit which is a "Section 411(d)(6) Protected Benefit" except as permitted under Section 1.411(d)-4 of the Income Tax Regulations.

### 15.02  RIGHT TO TERMINATE PLAN

The Company intends to maintain the Plan as a permanent tax-qualified retirement plan.  Nevertheless, the Company reserves the right to terminate the Plan (in whole or in part) at any time, without the consent of any Trustee, any other Participating Employer, or any Participant or Beneficiary.  Such termination may be adopted by resolution or by such other action permitted by the Company's charter, by-laws, or such other method permitted by the laws of the state of the Company's incorporation.

### 15.03  CONSEQUENCES OF TERMINATION

(a)    If the Plan is terminated in whole or in part, the interest of each Participant affected by the termination in his or her Account will become fully vested and nonforfeitable as of the date of the termination.

(b)    If the Plan is terminated in whole or in part, the Administrator shall determine the date and manner of distribution of all Participants' Accounts.

(c)    The Administrator shall give prompt notice to each Participant (or, if deceased, his or her Beneficiary) affected by the Plan's complete or partial termination.

## ARTICLE 16.  PARTICIPATION BY RELATED COMPANIES

### 16.01  PARTICIPATION

Subject to the consent of the Board of Directors, any Related Company may adopt the Plan and join in the Trust Fund created hereunder.  Such Related Company shall become a Participating Employer upon the filing with the Administrator such duly executed documents as may be required by the Administrator.  The contributions which may be made by the Company or any other Participating Employer, and the income therefrom, shall be held by the Trustees as a part of a single Trust Fund without allocation to the Company or any other Participating Employer until the Administrator shall notify the Trustees of the termination of the plan as to any Participating Employer pursuant to Section 16.03.

### 16.02  DELEGATION OF POWERS AND AUTHORITY

A Participating Employer shall be deemed to appoint the Board of Directors and the Administrator as its exclusive agent to exercise on its behalf all of the powers and authority conferred upon the Board of Directors or the Administrator by the terms of the Plan including, but not by way of limitation, the power to amend and terminate the Plan and the Trust Fund created hereunder.  The authority of the Board of Directors and the Administrator to act as such agent shall continue with respect to all funds contributed by each Participating Employer and the income therefrom unless and until the amount of such funds and income has been distributed by the Trustees.

### 16.03  TERMINATION OF PARTICIPATION

The Administrator shall notify the Trustees in writing of the termination of the Plan as to any Participating Employer, and the Trustees shall not accept any further contributions under the Plan from such Participating Employer and shall set aside in a separate account such part of the Trust Fund as the Administrator shall), determine to be held for the benefit of eligible employees of the Participating Employer (and their beneficiaries), as of the last day of the Plan Year which is such Participating Employer's termination date under the Plan.

NEWYORK.534277.2

D-037

## ARTICLE 17.  TOP-HEAVY PLAN PROVISIONS

### 17.01   APPLICABILITY

If the Plan is or becomes Top-Heavy in any Plan Year, the provisions of this Article 17 shall supersede any conflicting provisions of the Plan.

### 17.02   DEFINITIONS

The following definitions shall apply for purposes of this Article 17:

(a)  "Determination Date" means (i) the last day of the preceding Plan Year, or (ii) in the case of the first Plan Year, the last day of such Plan Year.

(b)  "Key Employee" means any Employee, or former Employee who is a Key Employee within the meaning of Section 416(i)(1) of the Code and the applicable regulations and other guidance thereunder.

(c)  "Permissive Aggregation Group" means the Required Aggregation Group of plans plus any other plan or plans of the Company or any Related Company which, when considered as a group with the Required Aggregation Group, would continue to satisfy the requirements of Sections 401(a)(4) and 410 of the Code.

(d)  "Required Aggregation Group" means (i) each qualified plan of the Company or any Related Company in which at least one Key Employee participates or participated at any time during the determination period (regardless of whether the plan has terminated), and (ii) any other qualified plan of the Company or any Related Company which enables a plan described in clause (i) to meet the requirements of Section 401(a)(4) or 410 of the Code.

(e)  "Super Top-Heavy Plan" means a Top-Heavy Plan with respect to which the Top-Heavy Ratio exceeds 90 percent (90%).

(f)  "Top-Heavy Plan" means with respect to any Plan Year, this plan if any of the following conditions exist:

  (i)   If the Top-Heavy Ratio for this Plan exceeds 60 percent (60%) and this Plan is not part of any Required Aggregation Group or Permissive Aggregation Group of plans;

  (ii)  If this Plan is a part of a Required Aggregation Group of plans but not part of a Permissive Aggregation Group and the Top-Heavy Ratio for the group of plans exceeds 60 percent (60%); or

  (iii) If this Plan is a part of a Required Aggregation Group and part of a Permissive Aggregation Group of plans and the Top-Heavy Ratio for the Permissive Aggregation Group exceeds 60 percent (60%).

33

(g)     "Top-Heavy Ratio" means as follows:

(i)     Subject to clause (iv) below, if a Participating Employer or any Related Company maintains one or more defined contribution plans (including any Simplified Employee Pension Plan) and a Participating Employer or any Related Company has not maintained any defined benefit plan which during the 5-year period ending on the Determination Date(s) has or has had accrued benefits, the Top-Heavy Ratio for this Plan alone or for the Required or Permissive Aggregation Group as appropriate is a fraction, the numerator of which is the sum of the account balances of all Key Employees as of the Determination Date(s) (including any part of any account balance distributed in the 5-year period ending on the Determination Date(s), and the denominator of which is the sum of all account balances (including any part of any account balance distributed in the 5-year period ending on the Determination Date(s), both computed in accordance with Section 416 of the Code and the regulations thereunder. Both the numerator and denominator of the Top-Heavy Ratio are increased to reflect any contribution not actually made as of the determination date, but which is required to be taken into account on that date under Section 416 of the Code and the regulations thereunder.

(ii)    Subject to clause (iv) below, if the Company or any Related Company maintains one or more defined contribution plans (including any Simplified Employee Pension Plan) and the Company or any Related Company maintains or has maintained one or more defined benefit plans which during the 5-year period ending on the Determination Date(s) has or has had any accrued benefits, the Top-Heavy Ratio for any Required or permissive Aggregation Group as appropriate is a fraction, the numerator of which is the sum of account balances under the aggregated defined contribution plan or plans for all Key Employees, determined in accordance with clause (i) above, and the present value of the accrued benefit under the aggregated defined benefit plan or plans for all Key Employees as of the Determination Date(s), and the denominator of which is the sum of the account balances under the aggregated defined contribution plan or plans for all participants, determined in accordance with clause (i) above, and the present value of accrued benefits under the defined benefit plan or plans for all participants as of the Determination Date(s), all determined in accordance with Section 416 of the Code and the regulations thereunder. The accrued benefits under a defined benefit plan in both the numerator and denominator of the Top-Heavy Ratio are increased for any distribution of any accrued benefit made in the 5-year period ending on the Determination Date.

(iii)   For purposes of clauses (i) and (ii) above and subject to clause (iv) below, the value of account balances and the present value of accrued benefits will be determined as of the most recent Valuation Date that falls within or ends with the 12-month period ending on the Determination Date, except as provided in Section 416 of the Code and the regulations thereunder for the first and second plan years of a defined benefit plan. The account balances and accrued benefits of a participant (A) who is not a Key Employee but who was a Key Employee in a

34

prior year, or (B) who has not been credited with at least one Hour of Service with the Company or any Related Company maintaining the plan at any time during the 5-year period ending on the Determination Date will be disregarded. The calculation of the Top-Heavy Ratio, and the extent to which distributions, rollovers, and transfers are taken into account will be made in accordance with Section 416 of the Code and the regulations thereunder. Deductible employee contributions will not be taken into account for purposes of computing the Top-Heavy Ratio. When aggregating plans the value of account balances and accrued benefits will be calculated with reference to the Determination Dates that fall within the same calendar year.

The accrued benefits of a participant other than a Key Employee shall be determined under (A) the method, if any, that uniformly applies for accrual purposes under all defined benefit plans maintained by a Participating Employer or any Related Company, or (B) if there is no such method, as if such benefits accrued not more rapidly than the slowest accrual rate permitted under the fractional rule of Section 411(b)(1)(C) of the Code.

(iv)   Effective for Plan Years beginning after December 31, 2001, clauses (i) – (iii) above shall be modified as follows for purposes of determining the Top-Heavy Ratio:

(A)   The present values of accrued benefits and the amounts of account balances of an Employee as of the Determination Date shall be increased by the distributions made with respect to the Employee under the Plan and any plan aggregated with the Plan under Section 416(g)(2) of the Code during the 1-year period ending on the Determination Date. The preceding sentence shall also apply to distributions under a terminated plan which, had it not been terminated, would have been aggregated with the Plan under Section 416(g)(2)(A)(i) of the Code. In the case of a distribution made for a reason other than separation from service, death, or disability, this provision shall be applied by substituting "5-year period" for "1-year period."

(B)   The accrued benefits and accounts of any individual who has not performed services for the Company or a Related Company during the 1-year period ending on the Determination Date shall not be taken into account.

## 17.03   MINIMUM CONTRIBUTION

Except as otherwise provided as otherwise provided in this Section, for any Plan Year in which the Plan is a Top-Heavy Plan, the employer contributions and forfeitures allocated on behalf of any Participant who is not a Key Employee shall not be less than the lesser of (i) three percent (3%) of such Participant's Compensation, or (ii) the largest percentage of employer contributions and forfeitures, as a percentage of Key Employee's Compensation, allocated on behalf of any Key Employee for that year. The minimum allocation is determined without regard to any Social

35

Security contribution. This minimum allocation shall be made regardless whether, under other plan provisions, the Participant would not otherwise be entitled to receive an allocation, or would have received a lesser allocation for the year because of (i) the Participant's failure to complete 1,000 hours of service (or any equivalent provided in the plan), or (ii) the Participant's failure to make mandatory employee contributions to the plan, or (iii) compensation less than a stated amount.

(a)   In the event a Participant who is a non-Key Employee is covered under both a defined contribution plan and a defined benefit plan maintained by an Company or any Related Company, notwithstanding anything herein to the contrary, the minimum contribution or benefit required by this Section 17.03 and by Section 416 of the Code shall be deemed satisfied if any one of the following rules are satisfied:

(i)   each such Participant receives the defined benefit minimum as specified in Section 416(c)(1) of the Code;

(ii)   the defined benefit minimum (as defined in clause (i), above) is provided each such Participant by the defined benefit plan and is offset by the benefits provided under the defined contribution plan;

(iii)   the defined contribution plan provides aggregate benefits at least comparable to those provided by the defined benefit plan; or

(iv)   if contributions and forfeitures under the defined contribution plan equal five percent (5%) of the Compensation for each Top-Heavy Plan.

(b)   This Section 17.03 shall not apply to any Participant who was not employed by the Company or any Related Company on the last day of the Plan Year.

(c)   This Section 17.03 shall not apply to any Participant to the extent the Participant is covered under any other plan or plans of the Company or any Related Company and the Company or the Related Company has provided that the minimum allocation or benefit requirement applicable to top-heavy plans will be met in the other plan or plans.

## 17.04   VESTING

If the Plan is determined to be Top Heavy as of any Determination Date, the Participant's vested percentage of any Participant who is credited with an Hour of Service after such Determination Date will be determined in accordance with the following schedule:

| Years of Vesting Service | Vested Interest |
|---|---|
| Less than 2 Years | 0% |
| After 2 Years but less than 3 | 20% |
| After 3 Years but less than 4 | 40% |
| After 4 Year but less than 5 | 60% |
| After 5 Years but less than 6 | 80% |
| 6 Years or more | 100% |

36

D-041

## ARTICLE 18.  GENERAL PROVISIONS

### 18.01   TRUST FUND SOLE SOURCE OF PAYMENTS FOR PLAN

The Trust Fund shall be the sole source for the payment of all Participants' Accounts, and the Plan's liability to make payment to any Participant or his or her Beneficiary shall be limited to the extent that the balance in such Participant's Account is sufficient to make such payment.  In no event shall assets of the Company or any Related Company be applied for the payment of Plan benefits.

### 18.02   EXCLUSIVE BENEFIT

The Plan is established for the exclusive benefit of the Participants and their Beneficiaries, and the Plan shall be administered in a manner consistent with the provisions of Section 401(a) of the Code and ERISA.

### 18.03   NON-ALIENATION

Except as is permitted under Section 401(a)(13) of the Code in the case of a qualified domestic relations order (as defined in Section 414(p) of the Code), no Participant or Beneficiary shall have the right to alienate or assign his or her benefits under the Plan, and no Plan benefits shall be subject to attachment, execution, garnishment, or other legal or equitable process.  If a Participant or his or her Beneficiary attempts to alienate or assign his or her benefits under the Plan, or if his or her property or estate should be subject to attachment, execution, garnishment or other legal or equitable process, the Administrator may direct the Trustee to distribute the Participant's (or Beneficiary's) benefits under the Plan to Participants of his or her family, or may use or hold such benefits for his or her benefit or for the benefit of Participants of his or her family as the Administrator deems appropriate under the circumstances.

### 18.04   QUALIFIED DOMESTIC RELATIONS ORDER

(a)     All rights and benefits, including elections, provided to a Participant in this Plan shall be subject to the rights afforded to any alternate payee (as defined in Section 414(p)(8) of the Code) under a qualified domestic relations order (as defined in Section 414(p) of the Code).

(b)     Notwithstanding anything in the Plan to the contrary, a distribution to an alternate payee shall be permitted if such distribution is authorized by the qualified domestic relations order without regard as to whether the affected Participant is currently entitled to receive a distribution.

### 18.05   EMPLOYMENT RIGHTS

The Company's or any Related Company's right to discipline or discharge its Employees shall not be affected by reason of any of the provisions of the Plan.

37

D-042