# EXHIBIT D-2

### 18.06  EMPLOYEE TRANSFERS

The transfer of an employee between a Participating Employer and a Related Company shall not be considered to be a termination of employment for purposes of this Plan.

### 18.07  RETURN OF CONTRIBUTIONS

(a)   Except as specifically provided in the Plan, under no circumstances shall any funds contributed to the Trust Fund or any assets of the Trust Fund ever revert to, or be used by, the Company or any Related Company.

(b)   Any contributions made by an Company or any Related Company may be returned to the Company or any Related Company if:

    (i)    the contribution is made by reason of a mistake of fact; or

    (ii)   the contribution is conditioned on its deductibility for federal income tax purposes (each contribution shall be deemed to be so conditioned unless otherwise stated in writing by the Company or any Related Company) and such deduction is disallowed;

provided such contribution is returned within one year of the discovery of the mistake of fact, the disallowance of the deduction for federal income tax purposes or the receipt of written notice from the Internal Revenue Service (in response to the request for its favorable determination) that the Plan fails to qualify under Section 401(a) of the Code, as the case may be.  The amount of contribution that may be returned shall be reduced to reflect its proportionate share of any net investment loss in the Trust Fund.  In the event clause (iii) applies, the returned contribution may include any net investment earnings or gain in the Trust Fund.

### 18.08  MERGER, CONSOLIDATION OR TRANSFER

The Plan shall not be merged or consolidated with, nor shall any Plan assets or liabilities be transferred to, any other qualified plan, unless each Participant (if the other plan then terminated) would receive a benefit that is equal to or greater than the benefit he or she would have been entitled to receive immediately before the merger, consolidation or transfer (if the Plan had then terminated).

### 18.09  VETERANS' RE-EMPLOYMENT RIGHTS UNDER USERRA

Effective on and after December 12, 1994, notwithstanding any provision of this Plan to the contrary, benefits and service credit with respect to qualified military service will be provided in accordance with Section 414(u) of the Code.

### 18.10  APPLICABLE LAW

Except as otherwise expressly required by ERISA, this Plan shall be construed and governed in accordance with the laws of the State of New York.

NEWYORK.534277.2

**18.11   ACTION BY THE COMPANY**

Whenever the Company under the terms of the Plan is permitted or required to do or perform any act or matter or thing, it shall be done by a person duly authorized by the Company's legally constituted authority.

**18.12   RULES OF CONSTRUCTION**

Whenever the context so admits, the use of the masculine gender shall be deemed to include the feminine and vice versa, either gender shall be deemed to include the neuter and vice versa; and the use of the singular shall be deemed to include the plural and vice versa.

**18.13   RECEIPT AND RELEASE FOR PAYMENTS.**

All benefits payable under the Plan will be paid or provided solely from the Trust Fund, and the Company assumes no liability or responsibility for any such payment.  No person will have any right or interest in the Trust Fund other than as provided herein.  Any payment made under this Plan to or for the benefit of any Participant, whether made to the Participant, his legal representatives, Beneficiary or to any other individual authorized to act on behalf for the benefit of such Participant or Beneficiary, shall be in full satisfaction of all claims against the Plan, the Trust Fund, the Trustee, the Administrator, the Company, any Related Company, the Board and any other fiduciary or functionary of the Plan.  The Administrator may, as a condition precedent to receiving any payment, require a Participant or Beneficiary to execute a receipt and a general release of any and all such claims upon a payment or distribution.

NEWYORK.534277.2

**D-044**

## APPENDIX A.ADDITIONAL REQUIREMENTS FOR TAX QUALIFICATION

**A1.    PURPOSE**

The purpose of this Appendix A is to supplement certain Plan provisions, so that this Plan meets the requirements for tax qualification set forth in the Code.

**A2.    DIRECT TRANSFER OF ELIGIBLE ROLLOVER DISTRIBUTION**

(a)    A distributee may elect, at the time and in the manner prescribed by the Administrator, to have any portion of an eligible rollover distribution to have any portion of an eligible rollover distribution that is equal to at least $500 paid directly to an eligible retirement plan specified by the distributee in a direct rollover.

(b)    For purposes of this Section, the following definitions shall apply:

(i)    An "eligible rollover distribution" is any distribution of all or any portion of the balance to the credit of the distributee, except that an eligible rollover distribution does not include:  any distribution that is one of a series of substantially equal periodic payments (not less frequently than annually) made for the life (or life expectancy) of the distributee or the joint lives (or joint life expectancies) of the distributee and the distributee's designated beneficiary, or for a specified period of ten years or more; any distribution to the extent such distribution is required under Section 401(a)(9) of the Code; any hardship distribution described in Section 401(k)(2)(B)(i)(iv) of the Code received after December 31, 1998; the portion of any other distribution(s) that is not includible in gross income (determined without regard to the exclusion for net unrealized appreciation with respect to employer securities); and any other distribution(s) that is reasonably expected to total less than $200 during a year.

Effective for distributions after December 31, 2001, a portion of a distribution shall not fail to be an eligible rollover distribution merely because the portion consists of after-tax employee contributions which are not includible in gross income.  However, such portion may be transferred only to an individual retirement account or annuity described in Section 408(a) or (b) of the Code, or to a qualified defined contribution plan described in Section 401(a) or 403(a) of the Code that agrees to separately account for amounts so transferred, including separately accounting for the portion of such distribution which is includible in gross income and the portion of such distribution which is not so includible.

(ii)    An "eligible retirement plan" is an individual retirement account described in Section 408(a) of the Code, an individual retirement annuity described in Section 408(b) of the Code, an annuity plan described in Section 403(a) of the Code, or a qualified trust described in Section 401(a) of the Code, that accepts the distributee's eligible rollover distribution.  However, in the case of an eligible rollover distribution to the surviving spouse, an eligible retirement plan is an individual retirement account or individual retirement annuity.

NEWYORK.534277.2

**D-045**

Effective for distributions after December 31, 2001, an eligible retirement plan shall also mean an annuity contract described in Section 403(b) of the Code and an eligible plan under Section 457(b) of the Code which is maintained by a state, political subdivision of a state, or any agency or instrumentality of a state or political subdivision of a state and which agrees to separately account for amounts transferred into such plan from this plan. The definition of "eligible retirement plan" shall also apply in the case of a distribution to a surviving spouse, or to a spouse or former spouse who is the alternate payee under a qualified domestic relation order, as defined in Section 414(p) of the Code.

(iii)   A "distributee" includes an Employee or former Employee. In addition, the Employee's or former Employee's surviving spouse and the Employee's or former Employee's spouse or former spouse who is the alternate payee under a qualified domestic relations order, as defined in Section 414(p) of the Code, are distributees with regard to the interest of the spouse or former spouse.

(iv)   A "direct rollover" is a payment by the plan to the eligible retirement plan specified by the distributee.

## A3.    MINIMUM DISTRIBUTION REQUIREMENTS

**(a)    General Rules.**

(i)   This Section A3 is effective for purposes of determining required minimum distributions.

(ii)   The requirements of this Section will take precedence over any inconsistent provisions of the Plan. In no event, however, is this Section intended to expand the available forms of distribution under the Plan or to defer the date on which a distribution is otherwise required to commence under the Plan.

(iii)   All distributions required under this Section will be determined and made in accordance with the Treasury regulations under Section 401(a)(9) of the Code, the provisions of which are incorporated by reference herein.

**(b)    Time and Manner of Distribution.**

(i)   The Participant's Account will be distributed, or begin to be distributed, to the Participant no later than the Participant's Required Beginning Date.

(ii)   If the Participant dies before distributions begin, the Participant's Account will be distributed, or begin to be distributed, no later than as follows:

(A)   If the Participant's surviving spouse is the Participant's sole Designated Beneficiary, then distributions to the surviving Spouse will begin on the date specified in the Plan for commencement of such surviving spouse benefit, but in no event later than the December 31 of the calendar year immediately following the calendar year in which the Participant died, or

41

D-046

by December 31 of the calendar year in which the Participant would have attained age 70½, if later.

(B)    If the Participant's surviving spouse is not the Participant's sole Designated Beneficiary, or if there is no Designated Beneficiary, the Participant's entire interest will be distributed to the Designated Beneficiary by December 31 of the calendar year containing the fifth (5th) anniversary of the Participant's death.

(C)    If the Participant's surviving spouse is the Participant's sole Designated Beneficiary and the surviving spouse dies after the Participant but before distributions to the surviving Spouse begin, this Section B5(b)(ii) will apply as if the surviving spouse were the Participant.

(iii)    For purposes of this Section, distributions are considered to begin on the Participant's Required Beginning Date (or, as applicable, the date distributions are required to begin to the surviving spouse). If distributions from an annuity contract purchased from an insurance company irrevocably commence to the Participant before the Participant's Required Beginning Date (or to the Participant's surviving spouse before the date distributions are required to begin to the surviving spouse), the date distributions are considered to begin is the date distributions actually commence.

**(c)**    **Required Minimum Distributions During Participant's Lifetime.**

(i)    During the Participant's lifetime, the minimum amount that will be distributed for each Distribution Calendar Year is the lesser of:

(A)    the quotient obtained by dividing the Participant's account balance by the distribution period in the Uniform Lifetime Table in Section 1.401(a)(9)-9 of the Treasury regulations, using the Participant's age as of the Participant's birthday in the distribution calendar year; or

(B)    if the Participant's sole designated beneficiary for the distribution calendar year is the Participant's spouse, the quotient obtained by dividing the Participant's account balance by the number in the Joint and Last Survivor Table in Section 1.401(a)(9)-9 of the Treasury regulations, using the Participant's and spouse's attained ages as of the Participant's and spouse's birthdays in the distribution calendar year.

(ii)    Required minimum distributions will be determined under this Section beginning with the first Distribution Calendar Year and up to and including the Distribution Calendar Year that includes the Participant's date of death.

**(d)**    **Required Minimum Distributions After Participant's Death.**

(i)    Death On or After Date Distributions Begin

42

D-047

(A)    If the Participant dies on or after the date distributions begin and there is a Designated Beneficiary, the minimum amount that will be distributed for each Distribution Calendar Year after the year of the Participant's death is the quotient obtained by dividing the Participant's account balance by the longer of the remaining life expectancy of the Participant or the remaining life expectancy of the Participant's designated beneficiary, determined as follows:

     (1)    The Participant's remaining life expectancy is calculated using the age of the Participant in the year of death, reduced by one for each subsequent year.

     (2)    If the Participant's surviving spouse is the Participant's sole Designated Beneficiary, the remaining life expectancy of the surviving spouse is calculated for each distribution calendar year after the year of the Participant's death using the surviving spouse's age as of the spouse's birthday in that year. For distribution calendar years after the year of the surviving spouse's death, the remaining life expectancy of the surviving spouse is calculated using the age of the surviving spouse as of the spouse's birthday in the calendar year of the spouse's death, reduced by one for each subsequent calendar year.

     (3)    If the Participant's surviving spouse is not the Participant's sole Designated Beneficiary, the Designated Beneficiary's remaining life expectancy is calculated using the age of the Designated Beneficiary in the year following the year of the Participant's death, reduced by one for each subsequent year.

(B)    If the Participant dies on or after the date distributions begin and there is no Designated Beneficiary as of September 30 of the year after the year of the Participant's death, the minimum amount that will be distributed for each Distribution Calendar Year after the year of the Participant's death is the quotient obtained by dividing the Participant's account balance by the Participant's remaining life expectancy calculated using the age of the Participant in the year of death, reduced by one for each subsequent year.

(ii)    Death Before Date Distributions Begin.

(A)    If the Participant dies before the date distributions begin and there is a Designated Beneficiary, the minimum amount that will be distributed for each distribution calendar year after the year of the Participant's death is the quotient obtained by dividing the Participant's account balance by the remaining life expectancy of the Participant's Designated Beneficiary, determined as provided in Section A3(c)(i)(A).

43

D-048

(B)    If the Participant dies before the date distributions begin and there is no Designated Beneficiary as of September 30 of the year following the year of the Participant's death, distribution of the Participant's entire interest will be completed by December 31 of the calendar year containing the fifth anniversary of the Participant's death.

(C)    If the Participant dies before the date distributions begin, the Participant's surviving spouse is the Participant's sole Designated Beneficiary, and the surviving spouse dies before distributions are required to begin to the surviving spouse under Section A3(b)(ii), this Section will apply as if the surviving spouse were the Participant.

(e)    **Definitions**.

(i)    Designated Beneficiary.

The individual who is designated as the beneficiary under the Plan and is the designated beneficiary under Section 401(a)(9) of the Code and Section 1.401(a)(9)-1, Q&A-4, of the Treasury regulations.

(ii)    Distribution Calendar Year.

A calendar year for which a minimum distribution is required. For distributions beginning before the Participant's death, the first distribution calendar year is the calendar year immediately preceding the calendar year that contains the Participant's Required Beginning Date. For distributions beginning after the Participant's death, the first distribution calendar year is the calendar year in which distributions are required to begin under Section A3(b)(ii). The required minimum distribution for the Participant's first distribution calendar year will be made on or before the Participant's Required Beginning Date. The required minimum distribution for other distribution calendar years, including the required minimum distribution for the distribution calendar year in which the Participant's Required Beginning Date occurs, will be made on or before December 31 of that distribution calendar year.

(iii)    Life Expectancy.

Life expectancy as computed by use of the Single Life Table in Section 1.401(a)(9)-9 of the Treasury regulations.

(iv)    Participant's Account Balance.

The account balance as of the last valuation date in the calendar year immediately preceding the distribution calendar year (valuation calendar year), increased by the amount of any contributions made and allocated or forfeitures allocated to the account balance as of dates in the valuation calendar year after the valuation date, and decreased by distributions made in the valuation calendar year after the valuation date. The account balance for the valuation calendar year includes any amounts rolled over or transferred to

44

D-049

the Plan either in the valuation calendar year or in the distribution calendar year if distributed or transferred in the valuation calendar year.

(v)    Required Beginning Date.

      (A)    With respect to any Participant who is a "5% Owner" (as defined in Section 416 of the Code), the April 1 of the calendar year following the calendar year in which the Participant attains age 70-1/2.

      (B)    With respect to any Participant who is not a "5% Owner", the later of: (i) the April 1 of the calendar year following the calendar year in which the Participant attains age 70 1/2; or (ii) the calendar year in which the Participant retires from employment.

NEWYORK.534277.2

D-050

# BRIEFLY STATED, INC.
# PROFIT SHARING PLAN

# SUMMARY PLAN DESCRIPTION

Plan provisions in effect as of January 1, 2007

D-051

# TABLE OF CONTENTS

GENERAL PLAN INFORMATION ........................................................................................... 1

INTRODUCTION ................................................................................................................... 2

ELIGIBILITY AND PLAN PARTICIPATION.............................................................................. 3
WHO IS ELIGIBLE TO PARTICIPATE IN THE PLAN ................................................................. 3
WHEN YOUR ACTIVE PARTICIPATION ENDS ........................................................................ 3

CONTRIBUTIONS................................................................................................................. 4
EMPLOYER CONTRIBUTIONS ............................................................................................... 4
COMPENSATION COUNTED IN DETERMINING CONTRIBUTIONS .............................................. 4
ANNUAL LIMITATION ON TOTAL AMOUNT OF CONTRIBUTIONS .............................................. 4

INVESTMENT OF YOUR PLAN ACCOUNT............................................................................ 5
PRIOR TO MARCH 1, 2007.................................................................................................. 5
ON AND AFTER MARCH 1, 2007.......................................................................................... 5

VESTING AND FORFEITURES .............................................................................................. 6
VESTING............................................................................................................................ 6
FORFEITURE OF PLAN ACCOUNT......................................................................................... 7
APPLICATION OF FORFEITURES .......................................................................................... 7

LOANS.................................................................................................................................. 8
EFFECTIVE DATE ............................................................................................................... 8
MINIMUM AND MAXIMUM LOAN AMOUNTS ........................................................................... 8
MAXIMUM NUMBER OF LOANS............................................................................................. 8
LOAN TERMS ..................................................................................................................... 8
DEFAULT ........................................................................................................................... 9
LOAN PAYABLE UPON TERMINATION OF EMPLOYMENT.......................................................... 9

WITHDRAWALS.................................................................................................................... 10
IN-SERVICE WITHDRAWALS ............................................................................................... 10
DISTRIBUTIONS AFTER TERMINATION OF EMPLOYMENT ....................................................... 10
TOTAL DISABILITY.............................................................................................................. 11
DEATH AND BENEFICIARY DESIGNATION.............................................................................. 11
FORM AND MANNER OF PAYMENT........................................................................................ 11
TAX TREATMENT OF DISTRIBUTIONS ................................................................................... 11

RE-EMPLOYMENT ............................................................................................................... 12
RESTORING VESTING SERVICE ........................................................................................... 12
RESTORATION OF FORFEITED AMOUNTS.............................................................................. 12

CLAIMING BENEFITS ........................................................................................................... 14
HOW TO APPLY FOR BENEFITS ........................................................................................... 14
DENIAL OF CLAIM .............................................................................................................. 14
REVIEW OF DENIED CLAIM.................................................................................................. 14
LIMITATION ON LEGAL ACTIONS .......................................................................................... 15

D-052

Briefly Stated, Inc. Profit Sharing Plan
Summary Plan Description
Plan provisions as in effect 1/1/2007

**ADDITIONAL INFORMATION ABOUT THE PLAN** ................................................................................. 16
    Administration of the Plan ............................................................................................................ 16
    Assignment of Benefits ................................................................................................................ 16
    Plan Amendment and Termination ............................................................................................. 16
    Plan Not Covered by PBGC Insurance ...................................................................................... 16
    Your Rights Under ERISA .......................................................................................................... 17

**GLOSSARY** ................................................................................................................................. 19

D-053

Briefly Stated, Inc. Profit Sharing Plan
Summary Plan Description
Plan provisions as in effect 1/1/2007

# GENERAL PLAN INFORMATION

| | |
|---|---|
| **Name of Plan:** | Briefly Stated, Inc. Profit Sharing Plan |
| **Employer:** | Briefly Stated, Inc.<br>1359 Broadway<br>New York, NY 10018<br>(212) 839-7530 |
| **Employer's Tax Identification Number:** | 11-2906765 |
| **Plan Administrator:** | Briefly Stated, Inc.<br>1359 Broadway<br>New York, NY 10018<br>(212) 839-7530<br>Attention: Graham Schell |
| **Type of Plan:** | Profit sharing plan |
| **Plan Number:** | 003 |
| **Plan Year:** | January 1 – December 31 |
| **Plan Effective Date:** | January 1, 2000 |
| **Recordkeeper:** | ADP, Inc.<br>One ADP Boulevard<br>Roseland, NJ 07068 |
| **Trustee:** | DWS Trust Company<br>11 Northeastern Blvd<br>Salem, NH 03079 |
| **Agent for Legal Service of Process:** | Plan Administrator |

**D-054**

1

# INTRODUCTION

The purpose of this Summary Plan Description is to familiarize you with important information concerning the Briefly Stated, Inc. Profit Sharing Plan, formerly known as the Briefly Stated, Inc. Employee Stock Ownership Plan (the "Plan"). This summary describes the Plan terms as in effect on January 1, 2007.

The Plan is a type of defined contribution plan commonly referred to as a profit sharing plan. Under the Plan, Briefly Stated, Inc. (the *"Company"*) and any other participating affiliates (*"Participating Employers"*) may elect to make discretionary contributions (*"Employer Contributions"*) to the Plan on behalf of Plan participants. *Employer Contributions* and net investment earnings will be tax-free while they remain in the Plan.

This Summary Plan Description describes some important features of the Plan in non-technical language and is intended to answer most of your questions about the Plan. It nevertheless is only a summary, and does not include the complete details of the Plan. These details are contained in the official Plan document, which legally governs the administration of the Plan and will be used to determine all issues under the Plan. **In the case of any conflict or difference between this summary and the Plan, the provisions of the Plan will control.**

If you have any questions that this summary does not answer, you should contact the Plan Administrator. You may examine a copy of the complete Plan document at the Company's offices by contacting your office administrator, who will also provide you with a copy at your request.

Terms in *italics* are defined in the GLOSSARY at the end of this Summary Plan Description.

**D-055**

Briefly Stated, Inc. Profit Sharing Plan
Summary Plan Description
Plan provisions as in effect 1/1/2007

# ELIGIBILITY AND PLAN PARTICIPATION

## WHO IS ELIGIBLE TO PARTICIPATE IN THE PLAN

You will be eligible to participate in the Plan if you satisfy <u>both</u> of the following requirements:

- You were a participant in the Plan on December 31, 2005; and

- You are an *Eligible Employee.*

## WHEN YOUR ACTIVE PARTICIPATION ENDS

You will not be eligible to be credited with *Employer Contributions* for any periods after either of the following events:

- You cease to be an *Eligible Employee*, or

- You have a *Break-in-Service.*

Your *Plan Accounts* will continue to be credited with earnings until the Accounts are distributed or forfeited.

D-056

Briefly Stated, Inc. Profit Sharing Plan
Summary Plan Description
Plan provisions as in effect 1/1/2007

# CONTRIBUTIONS

## EMPLOYER CONTRIBUTIONS

Each *Plan Year*, each *Participating Employer*, as determined by the *Company* in its sole discretion, may contribute amounts to the Plan as *Employer Contributions*. *Employer Contributions* will be allocated among eligible *Participants* on a pro rata basis determined by compensation.

You will be entitled to share in *Employer Contributions* made for a *Plan Year* if

- You are a *Participant*;

- You are actively employed by a *Participating Employer* as an *Eligible Employee* on the last day of the *Plan Year*, and

- You complete 1,000 or more *Hours of Service* during the *Plan Year*.

The Discretionary Employer Contributions made on your behalf will be credited to your *Employer Contribution Account*. The assets in your *Employer Contribution Account* will be subject to the vesting requirements described in the section entitled VESTING AND FORFEITURES.

## COMPENSATION COUNTED IN DETERMINING CONTRIBUTIONS

For purposes of determining the amount of contributions to be made to the Plan, compensation generally is defined as all of the compensation paid to you by a *Participating Employer* during the calendar year which is reportable as taxable income on your Form W-2 subject to the following adjustments:

- Your salary reduction contributions to any 401(k), cafeteria or flexible benefits plan maintained by a *Participating Employer* also will be included in your compensation.

- Reimbursements or other expense allowances, fringe benefits (cash and noncash), moving expenses, deferred compensation, and welfare benefits will not be counted as compensation.

The amount of compensation which can be counted by the Plan in any year cannot exceed the annual dollar limit set forth in the Internal Revenue Code as adjusted for inflation ($225,000 in 2007).

## ANNUAL LIMITATION ON TOTAL AMOUNT OF CONTRIBUTIONS

The Internal Revenue Code imposes annual dollar limitations on the total amount that may be allocated to your *Plan Account,* for each *Plan Year,* under this Plan and any other tax-qualified plan sponsored by a *Related Company*. The total contribution limitation for each year is equal to the lesser of 100% of your compensation for the year or annual dollar limit set forth in the Internal Revenue Code as adjusted for inflation ($45,000 in 2007). If you are affected by this limit, your *Plan Accounts* will be adjusted to the extent necessary to meet these requirements.

4

# INVESTMENT OF YOUR PLAN ACCOUNT

## PRIOR TO MARCH 1, 2007

Prior to March 1, 2007, the assets of the Plan were invested collectively by the Plan's Trustees. Your *Plan Account* was then credited (or debited) with its proportionate share of income (or loss).

## ON AND AFTER MARCH 1, 2007

The following rules govern the investment of your Plan Account on and after March 1, 2007.

### ◼ INVESTMENT OPTIONS

You will be asked how you want the assets in your *Plan Accounts* to be invested. You can choose among several investment options selected by the Company. The Company from time to time, may change the options available for investment. Plan participants will be notified of any changes in funds being offered.

### ◼ CHANGING YOUR INVESTMENT ELECTION

You may change your investment election in accordance with the procedures established by the Plan Administrator.

### ◼ INVESTMENT PERFORMANCE

The value of your *Plan Accounts* will be affected by the investment performance of the investment options you select. In making your investment decision, you should be aware that different types of investment options have different levels of risk. You should, therefore, carefully read the material provided in connection with the investment option offered before making any decision.

The Plan is intended to meet the investment requirements described in Section 404(c) of the Employee Retirement Income Security Act and Title 29 of the Code of Federal Regulations Section 2550.404c-1. As a result, plan fiduciaries may not be liable for any losses which result from the investment options that you choose.

**D-058**

Briefly Stated, Inc. Profit Sharing Plan
Summary Plan Description
Plan provisions as in effect 1/1/2007

# VESTING AND FORFEITURES

Vesting determines whether and to what extent your *Plan Accounts* are non-forfeitable.

## VESTING

### ■ PLAN YEARS PRIOR TO JANUARY 1, 2007

To the extent attributable to *Employer Contributions* made with respect to *Plan Years* beginning prior to January 1, 2007, your *Plan Account*, and any earnings thereon, will vest and become non-forfeitable in accordance with the following schedule:

| Years of Vesting Service | Vested Interest |
|---|---|
| Less than 3 Years | 0% |
| Less than 4 Years | 20% |
| Less than 5 Years | 40% |
| Less than 6 Years | 60% |
| Less than 7 years | 80% |
| After 7 or more Years | 100% |

### ■ PLAN YEARS ON AND AFTER JANUARY 1, 2007

To the extent attributable to *Employer Contributions* made with respect to *Plan Years* beginning on or after January 1, 2007, your *Plan Account*, and any earnings thereon, will vest and become non-forfeitable in accordance with the following schedule:

| Years of Vesting Service | Vested Interest |
|---|---|
| Less than 2 Years | 0% |
| Less than 3 Years | 20% |
| Less than 4 Years | 40% |
| Less than 5 Years | 60% |
| Less than 6 years | 80% |
| After 6 or more Years | 100% |

In addition, you will become 100% vested in your *Plan Account* while actively employed by the *Company* upon any of the following events:

- your attainment of your *Normal Retirement Date* regardless of whether or not you retire at that time ; or

- your *Total Disability*; or

- your death.

D-059

6

## FORFEITURE OF PLAN ACCOUNT

If you take a distribution of the vested portion of your *Plan Account* when you terminate employment, or you are 0% vested, the nonvested portion of the *Plan Account* will be forfeited.

If you do not take a distribution of the vested portion of your *Plan Accounts* when you terminate employment, the nonvested portion of the *Employer Contribution Account* will be forfeited when you incur a 5-year *Break-in-Service*.

You will have a *Break-in-Service* if you are credited with less than 501 *Hours of Service* during a *Plan Year*. For purposes of determining whether you have a *Break-in-Service*, you will be credited with *Hours of Service* during an approved leave of absence, including certain maternity or paternity absences.

See the section entitled RE-EMPLOYMENT for information about restoring forfeitures.

## APPLICATION OF FORFEITURES

Amounts forfeited during a *Plan Year* can, at the *Company's* discretion, either be used to pay administrative expenses or to fund *Employer Contributions*.

**D-060**

7

# LOANS

## EFFECTIVE DATE

Prior to March 1, 2007, loans from the Plan were not permitted.

Effective March 1, 2007, if you are an active *Participant* in the Plan, you may apply for a loan from your *Plan Accounts* in accordance with procedures established by the Plan Administrator. You will be provided with additional information regarding loan procedures at that time.

The following is a summary of the rules applying to loans.

## MINIMUM AND MAXIMUM LOAN AMOUNTS

The minimum allowable loan is $1,000.

The maximum amount is the lesser of:

- one-half of your vested *Plan Account* balance; or

- $50,000, less any outstanding loan balance in your *Plan Account* during the prior twelve-month period.

## MAXIMUM NUMBER OF LOANS

You can only have one loan outstanding at any time and you cannot apply for more than one loan from your *Plan Account* in any *Plan Year*. You may not refinance an existing loan, or obtain a second loan to pay off an existing loan.

## LOAN TERMS

- Interest rates are determined by the Plan Administrator, based on the prevailing interest rates charged by lending institutions for loans that would be made under similar circumstances.

- Loans must be repaid over a period of not more than 5 years, unless it is for the purchase of your principal residence. A principal residence loan may be repaid over a 10-year period.

- Loan repayments must be repaid on a payroll deduction basis in level installments over payment periods determined by the Plan Administrator (not less frequently than quarterly).

- The Plan Administrator may permit loan repayments to be suspended during certain approved leaves of absence.

**D-061**

Briefly Stated, Inc. Profit Sharing Plan
Summary Plan Description
Plan provisions as in effect 1/1/2007

- Your *Plan Accounts* will be used a security for repayment of the loan.
- Your *Plan Accounts* will be charged for any applicable fees associated with the loan, including origination fees and/or annual maintenance fees.

## DEFAULT

A loan will be considered to be in default if

- a scheduled repayment remains unpaid for more than 90 days; or
- there is an outstanding principal balance existing on a loan after the last scheduled repayment date.

The unpaid balance of a defaulted loan will be charged against your *Plan Accounts*. The defaulted amount is considered a taxable distribution in the year in which it is defaulted and may also be subject to the additional 10% excise tax imposed on distributions made prior to age 59-1/2.

The outstanding loan amount will remain due and continue to accrue interest until it is either repaid or offset against a full payout of your *Plan Account* balance.

## LOAN PAYABLE UPON TERMINATION OF EMPLOYMENT

The unpaid balance of a loan will immediately become payable in full when your employment terminates.

**D-062**

Briefly Stated, Inc. Profit Sharing Plan
Summary Plan Description
Plan provisions as in effect 1/1/2007

# WITHDRAWALS

## IN-SERVICE WITHDRAWALS

Because the Plan is designed for long-term savings, withdrawals prior to your termination of employment are not permitted.

## DISTRIBUTIONS AFTER TERMINATION OF EMPLOYMENT

You (or your beneficiary) will be entitled to receive distribution of the vested balance in your *Plan Account* following your termination of employment, *Total Disability* or death.  Different rules may apply to distributions made prior to March 1, 2007 and distributions made on and after March 1, 2007.

### ▣ PRIOR TO NORMAL RETIREMENT

If your employment terminates prior to your *Normal Retirement Date*, for any reason other than death or *Total Disability*, distribution of your *Plan Account* may not be made <u>prior</u> to the <u>earlier</u> of:

- Your *Normal Retirement Date*;

- Sixty (60) months after your termination of employment;

- Your death or *Total Disability* prior to your *Normal Retirement Date*; or

- March 1, 2007.

Distribution will begin as soon as practicable after your completed distribution election form is received by the Plan Administrator (or ninety (90) days after the Plan Administrator provides you with a distribution notice, if sooner.)

### ▣ AT OR AFTER NORMAL RETIREMENT

Upon termination of employment at or after your *Normal Retirement Date*, distribution will begin as soon as practicable after your completed distribution election form is received by the Plan Administrator (or ninety (90) days after the Plan Administrator provides you with a distribution notice, if sooner.)

**D-063**

Briefly Stated, Inc. Profit Sharing Plan
Summary Plan Description
Plan provisions as in effect 1/1/2007

## TOTAL DISABILITY

Upon termination of employment by reason of your *Total Disability,* distribution will begin as soon as practicable after your completed distribution election form is received by the Plan Administrator (or ninety (90) days after the Plan Administrator provides you with a distribution notice, if sooner.).

## DEATH AND BENEFICIARY DESIGNATION

If you die before you receive a distribution, the balance in your *Plan Accounts* will be paid to your designated beneficiary (the "Beneficiary"). If you are married, however, your *Plan Accounts* will be paid to your surviving spouse unless you designate another Beneficiary for all or a portion of your Accounts. **If you are married and decide to designate a Beneficiary other than your spouse, you must obtain the notarized consent of your spouse on the Beneficiary Designation Form.**

If you do not designate a Beneficiary, or your Beneficiary does not survive you, your *Plan Accounts* will be paid to your estate.

## FORM AND MANNER OF PAYMENT

You (or your Beneficiary) may elect to receive any distribution under the Plan in equal monthly, quarterly, semiannual or annual payments over a period not to exceed five (5) years.

You may elect to have distributions either:

- distributed directly to you, or
- transferred directly to another tax-qualified retirement plan or an individual retirement account ("IRA"); or
- a combination of both.

## TAX TREATMENT OF DISTRIBUTIONS

Distributions normally are subject to income taxes as are other sources of ordinary income. Various methods exist to help you defer or reduce the amount of taxes, which would otherwise be due. Please note that any distribution you receive before the age of 55 will be subject to a 10% early withdrawal penalty unless certain exceptions apply. Upon retirement or termination of employment, the Plan Administrator will provide you with a notice, which explains these methods in greater detail.

**D-064**

11

# RE-EMPLOYMENT

## RESTORING VESTING SERVICE

The following rules apply in determining whether your earlier period of employment will be counted in determining your vested interest in your *Plan Account* after you are re-employed by a *Related Company*:

| Vested Status at Termination | Period of Absence | Vesting Service Credit at Re-employment |
|---|---|---|
| 20% or more vested in your *Plan Account* | No time limit | Earlier period of employment will be counted to determine your vesting in benefits accrued AFTER the break only if you complete one *Year of Vesting Service* after re-employment. |
| <u>Less than 100%</u> vested in your *Plan Account* | Re-employment <u>before</u> a 5-year *Break-in-Service* | Your post-break service will be taken into account to determine your vesting in benefits earned BEFORE the break. |
| <u>Less than 100%</u> vested in your *Plan Account* | Re-employment <u>after</u> a 5-year or more *Break-in-Service* | Your post-break service will <u>not</u> be taken into account to determine your vesting in benefits earned BEFORE the break. |

## RESTORATION OF FORFEITED AMOUNTS

If you are re-employed by a *Related Company*, the following table describes whether amounts previously forfeited balance will be restored:

| Period of Absence | Restoration of Forfeited Employer Contribution Account |
|---|---|
| Less than a 5-year *Break-in-Service* | The amount forfeited from your *Plan Account* will be restored <u>only if</u><br><br>• you are re-employed as an *Eligible Employee*, <u>and</u><br>• you repay the full amount distributed to you within 5 years after your re-employment date. |

D-065

Briefly Stated, Inc. Profit Sharing Plan
Summary Plan Description
Plan provisions as in effect 1/1/2007

| Period of Absence | Restoration of Forfeited Employer Contribution Account |
|---|---|
| | |
| 5-year or more *Break-in-Service* | The amount forfeited from your *Plan Account* will <u>not</u> be restored. |

**D-066**

Briefly Stated, Inc. Profit Sharing Plan
Summary Plan Description
Plan provisions as in effect 1/1/2007

# CLAIMING BENEFITS

## HOW TO APPLY FOR BENEFITS

To receive benefits, you must apply in writing.  If you need more information about payment of your benefit, contact the Plan Administrator as indicated on page 1.

If you move before your benefit is paid, be sure to notify the Plan Administrator about your new address so Plan information will reach you.

## DENIAL OF CLAIM

If your claim for benefits is denied in whole or in part, the Plan Administrator or its representative will notify you or your authorized representative within 90 days of receiving your claim.  If special circumstances require an extension of time for processing your claim, you will receive written notice of the extension and the reasons for it before the end of the initial 90 days.  The extension will not exceed a period of 90 days from the end of the initial 90-day period.  If you do not receive a response to your claim within this time limit, you should assume that the claim has been denied, and you can begin your appeal.

If your claim is denied, the notice of denial will include:

- an explanation of the specific reason(s) for the denial;

- specific references to pertinent plan provisions on which the denial is based;

- a description of any additional material or information necessary for you to properly establish the claim and an explanation of why such material or information is necessary, and

- an explanation of the steps you or your beneficiary can take to submit the claim for review, and a statement regarding your right to bring a civil action under ERISA following the denial of your claim on review.

## REVIEW OF DENIED CLAIM

To appeal a denied claim, you must submit, within 60 days of receiving the notice of denial, a written request to the Plan Administrator asking that your claim be reconsidered.  At this time, you or your authorized representative will have the right to review all pertinent plan documents and submit issues and comments in writing.  Also, whenever possible, you should send copies of any documents or records that support your appeal.

A decision regarding your appeal will be made within 60 days after your request for an appeal is received.  If more time is needed for a final decision, this review period may be extended for another 60 days.  If an extension is necessary, you will receive written notice within the first 60 days explaining the reasons for the delay.  The final decision will be furnished in writing and will include the reasons for the decision with reference to those plan provisions upon which the final decision was based.

Briefly Stated, Inc. Profit Sharing Plan
Summary Plan Description
Plan provisions as in effect 1/1/2007

## LIMITATION ON LEGAL ACTIONS

As discussed in the section below entitled "Your Rights Under ERISA," you have the right to bring legal action if a claim for benefits is denied.  Any such action is subject to the following limitations:

- You cannot bring a legal action <u>before</u> the claims and review procedures described in the preceding paragraphs are exhausted.

- You cannot bring a legal action more than one (1) year <u>after</u> the date of the final decision on the appeal of your denied claim for benefits.

**D-068**

Briefly Stated, Inc. Profit Sharing Plan
Summary Plan Description
Plan provisions as in effect 1/1/2007

# ADDITIONAL INFORMATION ABOUT THE PLAN

## ADMINISTRATION OF THE PLAN

The day-to-day administration of the Plan is the responsibility of the person or committee appointed by the Company to serve as the Plan Administrator.

The Plan Administrator has full and discretionary authority and power to administer and construe the Plan. This authority includes the discretion to make such rules, regulations, interpretations, and computations and to take other such actions, to administer the plans as it deems necessary or appropriate and to decide any dispute which may arise regarding the rights of participants and beneficiaries under the Plan. Such determinations shall be final and conclusive on all persons claiming benefits under the Plan.

## ASSIGNMENT OF BENEFITS

As required by law, the Plan provides that your benefits cannot be assigned to anyone else, attached, or seized by your creditors, except to the extent required by law or permitted in connection with a Plan loan. However, the Plan must recognize a "qualified domestic relations order" that obligates you to pay child support or alimony or that divide your benefits between you and your spouse or a former spouse. In addition, if the Plan Administrator determines that any Participant or Beneficiary is legally, physically or mentally incapable of receiving a Plan benefit, the Plan Administrator may make the payments to the person's guardian or other legal representative.

## PLAN AMENDMENT AND TERMINATION

The Company has the right to amend the Plan at any time. No amendment, however, will change your right to your vested benefit.

The Company also has the right to terminate the Plan at any time. If the Plan is terminated, you automatically will become 100% vested in the value of your *Plan Accounts*.

## PLAN NOT COVERED BY PBGC INSURANCE

Benefits under the Plan are not insured under the PBGC (Pension Benefit Guaranty Corporation) insurance provisions of Title IV of ERISA because the Plan is a profit sharing plan exempt from such insurance provisions.

**D-069**

Briefly Stated, Inc. Profit Sharing Plan
Summary Plan Description
Plan provisions as in effect 1/1/2007

## YOUR RIGHTS UNDER ERISA

As a participant in the Plan, you are entitled to certain rights and protections under the Employee Retirement Income Security Act of 1974 (ERISA). ERISA provides that all plan participants shall be entitled to:

**Receive Information About Your Plan and Benefits**

- Examine, without charge, at the Plan Administrator's office and at other specified locations all documents governing the plan, including insurance contracts and collective bargaining agreements, and a copy of the latest annual report (Form 5500 Series) filed by the plan with the U.S. Department of Labor and available at the Public Disclosure Room of the Employee Benefits Security Administration.

- Obtain, upon written request to the Plan Administrator, copies of documents governing the operation of the plan, including insurance contracts and collective bargaining agreements, and copies of the latest annual report (Form 5500 Series) and updated summary plan description. The Plan Administrator may make a reasonable charge for the copies.

- Receive a summary of the Plan's annual financial report. The Plan Administrator is required by law to furnish each participant with a copy of this summary annual report.

- Obtain a statement telling you whether you have a right to receive a retirement benefit at normal retirement age (age 65) and if so, what your benefits would be at normal retirement age if you stop working under the Plan now. If you do not have a right to a retirement benefit, the statement will tell you how many more years you have to work to get a right to a retirement benefit. This statement must be requested in writing and is not required to be given more than once every twelve (12) months. The Plan must provide the statement free of charge.

**Prudent Actions by Plan Fiduciaries**

In addition to creating rights for plan participants ERISA imposes duties upon the people who are responsible for the operation of the employee benefit plan. The people who operate your plan, called "fiduciaries" of the plan, have a duty to do so prudently and in the interest of you and other plan participants and beneficiaries. No one, including your employer or any other person, may fire you or otherwise discriminate against you in any way to prevent you from obtaining a pension benefit or exercising your rights under ERISA.

**Enforce Your Rights**

If your claim for a pension benefit is denied or ignored, in whole or in part, you have a right to know why this was done, to obtain copies of documents relating to the decision without charge, and to appeal any denial, all within certain time schedules.

Under ERISA, there are steps you can take to enforce the above rights. For instance, if you request a copy of plan documents or the latest annual report from the plan and do not receive them within 30 days, you may file suit in a Federal court. In such a case, the court may require the plan administrator to provide the materials and pay you up to $110 a day until you receive the materials, unless the materials were not sent because of reasons beyond the control of the administrator. If you have a claim for benefits which is denied or ignored, in whole or in part, you may file suit in a state or Federal court. In addition, if you disagree with the plan's decision or lack thereof concerning the qualified status of a domestic

17

relations order or a medical child support order, you may file suit in Federal court. If it should happen that plan fiduciaries misuse the plan's money, or if you are discriminated against for asserting your rights, you may seek assistance from the U.S. Department of Labor, or you may file suit in a Federal court. The court will decide who should pay court costs and legal fees. If you are successful the court may order the person you have sued to pay these costs and fees. If you lose, the court may order you to pay these costs and fees, for example, if it finds your claim is frivolous.

**Assistance With Your Questions**

If you have any questions about your plan, you should contact the plan administrator. If you have any questions about this statement or about your rights under ERISA, or if you need assistance in obtaining documents from the plan administrator, you should contact the nearest office of the Employee Benefits Security Administration, U.S. Department of Labor, listed in your telephone directory or the Division of Technical Assistance and Inquiries, Employee Benefits Security Administration, U.S. Department of Labor, 200 Constitution Avenue N.W., Washington, D.C. 20210. You may also obtain certain publications about your rights and responsibilities under ERISA by calling the publications hotline of the Employee Benefits Security Administration.

D-071

Briefly Stated, Inc. Profit Sharing Plan
Summary Plan Description
Plan provisions as in effect 1/1/2007

# GLOSSARY

**Break-in-Service**

A one-year Break in Service is a 12-month period ending on the last day of a Plan Year during which you have completed less than 501 Hours of Service. A one-year Break in Service does not occur, however, if you complete less than 501 Hours of Service because of an authorized leave of absence, or a maternity/paternity leave.

**Eligible Employee**

You are an Eligible Employee if you have reached age 21 and you are an employee of the *Company* unless you are

- covered by a collective bargaining agreement which does not provide for participation in this Plan;
- classified by a Participating Employer as a "payroll service or agency employee" (as defined in the Plan) or an independent contractor;
- a "leased employee" (as defined in the Internal Revenue Code); or
- a nonresident alien who does not receive United States source earned income.

**Employer Contributions**

Discretionary contributions made to the Plan by a Participating Employer and allocated to the Plan Accounts of eligible Participants.

**Hour of Service**

Generally, you will be credited with an Hour of Service for any hour for which you are directly or indirectly compensated by a Participating Employer or any other Related Company for the performance of duties.

**Normal Retirement Date**

The later of age 65 or the completion of 5 years of participation in the Plan.

**Participant**

Any Eligible Employee who has satisfied the participation requirements set forth in the Plan.

**Participating Employer**

The Company and any other *Related Company* that has adopted the Plan on behalf of its Eligible Employees.

**D-072**

Briefly Stated, Inc. Profit Sharing Plan
Summary Plan Description
Plan provisions as in effect 1/1/2007

*Plan Account*

Your interest in the Plan, consisting of Employer Contributions made on your behalf and the earnings and losses thereon.

*Plan Year*

The 12-month period beginning January 1, 2000, and each January 1 thereafter, and ending on the next following December 31.

*Related Company*

The Company and any company which is included in the same controlled group of companies as the Company as determined by rules provided in the Internal Revenue Code

*Salary Deferral Contribution*

The amount that you elect to have withheld from your cash compensation on a pre-tax basis and contributed to the Plan.

*Year of Vesting Service*

Any Plan Year during which you are credited with at least 1,000 Hours of Service.  You will receive credit for all Years of Service with a Participating Employer and any other Related Company.

**D-073**

Briefly Stated, Inc. Profit Sharing Plan
Summary Plan Description
Plan provisions as in effect 1/1/2007

### SAMUEL BREZEL
#### ATTORNEY AT LAW

44 WALL STREET
NEW YORK, NY 10005

TEL: (212) 797-9700 • FAX: (212) 797-9701
EMAIL: SAMBREZEL@BENEFITLAWS.COM

<u>CERTIFIED MAIL</u>

Graham Schell
Briefly Stated, Inc.
1359 Broadway
New York, N.Y. 10018

May 30, 2007

Re: Briefly Stated, Inc. Profit Sharing Plan (*formerly known as the Briefly Stated, Inc., Employee Stock Ownership Plan*) (hereinafter, the "Plan")

Dear Mr. Schell:

On behalf of my client, Mr. John Lavin, and pursuant to the Plan's claim procedures, the following constitutes a formal claim for *additional* benefits that are due to my client under the Plan.

As you know, Mr. Lavin was employed by Briefly Stated, Inc. (hereinafter, the "Company") from October 2, 2000 until March 30, 2005, when he voluntarily terminated employment with the Company. While employed by the Company, Mr. Lavin was an active participant in the Plan and accrued benefits thereunder. In accordance with the Plan's vesting schedule in effect at the time he terminated employment, Mr. Lavin had a nonforfeitable (*i.e.*, vested) interest in 40% of his *total* account balance (*i.e.*, accrued benefit) under the Plan, having completed four (4) years of vesting service.

Following the Plan's recent amendment which allowed for the distribution of a former employee's vested accrued benefit upon termination of employment, Mr. Lavin requested a single sum distribution of the balance credited to his account by accessing the Plan's automated web-based InterActive Account system.

At the time of his distribution, Mr. Lavin's *total* account balance, as reflected in his on-line account statement, had a market value of $1,496,500.50. However, the amount actually distributed to him was only $598,600.20. The reduced amount represents 40% of the balance credited to his account and is presumably attributable to his vested status under the Plan at the time he terminated employment.

In limiting the amount of Mr. Lavin's distribution to 40% of his account balance, the Plan has failed to consider the fact that, notwithstanding the vesting schedule in effect as of the date of his termination of employment, Mr. Lavin has become *fully* vested in his accrued benefit as a result of the Company's decision to discontinue making contributions to the Plan following the Company's acquisition by The Millwork Trading Co., Ltd., d/b/a Li & Fung USA ("Li & Fung USA").

D-074

Graham Schell
Briefly Stated, Inc.
May 30, 2007
Page 2 of 7

Section 411(d)(3) of the Internal Revenue Code of 1986, as amended (the "Code"), provides *in relevant part* that a trust is not qualified unless the plan of which such trust is a part provides that upon a complete or partial termination of the plan or, in the case of a plan that is not subject to the Code's minimum funding requirements, upon a *complete discontinuance of contributions* under the plan, the right of affected employees to receive benefits accrued as of the date of such termination, partial termination or complete discontinuance is nonforfeitable.

A determination as to whether or not there has been a complete discontinuance of contributions is based on a consideration of all the relevant facts and circumstances surrounding the discontinuance. Among the factors to be considered in determining whether a suspension of contributions constitutes a complete discontinuance are:

(i)   Whether the employer may merely be labeling a complete discontinuance of contributions as a "suspension" in order to avoid the obligation of full vesting otherwise required in the case of a discontinuance, or for any other reason;

(ii)  Whether contributions are recurring and substantial; and

(iii) Whether there is any reasonable probability that the lack of contributions will continue indefinitely.

*See*, Treas. Reg. § 1.411(d)-2(d)(1).

In describing the events that constitute a *complete discontinuance of contributions* for purposes of Section 411(d)(3) of the Code, the regulations provide that a complete discontinuance of contributions is to be distinguished from a "suspension" of contributions which is merely a temporary cessation of contributions by the contributing employer. On the other hand, a complete discontinuance may occur even though some amounts are contributed to the plan if such amounts are not substantial enough to reflect the intent on the part of the employer to continue to maintain the plan.

Following the Company's acquisition by Li & Fung USA in September of 2005, participants were notified in writing that no further contributions of employer stock would be made to the Plan. Although the notice only referred to contributions of employer stock, neither contributions of employer stock nor contributions of cash or other property were made to the Plan following the Company's acquisition. The notice also advised participants of a recent amendment to the Plan made in connection with the sale of the Company's shares under which individuals hired *after* September 30, 2005, would not eligible to become participants in the Plan. To the best of my client's knowledge, no provisions were made under the terms of the acquisition agreement for Li & Fung USA to adopt the Plan or to resume making contributions thereto. In fact, every effort has been made to disassociate Li & Fung USA from the Plan as evidenced by the fact that the Plan is being administered separately from the Li & Fung USA 401(k) Plan.

It is noteworthy that nowhere in its written communications did the Company attempt to assuage the concerns of participants who were affected by the discontinuance of contributions by describing it as a mere temporary cessation or suspension. Neither could the cessation of contributions be attributable to the Company's financial hardship

D-075

Graham Schell
Briefly Stated, Inc.
May 30, 2007
Page 3 of 7

or other administrative difficulty. Despite the self-serving statement contained in its written communications to participants that the Plan is not being terminated, the discontinuance of contributions following the sale of the Company's shares and the adoption of an amendment that resulted in freezing out employees hired after September 30, 2005 from being eligible to participate in the Plan, provides a strong inference that the cessation of contributions was both contemplated and agreed to by the parties prior to the sale and was intended to be permanent. Under Section 411(d)(3) of the Code, a complete discontinuance of contributions has the same effect on participants' accounts as a plan termination – in each case, participants are required to become 100% vested in their accrued benefit regardless of their vested status under the plan's vesting schedule.

More importantly, the Company's assertion that the Plan is not being terminated is in direct contradiction to the Plan's Summary Plan Description, updated as of June 30, 2004 (SPD). The second paragraph in Section 2 of Article XI of the SPD states that "[A] complete discontinuance of contributions by your Employer without the establishment of a successor plan shall constitute a termination." The immediately preceding paragraph sets forth the Company's right to terminate the Plan at any time and provides for the full vesting of participant accounts in the event of the Plan's termination. Thus, under the very terms of the SPD, it is not necessary that the Plan be formally terminated for participants to be vested in their accrued benefits. A mere cessation of contributions that, under the particular facts and circumstances, constitutes a complete discontinuance of contributions is sufficient to trigger the termination of the Plan with all of the ensuing legal consequences flowing therefrom.

The reasonable probability that the lack of employer contributions will continue indefinitely is further reinforced by an analyses of the cost that would be incurred in the event there was a resumption of contributions to the Plan. To retain its qualified status, the Plan must satisfy the Code's myriad qualification requirements including the minimum coverage rules under Section 410(b) of the Code and the nondiscrimination provisions set forth in Section 401(a)(4) of the Code and the regulations thereunder. Following the December 31, 2006 expiration of the special transition period allowed to a plan whose sponsor is involved in a corporate transaction described in Section 410(b)(6)(C) of the Code, compliance with the minimum coverage requirements and the nondiscrimination rules must be determined on a "controlled group" basis, taking into account for testing purposes not only former employees of the Company who are currently employed by Li & Fung USA, but *all* current employees of Li & Fung USA. As a result, any contributions made to the Plan in 2007 (and subsequent years) for the benefit of former Company employees would also have to benefit all or, at the very least, a significant number of Li & Fung USA employees. Given the large number of Li & Fung USA employees, the cost of compliance would be prohibitively expensive and unlikely to be undertaken by the Company. The probability that the lack of contributions will continue indefinitely is more than reasonable (and is perhaps almost a certainty) when one considers the fact that the largest share of any future contributions would have to be allocated to the accounts of Li & Fung USA employees who never worked for the Company and for whom the Company would have no reason to provide additional benefits.

Graham Schell
Briefly Stated, Inc.
May 30, 2007
Page 4 of 7

Although Mr. Lavin terminated employment prior to the date of the acquisition and the ensuing cessation of contributions to the Plan, he continued to be a "participant" for purposes of the Employee Retirement Income Security Act of 1974, as amended (hereinafter "ERISA"). Under Section 3(7) of ERISA, a "participant" is defined as a current or former employee "who is or may become eligible to receive a benefit" from an employee benefit plan. Mr. Lavin retained his status as a Plan "participant" within the meaning of ERISA following his termination of employment since he was clearly entitled to receive a benefit under the Plan. For the same reason, Mr. Lavin retained his status as a Plan "participant" following the Company's acquisition and its announced intention to discontinue making contributions to the Plan.

The Code requirement that participants in an individual account plan must be fully vested in their accrued benefit upon the complete discontinuance of contributions, applies both to active employees as well as to former employees who have not incurred a forfeiture as of the date of the complete discontinuance of contributions. The extent to which the full vesting requirements under Code Section 411(d)(3) apply to former employees who terminated employment *before* the plan's termination date is set forth in a General Counsel Memorandum (GCM) issued by the IRS in 1984. According to GCM 39310 (November 29, 1984), a participant's termination of employment does not trigger an *immediate* forfeiture of the participant's unvested benefits. Instead, the forfeiture of a participant's unvested benefits can only occur following the participant's receipt of a distribution that qualifies as a "cash out" distribution under Section 411(a)(7) of the Code, or after the participant incurs a "break-in-service" as defined in the plan. Based on the principle established in GCM 39310, the Service has consistently taken the position that a partially vested former employee who, as of the plan's termination date, has not incurred a break in service and has not received a qualifying "cash out" of the vested portion of his account, must be fully vested in the forfeitable portion of his accrued benefit when the plan is terminated.

Although GCM 39310 sets forth the IRS' position regarding the scope of Code Section 411(d)(3)'s vesting requirements in the context of a "plan termination," the same principle would equally apply in the context of a "complete discontinuance" of contributions which, like a plan termination, triggers the full vesting requirement under Section 411(d)(3)(B) of the Code. After all, GCM 39310 addresses the scope of the Code's vesting requirements triggered by an event described in Code Section 411(d)(3), and a complete discontinuance of contributions is one of the events described in that Section. Based on the reasonable probability that the lack of contributions will continue indefinitely as described above, the cessation of contributions constitutes a complete discontinuance of contributions within the meaning of Code Section 411(d)(3)(B) and would have the same effect for vesting purposes as a complete termination of the Plan. Furthermore, as previously pointed out, under the terms of the SPD, the discontinuance of contributions to the Plan constitutes a termination of the Plan.

Section 1.411(d)-2(d)(2) of the Treasury Regulations contains a timing rule under which a complete discontinuance of contributions becomes effective no later than the last day of the taxable year of the employer following the last taxable year for which the employer made a substantial contribution to the plan. The last substantial contribution

Graham Schell
Briefly Stated, Inc.
May 30, 2007
Page 5 of 7

made to the Plan was in 2005. Accordingly, the complete discontinuance of contributions became effective on the last day of the Company's 2006 tax year, or December 31, 2006.

Pursuant to Section 1.22 of Article I of the Plan, the "forfeiture" of a participant's account occurs on the *earlier* of: (a) the date on which the vested portion of the account balance is distributed to the participant, or (b) the last day of the Plan year in which the participant incurs five (5) consecutive one-year breaks in service. Mr. Lavin received a distribution under the Plan in March of 2007. Whether the event that triggered the full vesting requirement of his account occurred in 2005 following the cessation of contributions as would be dictated by the SPD, or such event first occurred on December 31, 2006 in accordance with the timing provisions contained in Section 1.411(d)-2(d)(2) of the Treasury Regulations, Mr. Lavin did not incur a forfeiture of any portion of his unvested account balance prior to the time he became fully vested in his account as a matter of law by virtue of the discontinuance of contributions to the Plan. Although Mr. Lavin was only vested in 40% of his account balance at the time he terminated employment, he did not suffer a forfeiture of the remaining 60% of his account under the terms of the Plan until he incurred a five-year break in service or received a "cash-out" distribution of his vested account balance. Following his termination of employment in March of 2005, the non-vested portion of his account was merely *forfeitable* pending a five-year break in service or the earlier "cash-out" of his vested benefit. Neither of the foregoing events occurred before the triggering event that required Mr. Lavin to become 100% vested in the unvested portion of his account balance.

The IRS' position in GCM 39310 has been followed by the courts on facts similar to the present case. See, *Bouchard v. Crystal Coin Shop, Inc.,* 843 F.2d 10 (1st Cir. 1988); *Flanagan v. Inland Empire Electrical Workers Pension Plan & Trust,* 3 F.3d 1246 (9th Cir. 1988); *Herrmann, v. E. W. Wylie Corporation and First Trust Company of North Dakota,* 766 F. Supp. 800 (D.C. N.D., 1991), where the court, relying on GCM 39310, required partially vested employees who terminated employment prior to the date of the plan's termination to become fully vested in the forfeitable portion of their account upon the subsequent termination of the plan. In each of the referenced cases, terminated participants did not incur a period of consecutive breaks in service that was long enough under the terms of the plan to incur a forfeiture of their unvested benefits. Nor did they receive a distribution of the vested portion of their account balance prior to the plan's termination date.

The court in *Herrmann* also rejected the argument put forth by the defendants that the decision to deny full vesting to the participant was entitled to a deferential standard of review. Under that standard, the defendants argued, their decision was reasonable and therefore not subject to judicial review unless shown to be "arbitrary and capricious." In rejecting the defendants' argument, the court cited the Fifth Circuit in *Penn v. Howe-Baker Engineers, Inc.,* 898 F.2d 1096, 1100 (5th Cir. 1990) where the court stated that the high level of deference accorded to plan fiduciaries under the "arbitrary and capricious" standard of review is limited to questions involving plan interpretation and not to questions involving interpretation of applicable law. According to the Fifth Circuit, where questions of law are involved, the court will apply the *de novo* standard of

Graham Schell
Briefly Stated, Inc.
May 30, 2007
Page 6 of 7

review. In addition, the Court stated that where a fiduciary's interpretation of the terms of a qualified plan, although reasonable on its face, results in the plan's failure to comply with the Code's qualification requirements, it will be deemed to be "arbitrary and capricious" and subject to *de novo* review. The decision to distribute only 40% of Mr. Lavin's account balance under the Plan and the resulting forfeiture of the remaining 60% of his account violates the Code's minimum vesting requirements and imperils the Plan's qualified status under the Code. Accordingly, the Plan's decision to deny Mr. Lavin the benefits that he is entitled to under applicable law is subject to *de novo* review.

Mr. Lavin's claim of entitlement to the unvested portion of his account balance would prevail even under the strict standards applied by the Sixth Circuit in *Borda v. Hardy, Lewis, Lewis, Pollard & Page, P.C.* 130 F.3d 1062 (6th Cir. 1998). In *Borda*, the Sixth Circuit held that the right of former employees to become fully vested in their accrued benefit upon the termination of the plan is limited to those employees who are "affected" by the plan's termination. Like Mr. Lavin, the plaintiff in *Borda*, was only partially vested in his accrued benefit when he terminated employment. Approximately three-and-a-half years after terminating employment, the employer was dissolved and the plan was terminated. Mr. Borda claimed entitlement to the unvested portion of his accrued benefit under the plan. As of the date of the plan's termination, Mr. Borda had not received a distribution of the vested portion of his accrued benefit, nor had he incurred a five-year break in service. In rejecting Mr. Borda's claim, the Sixth Circuit ruled that the full vesting requirement under Section 411(d)(3) of the Code applies only to "affected employees" and not to former employees who, owing to the dissolution of the plan sponsor, had no prospect of being rehired and meeting the plan's vesting requirements. According to the Sixth Circuit, Mr. Borda was not affected by the plan's termination because he had no prospect of reviving his past service credits and increasing the vested percentage of his accrued benefit by someday returning to work for his former employer who no longer existed.

Unlike the facts in *Borda*, Mr. Lavin never lost the ability to revive his past service credits when the lack of contributions to the Plan ripened into a complete discontinuance of contributions which, in turn, gave rise to the Plan's termination pursuant to the terms of the SPD. Had there not been a complete discontinuance of contributions which resulted in the effective termination of the Plan, Mr. Lavin's ability to increase his vesting percentage in the unvested portion of his account would have been preserved through his ability to be reemployed by Li & Fung USA, the successor employer. The termination of the Plan effectively closed off any opportunity that Mr. Lavin had to further vest in his accrued benefit. As such, Mr. Lavin was clearly an "affected employee." [*]

---

[*] The Sixth Circuit's decision in *Borda* is somewhat aberrant in that it is neither supported by GCM 39310 nor by the legislative history. The pre-ERISA predecessor to Code Section 411(d)(3) which required full vesting upon a plan's termination or upon the complete discontinuance of contributions to the plan, did not contain the restrictive language. The regulations extended the full vesting requirement to partial terminations, but only for those employees who were *affected by* the partial termination of the plan (*i.e.*, those employees who lost their job in connection with the partial termination). When partial terminations were first added to Code Section 411(d)(3), Congress used the phrase "affected employees" to make it

Graham Schell
Briefly Stated, Inc.
May 30, 2007
Page 7 of 7

      Based on the foregoing, Mr. Lavin is entitled to the distribution of his entire account balance plus accrued interest. The reallocation of the forfeitable portion of Mr. Lavin's account to the accounts of current active participants not only violates the terms of the Plan, the SPD and the Code's plan qualification requirements, but also constitutes a breach of ERISA's fiduciary duty which requires a plan fiduciary to discharge his duties with respect to the plan solely in the interest of participants and beneficiaries and in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with applicable law.

      We look forward to your favorable response.

Sincerely,

Samuel Brezel

SB:rb

cc: Anthony E. Cristiano
    John Lavin

---

clear that those who remain employed following an event that gives rise to a partial termination do not get the benefit of full vesting. Neither common sense nor the legislative history suggests that Congress intended to alter the pre-ERISA rule under which *all* employees must become fully vested when there is a complete (as opposed to a "partial") plan termination or when there is a complete discontinuance of contribution under the plan.

The Service did not concur with the decision in *Borda* and held that Mr. Borda should have been 100% vested upon plan termination. As a result of the Service's non-acquiescence, the *Borda* decision cannot be relied on outside the jurisdiction of the Sixth Circuit where the Service will challenge any forfeiture of unvested benefits on the basis of the *Borda* decision.

**D-080**