# EXHIBIT D-3



November 19, 2007

**VIA FEDERAL EXPRESS AND**
**EMAIL (*SAMBREZEL@BENEFITLAWS.COM*)**
Samuel Brezel, Esq.
40 Wall Street
New York, N.Y. 10005

                    Re:    John Lavin

Dear Mr. Brezel:

This letter is written in response to your May 30, 2007 letter on behalf of John Lavin ("Lavin" or "Claimant").

Your letter advances a formal claim for additional benefits for Claimant (the "Claim") from the Briefly Stated, Inc. Profit Sharing Plan (the "Plan").[1]  Specifically, you assert that Claimant became fully vested in his accrued benefit under the Plan as a result of the complete discontinuance of contributions to the Plan by Briefly Stated, Inc. (the "Company") following the Company's acquisition by Li & Fung USA ("Li & Fung").[2] You further assert that, since Claimant has received a distribution of 40%[2] of his accrued benefit under the Plan, Claimant is entitled to additional benefits based upon full (as opposed to 40%) vesting.

For the reasons and based upon the documentary record below, the Claim is denied.

## INTRODUCTION

As an employee pension benefit plan governed by the Employee Retirement Income Security Act ("ERISA"), the Plan is required to contain procedures for determining benefit claims and appeals. These "Claims Procedures," which are the sole and exclusive method for a participant to claim benefits under the Plan, are set forth in Section 14.12 of the Plan.  The Claim, and any subsequent appeal, will be handled in accordance with these Claims Procedures.

---

[1] Prior to January 1, 2006, the Plan was known as the Briefly Stated, Inc. Employee Stock Ownership Plan.  Effective as of that date, the Plan was amended and restated and renamed the Briefly Stated, Inc. Profit Sharing Plan.  Unless otherwise specified to the contrary, any references to sections of the Plan refer to the January 1, 2006 amendment and restatement.

[2] As discussed below, this represents Claimant's vested percentage under the Plan's vesting schedule in effect on his date of termination.

Samuel Brezel, Esq.
Page 2

Claims for benefits are decided by the Plan Administrator.  The Company is designated as the Plan Administrator under the Plan.  The Company has appointed a committee, consisting of the undersigned, Brad Egna and Tom Haugen (the "Committee"), to perform these duties on behalf of the Company.

## DOCUMENTARY RECORD

The Plan Administrator bases its determination of the Claim on the following documents:

1.  The Plan document, as amended and restated effective January 1, 2006;

2.  The summary plan description ("SPD") for the Plan;

3.  Your letter dated May 30, 2007;

4.  Section 6.8(b) of the stock purchase agreement regarding the sale of the Company's stock to Li & Fung.

## RELEVANT FACTS

The Committee has determined the following facts with respect to the Claim:

(1)  Claimant was hired by the Company on October 2, 2000.

(2)  Claimant's employment with the Company was terminated on March 30, 2005.

(3)  Prior to January 1, 2006, the Plan was an "Employee Stock Ownership Plan", or "ESOP."

(4)  Prior to September 2005, the Plan's assets consisted of shares of the Company's common stock.

(5)  In September 2005, all of the issued and outstanding shares of the Company's common stock, including the shares owned by the Plan, was acquired by Li & Fung USA.

(6)  When Claimant's employment with the Company was terminated on March 30, 2005, Claimant was credited with four (4) Years of Service.

(7)  When Claimant's employment with the Company was terminated on March 30, 2005, Claimant was 40% vested in his Plan account balance.



Samuel Brezel, Esq.
Page 3

(8) In 2007, Claimant received a distribution from the Plan in the amount of $598,600.20, representing 40% of the Claimant's account balance of $1,496,500.50.

## PERTINENT PLAN PROVISIONS[3]

The Committee has determined that the following Plan provisions are applicable to the Claim:

(1) Section 1.01 of the Plan provides that the Plan was converted from an ESOP to a profit sharing plan effective as of January 1, 2006.

(2) Section 2.02 of the Plan defines "Administrator" or "Plan Administrator" as the Company or such other person or committee as may be appointed to administer the Plan in accordance with Article 14.

(3) Section 14.01 of the Plan provides that the Company may appoint a committee to perform the duties of the Plan Administrator on behalf of the Company.

(4) Sections 14.02 and 14.14 of the Plan grant the Committee the full and absolute discretionary authority to interpret the Plan and make final and binding benefit determinations.

(5) Section 2.19 defines "Profit Sharing Contributions" as "the contributions, if any, made pursuant to Section 6.01.

(6) Sections 3.06 and 3.07 provide that a participant will be credited with a "Year of Service" for vesting purposes for each Plan Year in which the participant is credited with at least 1,000 hours of service.

(7) Section 2.18 defines "Plan Year" as the calendar year.

(8) Section 6.01(a) of the Plan provides that the Company may, at its discretion, determine that a Profit Sharing Contribution is appropriate for a Plan Year.

(9) Section 10.04(a) provides that amounts that become forfeitures will be used to either pay administrative expenses or to reduce the amount of Profit Sharing Contributions to be made by the Company for the Plan Year.

(10) Section 10.01(b) provides that a participant's vested interest in their account will be determined in accordance with a 3-7 year graded vesting schedule upon termination of employment prior to normal retirement. Under the schedule, a

---

[3] As noted above, references to specific Plan provisions refer to the Plan, as was amended and restated effective as of January 1, 2006, unless otherwise specified.



Samuel Brezel, Esq.
Page 4

participant with 4 Years of Vesting Service has a vested interest of 40% in the Plan account.

(11)   Section 10.01(c) provides that a participant's vested interest in amounts attributable to Profit Sharing Contributions made for Plan Years beginning on and after January 1, 2007 will be determined in accordance with a 2-6 year graded vesting schedule.

(12)   Section 10.02 provides that the nonvested portion of a participant's account will be forfeited when the participant receives a distribution of the vested balance of their account.

(13)   Section 14.02 of the Plan provides that the Administrator shall have the full authority and power to administer and construe the Plan, including without limitation the power to interpret the Plan and to decide all questions concerning the rights of any participant under the Plan.

(14)   Section 14.14 provides that the Administrator has full and absolute discretion and authority to determine the amount of benefits to which any person is entitled under the Plan. Section 14.14 further provides that any such determination will be final and binding on all parties, and may not be set aside in any judicial proceeding unless found to be arbitrary and capricious by a court of competent jurisdiction.

(15)   Section 15.03(a) of the Plan provides that the interest of each affected employee will become fully vested and nonforfeitable if the Plan is terminated in whole or in part.

## *ANALYSIS*

### BACKGROUND

It is undisputed that Claimant was employed by the Company from October 2, 2000 until March 30, 2005. Claimant was therefore credited with four (4) Years of Service for vesting purposes. (Plan, Sections 3.06 and 3.07). In accordance with the Plan's vesting schedule for the relevant period[4], Claimant therefore had a vested interest in his account balance of 40%. (Plan, Section 10.01(b)). On this basis, Claimant received a distribution of $598,600.20, representing 40% of the Claimant's account balance of $ 1,496,500.50.

Notwithstanding the foregoing, you assert that Claimant became fully (that is, 100%) vested in his accrued benefit under the Plan "as a result of the decision by the Company to discontinue making contributions to the Plan following the Company's acquisition by

---

[4] The Plan provides a different vesting schedule for amounts attributable to Profit Sharing Contributions made for Plan Years beginning on and after January 1, 2007. Plan, Section 10.01(c).



D-084

Samuel Brezel, Esq.
Page 5

Li & Fung USA." In support of this theory, you cite Section 411(d)(3) of the Internal Revenue Code and the regulations promulgated thereunder.

## COMPLETE DISCONTINUANCE OF CONTRIBUTIONS-IRS GUIDANCE

### IRS Regulations

Code Section 411(d)(3) requires, as a condition of tax qualification, a plan to provide that the rights of all affected employees become fully vested and nonforfeitable upon the termination of the plan (Code Section 411(d)(3)(A)) or, with respect to a plan to which section 412 does not apply[5], upon complete discontinuance of contributions under the plan (Code Section 411(d)(3)(B)). Code Section 411(d)(3) would require the Plan to provide for full vesting of all affected employees upon a "complete discontinuance of contributions."[6]

The relevant IRS regulations provide as follows:

> General rule. For purposes of this section, **a complete discontinuance of contributions** under the plan is **contrasted with a suspension** of contributions under the plan **which is merely a temporary cessation** of contributions by the employer. A complete discontinuance of contributions may occur although some amounts are contributed by the employer under the plan if such amounts are not substantial enough to reflect the intent on the part of the employer to continue to maintain the plan. **The determination** of whether a complete discontinuance of contributions under the plan has occurred **will be made with regard to all the facts and circumstances in the particular case**, and without regard to the amount of any contributions made under the plan by employees. The determination of whether a complete discontinuance of contributions under the plan has occurred will be made with regard to all the facts and circumstances in the particular case, and without regard to the amount of any contributions made under the plan by employees. Among the factors to be considered in determining whether a suspension constitutes a discontinuance are:

---

[5] Section 412 of the Code does not apply to profit sharing plans such as the Plan. Code Section 412(h)(1).
[6] The Plan provides for full vesting upon termination. Plan, Section 15.03(a). The Committee interprets Section 15.03(a) as encompassing a "complete discontinuance of contributions" as well as a termination.



D-085

Samuel Brezel, Esq.
Page 6

> (i)     Whether the employer may merely be calling an actual discontinuance of contributions a suspension of such contributions in order to avoid the requirement of full vesting as in the case of a discontinuance, or for any other reason;
>
> (ii)    Whether contributions are recurring and substantial; and
>
> (iii)   Whether there is any reasonable probability that the lack of contributions will continue indefinitely.
>
> Reg. § 1.411(d)-2(d)(1)(emphasis added).

The IRS regulations, therefore, do not provide specific guidance as to what constitutes a "complete discontinuance of contributions." The regulations do, however, contrast a "temporary cessation" with a "complete discontinuance," with full vesting required only upon the latter. While the regulation further specifies a number of nonexclusive factors to be considered in determining whether a complete discontinuance has occurred, the determination is ultimately based upon the relevant facts and circumstances.

### Internal Revenue Service Manual

Additional guidance is also found in the Internal Revenue Service Manual ("IRS Manual").[7] In this regard, the IRS Manual provides that "[i]f the employer has **failed to make substantial contributions in 3 out of 5 years, consider the issue of** discontinuance of contributions." IRS Manual, Section 7.12.1.2.6-1(c)(emphasis added).

The IRS Manual, therefore, provides that a complete discontinuance of contributions cannot occur unless and until substantial contributions are not made for 3 out of five years. Agents are instructed to "consider" the issue of a complete discontinuance of contributions once this minimum threshold is met.

## A COMPLETE DISCONTINUANCE OF CONTRIBUTIONS DID NOT OCCUR

### Recurring and Substantial Contributions

The Committee has found a history of recurring and substantial contributions to the Plan.

The Plan was effective January 1, 2000. The Company made recurring and substantial contributions to the Plan for each Plan Year through and including 2005. Your argument

---

[7] The IRS Manual is the official compilation of policies, procedures, instructions, and guidelines relating to the organization, functions, administration, and operations of IRS. Although it is not legally binding, the IRS Manual has been cited by several courts as a useful interpretive tool.



Samuel Brezel, Esq.
Page 7

that "a complete discontinuance of contributions became effective on the last day of the Company's tax year, or December 31, 2006" is therefore based solely upon the Company's alleged failure to make a contribution in 2006.

The Committee does not agree.  To the contrary, the Committee has determined that the alleged failure to make a contribution in 2006, after having made recurring and substantial contributions for the six prior consecutive years, does not constitute a complete discontinuance of contributions.  The Committee therefore further determines that a termination of the Plan did not occur on this basis under Plan Section 15.03(a).[8]

The Committee also disagrees with your contention that "the last substantial contribution made to the Plan was in 2005."   The Plan provides that the Company will, at its discretion, determine if and to what extent a Profit Sharing Contribution is appropriate for a Plan Year. Plan Section 6.01(a).   The Plan further provides that amounts that become forfeitures will be used to either pay administrative expenses or to reduce the amount of Profit Sharing Contributions to be made by the Company for the Plan Year. Plan Section 10.04(a).  No forfeitures have been used to pay administrative expenses.  Accordingly, under the terms of the Plan, forfeitures function as deemed Profit Sharing Contributions and are allocated accordingly.[9]

### Lack of Intent to Permanently Cease Contributions

Your letter also asserts that a complete discontinuance of contributions occurred based upon the Company's intention to permanently cease making contributions.  In support, you cite (1) the absence of any provisions in the acquisition agreements requiring Li & Fung USA to adopt and maintain the Plan; (2) the "announced intention to discontinue making contributions to the Plan;" and (3) the Company's failure to "assuage the concerns of participants who were affected by the discontinuance of contributions by describing it as a mere temporary cessation or suspension."  As explained below, these arguments misstate both the facts and the law.

Your letter asserts that "[t]o the best of my client's knowledge, no provisions were made under the terms of the acquisition agreement for LI & Fung to adopt the Plan or to resume making contributions thereto."  Claimant's knowledge notwithstanding, the terms of the stock purchase agreement (specifically Section 6.8(b)) require Li & Fung to "continue to maintain, and not to terminate" the Plan for a period of three years and specifically authorize the conversion of the Plan from an ESOP to a profit sharing plan.

Your statement regarding the "announced intention" to cease contributions is similarly flawed.  As your own letter acknowledges, "participants were notified in writing that no

---

[8] As noted above, the Committee interprets Section 15.03(a) as encompassing a "complete discontinuance of contributions" as well as a formal termination.  This interpretation is consistent with your letter, which states that "the discontinuance of contributions to the Plan constitutes a termination of the Plan."

[9] The Committee further notes that forfeitures are treated in the same manner as employer contributions for the purpose of applying several tax-qualification rules. See, e.g., Code Section 415.



D-087

Samuel Brezel, Esq.
Page 8

further contributions of employer stock would be made to the Plan." This is entirely consistent with the Plan's sale of shares and conversion to a profit sharing plan following such sale, as there were no shares owned by the Plan and therefore no shares to allocate to Plan participants. Your statement, therefore, regarding the "announced intention to discontinue making contributions to the Plan" is both disingenuous and erroneous.

Lastly, with respect to the alleged significance of the Company's failure to describe the contribution status as temporary, we note that the Claimant, not the Company or the Plan, bears the burden of establishing that there was a complete discontinuance of contributions. Steiner Corp. Retirement Plan v. Bertoldo, 31 F. 3d 935, 941-42 (10th Cir. 1994).

We have considered the other arguments you raised and find them similarly unavailing.

## CONCLUSIONS

Based on the foregoing, the Committee has made the following determinations:

(1) The Committee interprets Section 15.03 of the Plan, entitled "Consequences of Termination," as applying to both a formal Plan termination and a complete discontinuance of contributions.

(2) A complete discontinuance of contributions to the Plan has not occurred. Accordingly, the Plan has not been terminated, and Claimant's interest in his Plan account balance does not become fully vested and nonforfeitable pursuant to Plan Section 15.03(a).

(3) When Claimant received a distribution of $598,600.20, representing 40% of the Claimant's account balance of $ 1,496,500.50, Claimant received his entire vested benefit under the Plan.

The Claim is therefore denied.

## RIGHT TO APPEAL

In accordance with the Plan's Claims Procedures, Claimant has the right to appeal this claim denial. A written appeal must be filed Claimant (or his authorized representative) within 60 days of the date that you receive this letter. Failure to do so will render this decision final and binding without further appeal.

Claimant (or his authorized representative) also have the following rights:



Samuel Brezel, Esq.
Page 9

(1)    to submit additional documentation in support of your appeal, without regard to whether or not the documentation was considered in the original claim denial;

(2)    to request and to receive free of charge copies of all documents relevant to your claim, as stated in the "Documentary Record" section above;

(3)    to bring a civil action under Section 502(a) of ERISA following the exhaustion of the Claims Procedures.

Sincerely,

**Retirement Committee of the Briefly Stated, Inc. Profit Sharing Plan**

BY: _____

Name: _ALAN BECKERMAN_

Date: _11/19/07_

D-089





**SAMUEL BREZEL**

ATTORNEY AT LAW

44 WALL STREET
NEW YORK, NY 10005

TEL: (212) 797-9700 • FAX: (212) 797-9701
EMAIL: SAMBREZEL@BENEFITLAWS.COM

**<u>VIA CERTIFIED MAIL</u>**                               December 4, 2007

Mr. Alan Beckerman
Briefly Stated, Inc.
1359 Broadway
New York, N.Y. 10018

Re: Briefly Stated, Inc. Profit Sharing Plan *(formerly known as the Briefly Stated, Inc.,*
*Employee Stock Ownership Plan)* (hereinafter, the "Plan")

Dear Mr. Beckerman:

The following is in reply to the November 19, 2007 benefit denial letter written
on behalf of the Retirement Committee of the Briefly Stated, Inc. Profit Sharing Plan (the
"Committee") in response to Mr. Lavin's claim for additional benefits under the Plan.

The Committee's decision to deny Mr. Lavin's claim for additional benefits under
the Plan was based on its determination that a complete discontinuance of contributions
did not occur. We disagree with the Committee's determination for the reasons stated
below.

In accordance with the claims procedures set forth in Section 503 of the
Employee Retirement Income Security Act of 1974, as amended ("ERISA") and pursuant
to the procedures set forth in Section 14.12 of the Plan, this letter constitutes a formal
request for review on appeal of the benefit denial.

Neither the statutory provisions in Section 411(d)(3) of the Internal Revenue
Code of 1986 (the "Code") nor the regulations promulgated thereunder, offer specific
guidance for determining whether an employer's cessation of contributions constitutes "a
complete discontinuance of contributions" for purposes of triggering the full vesting
requirements under Code Section 411(d)(3)(B). Indeed, in an apparent effort to avoid
issuing specific guidance under Code Section 411(d)(3) which would serve to restrict its
application to a limited set of circumstances, the regulations more readily define "a
complete discontinuance of contributions" by *what it is not*. The regulations at Treas.
Reg. §1.411(d)-2(d) contrast "a complete discontinuance of contributions" with a
"temporary suspension of contributions," which does not trigger the full vesting
requirements described in Code Section 411(d)(3)(B). Although the regulations list a
number of factors to be considered in determining whether an employer's cessation of
contributions constitutes "a complete discontinuance of contributions" for purposes of
Code Section 411(d)(3)(B), the regulations maintain that such a determination is
ultimately based on a consideration of *all of the facts and circumstances* of the particular
case.

Alan Beckerman
Briefly Stated, Inc.
December 4, 2007
Page 2 of 5

Mr. Lavin's claim for additional benefits is based on his assertion that the Company's failure to make contributions to the Plan following its acquisition by Li & Fung USA constituted "a complete discontinuance of contributions" under Code Section 411(d)(3). As a result, he became fully vested in his account balance under the Plan.

In rejecting Mr. Lavin's claim, the Committee contends that a complete discontinuance of contributions did not occur following the Company's acquisition and that Mr. Lavin is therefore not entitled to become fully vested in his account balance. The Committee draws support for its position from language contained in the Internal Revenue Manual (IRS Manual or IRM). Section 7.12.1.2.6 of Part 7, Chapter 12 of the IRM states, *in relevant part,* as follows:

A.   *A determination that contributions have been discontinued and the date upon which such discontinuance occurred requires consideration of all the relevant facts and circumstances.*

B.   *A discontinuance of contributions may occur although some amounts are contributed by the employer under the plan if such amounts are not substantial enough to reflect the intent on the part of the employer to continue to maintain the plan. See Reg. 1.411(d)–2(d).*

C.   *If the employer has failed to make substantial contributions in 3 out of 5 years, and there is a pattern of profits earned, consider the issue of discontinuance of contributions.*

Paragraphs A. and B. of the IRM are consistent with the regulations under Code Section 411(d)(3) which adopt a *facts and circumstances* test for purposes of determining whether a complete discontinuance of contributions has occurred. Nevertheless, in denying Mr. Lavin's claim for additional benefits under the Plan, the Committee relies solely on the language in paragraph C. above, which the Committee misconstrues to stand for the proposition that "a complete discontinuance of contributions cannot occur unless and until substantial contributions are not made for 3 out of 5 years." We disagree.

Pursuant to the Committee's interpretation of the referenced IRM, an employer's failure to make contributions cannot become a complete discontinuance for purposes of Code Section 411(d)(3) unless such failure occurs in at least 3 out of 5 years. Thus, according to the Committee, the IRM establishes a minimum threshold requirement (or safe harbor) which would serve to negate a determination that a complete discontinuance has occurred unless there has been a failure by the employer to make substantial contributions in 3 out of 5 years. Such an interpretation is not supported by the plain language of paragraph C. and is incompatible with the *facts and circumstances* test set forth in the regulations. Nor can the Committee's interpretation be sustained under the IRS' limited authority to independently establish a safe harbor test for determining whether an employer's failure to contribute to a plan constitutes "a complete discontinuance" in the absence of a grant of authority from Congress or the Treasury.

D-091

Alan Beckerman
Briefly Stated, Inc.
December 4, 2007
Page 3 of 5

The IRS Manual is an internal agency guidebook which contains a compilation of the policies, procedures and guidelines relating to the organization, functions, administration and operations of the Internal Revenue Service. It is written and designed by the IRS to provide guidance and instruction to revenue agents and other IRS employees who administer the federal income tax laws. Procedures set forth in the IRS Manual are not binding on the IRS, do not have the effect of a rule of law, and are not promulgated pursuant to any delegation of authority by Congress.

As a handbook and guide for IRS personnel, the IRM includes "processing" and "examination" steps that are designed to *alert* IRS personnel to potential compliance issues when they encounter certain factual situations. It is in this context that paragraph C. of the referenced IRM must be read. In contrast to the Committee's interpretation, paragraph C. of the referenced IRM is not a statement reflecting the IRS' official ruling position regarding when an employer's cessation of contributions constitutes a complete discontinuance of contributions under Code Section 411(d)(3). Rather, the provision is intended to *alert* IRS personnel who are responsible for reviewing qualified employee plans to a potential issue which may be triggered by an otherwise profitable employer's failure to make contributions in 3 out of 5 years. Hence, the use of the term "consider" in paragraph C. of the IRM. Under the Committee's reading of paragraph C., the use of such term is not only inappropriate and misleading, but also inconsistent with the *facts and circumstances* test set forth in the regulations and adopted in paragraphs A. and B. of the referenced IRM.

The Committee further contends that a complete discontinuance of contributions did not occur given the Company's history of making recurring and substantial contributions for the six consecutive year period ending in 2005. The Committee's argument fails to take into account the factors listed in Treas. Reg. §1.411(d)-2(d)(1) that need to be considered when determining whether a complete discontinuance of contributions has occurred. Among the factors listed in the regulations is "whether there is any reasonable probability that the lack of contributions will continue indefinitely." As explained in the initial claim letter, as a result of the Company's acquisition by Li & Fung USA, the likelihood that the discontinuance of contributions will continue indefinitely is highly compelling given the level of contributions that would be required to maintain the Plan's qualified status following the acquisition and given the lack of economic benefit to be derived from the Company's contribution to the accounts of participants who were never employed by the Company.

The Committee next contends that the potential allocation of forfeitures has the same effect as a Plan contribution thus eliminating the claim that there was a complete discontinuance of contributions under the Plan pursuant to Code Section 411(d)(3). This argument is flawed for several reasons. First, to date, forfeitures have not been allocated to the accounts of participants who have not had a termination of employment. In accordance with the terms of the Plan, such an allocation cannot occur prior to the time a terminated participant incurs five (5) consecutive one-year breaks in service or the earlier receipt of a "cash out" of the participant's vested accrued benefit under the Plan. Second, the Committee's assertion that an allocation of forfeitures constitutes a contribution for

Alan Beckerman
Briefly Stated, Inc.
December 4, 2007
Page 4 of 5

purposes of Code Section 411(d)(3) is wrong.  For purposes of avoiding a complete discontinuance of contributions under Code Section 411(d)(3), the regulations require an employer to make substantial and recurring contributions.  Unlike actual contributions by an employer, the allocation of forfeitures represents employer contributions that were previously made and are simply being reallocated among remaining participants.  The allocation of contributions previously made by an employer cannot be used to satisfy the "substantial and recurring contribution" requirement of Code Section 411(d)(3).

Lastly, in support of Mr. Lavin's claim, we once again note that no provisions were made under the terms of the acquisition agreement for Li & Fung USA to either adopt the Plan or to resume making substantial and recurring contributions thereto.  In fact, as mentioned in the initial claim letter, every effort has been made to disassociate Li & Fung USA from the Plan, as evidenced in written communications to Plan participants which made a point of emphasizing that the Plan is being administered separately from the Li & Fung USA 401(k) Plan.

The Committee points to Section 6.8(b) of the stock purchase agreement which requires Li & Fung USA to "continue to maintain, and not to terminate" the Plan for a period of three years, as evidence to the contrary.  The Committee's response, however, misses the point entirely.  Mr. Lavin's claim for additional benefits under the Plan is not based on an allegation that the Plan was terminated or that Li & Fung USA failed to continue to maintain the Plan following the acquisition.  Rather, Mr. Lavin's claim of entitlement to the balance of his accrued benefit (i.e., 100% of his account balance) is based on the statutory provisions contained in Code Section 411(d)(3) and the regulations thereunder.  Under those provisions, all that is required to trigger the full vesting requirement of a participant's account balance is a showing, based on a consideration of all of the *facts and circumstances*, that there was a complete discontinuance of contributions to the Plan.  We believe that we have met that burden.  As explained in our initial claim letter, following the Company's acquisition by Li & Fung USA in September of 2005, participants were notified in writing that no further contributions of employer stock would be made to the Plan.  While the initial claim letter acknowledged that the notice only referred to contributions of *employer stock*, the letter correctly points out that neither contributions of employer stock nor contributions of cash or other property were, in fact, made to the Plan following the Company's acquisition by Li & Fung USA.  It is Mr. Lavin's contention that *actions speak louder than words*.

Pursuant to Mr. Lavin's right under ERISA and the Plan's Claim Procedures to appeal the Committee's benefit denial decision and to obtain copies of documents relevant to his claim for benefits under the Plan, request is hereby made for a copy of Section 6.8(b) of the stock purchase agreement referenced in the Committee's benefit denial letter and described as being part of the Documentary Record upon which the benefit denial was based.  In addition, please furnish the undersigned with copies of any other provisions contained in such agreement or any other agreement pertaining to the Plan or the benefits payable thereunder.

Alan Beckerman
Briefly Stated, Inc.
December 4, 2007
Page 5 of 5

In closing, it is our position, based on a consideration of *all of the facts and circumstances*, that the Company's cessation of contributions following its acquisition by Li & Fung USA, was intended to continue indefinitely and resulted in "a complete discontinuance of contributions" under the Plan.  Accordingly, Mr. Lavin became fully vested in his accrued benefit (i.e., account balance) under the Plan and is entitled to a distribution of the entire balance credited to his account thereunder.

Sincerely,

Samuel Brezel

SB:rb

cc: John Lavin

Representing Management Exclusively in Workplace Law and Related Litigation

# jackson|lewis
Attorneys at Law

| | | |
|---|---|---|
| Jackson Lewis LLP | ATLANTA, GA | LONG ISLAND, NY | PORTLAND, OR |
| | BIRMINGHAM, AL | LOS ANGELES, CA | PROVIDENCE, RI |
| One North Broadway | BOSTON, MA | MIAMI, FL | RALEIGH-DURHAM, NC |
| | CHICAGO, IL | MINNEAPOLIS, MN | RICHMOND, VA |
| White Plains, New York 10601 | CLEVELAND, OH | MORRISTOWN, NJ | SACRAMENTO, CA |
| | DALLAS, TX | NEW YORK, NY | SAN FRANCISCO, CA |
| Tel 914 328-0404 | DENVER, CO | ORANGE COUNTY, CA | SEATTLE, WA |
| Fax 914 328-1882 | GREENVILLE, SC | ORLANDO, FL | STAMFORD, CT |
| | HARTFORD, CT | PHILADELPHIA, PA | WASHINGTON, DC REGION |
| www.jacksonlewis.com | HOUSTON, TX | PITTSBURGH, PA | WHITE PLAINS, NY |

March 31, 2008

**VIA FEDERAL EXPRESS AND**
**EMAIL (SAMBREZEL@BENEFITLAWS.COM)**
Samuel Brezel, Esq.
44 Wall Street
New York, N.Y. 10005

Re:    John Lavin

Dear Mr. Brezel:

The Administrative Committee of the Briefly Stated, Inc. Profit Sharing Plan (the "Committee[1]" and the "Plan[2]", respectively) has asked us to communicate their determination of the appeal of the previously denied claim for benefits by John Lavin ("Lavin" or "Claimant") to you.

For the reasons and based upon the documentary record below, the appeal is denied.

*     *     *

## BACKGROUND

By letter dated May 30, 2007 (the "Claim"), you advanced a formal claim for additional benefits from the Plan on behalf of Claimant. The Claim asserted that Claimant became fully vested in his accrued benefit under the Plan as a result of the complete discontinuance of contributions to the Plan by Briefly Stated, Inc. (the "Company") following the Company's acquisition by Li & Fung USA ("Li & Fung"). The Claim further asserted that, since Claimant had received a distribution of 40%[3] of his accrued benefit under the Plan, Claimant was entitled to additional benefits based upon full (as opposed to 40%) vesting.

By letter dated November 19, 2007 (the "Denial"), the Committee denied the Claim. The Committee interpreted Section 15.03 of the Plan, entitled "Consequences of Termination," as applying to both a formal plan termination and a complete discontinuance of contributions. The Committee further determined that a complete

---

[1] The Company is designated as the Plan's administrator. The Company has appointed a committee to perform certain duties, including the determination of benefit claims and the appeal of denial claims.
[2] Prior to January 1, 2006, the Plan was known as the Briefly Stated, Inc. Employee Stock Ownership Plan. Effective as of that date, the Plan was amended and restated and renamed the Briefly Stated, Inc. Profit Sharing Plan. Unless otherwise specified to the contrary, any references to sections of the Plan refer to the January 1, 2006 amendment and restatement.
[3] As discussed below, this represents Claimant's vested percentage under the Plan's vesting schedule in effect on his date of termination.



Samuel Brezel, Esq.                                                                    March 31, 2008
Page 2

discontinuance of contributions had not occurred, and that Lavin received his entire vested Plan benefit when he received his distribution in March 2007.

By letter dated December 4, 2007 (the "Appeal"), you appealed the Denial on behalf of Claimant. The Appeal asserts the same theory as the Claim, specifically that the failure to make contributions to the Plan following the Company's acquisition by Li & Fung resulted in a complete discontinuance of contributions under Section 411(d)(3) of the Internal Revenue Code (the "Code"). No additional information or documentation was presented to the Committee for consideration in deciding the Appeal.

## DOCUMENTARY RECORD

The Committee bases its determination of the Appeal on the following documents:

1.    The Plan document, as amended and restated effective January 1, 2006;

2.    The summary plan description ("SPD") for the Plan;

3.    Your letter dated May 30, 2007;

4.    Your letter dated December 4, 2007;

5.    Section 6.8(b) and (c) of the stock purchase agreement regarding the sale of the Company's stock to Li & Fung.

## RELEVANT FACTS

The Committee has determined the following facts with respect to the Appeal:

1.    Claimant was hired by the Company on October 2, 2000.

2.    Claimant's employment with the Company was terminated on March 30, 2005.

3.    From January 1, 2000 (the "Effective Date") through December 31, 2005, the Plan was an "Employee Stock Ownership Plan", or "ESOP."

4.    Prior to September 2005, the Plan's assets consisted primarily of shares of the Company's common stock.

# jackson lewis
Attorneys at Law

Samuel Brezel, Esq.
Page 3

5.  In September 2005, all of the issued and outstanding shares of the Company's common stock, including the shares owned by the Plan, were acquired by Li & Fung.

6.  When Claimant's employment with the Company was terminated on March 30, 2005, Claimant was credited with four (4) Years of Service.

7.  When Claimant's employment with the Company was terminated on March 30, 2005, Claimant was 40% vested in his Plan account balance.

8.  In March 2007, Claimant received a distribution from the Plan in the amount of $598,600.20, representing 40% of the Claimant's account balance of $1,496,500.50.

9.  From the Effective Date through December 31, 2005, recurring and substantial contributions to the Plan were made by the Company.

10. For the year ending December 31, 2006, approximately $550,000 was funded from forfeitures and allocated to Plan participants.

11. No forfeitures have been used to pay Plan administrative expenses.

## PERTINENT PLAN PROVISIONS[4]

The Committee has determined that the following Plan provisions are relevant to the Appeal:

## VESTING

1.  Sections 3.06 and 3.07 provide that a participant will be credited with a "Year of Service" for vesting purposes for each Plan Year in which the participant is credited with at least 1,000 hours of service.

2.  Section 10.01(b) provides that a participant's vested interest in their account will be determined in accordance with a 3-7 year graded vesting schedule upon termination of employment prior to normal retirement.  Under the schedule, a participant with 4 Years of Vesting Service has a vested interest of 40% in the Plan account.

---

[4] As noted above, references to specific Plan provisions refer to the Plan, as was amended and restated effective as of January 1, 2006, unless otherwise specified.

# jackson|lewis
#### Attorneys at Law

Samuel Brezel, Esq.                                                      March 31, 2008
Page 4

3.  Section 15.03(a) of the Plan provides that the interest of each affected employee
    will become fully vested and nonforfeitable if the Plan is terminated in whole or
    in part.

## FORFEITURES

4.  Section 10.02 provides that the nonvested portion of a participant's account will
    be forfeited when the participant receives a distribution of the vested balance of
    their account.

## PROFIT SHARING CONTRIBUTIONS

5.  Section 2.19 defines "Profit Sharing Contributions" as "the contributions, if any,
    made pursuant to Section 6.01."

6.  Section 6.01(a) of the Plan provides that the Company, at its sole discretion, will
    determine if and to what extent a Profit Sharing Contribution is appropriate for a
    Plan Year.

7.  Section 10.04(a) provides that forfeitures are used to either pay administrative
    expenses or to reduce the amount of Profit Sharing Contributions to be made by
    the Company for the Plan Year.

## PLAN ADMINISTRATION

8.  Section 2.02 of the Plan defines "Administrator" or "Plan Administrator" as the
    Company or such other person or committee as may be appointed to administer
    the Plan in accordance with Article 14.

9.  Section 14.01 of the Plan provides that the Company may appoint a committee to
    perform the duties of the Plan Administrator on behalf of the Company.

10. Section 14.14 provides that the Administrator or its designee has full and absolute
    discretion and authority to determine the amount of benefits to which any person
    is entitled under the Plan.  Section 14.14 further provides that any such
    determination will be final and binding on all parties, and may not be set aside in
    any judicial proceeding unless found to be arbitrary and capricious by a court of
    competent jurisdiction.

D-098

# jackson | lewis
| Attorneys at Law

Samuel Brezel, Esq.                                              March 31, 2008
Page 5

## *ANALYSIS*

### BACKGROUND

Claimant was employed by the Company from October 2, 2000 until March 30, 2005. Claimant was therefore credited with four (4) Years of Service for vesting purposes. (Plan, Sections 3.06 and 3.07). In accordance with the Plan's vesting schedule for the relevant period[5], Claimant therefore had a vested interest in his account balance of 40%. (Plan, Section 10.01(b)). On this basis, Claimant received a March 2007 distribution of $598,600.20, representing 40% of the Claimant's account balance of $ 1,496,500.50.

Notwithstanding the foregoing, you assert that Claimant became fully (that is, 100%) vested in his accrued benefit under the Plan as a result of "complete discontinuance of contributions" under Section 411(d)(3) of the Internal Revenue Code. Under the terms of the Plan, the nonvested portion of a participant's account balance is forfeited when the participant receives a distribution of their vested account balance. (Plan, Section 10.02). As a result, the alleged complete discontinuance of contributions must have occurred prior to March 2007 for Claimant to have become fully vested as a result thereof.

### COMPLETE DISCONTINUANCE OF CONTRIBUTIONS

#### IRS Regulations

Code Section 411(d)(3) requires, as a condition of tax qualification, a plan to provide that the rights of all affected employees become fully vested and nonforfeitable upon the termination of the plan (Code Section 411(d)(3)(A)) or, with respect to a plan to which section 412 does not apply[6], upon complete discontinuance of contributions under the plan (Code Section 411(d)(3)(B)). Code Section 411(d)(3) would require the Plan to provide for full vesting of all affected employees upon a "complete discontinuance of contributions."[7]

The relevant IRS regulations provide as follows:

> **General rule. For purposes of this section, a complete discontinuance of contributions under the plan is contrasted with a suspension of**

---

[5] The Plan provides a different vesting schedule for amounts attributable to Profit Sharing Contributions made for Plan Years beginning on and after January 1, 2007. Plan, Section 10.01(c). This vesting schedule is not relevant to the Appeal.

[6] Section 412 of the Code does not apply to profit sharing plans such as the Plan. Code Section 412(h)(1).

[7] The Plan provides for full vesting upon termination. Plan, Section 15.03(a). The Committee interprets Section 15.03(a) as encompassing a "complete discontinuance of contributions" as well as a termination.

# jackson|lewis
Attorneys at Law

Samuel Brezel, Esq.
Page 6

March 31, 2008

contributions under the plan which is merely a temporary cessation of contributions by the employer. A complete discontinuance of contributions may occur although some amounts are contributed by the employer under the plan if such amounts are not substantial enough to reflect the intent on the part of the employer to continue to maintain the plan. The determination of whether a complete discontinuance of contributions under the plan has occurred will be made with regard to all the facts and circumstances in the particular case, and without regard to the amount of any contributions made under the plan by employees. Among the factors to be considered in determining whether a suspension constitutes a discontinuance are:

(i)   Whether the employer may merely be calling an actual discontinuance of contributions a suspension of such contributions in order to avoid the requirement of full vesting as in the case of a discontinuance, or for any other reason;

(ii)   Whether contributions are recurring and substantial; and

(iii)   Whether there is any reasonable probability that the lack of contributions will continue indefinitely.

Reg. § 1.411(d)-2(d)(1)(emphasis added).

This regulation does not provide an objective test as to what constitutes a "complete discontinuance of contributions." The regulation contrasts a *suspension of contributions* (referred to as a "temporary cessation") with a *complete discontinuance*, with full vesting required only upon the latter. While the regulation further specifies a number of nonexclusive factors to be considered, the determination is ultimately based upon the relevant facts and circumstances.

# jackson|lewis
#### Attorneys at Law

Samuel Brezel, Esq.                                               March 31, 2008
Page 7

### IRS Manual

Additional guidance is also found in the Internal Revenue Service Manual ("IRS Manual").[8]  In this regard, the IRS Manual provides that **"[i]f the employer has failed to make substantial contributions in 3 out of 5 years, consider the issue of discontinuance of contributions."** IRS Manual, Section 7.12.1.2.6-1(c)(emphasis added).

The IRS Manual, therefore, provides that a complete discontinuance of contributions is not an audit issue unless and until substantial contributions are lacking for 3 out of five years.  Agents are instructed to "consider" the issue of a complete discontinuance of contributions once this minimum threshold is met.

### Summary of IRS Guidance

The IRS guidance regarding the determination of whether a complete discontinuance of contributions has occurred is sparse.  It is clear, however, that substantial contributions must be lacking for *some* period of years[9], and that such period must be sufficient to exceed a *suspension* (for which full vesting is not required) and reach the level of a *complete discontinuance* (for which full vesting is required)[10].  In this regard, the IRS Manual provides a "three out of five" year threshold; the regulations are silent on this point.  It is also clear that the intent of the sponsoring employer to maintain the plan is relevant.

### A COMPLETE DISCONTINUANCE OF CONTRIBUTIONS DID NOT OCCUR

The Committee has determined that a complete discontinuance of contributions did not occur.

### Recurring and Substantial Contributions Were Made From 2000-2005

---

[8] The IRS Manual is the official compilation of policies, procedures, instructions, and guidelines relating to the organization, functions, administration, and operations of IRS.  Although it is not legally binding, the IRS Manual has been cited by several courts as a useful interpretive tool.

[9] See, e.g., *Reg. § 1.411(d)-2(d)(1)(iii)* (discussing whether the lack of contributions will "continue indefinitely").

[10] Consistent with this, the IRS Manual instructs its agents to "consider" the issue of a complete discontinuance of contributions where contributions are not made for three out of five years.  Contrary to your assertion, the Committee does not interpret this provision as requiring a three out of five year suspension at a minimum in all cases.  The Committee does interpret this provision, however, as requiring *some* period of suspension.



**jackson|lewis**
Attorneys at Law

Samuel Brezel, Esq.                                            March 31, 2008
Page 8

The Committee has found a history of recurring and substantial contributions to the Plan. Specifically, the Committee determined that the Company funded recurring and substantial contributions to the Plan for each Plan Year 2000 through and including 2005.

### A Substantial Contribution Was Made For 2006

The Committee disagrees with your contention that "the last substantial contribution made to the Plan was in 2005." To the contrary, the Committee has determined that a substantial contribution was made for 2006.

*Interpretation of Plan Provisions*

The Company has reserved the discretion to determine if and to what extent a Profit Sharing Contribution is appropriate for each Plan Year beginning on and after January 1, 2006.[11] The amount of such Profit Sharing Contribution is then reduced by amounts that become forfeitures during the current or prior Plan Year,[12] with the balance required to be funded by the Company.

The Committee interprets these provisions as providing a mechanism for forfeitures to function as deemed Profit Sharing Contributions. Consistent with this interpretation, the Plan's SPD provides that forfeitures may, at the Company's discretion, "either be used to pay administrative expenses or to fund Employer Contributions.[13]" In this regard, the Committee notes that the Plan does not provide any formula for allocating forfeitures; forfeitures are allocated in the same manner as are Profit Sharing Contributions[14].

*2006 Allocation*

For the 2006 Plan Year, approximately $550,000, representing the maximum allocation permissible under Section 415 of the Internal Revenue, was allocated to eligible Plan participants. Your statements that this mechanism represents a *potential* allocation of forfeitures, and that forfeitures have not been so allocated, are clearly incorrect.

---

[11] Plan Section 6.01(a)
[12] Amounts that become forfeitures will be used to either pay administrative expenses or to reduce the amount of Profit Sharing Contributions to be made by the Company for the Plan Year. Plan Section 10.04(a). As noted above, no forfeitures have been used to defray administrative expenses.
[13] SPD p. 7.
[14] Plan, Section 6.01.



Attorneys at Law

Samuel Brezel, Esq.                                                     March 31, 2008
Page 9

To the contrary, the Committee interprets the foregoing Plan provisions as providing for forfeitures to fund Profit Sharing Contributions. As a result, the Committee has determined that a substantial Profit Sharing Contribution was made for 2006[15].

### Absent a 2006 Contribution, a Complete Discontinuance Still Did Not Occur

The Committee has also considered whether, had they not determined (as discussed in the preceding section) that a substantial contribution was made for 2006, a complete discontinuance of contributions would have occurred. The Committee has determined that it would not have.

*Contribution History*

As discussed below, the Company made substantial contributions to the Plan for the six consecutive years prior to 2006. Further, a complete discontinuance of contributions would have had to have occurred prior to March 2007 for Claimant to prevail. The Committee has determined that the alleged failure to make a contribution in 2006, after having made recurring and substantial contributions for the six prior consecutive years, coupled with the absence of any lack of intent to permanently cease contributions (as more fully discussed in the next section) does not constitute a complete discontinuance of contributions. The Committee therefore further determines that a termination of the Plan did not occur on this basis under Plan Section 15.03(a).[16]

*Lack of Intent*

The Appeal also asserts that a complete discontinuance of contributions occurred based upon the Company's intention to permanently cease making contributions. In support, you cite (1) the absence of any provisions in the acquisition agreements requiring Li & Fung USA (as opposed to the Company) to "adopt the Plan or to resume making substantial and recurring contributions thereto"; (2) a letter to participants advising them that contributions of employer stock would no longer be made to the Plan; and (3) the fact that the Plan is administered separately from Li & Fung USA's 401(k) Plan. The Committee has considered your arguments and does not find them at all persuasive[17].

---

[15] You argue without any substantiation that the allocation of forfeitures cannot satisfy the "substantial and recurring" contribution requirement of Section 411(d)(3). The Committee does not find this argument persuasive.

[16] As noted above, the Committee interprets Section 15.03(a) as encompassing a "complete discontinuance of contributions" as well as a formal termination. This interpretation is consistent with your letter, which states that "the discontinuance of contributions to the Plan constitutes a termination of the Plan."

[17] To the contrary, the Committee finds that the letter regarding the lack of future allocations of employer stock entirely consistent with the Plan's sale of shares and conversion to a profit sharing plan following such sale, as there were no shares owned by the Plan and therefore no shares to allocate to Plan



Attorneys at Law

Samuel Brezel, Esq.                                                    March 31, 2008
Page 10

To the contrary, the Committee has found that the asset purchase agreement authorized the conversion of the Plan from an ESOP to a profit sharing plan and *required* Li & Fung to continue to maintain the Plan for a period of three years. The Committee further notes that the terms of the Plan provide for employer contributions, at the Company's discretion.[18]

Lastly, with respect to the alleged significance of the Company's failure to describe the contribution status as temporary, we note that the Claimant, not the Company or the Plan, bears the burden of establishing that there was a complete discontinuance of contributions. <u>Steiner Corp. Retirement Plan v. Bertoldo</u>, 31 F. 3d 935, 941-42 (10th Cir. 1994).

We have considered the other arguments you raised and find them similarly unavailing.

## CONCLUSIONS

Based on the foregoing, the Committee has made the following determinations:

(1)     The Committee interprets Section 15.03 of the Plan, entitled "Consequences of Termination," as applying to both a formal Plan termination and a complete discontinuance of contributions.

(2)     For the reasons set forth above, a complete discontinuance of contributions to the Plan has not occurred. Accordingly, the Claimant's interest in his Plan account balance did not become fully vested and nonforfeitable pursuant to Plan Section 15.03(a).

(3)     When Claimant received a March 2007 distribution of $598,600.20, representing 40% of the Claimant's account balance of $ 1,496,500.50, Claimant received his entire vested benefit under the Plan. The balance of his account was forfeited at that time.

The Appeal is therefore denied.

*          *          *

---

participants. Similarly, we are unaware of any requirement that a parent sponsor all benefit plans in which employees of its subsidiaries participate, or that all such plans be administered together.
[18] As noted above, a substantial contribution was in fact made for 2006, the year *after* the closing took place.



**Attorneys at Law**

Samuel Brezel, Esq.                                           March 31, 2008
Page 11

Please note that this Appeal constitutes the final administrative review of Claimant's denied claim for benefits under the Plan.  Claimant may, however, further contest this denial by timely bringing an action pursuant to Section 502(a) of ERISA.

Lastly, Claimant is also entitled to receive, upon request and free of charge, copies of all documents relevant to the Appeal.

Sincerely,

JACKSON LEWIS LLP

Robert R. Perry

**D-105**