# EXHIBIT D-4

Section 6.8    <u>Employee Benefit Plans; ESOP Trust</u>.

(a)    With respect to all of the Employee Benefit Plans other than the ESOP, for a period of one year following the Closing Date, the Buyer will, or will cause the Company to, continue the Employee Benefit Plans; <u>provided</u>, <u>however</u>, that the Buyer may, or may cause the Company to, replace any of the Employee Benefit Plans with other plans (the "<u>Replacement Plans</u>") providing, in the aggregate, for compensation and benefits comparable to the compensation and benefits provided by the Employee Benefit Plans as in effect on the day prior to the Closing. The Replacement Plans will recognize all prior service of the employees with the Company as service for purposes of eligibility and vesting, but not for benefit accrual purposes. Notwithstanding the Buyer's agreements in the foregoing two sentences, neither the Buyer nor the Company will have any obligation hereunder to continue or to provide comparable benefits for those Employee Benefit Plans listed on <u>Schedule 6.8(a)</u>.

(b)    Notwithstanding the provision of Section 6.8(a), the Buyer shall continue to maintain, and shall not terminate the "ESOP" during the Contingent Payment Period; <u>provided</u>, <u>however</u>, that nothing in this Agreement shall be deemed to prohibit the Company from taking one or more of the following actions: (i) amending the ESOP in any manner not inconsistent with the preceding sentence; (ii) merging the ESOP with or into another defined contribution plan sponsored by the Buyer or any member of a controlled group of corporations which includes the Buyer, or of a group of trades or businesses under common control which includes the Buyer, within the contemplation of Sections 414(b) and (c) of the Code; (iii) changing the character of the ESOP to that of a profit sharing plan and\or 401k plan; or (iv) taking any such other action as the Buyer in its sole discretion may elect to make, provided, that in each case, the ESOP, as so changed or merged, remains a defined contribution plan intended to be qualified under Section 401(a) of the Code.

(c)    Any changes to the ESOP by the Company contemplated by Section 6.8(b) shall be made in compliance with the provisions of the ESOP relating to amendments thereto, applicable law, and Sections 401(a)(12) and/or 414(l) of the Code.

## SECTION 411(d)(3) OF THE INTERNAL REVENUE CODE

(3)   Termination Or Partial Termination; Discontinuance Of Contributions

Notwithstanding the provisions of subsection (a), a trust shall not constitute a qualified trust under section 401(a) unless the plan of which such trust is a part provides that--

(A)   upon its termination or partial termination, or

(B)   in the case of a plan to which section 412 does not apply, **upon complete discontinuance of contributions under the plan, the rights of all affected employees** to benefits accrued to the date of such termination, partial termination, or discontinuance, to the extent funded as of such date, or the amounts credited to the employees' accounts, **are nonforfeitable**. This paragraph shall not apply to benefits or contributions which, under provisions of the plan adopted pursuant to regulations prescribed by the Secretary to preclude the discrimination prohibited by section 401(a)(4), may not be used for designated employees in the event of early termination of the plan. For purposes of this paragraph, in the case of the complete discontinuance of contributions under a profit-sharing or stock bonus plan, such plan shall be treated as having terminated on the day on which the plan administrator notifies the Secretary (in accordance with regulations) of the discontinuance.

**IRS REG. § 1.411(d)(2)**

§ 1.411(d)-2   Termination Or Partial Termination; Discontinuance Of Contributions.

(d) Complete Discontinuance--

(1) General Rule.

For purposes of this section, a complete discontinuance of contributions under the plan is contrasted with a suspension of contributions under the plan which is merely a temporary cessation of contributions by the employer. A complete discontinuance of contributions may occur although some amounts are contributed by the employer under the plan if such amounts are not substantial enough to reflect the intent on the part of the employer to continue to maintain the plan. The determination of whether a complete discontinuance of contributions under the plan has occurred will be made with regard to all the facts and circumstances in the particular case, and without regard to the amount of any contributions made under the plan by employees. Among the factors to be considered in determining whether a suspension constitutes a discontinuance are:

     (i)    Whether the employer may merely be calling an actual discontinuance of contributions a suspension of such contributions in order to avoid the requirement of full vesting as in the case of a discontinuance, or for any other reason;

     (ii)    Whether contributions are recurring and substantial; and

     (iii)    Whether there is any reasonable probability that the lack of contributions will continue indefinitely.

(2) Time Of Discontinuance.

In any case in which a suspension of a profit-sharing plan maintained by a single employer is considered a discontinuance, the discontinuance becomes effective not later than the last day of the taxable year of the employer following the last taxable year of such employer for which a substantial contribution was made under the profit-sharing plan. In the case of a profit-sharing plan maintained by more than one employer, the discontinuance becomes effective not later than the last day of the plan year following the plan year within which any employer made a substantial contribution under the plan.

industry in general at the time the plan was adopted. News releases, annual reports, financial statements, balance sheets, and copies of tax returns may be helpful in establishing these facts. These facts should be compared with the situation at the time the decision was made to terminate the plan to determine if the purported reason for the termination was valid and could not have been foreseen when the plan was adopted.
b. Consider the extent of any tax advantages the employer derived during the period of the plan's existence.

(2) If "Adverse Business Conditions" is the reason given for termination, and it is not readily apparent why such adverse business conditions required the termination of the plan, an explanation is required to be included as part of the application. (See instructions for Form 5310.) When it is determined that adverse business conditions sufficient to warrant termination are not established by the information provided with the application, additional information needed may include:

    a. A letter from the employer explaining, in detail, the financial problem(s);
    b. Appropriate financial statements including income statements, balance sheets or copies of tax returns.

(3) When "Adoption of new, superseding plan" is given as the reason for termination, request evidence of the adoption of the new plan (e.g., Board of Director's minutes authorizing new plan).

(4) If the "Other" option on the Form 5310 is selected, the reason for termination should be stated. For example, it is acceptable if the applicant states the "high cost of administration under ERISA" or "burden associated with frequent law changes " as a reason for termination (provided such costs or changes in the law were unforeseeable at the time of plan adoption). If appropriate, corroborating documentation should be requested.

(5) Defined benefit plans are subject to the early termination provisions of Reg. 1.401(a)(4)-5(b).

(6) Repetitive failure to make contributions in a discretionary profit-sharing plan during profitable years may indicate a lack of intent that the plan was permanent. **Internal Revenue Manual**

## 7.12.1.2.6 — Discontinuance of Contributions

*[Last Revised: 01-01-2003]*

(1) IRC section 411(d)(3) requires that, in the case of a plan to which IRC section 412 does not apply, upon complete discontinuance of contributions under the plan, the rights of all affected employees to benefits accrued to the date of such discontinuance, to the extent funded as of such date, or the amounts credited to the employees' accounts, must be nonforfeitable. See Reg. 1.411(d)-2(a)(1)(ii).

    a. A determination that contributions have been discontinued and the date upon which such discontinuance occurred requires consideration of all the relevant facts and circumstances.
    b. A discontinuance of contributions may occur although some amounts are contributed by the employer under the plan if such amounts are not substantial

enough to reflect the intent on the part of the employer to continue to maintain the plan. See Reg. 1.411(d)-2(d).
c. If the employer has failed to make substantial contributions in 3 out of 5 years and there is a pattern of profits earned, consider the issue of discontinuance of contributions.

(2) If the employer has failed to make significant contributions in years prior to the proposed year of termination, consider whether an earlier discontinuance has occurred.

    a. Prior to the TRA '86, (or if the contributions are limited to the employer's profits), the employer must have had sufficient profits (as defined by the plan) for the years under consideration to make contributions.
    b. For plan years beginning on or after 1/1/1986, profits are no longer required for making contributions to a profit-sharing plan. See IRC section 401(a)(27).

(3) A temporary cessation of contributions in a profit-sharing or stock bonus plan may not constitute a discontinuance of contributions. However, if this becomes a discontinuance, the discontinuance becomes effective not later than the last day of the taxable year of the employer following the last taxable year of such employer for which a substantial contribution was made under the profit-sharing plan, if a single employer plan. In the case of a profit-sharing plan maintained by more than one employer, the discontinuance is effective not later than the last day of the plan year following the plan year within which the last substantial contribution was made by any employer. See Reg. 1.411(d)-2(d).

## 7.12.1.2.6.1 — Processing Step

*[Last Revised: 01-01-2003]*

(1) Generally, in a profit-sharing or stock bonus plan, if the employer has failed to make substantial contributions in 3 out of 5 years, and there is a pattern of profits earned, consider the issue of discontinuance of contributions.

**Note:** Unless there are participants with less than 100% vesting during the years under consideration, there is no practical consequence to the discontinuance of contributions issue. **Internal Revenue Manual**

## 7.12.1.2.7 — Partial Terminations

*[Last Revised: 01-01-2003]*

(1) To constitute a qualified trust, the plan of which such trust is a part must satisfy IRC section 411.

    a. Upon a partial termination, the benefits of all affected participants accrued as of the date of the partial termination to the extent funded or the amounts credited to the participant's account, must be nonforfeitable. See IRC section 411(d)(3).
    b. Reg. 1.411(d)-2(b) provides for a facts and circumstances test in determining whether or not a partial termination occurs. Such facts and circumstances include the exclusion of a group of employees who have previously been covered by the plan either by reason of a plan amendment or severance by the employer.

# Briefly Stated, Inc Profit Sharing Plan

*Administrative Committee Meeting Minutes*
*February 14, 2007*

**Committee Members:**
*Present:* Tom Haugen, Alan Beckerman, and Brad Egna (via conference call)
*Absent:* None

**Others Present:**
Graham Schell – Plan Administrator and Secretary of the Meeting

A meeting of the Administrative Committee ("Committee") of the Briefly Stated, Inc Profit Sharing Plan *(formerly knows as the Briefly Stated, Inc Employee Stock Ownership Plan)* was held on the 14th day of February, 2007.  The following matters were discussed:

**2006 Forfeiture Reallocations:**
*The Committee must decide how it intends to reallocate the 2006 forfeiture balance (approx USD $1mm).*

<u>Analysis</u>:

- *Section 10.04* of the Plan provision provides that forfeitures shall be used to pay administrative expenses of the Plan and/or to reduce the amount of Profit Sharing Contributions.

- Section 415 of the Internal Revenue Code (the "Code") limits the maximum amount of annual additions that can be allocated to the account of a participant for 2006 to $44,000.  This limitation is referred to as the "415 Limit." For this purpose, annual additions include employer contributions, employee contributions and forfeitures under both the Plan and any other defined contribution plan sponsored by affiliated entities with 50% or more common ownership.  Accordingly, any forfeitures allocated to a participant under the Plan for 2006 would, for purposes of the 415 Limit, be aggregated with any employee contributions (such as 401(k) elective deferrals), employer contributions (such as 401(k) matching contributions) and forfeitures allocated to such participant under any 401(k) (or other defined contribution plan) within the Li and Fung controlled group (any such plan referred to hereafter as a "401(k) Plan").

Options:

**In considering how to reallocate the forfeitures, three options were discussed:**

<u>Option #1</u>
Under Option 1, the Committee would declare a 2006 Profit Sharing Contribution in an amount equal to the maximum amount of forfeitures that could be allocated under the Plan, up to the 415 Limit.  That is, the forfeiture pool would be allocated on the basis of 2006 compensation, with no participant receiving an allocation in excess of $44,000.

1

D-111

Under this scenario, almost the entire forfeiture pool would be allocated in 2006. However, because a participant's annual additions under a 401(k) Plan must be considered in applying the 415 Limit, wholesale adjustments under a 401(k) Plan (in the form of the return of 2006 employee contributions, and the forfeiture of related matching contributions) would be required.

## Option #2

Under Option 2, the amount of forfeitures allocated would be determined so that no individual would receive a 2006 forfeiture allocation under the Plan which, when combined with the participant's 2006 annual additions under the 401(k) Plan, would exceed $44,000. Under this scenario, approximately half of the forfeitures would be allocated. The remainder would be held in a suspense account and the process repeated in 2007 (and thereafter, as needed). No adjustments would be required under a 401(k) Plan.

## Option #3

Under Option 3, the amount of forfeitures allocated would be determined by the committee. The amount would be between the amount determined in Option #1 and Option #2. This option would allow for a greater portion of the forfeiture balance to be reallocated in 2006; however adjustments to the 401(k) Plan (in the form of the return of 2006 employee contributions, and the forfeiture of related matching contributions) would still be required for certain highly compensated participants.

**Decision:**

The Committee unanimously voted to reallocate the 2006 forfeitures based on *Option #2* so that no participant exceeds the Section 415 Limit of the Code, and thus no participant is required to take a taxable distribution of their 2006 401(k) contributions (or any portion thereof). The balance of the forfeitures shall be placed in a suspense account and will become eligible for reallocation in future years.

Name: Graham Schell
Title: Secretary of the Meeting

D-112

Briefly Stated, Inc Profit Sharing Plan
- 2006 Forfeiture Reallocation

*As of 12/31/2006*

| | |
|---|---|
| Active Participants | 50 |
| Terminated | 25 |
| Deceased | 1 |
| **Total Participants** | **76** |

| | |
|---|---|
| 12/31/06 Balance | $23,701,407.54 |
| Forfeiture Acct Balance (approx) | $998,000.00 |
| 2006 Total Plan Comp | $4,640,669.00 |

Forfeiture Reallocation Options

**Option #1**

Maximum Reallocation of Forfeiture Balance in 2006      | 20% |

Since the IRS max allowable compensation is $220,000 - we would allocate 20%
of each participants compensation ($220,000 * 20% = $44,000)

| | |
|---|---|
| Total Reallocation | $ 928,133.80 |
| Taxable 401(k) Distributions | $ 93,276.54 |
| Maximum ESOP forfeiture allocated per participant | $ 44,000.00 |

Number of Participants w/ taxable 401(k) Distriubtion      8

If we reallocate the maximum amount, the following participants will be required
to take taxable distributions from their 401(k) accounts - in the following amounts:

| Name | | ESOP Vesting % | 401(k) Distribution (taxable) |
|---|---|---|---|
| Frank | Bottaro | 80% | $ 8,690.70 |
| David | Levinson | 100% | $ 18,125.00 |
| Ian | Miller | 80% | $ 16,812.53 |
| Stacey | Milman | 100% | $ 2,942.30 |
| Edward | Pytka Jr. | 0% | $ 17,851.41 |
| Steven | Swift | 40% | $ 17,187.58 |
| Ellen | Gerson | 40% | $ 9,562.13 |
| James | Litterio | 80% | $ 2,104.91 |
| | | | $ 93,276.56 |

**\*\*NOTE:** Forcing a taxable event for anyone who is not 100% vested in the ESOP
will not be beneficial to the participant until they become 100% vested (since they
are giving up their own 2006 retirement money, which is already 100% vested)



**Option #2**

Partial Forfeiture Reallocation - No one exceeds IRS Sec(415) Limit ($44,000)      | 11.76% |

Each employee would receive 11.76% of their compensation - no one would exceed the limit

| | |
|---|---|
| Total Reallocation | $ 545,812.28 |
| Taxable 401(k) Distributions | $ - |
| Maximum allocated per a participant | $ 25,875.00 |
| Money not allocated by setting limit | $ 382,321.52 |

**Option #3**

A percentage amount between 12-20%      | 14.50% |

While this option would still require some taxable 401(k) distributions - it would allow
for a larger portion of the current forfeitures to be allocated

**Ex: 14.5%**

| | |
|---|---|
| Total Reallocation | $ 672,897.01 |
| Taxable 401(k) Distributions | $ 21,576.51    minus ER Match of $9,976 |
| Maximum ESOP forfeiture allocated per participant | $ 31,900.00 |

Number of Participants w/ taxable 401(k) Distriubtion      4

| Name | | ESOP Vesting % | 401(k) Distribution (taxable) | 2006 ER Match | ACTUAL TAX DIST |
|---|---|---|---|---|---|
| David | Levinson | 100% | $ 6,025.00 | $ (3,125.00) | $ 2,900.00 |
| Ian | Miller | 80% | $ 4,712.52 | $ (1,812.53) | $ 2,899.99 |
| Edward | Pytka Jr. | 0% | $ 5,751.41 | $ (2,851.41) | $ 2,900.00 |
| Steven | Swift | 40% | $ 5,087.58 | $ (2,187.58) | $ 2,900.00 |
| | | | $ 21,576.51 | | $ 11,599.99 |

At 14.5% - the 4 participants above would exceed the IRS 415 Limit - Since each of these participants received a
Company Match in 2006, we could deduct that money first (goes into a "forfeiture account" w/n the 401(k) plan to be
reduce future company matches) - then there would be a minimal taxable distribution to the 4 participants

**BRIEFLY STATED, INC. PROFIT SHARING PLAN**
*Administrative Committee Meeting Minutes*
*March 20, 2008*

## Administrative Committee Members:

*Present:*

    Alan Beckerman
    Brad Egna

*Absent:*

    None

## Others Present:

Karen Coe-Executive Vice President, Human Resources, Li & Fung USA
David Lewis-Benefits Manager, Li & Fung USA
Robert Smits, Esq.-Counsel to Li & Fung USA
Robert Perry, Esq.-Counsel to the Administrative Committee and Secretary of the Meeting

A meeting of the Administrative Committee ("Committee") of the Briefly Stated, Inc. Profit Sharing Plan ("Plan") was held on March 20, 2008. The following matters were discussed:

## Appeal of Denied Claim for Benefits by John Lavin:

The Committee must, pursuant to the powers delegated to it under the terms of the Plan, determine John Lavin's pending appeal. The Committee had, by letter dated November 19, 2007, previously denied Mr. Lavin's claim for additional benefits.

Discussion

Robert Perry, Counsel to the Committee, had, by memo dated March 6, 2008, set forth the issues presented by Lavin's appeal and the relevant supporting documentation. Alan Beckerman and Brad Egna acknowledged that they had both received and reviewed these materials.

REDACTED

REDACTED

Brad Egna pointed out that substantial contributions to the Plan had been made by Briefly Stated, Inc. for all years through 2005. He further noted that that the 2006 allocation of $545,000, via the Plan's mechanism of recharacterizing forfeitures as profit sharing contributions, strongly refuted any cessation of contributions, let alone a complete discontinuance.

Decision

The Committee unanimously decided that a complete discontinuance of contributions had not occurred. As a result, the Committee unanimously voted to deny Lavin's appeal.

The Committee instructed Robert Perry to communicate their decision to Samuel Brezel, Lavin's attorney and to await Mr. Brezel's response, if any.

**2007 Allocation**

Discussion

REDACTED

Decision

The Committee decided that the 2007 allocation must be suspended pending the resolution of Lavin and the related claims.

*       *       *

There being no other business before the Committee, the meeting was adjourned.

_____

Robert R. Perry, Secretary of the Meeting

## LI & FUNG USA – Memo

**To:** Participants in the Briefly Stated, Inc. Profit Sharing Plan

**From:** David G. Lewis, Benefits Manager

**Date:** March 31, 2008

**Re:** 2007 Allocation

The purpose of this memo is to update participants in the Briefly Stated, Inc. Profit Sharing Plan (the "Plan") on the status of the 2007 profit sharing contribution allocation.

Under the Plan, any non-vested portion of a participants account is forfeited at distribution. Forfeitures are then, at the Company's discretion, either used to pay administrative expenses or to fund discretionary profit sharing contributions. Profit sharing contributions are then allocated to eligible participants based on the compensation during the plan year. A participant is eligible to receive a profit sharing contribution allocation for a plan year if the participant is both employed on the last day of the plan year and completed a year of service during the plan year.

For the 2006 plan year, the maximum permissible profit sharing contribution was funded and allocated on this basis.

With respect to the 2007 plan year, a significant amount of Plan assets (representing the bulk of the forfeiture suspense account) is affected by pending and potential benefit claims. Consistent with its fiduciary responsibilities under the Employee Retirement Income Security Act, the Plan's Administrative Committee is in the process of resolving these claims. However, until these claims are resolved, a 2007 profit sharing contribution allocation cannot be made.

We will continue to keep you apprised of any further developments.

If you have any questions, please contact me at davidlewis@lfusa.com or (646) 839-7537.



D-117

## UNANIMOUS WRITTEN CONSENT
## OF THE BOARD OF DIRECTORS OF
## BRIEFLY STATED, INC.

The undersigned, being all the members of the Board of Directors of Briefly Stated, Inc. (the "Company") do hereby severally consent to and adopt the following preamble and resolutions:

**WHEREAS**, on September 30, 2005 The Millwork Trading Co., Ltd. d/b/a Li & Fung USA purchased all of the issued and outstanding stock of Briefly Stated Holdings, Inc. ("Holdings"), the parent of the Company; and

**WHEREAS**, at the time of the stock purchase, the Briefly Stated, Inc. Employee Stock Ownership Plan (the "Plan") was in effect; and

**WHEREAS**, as a result of the sale of the stock of Holdings, including all of the shares owned in accordance with the Plan, the Plan's provisions were no longer consistent with the Plan's intent; and

**WHEREAS**, accordingly, the Company desires to amend and restate the Plan to convert it to a profit sharing plan;

**NOW THEREFORE** be it

**RESOLVED**, that the Briefly Stated, Inc. Profit Sharing Plan as amended and restated in its entirety (the "Amended and Restated Plan"), in the form substantially in accordance with the terms of the Amended and Restated Plan Document attached hereto and incorporated herein by reference, be, and hereby is, approved and adopted; and it is further

**RESOLVED**, that the appropriate officers of the Company be, and they hereby are, and each of them with full authority to act without the others hereby is, authorized to take, or cause to be taken, any and all such actions as any such officer shall, upon the advice of counsel, deem necessary or advisable to carry into effect the preceding resolution, including without limitation, filing with the Internal Revenue Service and the Department of Labor such applications for determination letters, approvals or authorizations as may be necessary or appropriate to maintain the tax qualified status of the Plan and adopting any further amendments to the Plan on behalf of the Company as may be necessary or appropriate to effectuate the preceding resolution or to secure any such determination letters, approvals or authorizations.

This Consent may be executed in one or more counterparts that together shall be deemed adopted when each Director shall have executed a copy hereof.

**IN WITNESS WHEREOF,** the undersigned have caused this Consent to be executed as of the ___ day of December, 2006.


_____
Thomas Haugen


_____
Bruce Rockowitz

## Perry, Robert (NY/WP)

| | |
|---|---|
| **From:** | Perry, Robert (NY/WP) |
| **Sent:** | Friday, February 09, 2007 3:22 PM |
| **To:** | 'grahamschell@lfusa.com'; rsmits@salans.com |
| **Cc:** | ' (dweinstock@benconsys.com)' |
| **Subject:** | RE: Briefly Stated Inc Profit Sharing Plan - 2006 Forfeitures |

**Importance:**   High

PERSONAL AND CONFIDENTIAL
ATTORNEY-CLIENT PRIVILEGED

REDACTED

REDACTED

Robert R. Perry
Jackson Lewis LLP
One North Broadway
White Plains, New York 10601
(914) 328-0404
(914) 514-6118 (direct)
(914) 328-0820 (fax)
perryr@jacksonlewis.com
Representing management exclusively in workplace law and related litigation IRS Circular
230 Disclosure: To comply with requirements imposed by the IRS, we inform you that any
U.S. federal tax advice contained in this communication (including any attachment) is not
intended or written to be used, and cannot be used, for the purpose of (i) avoiding
penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to
another party any transaction or matter addressed therein.
Confidentiality Note: This e-mail, and any attachment to it, contains privileged and
confidential information intended only for the use of the individual(s) or entity named on
the e-mail. If the reader of this e-mail is not the intended recipient, or the employee or
agent responsible for delivering it to the intended recipient, you are hereby notified
that reading it is strictly prohibited. If you have received this e-mail in error, please

2

immediately return it to the sender and delete it from your system. Thank you.


  ----Original Message-----
From: grahamschell@lfusa.com [mailto:grahamschell@lfusa.com]
Sent: Tuesday, February 06, 2007 8:37 AM
To: rsmits@salans.com
Cc: Perry, Robert (NY/WP)
Subject: Re: Briefly Stated Inc Profit Sharing Plan - 2006 Forfeitures

# REDACTED


Graham Schell
Li&Fung USA
1359 Broadway, 16th Floor
New York, NY 10018

Direct:646-839-7530
Fax: 646-839-7473
Mobile: 917-365-4320
grahamschell@lfusa.com
----- Forwarded by Graham Schell/USA/Mail on 02/06/2007 08:34 AM -----

|  |  |  |  |
|---|---|---|---|
| | TomHaugen<br>USA | To: | Graham Schell/USA/Mail@Mail, |
| "Bradegna" <Bradegna@bsnyc.com> | | cc: | Alan Beckerman/USA/Mail, Paul |
| McGuire/USA/Mail, Ron Ventricelli/USA/Mail,<br>02/06/2007 07:23<br>AM | | "Robert Smits" <rsmits@salans.com><br>Subject:  Re: Briefly Stated Inc Profit |
| Sharing Plan - 2006 Forfeitures | | | |




Graham,
Check with Rob since his office handled the conversion.
Tom
-------------------------
Sent from my BlackBerry Wireless Handheld


    From: Graham Schell
    Sent: 02/05/2007 05:21 PM
    To: Brad Egna
    Cc: Alan Beckerman; Paul McGuire; Ron Ventricelli; Tom Haugen
    Subject: Re: Briefly Stated Inc Profit Sharing Plan - 2006 Forfeitures

Hi Brad,
The Briefly Stated ESOP was amended and restated as the Briefly Stated, Inc Profit Sharing
Plan effective 1/1/06.  Thus, the plan has already been converted to a 401(k) plan (for
the entire Plan Year 2006).  Regardless, both ESOPs and 401(k) Plans have the same annual
contributions limits.

Thanks,
Graham Schell
 i&Fung USA
1359 Broadway, 16th Floor
New York, NY 10018

**D-140**

Direct:646-839-7530
Fax· 646-839-7473
Mobile: 917-365-4320
grahamschell@lfusa.com


Bradegna@bsnyc.co
m
TomHaugen/USA/Mail@Mail, Alan

02/05/2007 04:45
PM
Ventricelli/USA/Mail@Mail

To:       Graham Schell/USA/Mail@Mail,
Beckerman/USA/Mail@Mail
cc:       Paul McGuire/USA/Mail@Mail, Ron

Subject:  Re: Briefly Stated Inc Profit

Sharing Plan - 2006 Forfeitures


Why can't we allocated the forteitures before we do the 401k plan conversion. This way we
can allocate all.

--------------------------
Sent from my BlackBerry Wireless Handheld (www.BlackBerry.net)


-----Original Message-----
From: grahamschell@lfusa.com <grahamschell@lfusa.com>
To: tomhaugen@lfusa.com <tomhaugen@lfusa.com>; alanbeckerman@lfusa.com
<alanbeckerman@lfusa.com>; Brad Egna <bradegna@bsnyc.com>
CC: paulmcguire@lfusa.com <paulmcguire@lfusa.com>; ronventricelli@lfusa.com
<ronventricelli@lfusa.com>
Sent: Mon Feb 05 11:25:26 2007
Subject: Briefly Stated Inc Profit Sharing Plan - 2006 Forfeitures

re: Briefly Stated, Inc Profit Sharing Plan (Formerly known as the Briefly Stated, Inc
Employee Stock Ownership Plan)

Dear Committee Members,
Benefit Concepts Systems,Inc is finalizing the 2006 BSI Profit Sharing Plan annual review
and participant statements.  However, before they can finalize this information, they need
instructions on how the Forfeitures should be reallocated.  Based on the information
below, please let me know the Committee's decision as how to proceed.

Current forfeiture balance (prior to reallocation): Approx $1mm

Regulations regarding the reallocation of forfeitures:
- Only those participants who are actively employed at BSI on 12/31/06 are eligible to
receive forfeitures
- The reallocation of forfeitures is treated as a contribution – and thus any calculation
must be based on a % of salary (as opposed to % of assets within the
   Trust)
- A participant is only entitled to contribute $45,000 to a retirement savings plan in a
given Plan Year.  This $45,000 includes Employee Contributions, Employee Catch-up
Contributions, Employer Match Contributions, Forfeiture Relocations, and Profit Sharing
Contributions - This $45,000 amount is combined between the 401(k) Plan and the ESOP.
- Forfeitures are first used to pay for plan expenses – then are reallocated to
participants

Reallocation Option #1
The Committee could decide to reallocate the maximum amount of forfeitures possible this
year.  Under this scenario, some highly compensated employees would receive the full
$45,000 from the forfeitures.  In this scenario, participants will likely exceed the IRS
limits and thus be required to take a taxable distribution on their regular 401(k)
contribution (and Employer Match).  While this scenario would require employees to take

4

**D-141**

taxable distributions, they would be maxing out their retirement contributions for 2006 ($45k) and they would receive their normal contributions (minus taxes) as income in 2006.

Issue 1 - Some participants may not like to max out in the ESOP forfeiture contributions as they are not 100% vested (where as their regular contributions to the 401(k) would be 100% vested).
Issue 2 - If we do not max them out in the ESOP forfeiture contributions, participants would be "losing out" on ESOP reallocation and the money would simply be placed into a suspense account.

Reallocation Option #2
The Committee could decide to only pay out a portion of the forfeitures during the current plan year.  The exact amount would be calculated by Benefit Concepts Systems based on a formula so as not to exceed the $45,000 limit for any participant.

Ex: If an employee earns $220,000/yr (which is the maximum allowable compensation for 401(k) testing) - and contributes $20,000 to his 401(k) plan in 2006, he would receive $25,000 in forfeiture reallocation.  This is approx 11.4% of his salary.  This percentage would be applied to all participants and they would all receive approx 11-12% of their salary (actual percentage to be determined through detailed calculations by recordkeeper)

Under this scenario, he total amount of forfeitures that would be reallocated this year would be approx $600,000.  The remaining forfeitures would be placed into a suspense account.

Please let me know if anyone would like to discuss this further.

Thanks,
Graham Schell
Li&Fung USA
1359 Broadway, 16th Floor
New York, NY 10018

Direct:646-839-7530
Fax: 646-839-7473
Mobile: 917-365-4320
grahamschell@lfusa.com

D-142

**SCHEDULE I**
**(Form 5500)**
Department of the Treasury
Internal Revenue Service

Department of Labor
Employee Benefits Security
Administration

Pension Benefit Guaranty Corporation

# Financial Information -- Small Plan

This schedule is required to be filed under Section 104 of the Employee
Retirement Income Security Act of 1974 (ERISA) and section 6058(a) of the
Internal Revenue Code (the Code).

▶ **File as an attachment to Form 5500.**

Official Use Only

OMB No. 1210-0110

**2003**

**This Form is Open
to Public Inspection.**

For calendar year 2003 or fiscal plan year beginning **01/01/2003** and ending **12/31/2003**

| | |
|---|---|
| **A** Name of plan  BRIEFLY STATED, INC EMPLOYEE STOCK OWNERSHIP PLAN | **B** Three-digit plan number ▶  003 |
| **C** Plan sponsor's name as shown on line 2a of Form 5500  BRIEFLY STATED, INC. | **D** Employer Identification Number  11-2906765 |

Complete Schedule I if the plan covered fewer than 100 participants as of the beginning of the plan year. You may also complete Schedule I if you
are filing as a small plan under the 80-120 participant rule (see instructions). Complete Schedule H if reporting as a large plan or DFE.

**Part I    Small Plan Financial Information**

Report below the current value of assets and liabilities, income, expenses, transfers and changes in net assets during the plan year.  Combine the
value of plan assets held in more than one trust. Do not enter the value of the portion of an insurance contract that guarantees during this plan year to
pay a specific dollar benefit at a future date. Include all income and expenses of the plan including any trust(s) or separately maintained fund(s) and
any payments/receipts to/from insurance carriers. Round off amounts to the nearest dollar.

| 1 | Plan Assets and Liabilities: | | (a) Beginning of Year | (b) End of Year |
|---|---|---|---|---|
| a | Total plan assets | 1a | 14035000 | 13405000 |
| b | Total plan liabilities | 1b | 8080000 | 6960000 |
| c | Net plan assets (subtract line 1b from line 1a) | 1c | 5955000 | 6445000 |

| 2 | Income, Expenses, and Transfers for this Plan Year: | | (a) Amount | (b) Total |
|---|---|---|---|---|
| a | Contributions received or receivable | | | |
| | (1) Employers | 2a(1) | 484000 | |
| | (2) Participants | 2a(2) | | |
| | (3) Others (including rollovers) | 2a(3) | | |
| b | Noncash contributions | 2b | | |
| c | Other income | 2c | 490000 | |
| d | Total income (add lines 2a(1), 2a(2), 2a(3), 2b, and 2c) | 2d | | 974000 |
| e | Benefits paid (including direct rollovers) | 2e | | |
| f | Corrective distributions (see instructions) | 2f | | |
| g | Certain deemed distributions of participant loans (see instructions) | 2g | 0 | |
| h | Other expenses | 2h | 484000 | |
| i | Total expenses (add lines 2e, 2f, 2g, and 2h) | 2i | | 484000 |
| j | Net income (loss) (subtract line 2i from line 2d) | 2j | | 490000 |
| k | Transfers to (from) the plan (see instructions) | 2k | | |

| 3 | Specific Assets: If the plan held assets at anytime during the plan year in any of the following categories, check "Yes" and enter the current value of any assets remaining in the plan as of the end of the plan year.  Allocate the value of the plan's interest in a commingled trust containing the assets of more than one plan on a line-by-line basis unless the trust meets one of the specific exceptions described in the instructions. | | Yes | No | Amount |
|---|---|---|---|---|---|
| a | Partnership/joint venture interests | 3a | | X | |
| b | Employer real property | 3b | | X | |

For Paperwork Reduction Act Notice and OMB Control Numbers, see the Instructions for Form 5500.    v6.1    Schedule I (Form 5500) 2003





2 0 0 3 6 6 0 1 0 1

|  |  |  | c Telephone no. |  |
|---|---|---|---|---|

**6** Total number of participants at the beginning of the plan year — **6** — 46

**7** Number of participants as of the end of the plan year (welfare plans complete only lines **7a, 7b, 7c,** and **7d**)

**a** Active participants — **a** — 39

**b** Retired or separated participants receiving benefits — **b**

**c** Other retired or separated participants entitled to future benefits — **c** — 4

**d** Subtotal. Add lines **7a, 7b,** and **7c** — **d** — 43

**e** Deceased participants whose beneficiaries are receiving or are entitled to receive benefits — **e**

**f** Total. Add lines **7d** and **7e** — **f** — 43

**g** Number of participants with account balances as of the end of the plan year (only defined contribution plans complete this item) — **g** — 43

**h** Number of participants that terminated employment during the plan year with accrued benefits that were less than 100% vested — **h** — 4

**i** If any participant(s) separated from service with a deferred vested benefit, enter the number of separated participants required to be reported on a Schedule SSA (Form 5500) — **i**

**8** Benefits provided under the plan (complete 8a through 8c, as applicable)

**a** [X] Pension benefits (check this box if the plan provides pension benefits and enter the applicable pension feature codes from the List of Plan Characteristics Codes (printed in the instructions)):

2P

**b** [ ] Welfare benefits (check this box if the plan provides welfare benefits and enter the applicable welfare feature codes from the List of Plan Characteristics Codes (printed in the instructions)):

**9a** Plan funding arrangement (check all that apply)

(1) [ ] Insurance
(2) [ ] Section 412(i) insurance contracts
(3) [X] Trust
(4) [ ] General assets of the sponsor

**9b** Plan benefit arrangement (check all that apply)

(1) [ ] Insurance
(2) [ ] Section 412(i) insurance contracts
(3) [X] Trust
(4) [ ] General assets of the sponsor

**10** Schedules attached (Check all applicable boxes and, where indicated, enter the number attached. See instructions.)

**a** Pension Benefit Schedules

(1) [ ] R (Retirement Plan Information)
(2) [X] 1 T (Qualified Pension Plan Coverage Information)

If a Schedule T is not attached because the plan is relying on coverage testing information for a prior year, enter the year

(3) [ ] B (Actuarial Information)
(4) [X] E (ESOP Annual Information)
(5) [ ] SSA (Separated Vested participant Information)

**b** Financial Schedules

(1) [ ] H (Financial Information)
(2) [X] I (Financial Information -- Small Plan)
(3) [ ] A (Insurance Information)
(4) [ ] C (Service Provider Information)
(5) [ ] D (DFE/Participating Plan Information)
(6) [ ] G (Financial Transaction Schedules)
(7) [X] 1 P (Trust Fiduciary Information)

---

## Schedule I
### (Form 5500)

Department of the Treasury
Internal Revenue Service

Department of Labor
Pension and Welfare Benefits
Administration

Pension Benefit Guaranty Corporation

### Financial Information -- Small Plan

This schedule is required to be filed under Section 104 of the Employee Retirement Income Security Act of 1974 (ERISA) and section 6058(a) of the Internal Revenue Code (the Code).

**File as an Attachment to Form 5500.**

Official Use Only
OMB No. 1210 - 0110

## 2004

**This Form is Open to Public Inspection**

**For the calendar plan year 2004 or fiscal plan year beginning** January 01, 2004, **and ending** December 31, 2004

**A** Name of plan
BRIEFLY STATED, INC EMPLOYEE STOCK OWNERSHIP PLAN

**B** Three-digit plan number — 003

**C** Plan sponsor's name as shown on line 2a of Form 5500 or 5500-EZ
BRIEFLY STATED, INC.

**D** Employer Identification Number
11-2906765

Complete Schedule I if the plan covered fewer than 100 participants as of the beginning of the plan year. You may also complete Schedule I if you are filing as a small plan under the 80-120 participant rule (see instructions). Complete Schedule H if reporting as a large plan or DFE.

### Part I    Small Plan Financial Information

Report below the current value of assets and liabilities, income, expenses, transfers and changes in net assets during the plan year. Combine the value of plan assets held in more than one trust. Do not enter the value of the portion of an insurance contract that guarantees during this plan year to pay a specific dollar benefit at a future date. Include all income and expenses of the plan including any trust(s) or separately maintained fund(s) and any payments/receipts to/from insurance carriers. Round off amounts to the nearest dollar.

| 1 Plan Assets and Liabilities: |  | (a) Beginning of Year | (b) End of Year |
|---|---|---|---|
| **a** Total plan assets | **1a** | $13,405,000 | $15,960,000 |
| **b** Total Plan liabilities | **1b** | $6,960,000 | $5,840,000 |
| **c** Net plan assets (subtract line 1b from line 1a) | **1c** | $6,445,000 | $10,120,000 |
| 2 Income, Expenses, and Transfers for this Plan Year: |  | (a) Amount | (b) Total |
| **a** Contributions received or receivable |  |  |  |
| (1) Employers | **2a(1)** | $417,600 |  |

**D-169**

**SCHEDULE I**
**(Form 5500)**
Department of the Treasury
Internal Revenue Service

Department of Labor
Employee Benefits Security
Administration

Pension Benefit Guaranty Corporation

# Financial Information –– Small Plan

This schedule is required to be filed under Section 104 of the Employee Retirement Income Security Act of 1974 (ERISA) and section 6058(a) of the Internal Revenue Code (the Code).

▶ **File as an attachment to Form 5500.**

Official Use Only

OMB No. 1210-0110

**2005**

This Form is Open to
Public Inspection.

| For calendar year 2005 or fiscal plan year beginning | 01/01/2005 | , and ending | 12/31/2005 | |

| | | |
|---|---|---|
| **A** Name of plan | **B** Three-digit | |
| BRIEFLY STATED, INC EMPLOYEE STOCK OWNERSHIP PLAN | plan number ▶ | 003 |
| **C** Plan sponsor's name as shown on line 2a of Form 5500 | **D** Employer Identification Number | |
| BRIEFLY STATED, INC. | | 11-2906765 |

Complete Schedule I if the plan covered fewer than 100 participants as of the beginning of the plan year. You may also complete Schedule I if you are filing as a small plan under the 80-120 participant rule (see instructions). Complete Schedule H if reporting as a large plan or DFE.

**Part I   Small Plan Financial Information**

Report below the current value of assets and liabilities, income, expenses, transfers and changes in net assets during the plan year. Combine the value of plan assets held in more than one trust. Do not enter the value of the portion of an insurance contract that guarantees during this plan year to pay a specific dollar benefit at a future date. Include all income and expenses of the plan including any trust(s) or separately maintained fund(s) and any payments/receipts to/from insurance carriers. **Round off amounts to the nearest dollar.**

| **1** | **Plan Assets and Liabilities:** | | **(a)** Beginning of Year | **(b)** End of Year |
|---|---|---|---|---|
| **a** | Total plan assets | **1a** | 15960000 | 22782345 |
| **b** | Total plan liabilities | **1b** | 5840000 | |
| **c** | Net plan assets (subtract line 1b from line 1a) | **1c** | 10120000 | 22782345 |
| **2** | **Income, Expenses, and Transfers for this Plan Year:** | | **(a)** Amount | **(b)** Total |
| **a** | Contributions received or receivable | | | |
| | (1) Employers | **2a(1)** | 250435 | |
| | (2) Participants | **2a(2)** | | |
| | (3) Others (including rollovers) | **2a(3)** | | |
| **b** | Noncash contributions | **2b** | | |
| **c** | Other income | **2c** | 12662345 | |
| **d** | Total income (add lines 2a(1), 2a(2), 2a(3), 2b, and 2c) | **2d** | | 12912780 |
| **e** | Benefits paid (including direct rollovers) | **2e** | | |
| **f** | Corrective distributions (see instructions) | **2f** | | |
| **g** | Certain deemed distributions of participant loans (see instructions) | **2g** | | |
| **h** | Other expenses | **2h** | 250435 | |
| **i** | Total expenses (add lines 2e, 2f, 2g, and 2h) | **2i** | | 250435 |
| **j** | Net income (loss) (subtract line 2i from line 2d) | **2j** | | 12662345 |
| **k** | Transfers to (from) the plan (see instructions) | **2k** | | |

| **3** | **Specific Assets:** If the plan held assets at anytime during the plan year in any of the following categories, check "Yes" and enter the current value of any assets remaining in the plan as of the end of the plan year. Allocate the value of the plan's interest in a commingled trust containing the assets of more than one plan on a line-by-line basis unless the trust meets one of the specific exceptions described in the instructions. | | Yes | No | Amount |
|---|---|---|---|---|---|
| **a** | Partnership/joint venture interests | **3a** | | X | |
| **b** | Employer real property | **3b** | | X | |

For Paperwork Reduction Act Notice and OMB Control Numbers, see the instructions for Form 5500.    v8.2    Schedule I (Form 5500) 2005



D-183

BRIEFLY STATED, INC
PROFIT SHARING PLAN
CERTIFICATE OF PARTICIPATION
FOR

FORFEITURE SUSPENSE

FOR THE PLAN YEAR 01/01/2006 THROUGH 12/31/2006

EMPLOYEE NUMBER:          202

A C C O U N T   S U M M A R Y

|                | EMPLOYER |
|----------------|----------------:|
| PRIOR BALANCE  | 0.00 |
| GAIN/LOSS      | -41,800.87 |
| CONTRIBUTION   | 0.00 |
| FORFEITURES    | -544,511.00 |
| EXPENSES/ADJ   | 0.00 |
| TRANSFERS      | 1,087,237.96 |
| WITHDRAWALS    | 0.00 |
| END BALANCE    | 500,926.09 |
| VESTED BALANCE | 500,926.09 |

YOU ARE 47.9% VESTED IN YOUR EMPLOYER ACCOUNT(S).

TOTAL ACCOUNT BALANCE:                    $500,926.09

TOTAL VESTED AMOUNT:                      $500,926.09

D-234

**Perry, Robert (NY/WP)**

| | |
|---|---|
| **From:** | David Lewis [DavidLewis@lfusa.com] |
| **Sent:** | Wednesday, May 27, 2009 3:30 PM |
| **To:** | Perry, Robert (NY/WP) |
| **Subject:** | FW: Briefly Stated Forfeiture Account Market Value |

**From:** Fitzgerald, Kathleen [mailto:Kathleen_Fitzgerald@adp.com]
**Sent:** Wednesday, May 27, 2009 3:27 PM
**To:** David Lewis
**Cc:** Jonathan Toledo
**Subject:** RE: Briefly Stated Forfeiture Account Market Value

No, none of the forfeitures have been allocated to participants.

Kathy Fitzgerald
Client Service Manager
ADP Retirement Services
11 Northeastern Blvd.
Salem, NH 03079
(Phone): 1-800-541-7702 Ext.82573
(Form Processing Fax): 973-712-7489
Kathleen_Fitzgerald@adp.com

**From:** David Lewis [mailto:DavidLewis@lfusa.com]
**Sent:** Wednesday, May 27, 2009 3:21 PM
**To:** Fitzgerald, Kathleen
**Cc:** Jonathan Toledo
**Subject:** FW: Briefly Stated Forfeiture Account Market Value

Hi Kathy,
Can you please confirm if any monies from the forfeiture account of the BS plan have been allocated to participants since
you took over as the record keeper.

I believe the answer is no.

Thanks,
David

**From:** Perry, Robert (NY/WP) [mailto:PerryR@jacksonlewis.com]
**Sent:** Wednesday, May 27, 2009 3:15 PM
**To:** David Lewis
**Subject:** RE: Briefly Stated Forfeiture Account Market Value

REDACTED

Robert R. Perry

Jackson Lewis LLP

One North Broadway

1

D-348

White Plains, New York 10601

(914) 328-0404

(914) 514-6118 (direct)

(914) 328-0820 (fax)

perryr@jacksonlewis.com

**Representing management exclusively in workplace law and related litigation**

*IRS Circular 230 Disclosure: To comply with requirements imposed by the IRS, we inform you that any U.S. federal tax advice contained in this communication (including any attachment) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed therein.*

*Confidentiality Note: This e-mail, and any attachment to it, contains privileged and confidential information intended only for the use of the individual(s) or entity named on the e-mail. If the reader of this e-mail is not the intended recipient, or the employee or agent responsible for delivering it to the intended recipient, you are hereby notified that reading it is strictly prohibited. If you have received this e-mail in error, please immediately return it to the sender and delete it from your system. Thank you.*

---

**From:** David Lewis [mailto:DavidLewis@lfusa.com]
**Sent:** Wednesday, May 27, 2009 2:33 PM
**To:** Perry, Robert (NY/WP)
**Subject:** FW: Briefly Stated Forfeiture Account Market Value                 REDACTED



David

---

**From:** Jonathan Toledo
**Sent:** Wednesday, May 27, 2009 12:28 PM
**To:** David Lewis
**Subject:** FW: Briefly Stated Forfeiture Account Market Value


Jonathan Toledo
*Benefits Coordinator*
Li & Fung USA
1359 Broadway, 21st Fl.
New York, NY 10018
Office: 646.839.7528
Mobile: 917.292.9814
Fax: 646.839.7473

---

**From:** Fitzgerald, Kathleen [mailto:Kathleen_Fitzgerald@adp.com]
**Sent:** Wednesday, May 27, 2009 12:05 PM
**To:** Jonathan Toledo
**Subject:** RE: Briefly Stated Forfeiture Account Market Value

**D-349**

Hi-You can run a Forfeiture Report on the Web for 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 going back to 11/27/2007. You can run the Forfeiture Report under Ad Hoc Reports.

I) I ran the report for you. For the period of 11/27/07-5/26/09-**$347,919.69 in Forfeitures**:

| Participant Name | Total Forfeiture Amount | |
|---|---|---|
|  | $ | 14,691.15 |
|  | $ | 19,065.82 |
|  | $ | 17,989.78 |
|  | $ | 32,182.87 |
|  | $ | 20,363.61 |
|  | $ | 67,805.82 |
|  | $ | 33,749.99 |
|  | $ | 76,324.04 |
|  | $ | 65,746.61 |
| Total | $ | 347,919.69 |

REDACTED

2)For the period of 3/1/07-11/27/09- **2,389,493.73 in Forfeitures** (since we can't report back that far, I went to Distribution Information within the plan sponsor website and then entered the date range. I then looked at their Transaction History to see who forfeited what.

| Participant Name | Total Forfeiture Amount | |
|---|---|---|
|  | $ | 538,547.81 |
| LAVIN, JOHN | $ | 897,937.81 |
|  | $ | 253,120.78 |
|  | $ | 131,343.01 |
|  | $ | 399,917.78 |
|  | $ | 64,479.86 |
|  | $ | 104,146.68 |
| Total | $ | 2,389,493.73 |

REDACTED

3)Total Dividend earnings so far in Forfeiture Account: **DIVIDENDS**        **$165,036.85**

Since the balance converted in for 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 we wouldn't know where this forfeiture money came from (meaning whose accounts it came from).

Kathy Fitzgerald
Client Service Manager
ADP Retirement Services
11 Northeastern Blvd.
Salem, NH 03079
(Phone): 1-800-541-7702 Ext.82573
(Form Processing Fax): 973-712-7489
Kathleen_Fitzgerald@adp.com

**From:** Jonathan Toledo [mailto:JonathanToledo@lfusa.com]
**Sent:** Wednesday, May 27, 2009 11:24 AM
**To:** Fitzgerald, Kathleen
**Subject:** RE: Briefly Stated Forfeiture Account Market Value

D-350

Also, is there any way I can see account transactions for each of these like I can for individual employees?

**Jonathan Toledo**
*Benefits Coordinator*
Li & Fung USA
1359 Broadway, 21st Fl.
New York, NY 10018
<u>Office</u>: 646.839.7528
<u>Mobile</u>: 917.292.9814
<u>Fax</u>: 646.839.7473

---

**From:** Fitzgerald, Kathleen [mailto:Kathleen_Fitzgerald@adp.com]
**Sent:** Wednesday, May 27, 2009 11:21 AM
**To:** Jonathan Toledo
**Subject:** RE: Briefly Stated Forfeiture Account Market Value

Hi-I made some notes in red below.

Kathy Fitzgerald
Client Service Manager
ADP Retirement Services
11 Northeastern Blvd.
Salem, NH 03079
(Phone): 1-800-541-7702 Ext.82573
(Form Processing Fax): 973-712-7489
Kathleen_Fitzgerald@adp.com

---

**From:** Jonathan Toledo [mailto:JonathanToledo@lfusa.com]
**Sent:** Wednesday, May 27, 2009 11:12 AM
**To:** Fitzgerald, Kathleen
**Subject:** FW: Briefly Stated Forfeiture Account Market Value

Hi Kathy,
I ran this report from the Admin site and just had a question on what is the difference between these 3 accounts for the Briefly Stated plan.

Thanks,
Jonathan

**Jonathan Toledo**
*Benefits Coordinator*
Li & Fung USA
1359 Broadway, 21st Fl.
New York, NY 10018
<u>Office</u>: 646.839.7528
<u>Mobile</u>: 917.292.9814
<u>Fax</u>: 646.839.7473

---

**From:** Jonathan Toledo
**Sent:** Tuesday, May 12, 2009 3:33 PM
**To:** David Lewis
**Subject:** Briefly Stated Forfeiture Account Market Value

| Social Security | Participant Name | Total Market |
| --- | --- | --- |

4

D-351

| Number | | Value |
|---|---|---|
| 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-new forfeiture account since conversion to adp. This is where new forfeitures go. | FORFEITURE, 9366 | $2,902,450.27 |
| 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-this is a forfeiture account that can be used if a participant has an aged outstanding check and you are unable to locate the participant. Check can be stopped if "lost participant" and the $ invested in "Stale"Forfeiture Account. | FORFEITURE, STALE C | $0.00 |
| 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- Forfeiture account that converted in from prior recordkeeper. | ACCOUNT, FORFEITURE | $409,782.46 |
| | | **$3,312,232.73** |

Jonathan Toledo
*Benefits Coordinator*
Li & Fung USA
1359 Broadway, 21st Fl.
New York, NY 10018
Office: 646.839.7528
Mobile: 917.292.9814
Fax: 646.839.7473

This message and any attachments are intended only for the use of the addressee and may contain information that is privileged and confidential. If the reader of the message is not the intended recipient or an authorized representative of the intended recipient, you are hereby notified that any dissemination of this communication is strictly prohibited. If you have received this communication in error, notify the sender immediately by return email and delete the message and any attachments from your system.

D-352

benefits comparable to the compensation and benefits provided by the Employee Benefit Plans as in effect on the day prior to the Closing. The Replacement Plans will recognize all prior service of the employees with the Company as service for purposes of eligibility and vesting, but not for benefit accrual purposes. Notwithstanding the Buyer's agreements in the foregoing two sentences, neither the Buyer nor the Company will have any obligation hereunder to continue or to provide comparable benefits for those Employee Benefit Plans listed on Schedule 6.8(a).

      (b)     Notwithstanding the provision of Section 6.8(a), the Buyer shall continue to maintain, and shall not terminate the "ESOP" during the Contingent Payment Period; provided, however, that nothing in this Agreement shall be deemed to prohibit the Company from taking one or more of the following actions: (i) amending the ESOP in any manner not inconsistent with the preceding sentence; (ii) merging the ESOP with or into another defined contribution plan sponsored by the Buyer or any member of a controlled group of corporations which includes the Buyer, or of a group of trades or businesses under common control which includes the Buyer, within the contemplation of Sections 414(b) and (c) of the Code; (iii) changing the character of the ESOP to that of a profit sharing plan and\or 401k plan; or (iv) taking any such other action as the Buyer in its sole discretion may elect to make, provided, that in each case, the ESOP, as so changed or merged, remains a defined contribution plan intended to be qualified under Section 401(a) of the Code.

      (c)     Any changes to the ESOP by the Company contemplated by Section 6.8(b) shall be made in compliance with the provisions of the ESOP relating to amendments thereto, applicable law, and Sections 401(a)(12) and/or 414(l) of the Code.

      Section 6.9   Transition.  Until the termination of the Contingent Payment Period, neither the Buyer, Holdings, the Company nor the Sellers will take any action that is designed or intended to have the effect of discouraging any lessor, licensor, customer, supplier or other business associate of the Company from maintaining the same business relationships with the Company after the Closing as it has prior to the Closing.

      Section 6.10   Tax Matters.

      (a)     Liability for Taxes and Related Matters.

      (i)     Sellers' Liability for Taxes.  Except to the extent such items have been paid prior to Closing or taken in account in the Net Asset Value Statement, the Sellers shall be liable for and shall indemnify the Buyer for all Taxes (including, without limitation, any obligation to contribute to the payment of a tax determined on a consolidated, combined or unitary basis with respect to a group of corporations that includes the Company and/or Holdings) imposed on the Company and/or Holdings or for which the Company and/or Holdings may otherwise be liable (1) for any taxable year or period that ends on or before the Closing Date, (2) the portion of such taxable year or period ending on or including the Closing, or (3) arising out of a breach or inaccuracy of any representation contained in

NEWYORK.517124.4

CONFIDENTIAL
D-386

ACCOUNT BALANCE STATEMENT                                    Exhibit IV
BRIEFLY STATED, INC                                          PAGE 5
PROFIT SHARING PLAN
FOR THE PLAN YEAR 01/01/2006 THROUGH 12/31/2006

| SOURCE OF FUNDS | BEGINNING BALANCE | GAIN (LOSS) | FUND CONTRIBUTION | FORFEITURES ALLOCATED | ADJUSTMENTS | ENDING BALANCE | -----VESTED----- PCT | AMOUNT |
|---|---|---|---|---|---|---|---|---|

Employee: 20 V ▓▓▓▓▓▓▓▓▓ -- (terminated 10/10/2003, BIS, forfeit 12/31/2008 - not yet paid)
2 CASH         160,042.73   8,059.48    0.00       0.00        0.00    168,102.21  40    67,240.88

Employee: 81 V ▓▓▓▓▓▓▓▓▓ -- (terminated 05/23/2005, BIS, forfeit 12/31/2010 - not yet paid)
2 CASH          29,551.72   1,488.17    0.00       0.00        0.00     31,039.89  20     6,207.98

Employee: 8 V ▓▓▓▓▓▓▓▓ - (terminated 05/30/2003, BIS, forfeit 12/31/2008 - not yet paid)
2 CASH         297,021.21  14,957.48    0.00       0.00        0.00    311,978.69  20    62,395.74

Employee: 45 V LAVIN, JOHN -- (terminated 02/25/2005, BIS, forfeit 12/31/2010 - not yet paid)
2CASH        1,404,897.58  70,748.24    0.00       0.00        0.00  1,475,645.82  40   590,258.33

Employee: 112 V ▓▓▓▓▓▓▓▓ -- (terminated 08/04/2006 no break in service - not yet paid)
2 CASH          99,993.32   5,035.49    0.00       0.00        0.00    105,028.81  40    42,011.52

Employee: 89 V ▓▓▓▓▓▓▓▓ - (terminated 09/21/2004, BIS, forfeit 12/31/2009 - not yet paid)
2 CASH          68,090.12   3,428.90    0.00       0.00        0.00     71,519.02  20    14,303.80

Employee: 25 V ▓▓▓▓▓▓▓▓ -- (terminated 02/01/2005, BIS, forfeit 12/31/2010 - not yet paid)
2 CASH         842,855.38  42,444.76    0.00       0.00        0.00    885,300.14  40   354,120.06

Employee: 113 V ▓▓▓▓▓▓▓▓ -- (terminated 07/28/2006 no break in service - not yet paid)
2 CASH          83,491.59   4,204.49    0.00       0.00        0.00     87,696.08  40    35,078.43

Employee: 49 V ▓▓▓▓▓▓▓▓ -- (terminated 10/21/2004, BIS, forfeit 12/31/2009 - not yet paid)
2 CASH         624,314.59  31,439.42    0.00       0.00        0.00    655,754.01  40   262,301.60

Employee: 17 V ▓▓▓▓▓▓▓▓ -- (terminated 08/08/2002, BIS, forfeit 12/31/2006 - paid this period)
2 CASH         626,760.81       0.00    0.00       0.00   626,760.81-       0.00  20         0.00

Employee: 39 V ▓▓▓▓▓▓▓▓ -- (terminated 07/22/2005, BIS, forfeit 12/31/2010 - not yet paid)
2 CASH         615,565.88  30,998.85    0.00       0.00        0.00    646,564.73  80   517,251.78

Employee: 202 ZZZ FORFEITURE SUSPENSE -- (terminated 12/31/2005, BIS, forfeit 12/31/2006 - not yet paid)
2 CASH               0.00  41,800.87-   0.00  544,511.00- 1,087,237.96  500,926.09   0         0.00

TOTALS FOR EACH ACCOUNT

2 CASH                      $1,044,415.09           $0.00        $23,701,407.54
             $22,782,344.61                 $0.00        $125,352.16-


     Employer -
       Forfeitures Allocated:                     $544,511.00
       Forfeitures NOT Allocated:                 $500,926.09

**CONFIDENTIAL**
D-484