# EXHIBIT E

# BRIEFLY STATED, INC.
# PROFIT SHARING PLAN

# SUMMARY PLAN DESCRIPTION

Plan provisions in effect as of January 1, 2007

LAVIN -000025

# TABLE OF CONTENTS

GENERAL PLAN INFORMATION ....................................................................................................1

INTRODUCTION ...........................................................................................................................2

ELIGIBILITY AND PLAN PARTICIPATION .......................................................................................3
    WHO IS ELIGIBLE TO PARTICIPATE IN THE PLAN .........................................................................3
    WHEN YOUR ACTIVE PARTICIPATION ENDS ................................................................................3

CONTRIBUTIONS ........................................................................................................................4
    EMPLOYER CONTRIBUTIONS .....................................................................................................4
    COMPENSATION COUNTED IN DETERMINING CONTRIBUTIONS .......................................................4
    ANNUAL LIMITATION ON TOTAL AMOUNT OF CONTRIBUTIONS .......................................................4

INVESTMENT OF YOUR PLAN ACCOUNT ......................................................................................5
    PRIOR TO MARCH 1, 2007 ......................................................................................................5
    ON AND AFTER MARCH 1, 2007 ...............................................................................................5

VESTING AND FORFEITURES .......................................................................................................6
    VESTING ................................................................................................................................6
    FORFEITURE OF PLAN ACCOUNT ..............................................................................................7
    APPLICATION OF FORFEITURES .................................................................................................7

LOANS .....................................................................................................................................8
    EFFECTIVE DATE .....................................................................................................................8
    MINIMUM AND MAXIMUM LOAN AMOUNTS ..................................................................................8
    MAXIMUM NUMBER OF LOANS ..................................................................................................8
    LOAN TERMS ..........................................................................................................................8
    DEFAULT ................................................................................................................................9
    LOAN PAYABLE UPON TERMINATION OF EMPLOYMENT ................................................................9

WITHDRAWALS .......................................................................................................................10
    IN-SERVICE WITHDRAWALS ....................................................................................................10
    DISTRIBUTIONS AFTER TERMINATION OF EMPLOYMENT ............................................................10
    TOTAL DISABILITY .................................................................................................................11
    DEATH AND BENEFICIARY DESIGNATION ..................................................................................11
    FORM AND MANNER OF PAYMENT ...........................................................................................11
    TAX TREATMENT OF DISTRIBUTIONS .......................................................................................11

RE-EMPLOYMENT ....................................................................................................................12
    RESTORING VESTING SERVICE ...............................................................................................12
    RESTORATION OF FORFEITED AMOUNTS ..................................................................................12

CLAIMING BENEFITS ................................................................................................................14
    HOW TO APPLY FOR BENEFITS ...............................................................................................14
    DENIAL OF CLAIM ..................................................................................................................14
    REVIEW OF DENIED CLAIM .....................................................................................................14
    LIMITATION ON LEGAL ACTIONS ..............................................................................................15

Briefly Stated, Inc. Profit Sharing Plan
Summary Plan Description
Plan provisions as in effect 1/1/2007

LAVIN-000026

**ADDITIONAL INFORMATION ABOUT THE PLAN** ................................................................................**16**
    ADMINISTRATION OF THE PLAN ................................................................................16
    ASSIGNMENT OF BENEFITS................................................................................16
    PLAN AMENDMENT AND TERMINATION ................................................................16
    PLAN NOT COVERED BY PBGC INSURANCE................................................................16
    YOUR RIGHTS UNDER ERISA ................................................................................17

**GLOSSARY**................................................................................................................**19**

ii

# GENERAL PLAN INFORMATION

**Name of Plan:**    Briefly Stated, Inc. Profit Sharing Plan

**Employer:**    Briefly Stated, Inc.
1359 Broadway
New York, NY 10018
(212) 839-7530

**Employer's Tax**
**Identification Number:**    11-2906765

**Plan Administrator:**    Briefly Stated, Inc.
1359 Broadway
New York, NY 10018
(212) 839-7530
Attention:  Graham Schell

**Type of Plan:**    Profit sharing plan

**Plan Number:**    003

**Plan Year:**    January 1 – December 31

**Plan Effective Date:**    January 1, 2000

**Recordkeeper:**    ADP, Inc.
One ADP Boulevard
Roseland, NJ 07068

**Trustee:**    DWS Trust Company
11 Northeastern Blvd
Salem, NH 03079

**Agent for Legal Service of**
**Process:**    Plan Administrator

1

# INTRODUCTION

The purpose of this Summary Plan Description is to familiarize you with important information concerning the Briefly Stated, Inc. Profit Sharing Plan, formerly known as the Briefly Stated, Inc. Employee Stock Ownership Plan (the "Plan"). This summary describes the Plan terms as in effect on January 1, 2007.

The Plan is a type of defined contribution plan commonly referred to as a profit sharing plan. Under the Plan, Briefly Stated, Inc. (the *"Company"*) and any other participating affiliates (*"Participating Employers"*) may elect to make discretionary contributions (*"Employer Contributions"*) to the Plan on behalf of Plan participants. *Employer Contributions* and net investment earnings will be tax-free while they remain in the Plan.

This Summary Plan Description describes some important features of the Plan in non-technical language and is intended to answer most of your questions about the Plan. It nevertheless is only a summary, and does not include the complete details of the Plan. These details are contained in the official Plan document, which legally governs the administration of the Plan and will be used to determine all issues under the Plan. **In the case of any conflict or difference between this summary and the Plan, the provisions of the Plan will control.**

If you have any questions that this summary does not answer, you should contact the Plan Administrator. You may examine a copy of the complete Plan document at the Company's offices by contacting your office administrator, who will also provide you with a copy at your request.

Terms in *italics* are defined in the GLOSSARY at the end of this Summary Plan Description.

2

# ELIGIBILITY AND PLAN PARTICIPATION

## WHO IS ELIGIBLE TO PARTICIPATE IN THE PLAN

You will be eligible to participate in the Plan if you satisfy both of the following requirements:

- You were a participant in the Plan on December 31, 2005; and

- You are an *Eligible Employee*.

## WHEN YOUR ACTIVE PARTICIPATION ENDS

You will not be eligible to be credited with *Employer Contributions* for any periods after either of the following events:

- You cease to be an *Eligible Employee*, or
- You have a *Break-in-Service*.

Your *Plan Accounts* will continue to be credited with earnings until the Accounts are distributed or forfeited.

3

# CONTRIBUTIONS

## EMPLOYER CONTRIBUTIONS

Each *Plan Year*, each *Participating Employer*, as determined by the *Company* in its sole discretion, may contribute amounts to the Plan as *Employer Contributions*. *Employer Contributions* will be allocated among eligible *Participants* on a pro rata basis determined by compensation.

You will be entitled to share in *Employer Contributions* made for a *Plan Year* if

- You are a *Participant*;

- You are actively employed by a *Participating Employer* as an *Eligible Employee* on the last day of the *Plan Year*, and

- You complete 1,000 or more *Hours of Service* during the *Plan Year*.

The Discretionary Employer Contributions made on your behalf will be credited to your *Employer Contribution Account*. The assets in your *Employer Contribution Account* will be subject to the vesting requirements described in the section entitled VESTING AND FORFEITURES.

## COMPENSATION COUNTED IN DETERMINING CONTRIBUTIONS

For purposes of determining the amount of contributions to be made to the Plan, compensation generally is defined as all of the compensation paid to you by a *Participating Employer* during the calendar year which is reportable as taxable income on your Form W-2 subject to the following adjustments:

- Your salary reduction contributions to any 401(k), cafeteria or flexible benefits plan maintained by a *Participating Employer* also will be included in your compensation.

- Reimbursements or other expense allowances, fringe benefits (cash and noncash), moving expenses, deferred compensation, and welfare benefits will <u>not</u> be counted as compensation.

The amount of compensation which can be counted by the Plan in any year cannot exceed the annual dollar limit set forth in the Internal Revenue Code as adjusted for inflation ($225,000 in 2007).

## ANNUAL LIMITATION ON TOTAL AMOUNT OF CONTRIBUTIONS

The Internal Revenue Code imposes annual dollar limitations on the total amount that may be allocated to your *Plan Account*, for each *Plan Year*, under this Plan and any other tax-qualified plan sponsored by a *Related Company*. The total contribution limitation for each year is equal to the lesser of 100% of your compensation for the year or annual dollar limit set forth in the Internal Revenue Code as adjusted for inflation ($45,000 in 2007). If you are affected by this limit, your *Plan Accounts* will be adjusted to the extent necessary to meet these requirements.

4

# INVESTMENT OF YOUR PLAN ACCOUNT

## PRIOR TO MARCH 1, 2007

Prior to March 1, 2007, the assets of the Plan were invested collectively by the Plan's Trustees. Your *Plan Account* was then credited (or debited) with its proportionate share of income (or loss).

## ON AND AFTER MARCH 1, 2007

The following rules govern the investment of your Plan Account on and after March 1, 2007.

### ■ INVESTMENT OPTIONS

You will be asked how you want the assets in your *Plan Accounts* to be invested. You can choose among several investment options selected by the Company. The Company from time to time, may change the options available for investment. Plan participants will be notified of any changes in funds being offered.

### ■ CHANGING YOUR INVESTMENT ELECTION

You may change your investment election in accordance with the procedures established by the Plan Administrator.

### ■ INVESTMENT PERFORMANCE

The value of your *Plan Accounts* will be affected by the investment performance of the investment options you select. In making your investment decision, you should be aware that different types of investment options have different levels of risk. You should, therefore, carefully read the material provided in connection with the investment option offered before making any decision.

The Plan is intended to meet the investment requirements described in Section 404(c) of the Employee Retirement Income Security Act and Title 29 of the Code of Federal Regulations Section 2550.404c-1. As a result, plan fiduciaries may not be liable for any losses which result from the investment options that you choose.

5

LAVIN -000032

# VESTING AND FORFEITURES

Vesting determines whether and to what extent your *Plan Accounts* are non-forfeitable.

## VESTING

### ■ PLAN YEARS PRIOR TO JANUARY 1, 2007

To the extent attributable to *Employer Contributions* made with respect to *Plan Years* beginning prior to January 1, 2007, your *Plan Account*, and any earnings thereon, will vest and become non-forfeitable in accordance with the following schedule:

| Years of Vesting Service | Vested Interest |
|---|---|
| Less than 3 Years | 0% |
| Less than 4 Years | 20% |
| Less than 5 Years | 40% |
| Less than 6 Years | 60% |
| Less than 7 years | 80% |
| After 7 or more Years | 100% |

### ■ PLAN YEARS ON AND AFTER JANUARY 1, 2007

To the extent attributable to *Employer Contributions* made with respect to *Plan Years* beginning on or after January 1, 2007, your *Plan Account*, and any earnings thereon, will vest and become non-forfeitable in accordance with the following schedule:

| Years of Vesting Service | Vested Interest |
|---|---|
| Less than 2 Years | 0% |
| Less than 3 Years | 20% |
| Less than 4 Years | 40% |
| Less than 5 Years | 60% |
| Less than 6 years | 80% |
| After 6 or more Years | 100% |

In addition, you will become 100% vested in your *Plan Account* while actively employed by the *Company* upon any of the following events:

- your attainment of your *Normal Retirement Date* regardless of whether or not you retire at that time ; or

- your *Total Disability*; or

- your death.

6

## FORFEITURE OF PLAN ACCOUNT

If you take a distribution of the vested portion of your *Plan Account* when you terminate employment, or you are 0% vested, the nonvested portion of the *Plan Account* will be forfeited.

If you do not take a distribution of the vested portion of your *Plan Accounts* when you terminate employment, the nonvested portion of the *Employer Contribution Account* will be forfeited when you incur a 5-year *Break-in-Service*.

You will have a *Break-in-Service* if you are credited with less than 501 *Hours of Service* during a *Plan Year*. For purposes of determining whether you have a *Break-in-Service*, you will be credited with *Hours of Service* during an approved leave of absence, including certain maternity or paternity absences.

See the section entitled RE-EMPLOYMENT for information about restoring forfeitures.

## APPLICATION OF FORFEITURES

Amounts forfeited during a *Plan Year* can, at the *Company's* discretion, either be used to pay administrative expenses or to fund *Employer Contributions*.

7

# WITHDRAWALS

## IN-SERVICE WITHDRAWALS

Because the Plan is designed for long-term savings, withdrawals prior to your termination of employment are not permitted.

## DISTRIBUTIONS AFTER TERMINATION OF EMPLOYMENT

You (or your beneficiary) will be entitled to receive distribution of the vested balance in your *Plan Account* following your termination of employment, *Total Disability* or death. Different rules may apply to distributions made prior to March 1, 2007 and distributions made on and after March 1, 2007.

### ◼ PRIOR TO NORMAL RETIREMENT

If your employment terminates prior to your *Normal Retirement Date*, for any reason other than death or *Total Disability*, distribution of your *Plan Account* may not be made <u>prior</u> to the <u>earlier</u> of:

- Your *Normal Retirement Date*;

- Sixty (60) months after your termination of employment;

- Your death or *Total Disability* prior to your *Normal Retirement Date*; or

- March 1, 2007.

Distribution will begin as soon as practicable after your completed distribution election form is received by the Plan Administrator (or ninety (90) days after the Plan Administrator provides you with a distribution notice, if sooner.)

### ◼ AT OR AFTER NORMAL RETIREMENT

Upon termination of employment at or after your *Normal Retirement Date*, distribution will begin as soon as practicable after your completed distribution election form is received by the Plan Administrator (or ninety (90) days after the Plan Administrator provides you with a distribution notice, if sooner.)

10

## TOTAL DISABILITY

Upon termination of employment by reason of your *Total Disability*, distribution will begin as soon as practicable after your completed distribution election form is received by the Plan Administrator (or ninety (90) days after the Plan Administrator provides you with a distribution notice, if sooner.).

## DEATH AND BENEFICIARY DESIGNATION

If you die before you receive a distribution, the balance in your *Plan Accounts* will be paid to your designated beneficiary (the "Beneficiary"). If you are married, however, your *Plan Accounts* will be paid to your surviving spouse unless you designate another Beneficiary for all or a portion of your Accounts. **If you are married and decide to designate a Beneficiary other than your spouse, you must obtain the notarized consent of your spouse on the Beneficiary Designation Form.**

If you do not designate a Beneficiary, or your Beneficiary does not survive you, your *Plan Accounts* will be paid to your estate.

## FORM AND MANNER OF PAYMENT

You (or your Beneficiary) may elect to receive any distribution under the Plan in equal monthly, quarterly, semiannual or annual payments over a period not to exceed five (5) years.

You may elect to have distributions either:

- distributed directly to you, or
- transferred directly to another tax-qualified retirement plan or an individual retirement account ("IRA"); or
- a combination of both.

## TAX TREATMENT OF DISTRIBUTIONS

Distributions normally are subject to income taxes as are other sources of ordinary income. Various methods exist to help you defer or reduce the amount of taxes, which would otherwise be due. Please note that any distribution you receive before the age of 55 will be subject to a 10% early withdrawal penalty unless certain exceptions apply. Upon retirement or termination of employment, the Plan Administrator will provide you with a notice, which explains these methods in greater detail.

11

# RE-EMPLOYMENT

## RESTORING VESTING SERVICE

The following rules apply in determining whether your earlier period of employment will be counted in determining your vested interest in your *Plan Account* after you are re-employed by a *Related Company*:

| Vested Status at Termination | Period of Absence | Vesting Service Credit at Re-employment |
|---|---|---|
| 20% or more vested in your *Plan Account* | No time limit | Earlier period of employment will be counted to determine your vesting in benefits accrued AFTER the break only if you complete one *Year of Vesting Service* after re-employment. |
| Less than 100% vested in your *Plan Account* | Re-employment before a 5-year *Break-in-Service* | Your post-break service will be taken into account to determine your vesting in benefits earned BEFORE the break. |
| Less than 100% vested in your *Plan Account* | Re-employment after a 5-year or more *Break-in-Service* | Your post-break service will not be taken into account to determine your vesting in benefits earned BEFORE the break. |

## RESTORATION OF FORFEITED AMOUNTS

If you are re-employed by a *Related Company*, the following table describes whether amounts previously forfeited balance will be restored:

| Period of Absence | Restoration of Forfeited Employer Contribution Account |
|---|---|
| Less than a 5-year *Break-in-Service* | The amount forfeited from your *Plan Account* will be restored only if<br><br>• you are re-employed as an *Eligible Employee*, and<br>• you repay the full amount distributed to you within 5 years after your re-employment date. |

12

| Period of Absence | Restoration of Forfeited Employer Contribution Account |
|---|---|
| | |
| 5-year or more *Break-in-Service* | The amount forfeited from your *Plan Account* will <u>not</u> be restored. |

13

# CLAIMING BENEFITS

## HOW TO APPLY FOR BENEFITS

To receive benefits, you must apply in writing. If you need more information about payment of your benefit, contact the Plan Administrator as indicated on page 1.

If you move before your benefit is paid, be sure to notify the Plan Administrator about your new address so Plan information will reach you.

## DENIAL OF CLAIM

If your claim for benefits is denied in whole or in part, the Plan Administrator or its representative will notify you or your authorized representative within 90 days of receiving your claim. If special circumstances require an extension of time for processing your claim, you will receive written notice of the extension and the reasons for it before the end of the initial 90 days. The extension will not exceed a period of 90 days from the end of the initial 90-day period. If you do not receive a response to your claim within this time limit, you should assume that the claim has been denied, and you can begin your appeal.

If your claim is denied, the notice of denial will include:

- an explanation of the specific reason(s) for the denial;
- specific references to pertinent plan provisions on which the denial is based;
- a description of any additional material or information necessary for you to properly establish the claim and an explanation of why such material or information is necessary, and
- an explanation of the steps you or your beneficiary can take to submit the claim for review, and a statement regarding your right to bring a civil action under ERISA following the denial of your claim on review.

## REVIEW OF DENIED CLAIM

To appeal a denied claim, you must submit, within 60 days of receiving the notice of denial, a written request to the Plan Administrator asking that your claim be reconsidered. At this time, you or your authorized representative will have the right to review all pertinent plan documents and submit issues and comments in writing. Also, whenever possible, you should send copies of any documents or records that support your appeal.

A decision regarding your appeal will be made within 60 days after your request for an appeal is received. If more time is needed for a final decision, this review period may be extended for another 60 days. If an extension is necessary, you will receive written notice within the first 60 days explaining the reasons for the delay. The final decision will be furnished in writing and will include the reasons for the decision with reference to those plan provisions upon which the final decision was based.

14

## LIMITATION ON LEGAL ACTIONS

As discussed in the section below entitled "Your Rights Under ERISA," you have the right to bring legal action if a claim for benefits is denied. Any such action is subject to the following limitations:

- You cannot bring a legal action <u>before</u> the claims and review procedures described in the preceding paragraphs are exhausted.

- You cannot bring a legal action more than one (1) year <u>after</u> the date of the final decision on the appeal of your denied claim for benefits.

15

# ADDITIONAL INFORMATION ABOUT THE PLAN

## ADMINISTRATION OF THE PLAN

The day-to-day administration of the Plan is the responsibility of the person or committee appointed by the Company to serve as the Plan Administrator.

The Plan Administrator has full and discretionary authority and power to administer and construe the Plan. This authority includes the discretion to make such rules, regulations, interpretations, and computations and to take other such actions, to administer the plans as it deems necessary or appropriate and to decide any dispute which may arise regarding the rights of participants and beneficiaries under the Plan. Such determinations shall be final and conclusive on all persons claiming benefits under the Plan.

## ASSIGNMENT OF BENEFITS

As required by law, the Plan provides that your benefits cannot be assigned to anyone else, attached, or seized by your creditors, except to the extent required by law or permitted in connection with a Plan loan. However, the Plan must recognize a "qualified domestic relations order" that obligates you to pay child support or alimony or that divide your benefits between you and your spouse or a former spouse. In addition, if the Plan Administrator determines that any Participant or Beneficiary is legally, physically or mentally incapable of receiving a Plan benefit, the Plan Administrator may make the payments to the person's guardian or other legal representative.

## PLAN AMENDMENT AND TERMINATION

The Company has the right to amend the Plan at any time. No amendment, however, will change your right to your vested benefit.

The Company also has the right to terminate the Plan at any time. If the Plan is terminated, you automatically will become 100% vested in the value of your *Plan Accounts*.

## PLAN NOT COVERED BY PBGC INSURANCE

Benefits under the Plan are not insured under the PBGC (Pension Benefit Guaranty Corporation) insurance provisions of Title IV of ERISA because the Plan is a profit sharing plan exempt from such insurance provisions.

Briefly Stated, Inc. Profit Sharing Plan
Summary Plan Description
Plan provisions as in effect 1/1/2007

LAVIN -000041

## YOUR RIGHTS UNDER ERISA

As a participant in the Plan, you are entitled to certain rights and protections under the Employee Retirement Income Security Act of 1974 (ERISA). ERISA provides that all plan participants shall be entitled to:

### Receive Information About Your Plan and Benefits

- Examine, without charge, at the Plan Administrator's office and at other specified locations all documents governing the plan, including insurance contracts and collective bargaining agreements, and a copy of the latest annual report (Form 5500 Series) filed by the plan with the U.S. Department of Labor and available at the Public Disclosure Room of the Employee Benefits Security Administration.

- Obtain, upon written request to the Plan Administrator, copies of documents governing the operation of the plan, including insurance contracts and collective bargaining agreements, and copies of the latest annual report (Form 5500 Series) and updated summary plan description. The Plan Administrator may make a reasonable charge for the copies.

- Receive a summary of the Plan's annual financial report. The Plan Administrator is required by law to furnish each participant with a copy of this summary annual report.

- Obtain a statement telling you whether you have a right to receive a retirement benefit at normal retirement age (age 65) and if so, what your benefits would be at normal retirement age if you stop working under the Plan now. If you do not have a right to a retirement benefit, the statement will tell you how many more years you have to work to get a right to a retirement benefit. This statement must be requested in writing and is not required to be given more than once every twelve (12) months. The Plan must provide the statement free of charge.

### Prudent Actions by Plan Fiduciaries

In addition to creating rights for plan participants ERISA imposes duties upon the people who are responsible for the operation of the employee benefit plan. The people who operate your plan, called "fiduciaries" of the plan, have a duty to do so prudently and in the interest of you and other plan participants and beneficiaries. No one, including your employer or any other person, may fire you or otherwise discriminate against you in any way to prevent you from obtaining a pension benefit or exercising your rights under ERISA.

### Enforce Your Rights

If your claim for a pension benefit is denied or ignored, in whole or in part, you have a right to know why this was done, to obtain copies of documents relating to the decision without charge, and to appeal any denial, all within certain time schedules.

Under ERISA, there are steps you can take to enforce the above rights. For instance, if you request a copy of plan documents or the latest annual report from the plan and do not receive them within 30 days, you may file suit in a Federal court. In such a case, the court may require the plan administrator to provide the materials and pay you up to $110 a day until you receive the materials, unless the materials were not sent because of reasons beyond the control of the administrator. If you have a claim for benefits which is denied or ignored, in whole or in part, you may file suit in a state or Federal court. In addition, if you disagree with the plan's decision or lack thereof concerning the qualified status of a domestic

17

relations order or a medical child support order, you may file suit in Federal court. If it should happen that plan fiduciaries misuse the plan's money, or if you are discriminated against for asserting your rights, you may seek assistance from the U.S. Department of Labor, or you may file suit in a Federal court. The court will decide who should pay court costs and legal fees. If you are successful the court may order the person you have sued to pay these costs and fees. If you lose, the court may order you to pay these costs and fees, for example, if it finds your claim is frivolous.

**Assistance With Your Questions**

If you have any questions about your plan, you should contact the plan administrator. If you have any questions about this statement or about your rights under ERISA, or if you need assistance in obtaining documents from the plan administrator, you should contact the nearest office of the Employee Benefits Security Administration, U.S. Department of Labor, listed in your telephone directory or the Division of Technical Assistance and Inquiries, Employee Benefits Security Administration, U.S. Department of Labor, 200 Constitution Avenue N.W., Washington, D.C. 20210. You may also obtain certain publications about your rights and responsibilities under ERISA by calling the publications hotline of the Employee Benefits Security Administration.

18

# GLOSSARY

**Break-in-Service**

A one-year Break in Service is a 12-month period ending on the last day of a Plan Year during which you have completed less than 501 Hours of Service. A one-year Break in Service does not occur, however, if you complete less than 501 Hours of Service because of an authorized leave of absence, or a maternity/paternity leave.

**Eligible Employee**

You are an Eligible Employee if you have reached age 21 and you are an employee of the *Company* unless you are

- covered by a collective bargaining agreement which does not provide for participation in this Plan;
- classified by a Participating Employer as a "payroll service or agency employee" (as defined in the Plan) or an independent contractor;
- a "leased employee" (as defined in the Internal Revenue Code); or
- a nonresident alien who does not receive United States source earned income.

**Employer Contributions**

Discretionary contributions made to the Plan by a Participating Employer and allocated to the Plan Accounts of eligible Participants.

**Hour of Service**

Generally, you will be credited with an Hour of Service for any hour for which you are directly or indirectly compensated by a Participating Employer or any other Related Company for the performance of duties.

**Normal Retirement Date**

The later of age 65 or the completion of 5 years of participation in the Plan.

**Participant**

Any Eligible Employee who has satisfied the participation requirements set forth in the Plan.

**Participating Employer**

The Company and any other *Related Company* that has adopted the Plan on behalf of its Eligible Employees.

Briefly Stated, Inc. Profit Sharing Plan
Summary Plan Description
Plan provisions as in effect 1/1/2007

LAVIN -000044

### Plan Account

Your interest in the Plan, consisting of Employer Contributions made on your behalf and the earnings and losses thereon.

### Plan Year

The 12-month period beginning January 1, 2000, and each January 1 thereafter, and ending on the next following December 31.

### Related Company

The Company and any company which is included in the same controlled group of companies as the Company as determined by rules provided in the Internal Revenue Code

### Salary Deferral Contribution

The amount that you elect to have withheld from your cash compensation on a pre-tax basis and contributed to the Plan.

### Year of Vesting Service

Any Plan Year during which you are credited with at least 1,000 Hours of Service. You will receive credit for all Years of Service with a Participating Employer and any other Related Company.

20



November 19, 2007

**VIA FEDERAL EXPRESS AND**
**EMAIL (*SAMBREZEL@BENEFITLAWS.COM*)**
Samuel Brezel, Esq.
40 Wall Street
New York, N.Y. 10005

Re:    John Lavin

Dear Mr. Brezel:

This letter is written in response to your May 30, 2007 letter on behalf of John Lavin ("Lavin" or "Claimant").

Your letter advances a formal claim for additional benefits for Claimant (the "Claim") from the Briefly Stated, Inc. Profit Sharing Plan (the "Plan").[1]  Specifically, you assert that Claimant became fully vested in his accrued benefit under the Plan as a result of the complete discontinuance of contributions to the Plan by Briefly Stated, Inc. (the "Company")[2] following the Company's acquisition by Li & Fung USA ("Li & Fung"). You further assert that, since Claimant has received a distribution of 40%[2] of his accrued benefit under the Plan, Claimant is entitled to additional benefits based upon full (as opposed to 40%) vesting.

For the reasons and based upon the documentary record below, the Claim is denied.

## *INTRODUCTION*

As an employee pension benefit plan governed by the Employee Retirement Income Security Act ("ERISA"), the Plan is required to contain procedures for determining benefit claims and appeals. These "Claims Procedures," which are the sole and exclusive method for a participant to claim benefits under the Plan, are set forth in Section 14.12 of the Plan. The Claim, and any subsequent appeal, will be handled in accordance with these Claims Procedures.

---

[1] Prior to January 1, 2006, the Plan was known as the Briefly Stated, Inc. Employee Stock Ownership Plan. Effective as of that date, the Plan was amended and restated and renamed the Briefly Stated, Inc. Profit Sharing Plan. Unless otherwise specified to the contrary, any references to sections of the Plan refer to the January 1, 2006 amendment and restatement.

[2] As discussed below, this represents Claimant's vested percentage under the Plan's vesting schedule in effect on his date of termination.

---

**1359 Broadway, 18th Floor, New York, NY 10018 • (212) 268-5400 • Fax: (212) 268-6268 • www.bsnyc.com**

WE MAKE AMERICA SMILE"



A member of the Li & Fung Group

LAVIN-000230

Samuel Brezel, Esq.
Page 2

Claims for benefits are decided by the Plan Administrator. The Company is designated as the Plan Administrator under the Plan. The Company has appointed a committee, consisting of the undersigned, Brad Egna and Tom Haugen (the "Committee"), to perform these duties on behalf of the Company.

## DOCUMENTARY RECORD

The Plan Administrator bases its determination of the Claim on the following documents:

1.      The Plan document, as amended and restated effective January 1, 2006;

2.      The summary plan description ("SPD") for the Plan;

3.      Your letter dated May 30, 2007;

4.      Section 6.8(b) of the stock purchase agreement regarding the sale of the Company's stock to Li & Fung.

## RELEVANT FACTS

The Committee has determined the following facts with respect to the Claim:

(1)      Claimant was hired by the Company on October 2, 2000.

(2)      Claimant's employment with the Company was terminated on March 30, 2005.

(3)      Prior to January 1, 2006, the Plan was an "Employee Stock Ownership Plan", or "ESOP."

(4)      Prior to September 2005, the Plan's assets consisted of shares of the Company's common stock.

(5)      In September 2005, all of the issued and outstanding shares of the Company's common stock, including the shares owned by the Plan, was acquired by Li & Fung USA.

(6)      When Claimant's employment with the Company was terminated on March 30, 2005, Claimant was credited with four (4) Years of Service.

(7)      When Claimant's employment with the Company was terminated on March 30, 2005, Claimant was 40% vested in his Plan account balance.



Samuel Brezel, Esq.
Page 3

(8)      In 2007, Claimant received a distribution from the Plan in the amount of $598,600.20, representing 40% of the Claimant's account balance of $1,496,500.50.

## PERTINENT PLAN PROVISIONS[3]

The Committee has determined that the following Plan provisions are applicable to the Claim:

(1)      Section 1.01 of the Plan provides that the Plan was converted from an ESOP to a profit sharing plan effective as of January 1, 2006.

(2)      Section 2.02 of the Plan defines "Administrator" or "Plan Administrator" as the Company or such other person or committee as may be appointed to administer the Plan in accordance with Article 14.

(3)      Section 14.01 of the Plan provides that the Company may appoint a committee to perform the duties of the Plan Administrator on behalf of the Company.

(4)      Sections 14.02 and 14.14 of the Plan grant the Committee the full and absolute discretionary authority to interpret the Plan and make final and binding benefit determinations.

(5)      Section 2.19 defines "Profit Sharing Contributions" as "the contributions, if any, made pursuant to Section 6.01.

(6)      Sections 3.06 and 3.07 provide that a participant will be credited with a "Year of Service" for vesting purposes for each Plan Year in which the participant is credited with at least 1,000 hours of service.

(7)      Section 2.18 defines "Plan Year" as the calendar year.

(8)      Section 6.01(a) of the Plan provides that the Company may, at its discretion, determine that a Profit Sharing Contribution is appropriate for a Plan Year.

(9)      Section 10.04(a) provides that amounts that become forfeitures will be used to either pay administrative expenses or to reduce the amount of Profit Sharing Contributions to be made by the Company for the Plan Year.

(10)     Section 10.01(b) provides that a participant's vested interest in their account will be determined in accordance with a 3-7 year graded vesting schedule upon termination of employment prior to normal retirement. Under the schedule, a

---

[3] As noted above, references to specific Plan provisions refer to the Plan, as was amended and restated effective as of January 1, 2006, unless otherwise specified.



Samuel Brezel, Esq.
Page 4

    participant with 4 Years of Vesting Service has a vested interest of 40% in the Plan account.

(11)    Section 10.01(c) provides that a participant's vested interest in amounts attributable to Profit Sharing Contributions made for Plan Years beginning on and after January 1, 2007 will be determined in accordance with a 2-6 year graded vesting schedule.

(12)    Section 10.02 provides that the nonvested portion of a participant's account will be forfeited when the participant receives a distribution of the vested balance of their account.

(13)    Section 14.02 of the Plan provides that the Administrator shall have the full authority and power to administer and construe the Plan, including without limitation the power to interpret the Plan and to decide all questions concerning the rights of any participant under the Plan.

(14)    Section 14.14 provides that the Administrator has full and absolute discretion and authority to determine the amount of benefits to which any person is entitled under the Plan. Section 14.14 further provides that any such determination will be final and binding on all parties, and may not be set aside in any judicial proceeding unless found to be arbitrary and capricious by a court of competent jurisdiction.

(15)    Section 15.03(a) of the Plan provides that the interest of each affected employee will become fully vested and nonforfeitable if the Plan is terminated in whole or in part.

## *ANALYSIS*

### BACKGROUND

It is undisputed that Claimant was employed by the Company from October 2, 2000 until March 30, 2005. Claimant was therefore credited with four (4) Years of Service for vesting purposes. (Plan, Sections 3.06 and 3.07). In accordance with the Plan's vesting schedule for the relevant period[4], Claimant therefore had a vested interest in his account balance of 40%. (Plan, Section 10.01(b)). On this basis, Claimant received a distribution of $598,600.20, representing 40% of the Claimant's account balance of $ 1,496,500.50.

Notwithstanding the foregoing, you assert that Claimant became fully (that is, 100%) vested in his accrued benefit under the Plan "as a result of the decision by the Company to discontinue making contributions to the Plan following the Company's acquisition by

---

[4] The Plan provides a different vesting schedule for amounts attributable to Profit Sharing Contributions made for Plan Years beginning on and after January 1, 2007. Plan, Section 10.01(c).



LAVIN -000233

Samuel Brezel, Esq.
Page 5

Li & Fung USA." In support of this theory, you cite Section 411(d)(3) of the Internal
Revenue Code and the regulations promulgated thereunder.

## COMPLETE DISCONTINUANCE OF CONTRIBUTIONS-IRS GUIDANCE

### IRS Regulations

Code Section 411(d)(3) requires, as a condition of tax qualification, a plan to provide that
the rights of all affected employees become fully vested and nonforfeitable upon the
termination of the plan (Code Section 411(d)(3)(A)) or, with respect to a plan to which
section 412 does not apply[5], upon complete discontinuance of contributions under the
plan (Code Section 411(d)(3)(B)). Code Section 411(d)(3) would require the Plan to
provide for full vesting of all affected employees upon a "complete discontinuance of
contributions."[6]

The relevant IRS regulations provide as follows:

> General rule. For purposes of this section, **a
> complete discontinuance of contributions** under
> the plan is **contrasted with a suspension** of
> contributions under the plan **which is merely a
> temporary cessation** of contributions by the
> employer. A complete discontinuance of contributions
> may occur although some amounts are contributed by
> the employer under the plan if such amounts are not
> substantial enough to reflect the intent on the part of
> the employer to continue to maintain the plan. **The
> determination** of whether a complete discontinuance
> of contributions under the plan has occurred **will be
> made with regard to all the facts and
> circumstances in the particular case,** and without
> regard to the amount of any contributions made under
> the plan by employees. The determination of whether
> a complete discontinuance of contributions under the
> plan has occurred will be made with regard to all the
> facts and circumstances in the particular case, and
> without regard to the amount of any contributions
> made under the plan by employees. Among the
> factors to be considered in determining whether a
> suspension constitutes a discontinuance are:

---

[5] Section 412 of the Code does not apply to profit sharing plans such as the Plan. Code Section 412(h)(1).
[6] The Plan provides for full vesting upon termination. Plan, Section 15.03(a). The Committee interprets Section
15.03(a) as encompassing a "complete discontinuance of contributions" as well as a termination.



Samuel Brezel, Esq.
Page 6

> (i)     Whether the employer may merely be calling an actual discontinuance of contributions a suspension of such contributions in order to avoid the requirement of full vesting as in the case of a discontinuance, or for any other reason;
>
> (ii)    Whether contributions are recurring and substantial; and
>
> (iii)   Whether there is any reasonable probability that the lack of contributions will continue indefinitely.
>
> Reg. § 1.411(d)-2(d)(1)(emphasis added).

The IRS regulations, therefore, do not provide specific guidance as to what constitutes a "complete discontinuance of contributions." The regulations do, however, contrast a "temporary cessation" with a "complete discontinuance," with full vesting required only upon the latter. While the regulation further specifies a number of nonexclusive factors to be considered in determining whether a complete discontinuance has occurred, the determination is ultimately based upon the relevant facts and circumstances.

**Internal Revenue Service Manual**

Additional guidance is also found in the Internal Revenue Service Manual ("IRS Manual").[7] In this regard, the IRS Manual provides that "[i]f the employer has **failed to make substantial contributions** in **3 out of 5 years, consider the issue** of discontinuance of contributions." IRS Manual, Section 7.12.1.2.6-1(c)(emphasis added).

The IRS Manual, therefore, provides that a complete discontinuance of contributions cannot occur unless and until substantial contributions are not made for 3 out of five years. Agents are instructed to "consider" the issue of a complete discontinuance of contributions once this minimum threshold is met.

**A COMPLETE DISCONTINUANCE OF CONTRIBUTIONS DID NOT OCCUR**

**Recurring and Substantial Contributions**

The Committee has found a history of recurring and substantial contributions to the Plan.

The Plan was effective January 1, 2000. The Company made recurring and substantial contributions to the Plan for each Plan Year through and including 2005. Your argument

---

[7]The IRS Manual is the official compilation of policies, procedures, instructions, and guidelines relating to the organization, functions, administration, and operations of IRS. Although it is not legally binding, the IRS Manual has been cited by several courts as a useful interpretive tool.



Samuel Brezel, Esq.
Page 7

that "a complete discontinuance of contributions became effective on the last day of the Company's tax year, or December 31, 2006" is therefore based solely upon the Company's alleged failure to make a contribution in 2006.

The Committee does not agree. To the contrary, the Committee has determined that the alleged failure to make a contribution in 2006, after having made recurring and substantial contributions for the six prior consecutive years, does not constitute a complete discontinuance of contributions. The Committee therefore further determines that a termination of the Plan did not occur on this basis under Plan Section 15.03(a).[8]

The Committee also disagrees with your contention that "the last substantial contribution made to the Plan was in 2005." The Plan provides that the Company will, at its discretion, determine if and to what extent a Profit Sharing Contribution is appropriate for a Plan Year. Plan Section 6.01(a). The Plan further provides that amounts that become forfeitures will be used to either pay administrative expenses or to reduce the amount of Profit Sharing Contributions to be made by the Company for the Plan Year. Plan Section 10.04(a). No forfeitures have been used to pay administrative expenses. Accordingly, under the terms of the Plan, forfeitures function as deemed Profit Sharing Contributions and are allocated accordingly.[9]

**Lack of Intent to Permanently Cease Contributions**

Your letter also asserts that a complete discontinuance of contributions occurred based upon the Company's intention to permanently cease making contributions. In support, you cite (1) the absence of any provisions in the acquisition agreements requiring Li & Fung USA to adopt and maintain the Plan; (2) the "announced intention to discontinue making contributions to the Plan;" and (3) the Company's failure to "assuage the concerns of participants who were affected by the discontinuance of contributions by describing it as a mere temporary cessation or suspension." As explained below, these arguments misstate both the facts and the law.

Your letter asserts that "[t]o the best of my client's knowledge, no provisions were made under the terms of the acquisition agreement for LI & Fung to adopt the Plan or to resume making contributions thereto." Claimant's knowledge notwithstanding, the terms of the stock purchase agreement (specifically Section 6.8(b)) require Li & Fung to "continue to maintain, and not to terminate" the Plan for a period of three years and specifically authorize the conversion of the Plan from an ESOP to a profit sharing plan.

Your statement regarding the "announced intention" to cease contributions is similarly flawed. As your own letter acknowledges, "participants were notified in writing that no

---

[8] As noted above, the Committee interprets Section 15.03(a) as encompassing a "complete discontinuance of contributions" as well as a formal termination. This interpretation is consistent with your letter, which states that "the discontinuance of contributions to the Plan constitutes a termination of the Plan."

[9] The Committee further notes that forfeitures are treated in the same manner as employer contributions for the purpose of applying several tax-qualification rules. See, e.g., Code Section 415.



LAVIN -000236

Samuel Brezel, Esq.
Page 8

further contributions of employer stock would be made to the Plan." This is entirely consistent with the Plan's sale of shares and conversion to a profit sharing plan following such sale, as there were no shares owned by the Plan and therefore no shares to allocate to Plan participants. Your statement, therefore, regarding the "announced intention to discontinue making contributions to the Plan" is both disingenuous and erroneous.

Lastly, with respect to the alleged significance of the Company's failure to describe the contribution status as temporary, we note that the Claimant, not the Company or the Plan, bears the burden of establishing that there was a complete discontinuance of contributions. Steiner Corp. Retirement Plan v. Bertoldo, 31 F. 3d 935, 941-42 (10th Cir. 1994).

We have considered the other arguments you raised and find them similarly unavailing.

## CONCLUSIONS

Based on the foregoing, the Committee has made the following determinations:

(1)     The Committee interprets Section 15.03 of the Plan, entitled "Consequences of Termination," as applying to both a formal Plan termination and a complete discontinuance of contributions.

(2)     A complete discontinuance of contributions to the Plan has not occurred. Accordingly, the Plan has not been terminated, and Claimant's interest in his Plan account balance does not become fully vested and nonforfeitable pursuant to Plan Section 15.03(a).

(3)     When Claimant received a distribution of $598,600.20, representing 40% of the Claimant's account balance of $ 1,496,500.50, Claimant received his entire vested benefit under the Plan.

The Claim is therefore denied.

## RIGHT TO APPEAL

In accordance with the Plan's Claims Procedures, Claimant has the right to appeal this claim denial. A written appeal must be filed Claimant (or his authorized representative) within 60 days of the date that you receive this letter. Failure to do so will render this decision final and binding without further appeal.

Claimant (or his authorized representative) also have the following rights:



Samuel Brezel, Esq.
Page 9

(1)     to submit additional documentation in support of your appeal, without regard to whether or not the documentation was considered in the original claim denial;

(2)     to request and to receive free of charge copies of all documents relevant to your claim, as stated in the "Documentary Record" section above;

(3)     to bring a civil action under Section 502(a) of ERISA following the exhaustion of the Claims Procedures.

Sincerely,

**Retirement Committee of the Briefly Stated, Inc. Profit Sharing Plan**

BY: _____

Name: _ALAN BECKERMAN_

Date: _11/19/07_

LAVIN -000238

Subj:    **Fw: Plan document and SPD**
Date:    4/2/2007 9:33:35 A.M. Eastern Daylight Time
From:    jlavin@adoralynx.com
To:      sambrezel@benefitlaws.com

Sent via BlackBerry from T-Mobile

——Original Message-----
From: "Lanier Dalencourt" <lanierdalencourt@lfusa.com>
Date: Mon, 2 Apr 2007 09:24:17
To:JLavin@adoralynx.com
Subject: Fw: Plan document and SPD

Hi John, attached is the SPD for the Profit Share plan.  Please let me know if you have any questions.

Lanier Dalencourt
Human Resources Generalist
Li&Fung USA
1359 Broadway, 16th Floor
New York, NY 10018

Direct:  646.839.7526
Fax:  646.839.7473
lanierdalencourt@lfusa.com
----- Forwarded by Lanier Dalencourt/USA/Mail on 04/02/2007 09:20 AM -----

Graham Schell          USA
03/30/2007 12:41 AM

    To:    "Lanier  Dalencourt" <lanierdalencourt@lfusa.com>
    cc:
    Subject:     Fw: Plan document and SPD

Please send john the spd (he already has the plan doc).
Thanks.
Sent from my Blackberry wireless handheld

    ----- Original Message -----
From: "John Lavin" [JLavin@adoralynx.com]
Sent: 03/29/2007 08:20 PM AST
To: Graham Schell
Subject: Re: Plan document and SPD

Hi Graham,

I was wondering if you have a copy of the plan document and SPD for me? Thanks.

Best regards,
John Lavin
CEO

Monday, April 02, 2007 America Online: SAMBREZEL

LAVIN -000247

Adora Lynx
Division of JL Apparel Group, LLC
275 West 39th Street
Suite 5B
New York, NY 10018
(P) 212-221-8311
(C)347-431-6623
(F) 212-221-8391



# LI & FUNG USA

## FAX MESSAGE

| | |
|---|---|
| DATE: | 22 February, 2006 |
| TO: | John Lavin |

FROM: Neetu Makhijani
TEL: 646-839-7529
FAX:
E-mail: neetumakhijani@lfusa.com

FAX: **212-249-5181**
Pages  3 (including cover)
RE:  ESOP Statements

The Millwork Trading Co d/b/a Li & Fung USA

1359 Broadway, 16th Floor, New York, New York 10018 Tel: 646-839-7529 Fax: 646-839-7473
website www.lifung.com

BRIEFLY STATED, INC
EMPLOYEE STOCK OWNERSHIP PLAN

For the Period Ended 12/31/05

EMPLOYEE STATEMENT #2
FOR
LAVIN, JOHN

SS#:  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

Date of Birth:        07/01/65      Date of Employment: 10/02/00
Participation Date: 01/01/01      Date of Retirement: 07/01/30

SUMMARY OF ACCOUNTS

| ACCOUNT NAME | PRIOR BALANCE | PAYOUT/ DISTRIB. | TRANSFER/ ADJUSTMENT | GAIN / LOSS | FORFEITURE ALLOCATED | FUND CONTRIB | ENDING BALANCE | VESTED % | BALANCE |
|---|---|---|---|---|---|---|---|---|---|
| COMPANY STOCK | 1,466.2747 | 0.0000 | -1,466.2747 | 0.0000 | 0.0000 | 0.0000 | 0.0000 | 40% | 0.0000 |
| | MARKET VALUE @ $ | 750.00/share | | | | | $ 0.00 | $ | 0.00 |
| CASH | 0.0000 | 0.0000 | 1,099,706.0500 | 305,191.5300 | 0.0000 | 0.0000 | 1,404,897.5800 | 40% | 561,959.0320 |
| | MARKET VALUE @ $ | 1.00/share | | | | | $1,404,897.58 | $ | 561,959.03 |
| TOTAL ACCOUNT VALUE (IN DOLLARS) | | | | | | | $1,404,897.58 | $ | 561,959.03 |

LAVIN -000273

BRIEFLY STATED, INC
EMPLOYEE STOCK OWNERSHIP PLAN

For the Period Ended 12/31/05

EMPLOYEE STATEMENT #1
FOR
LAVIN, JOHN

SS#:  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

Date of Birth:        07/01/65      Date of Employment: 10/02/00
Participation Date: 01/01/01        Date of Retirement: 07/01/30

SUMMARY OF ACCOUNTS

| ACCOUNT NAME | PRIOR BALANCE | PAYOUT/ DISTRIB. | TRANSFER/ ADJUSTMENT | GAIN / LOSS | FORFEITURE ALLOCATED | FUND CONTRIB | ENDING BALANCE | VESTED % | VESTED BALANCE |
|---|---|---|---|---|---|---|---|---|---|
| COMPANY STOCK | 1,350.9903 | 0.0000 | 0.0000 | 115.2845 | 0.0000 | 0.0000 | 1,466.2747 | 40% | $86.5099 |
| | MARKET VALUE @ $ | 750.00/share | | | | | $1,099,706.05 | | $ 439,882.42 |

TOTAL ACCOUNT VALUE (IN DOLLARS) .........................................    $1,099,706.05      $ 439,882.42

LAVIN -000274