UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

JOHN E. LAVIN,

                              Plaintiff,

                    -against-

BRIEFLY STATED, INC. and BRIEFLY
STATED INC. PROFIT SHARING PLAN,

                              Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

Case No.:  09-CIV-8610 (CM)

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

JACKSON LEWIS LLP

One North Broadway, 15th Floor
White Plains, New York 10601
Tel.: (914) 328-0404
Fax: (914) 328-1882
Robert R. Perry
perryr@jacksonlewis.com
Jonathan M. Kozak
kozakj@jacksonlewis.com

*Attorneys for Defendant Briefly Stated,
Inc. Profit Sharing Plan*

SALANS LLP

Rockefeller Center
620 Fifth Avenue,
New York, NY 10020-2457
Tele.: (212) 632-8457
Fax: (212) 307-3397
John J. Hay
jhay@salans.com

*Attorneys for Defendant Briefly Stated,
Inc.*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ..............................................................................1

STATEMENT OF FACTS...................................................................................3

   *A.*    *PROCEDURAL BACKGROUND.* ...............................................................3

   *B.*    *EMPLOYMENT WITH BRIEFLY STATED AND PARTICIPATION*
       *IN THE PLAN.* ........................................................................................3

   *C.*    *PLAN HISTORY.* ....................................................................................4

   *D.*    *ACQUISITION OF BRIEFLY STATED BY LI & FUNG* ..............................4

   *E.*    *PERTINENT PLAN PROVISIONS* ............................................................5

        *1.*  *Vesting and Forfeiture.* ....................................................................5

        *2.*  *Profit Sharing Contributions.* ..........................................................5

        *3.*  *Plan Administration.* .......................................................................6

        *4.*  *Limitations Period for Legal Action Challenging a Denial of Benefits.* ..............6

   *F.*    *FORFEITURE ALLOCATIONS AND UNALLOCATED FORFEITURES.* .....................7

   *G.*   *ADMINISTRATIVE CLAIM FOR BENEFITS AND SUBSEQUENT APPEAL* ...............7

        *1.*  *Initial Claim for Benefits.* .................................................................7

        *2.*  *Appeal of Denied Claim for Benefits.* ..................................................8

           *a.*  *History of substantial and recurring contributions* .......................9

           *b.*  *The 2006 forfeiture allocation was a "Profit Sharing Contribution"*
              *under the terms of the Plan.* ...........................................................9

           *c.*  *The determination that a complete discontinuance of contributions*
               *would not have occurred absent the Committee's interpretation that*
               *the 2006 forfeiture allocation was a Profit Sharing Contribution under*
               *the Plan.* ................................................................................10

i

H.   PLAINTIFF HAD BOTH POSSESSION OF PLAN DOCUMENTS
     CONTAINING THE LIMITATIONS PERIOD AND KNOWLEDGE
     OF THE LIMITATIONS PERIOD. ...................................................................10

ARGUMENT .........................................................................................................11

POINT I:  SUMMARY JUDGMENT SHOULD BE GRANTED
          BECAUSE PLAINTIFF'S CLAIM IS TIME-BARRED .......................................11

     A.  The Plan Contains a One Year Limitations Period. ...........................................11

     B.  Plaintiff Had Prior Knowledge of the Plan's One Year
         Limitations Period. ..................................................................................12

     C.  Courts Have Universally Upheld Plan Limitations Periods. ...............................12

     D.  Plaintiff Did Not Timely Commence This Action. ...........................................15

POINT II:  SUMMARY JUDGMENT SHOULD BE GRANTED TO
           DEFENDANTS BECAUSE THE COMMITTEE'S DECISION
           WAS NOT ARBITRARY AND CAPRICIOUS.................................................15

     A.  The Express Terms of the Plan Grant to the Committee the
         Exclusive and Discretionary Authority to Interpret Plan Terms
         and Determine Benefit Claims and Appeals.....................................................15

     B.  The Arbitrary and Capricious Standard of Review Governs the
         Court's Review of the Committee's Claim Denial.............................................16

     C.  Under The Arbitrary and Capricious Standard, the Committee's
         Decision Is Afforded Great Deference. ..........................................................18

     D.  The Committee's Decision Was Neither Arbitrary Nor Capricious
         and Must be Upheld by the Court...................................................................19

POINT III:  EVEN IF THE COURT WERE TO DECIDE THAT DE NOVO
            REVIEW IS APPROPRIATE, SUMMARY JUDGMENT SHOULD
            BE GRANTED .............................................................................................21

CONCLUSION ....................................................................................................23

## PRELIMINARY STATEMENT

Defendants Briefly Stated, Inc. ("Briefly Stated") and the Briefly Stated, Inc. Profit Sharing Plan (the "Plan") (collectively "Defendants") respectfully submit this Memorandum of Law in support of their motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

Plaintiff was hired by Briefly Stated on October 2, 2000.   When Plaintiff's employment with Briefly Stated was terminated on March 30, 2005, Plaintiff was credited with four (4) years of service.  Under the Plan's vesting schedule, Plaintiff was 40% vested in his Plan account balance.   Accordingly, when Plaintiff requested a distribution of his Plan account balance in or about March 2007, he received a lump sum payment of $598,600.20, representing 40% of the $1,496,500.50 account balance.  The remaining amount (approximately $897,000) was forfeited at that time and is the subject of this litigation.

Plaintiff thereafter submitted a claim for additional benefits from the Plan, asserting that he became fully vested and was therefore entitled to the forfeited portion of his account balance as a result of a "complete discontinuance of contributions."  Both the initial claim and the subsequent appeal were denied by an administrative committee appointed by Briefly Stated (the "Committee") under the terms of the Plan.

More than seventeen (17) months after the Committee's final determination of Plaintiff's claim, Plaintiff commenced this action by filing the Complaint in this matter (the "Complaint").  The Complaint asserts a single cause of action, specifically a claim for benefits under Section 502(a)(1)(B) and 502(a)(3) of the Employee Retirement Income Security Act ("ERISA").  As relief for the alleged wrongful claim denial, Plaintiff seeks an amount equal to the forfeited portion of his account, plus interest and attorneys' fees.

Defendants respectfully submit that Plaintiff cannot demonstrate a genuine issue of material fact with respect to this claim, and Plaintiff's Complaint should therefore be dismissed in its entirety, with prejudice. Plaintiff's claim is barred by the applicable statute of limitations. The Plan contains a contractual limitations period for the commencement of legal actions contesting a claim denial. Specifically, both the Plan document and the summary plan description expressly provide that any such action must be brought no later than one (1) year after the date of the final decision on appeal. Notwithstanding Plaintiff's knowledge of and possession of the governing Plan documents implementing the one year limitations period, Plaintiff commenced this action more than seventeen (17) months following the Committee's March 31, 2008 final decision on appeal. As a result, the Complaint is time-barred and must be dismissed with prejudice on that basis.

Assuming *arguendo* that the Court finds that the Complaint is not time-barred (and it should not), Plaintiff's claim should nevertheless be dismissed. In such case, the Court's review would be governed by the deferential arbitrary and capricious standard of review. Under this standard of review, the Committee's decision must be upheld unless unreasonable, unsupported by substantial evidence or erroneous as a matter of law. The Committee afforded Plaintiff's claim a full and fair review, based on a complete administrative record. Based on their reasonable interpretation of the terms of the Plan, the Committee determined that a "Profit Sharing Contribution" had been made for the 2006 year. The Committee further determined that contributions had been made for every other year that Plaintiff had participated in the Plan. The Committee therefore denied Plaintiff's claim and subsequent appeal, principally finding that a "complete discontinuance of contributions" had not occurred where contributions had been made

for <u>every</u> relevant year. The inherent reasonableness of the Committee's decision is readily obvious and not subject to any factual dispute; summary judgment is therefore appropriate.

Even if the Court were to determine that de novo review was appropriate for some or all of the Committee's determinations, the Committee's claim denial must still be upheld by the Court.

**STATEMENT OF FACTS**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Civil Rule 56.1 of this Court, the uncontested material facts relevant to this motion are set forth in separately numbered paragraphs in the accompanying Statement Of Undisputed Material Facts In Support Of Defendants' Motion For Summary Judgment ("Statement"). They are reproduced below for the convenience of the Court.

**A.    *PROCEDURAL BACKGROUND.***

On or about October 8, 2009, Plaintiff filed a Complaint with this Court.    On January 6, 2010, Defendants timely filed and served their Answers to Plaintiffs' Complaint.

**B.    *EMPLOYMENT WITH BRIEFLY STATED AND PARTICIPATION IN THE PLAN.***

Plaintiff was employed by Briefly Stated from on or about October 2, 2000 through March 30, 2005. (Complaint ¶8; D-096)[1]

Plaintiff became a participant in the Plan on January 1, 2001. (Lavin-000273).

At the time Plaintiff's employment with Briefly Stated ended, on or about March 30, 2005,

---

[1]    "D-___" refers to pages of documents produced in discovery by Defendants to Plaintiff. The administrative record was produced by Defendants and labeled D-001 through D-110. "Lavin-____" refers to pages from the documents produced in discovery by Plaintiff to Defendants.  The administrative record and other cited portions from the document productions of Defendants and Plaintiff are attached to the Affirmation of Jonathan M. Kozak, Esq. Submitted in Support of Defendants' Motion for Summary Judgment as Exhibits E and E, respectively.  "Complaint __" refers to Plaintiff's Complaint, attached as Exhibit A to the Kozak Affirmation.

3

Plaintiff was credited with four (4) Years of Service. (D-097). When Plaintiff's employment ended, he was 40% vested in his Plan account balance. (Lavin-000273).

In or about March 2007, Plaintiff requested and received a distribution from the Plan in the amount of $598,600.20, representing 40% of Plaintiff's account balance of $1,496,500.50. (D-097). The remaining balance of Plaintiff's account, $897,937.81, was forfeited in March 2007. (D-350).

## C.   PLAN HISTORY.

From January 1, 2000 through December 31, 2005, the Plan was an "Employee Stock Ownership Plan", or "ESOP." (D-096). During that time, the name of the Plan was the "Briefly Stated, Inc. Employee Stock Ownership Plan." (Lavin-000230). Prior to September 2005, the Plan's assets consisted primarily of shares of Briefly Stated common stock. (Id.) Effective January 1, 2006, the Plan was amended and restated, converted to a profit sharing plan and the name of the Plan changed to the "Briefly Stated, Inc. Profit Sharing Plan, *formerly known as the Briefly Stated, Inc. Employee Stock Ownership Plan.*" (D-001 through D-050, italics in original; D-122 through D-123).[2] The Plan Document governs Plaintiff's claim for additional Plan benefits that is the subject of this action. (D-095). For the years ending January 1, 2000 through December 31, 2005, inclusive, Briefly Stated funded the Plan by making cash contributions. (D-102; see also D-164, D-169 and D-183).

## D.   ACQUISITION OF BRIEFLY STATED BY LI & FUNG.

In September 2005, all of the issued and outstanding shares of Briefly Stated common stock, including the shares owned by the Plan, were acquired by LF USA Inc. ("Li & Fung"). (D-097). The terms of the acquisition agreement required Li & Fung to continue to

---

[2]    The Plan, as amended and restated effective January 1, 2006, is hereinafter referred to as the "Plan Document".

maintain the Plan for a period of three (3) years. (D-386). The contribution for the year ending December 31, 2005 was made by Briefly Stated after the acquisition by Li & Fung. (D-183).

## E.    PERTINENT PLAN PROVISIONS.

### 1.    Vesting and Forfeiture.

Sections 3.06 and 3.07 of the Plan[3] provide that a participant will be credited with a "Year of Service" for vesting purposes for each Plan Year in which the participant is credited with at least 1,000 hours of service. (D-013).

Section 10.01(b) of the Plan provides that a participant's vested interest in their account will be determined in accordance with a 3-7 year graded vesting schedule upon termination of employment prior to normal retirement. (D-022). Under the schedule, a participant with 4 Years of Vesting Service has a vested interest of 40% in the Plan account. (D-022). Section 15.03(a) of the Plan provides that the interest of each affected employee will become fully vested and nonforfeitable if the Plan is terminated in whole or in part. (D-036).

Section 10.02 provides that the nonvested portion of a participant's account will be forfeited when the participant either incurs a 5-year break-in-service or receives a distribution of the vested balance of their account. (D-022).

### 2.    Profit Sharing Contributions.

Section 2.19 of the Plan defines "Profit Sharing Contributions" as "the contributions, if any, made pursuant to Section 6.01." (D-011). Section 6.01(a) of the Plan provides that Briefly Stated, at its sole discretion, will determine if and to what extent a Profit Sharing Contribution is appropriate for a Plan Year. (D-017). Section 10.04(a) of the Plan provides that forfeitures are used to either pay administrative expenses or to reduce the amount of Profit Sharing Contributions to be made by Briefly Stated for the Plan Year. (D-023). The

---

[3]    Unless otherwise specified, Plan section references refer to the Plan Document.

Plan does not contain any other provision for the allocation of forfeitures. (D-001 to D-050). The Plan's summary plan description (the "SPD") also provides that forfeitures may "either be used to pay administrative expenses or to fund Employer Contributions." (D-060).

### 3.    *Plan Administration.*

Section 2.02 of the Plan defines "Administrator" or "Plan Administrator" as Briefly Stated or such other person or committee as may be appointed to administer the Plan in accordance with Article 14. (D-008). Section 14.01 of the Plan authorizes Briefly Stated to appoint a committee to perform the duties of the Plan Administrator on behalf of the Company. (D-032).

Section 14.14 of the Plan provides that the Administrator or its designee has full and absolute discretion and authority to determine the amount of benefits to which any person is entitled under the Plan. (D-035). Section 14.14 further provides that any such determination will be final and binding on all parties, and may not be set aside in any judicial proceeding unless found to be arbitrary and capricious by a court of competent jurisdiction. (Id.).

### 4.    *Limitations Period for Legal Action Challenging a Denial of Benefits.*

Section 14.13 of the Plan provides that "[a]ny suit or legal action initiated by a claimant under the Plan must be brought, if at all, no later than one year following a final decision on the claim for benefits by the Administrator." (D-035).

The SPD provides that:

> As discussed in the section below entitled "Your Rights Under ERISA," you have the right to bring legal action if a claim for benefits is denied. Any such action is subject to the following limitations:
>
> • You cannot bring a legal action before the claims and review procedures described in the preceding paragraphs are exhausted.

> • You cannot bring a legal action more than one (1) year after the date of the final decision on the appeal of your denied claim for benefits."

(D-068).

## F.      FORFEITURE ALLOCATIONS AND UNALLOCATED FORFEITURES.

Prior to the allocation of forfeitures for the 2006 plan year, the Plan held unallocated forfeitures of approximately $1,000,000. (D-141).   This represented amounts forfeited by terminated Plan participants other than Plaintiff.   (See D-350, reflecting that Plaintiff's forfeiture occurred after March 1, 2007).  For the 2006 plan year, Briefly Stated used $544,511 of the unallocated forfeitures to fund a profit sharing contribution. (D-111, D-112, and D-117).   This amount represented the maximum permissible allocation under the limitations imposed by Section 415 of the Internal Revenue Code.  (D-111).  After the 2006 allocation, the Plan had remaining unallocated forfeitures in the amount of $500,926.09. (D-234).  Due to the pending litigation and potential claims by other participants, and consistent with its fiduciary responsibilities under ERISA, Briefly Stated suspended future profit sharing contribution allocations funded by unallocated forfeitures, effective with the 2007 plan year, pending the resolution of these claims.  (D-115, D-117).  As of May 2009, the Plan had unallocated forfeitures of $3,313,232.73.  (D-350, D-351).

## G.      ADMINISTRATIVE CLAIM FOR BENEFITS AND SUBSEQUENT APPEAL.

### 1.      Initial Claim for Benefits.

By letter of counsel dated May 30, 2007, Plaintiff advanced a formal claim for additional benefits from the Plan.  (D-074 through D-080).  The claim asserted that Plaintiff became fully vested in his accrued benefit under the Plan as a result of the complete discontinuance of contributions to the Plan by Briefly Stated following their acquisition by Li & Fung.  (D-074).  The claim further asserted that, since Plaintiff had received a distribution of

40% of his accrued benefit under the Plan, Plaintiff was entitled to additional benefits based upon 100% (as opposed to 40%) vesting. (Id.).

By letter dated November 19, 2007, the Committee denied Plaintiff's claim for benefits. (D-081 through D-089). The Committee advised Plaintiff, through counsel, that he had the following rights: (1) to appeal the initial claim denial within 60 days; (2) to submit additional documentation in support of the appeal; (3) to request and to receive free of charge copies of all documents reviewed by the Committee in considering the claim for benefits, including the Plan Document and the SPD; and (4) to commence a civil action under ERISA following the exhaustion of the Plan's claims procedures. (D-088, D-089).

### 2.    *Appeal of Denied Claim for Benefits.*

By letter of counsel dated December 4, 2007, Plaintiff requested a formal review on appeal of the Committee's initial claim denial. (D-090 through D-094). Plaintiff requested a copy of Section 6.8(b) of the stock purchase agreement referenced in the Committee's initial claim denial. (D-093). Plaintiff did not request copies of any other documents reviewed by the Committee in considering the claim for benefits, including the Plan Document and the SPD. (Id.) Plaintiff did not submit any additional documentation for consideration by the Committee on appeal. (D-090 through D-094).

On March 20, 2008, Committee members Alan Beckerman and Brad Egna[4] met with counsel to discuss the appeal. (D-114, D-115). After consideration of and discussion regarding the merits of the claim, the Committee unanimously voted to deny the appeal, and requested that counsel communicate their decision to Plaintiff's counsel. (Id.).

By letter dated March 31, 2008, counsel communicated the Committee's

---

[4]    The Committee was comprised of Tom Haugen, Brad Egna and Alan Beckerman at the time of Plaintiff's initial claim for benefits. (D-082). Mr. Haugen was no longer a member of the Committee when the Committee considered Plaintiff's appeal.

determinations and rationale to Plaintiff. (D-095 through D-105). The Committee determined that the alleged complete discontinuance of contributions would have had to have occurred prior to Plaintiff's March 2007 distribution in order for Plaintiff to prevail. (D-099). The Committee reviewed the applicable guidance issued by the Internal Revenue Service ("IRS") regarding the occurrence of a complete discontinuance of contributions[5] and concluded that substantial contributions must be lacking for some period of years, and that such period must be sufficient to exceed a suspension (for which full vesting is not required) and reach the level of a complete discontinuance (for which full vesting is required). (D-101).

      *a.*      *History of substantial and recurring contributions.*

The Committee determined that substantial and recurring contributions had been funded by Briefly Stated for the years 2000-2005. (D-102).

      *b.*      *The 2006 forfeiture allocation was a "Profit Sharing Contribution" under the terms of the Plan.*

Based on its interpretation of the relevant terms of the Plan, the Committee determined that forfeitures (to the extent not used to defray Plan administrative expenses) must be used to fund employer contributions. (D-103). No forfeitures had been used to defray administrative expenses. (Id.). The Committee interpreted Plan Sections 6.01(a) (which reserves to Briefly Stated the discretion to determine if and to what extent a Profit Sharing Contribution is appropriate for each Plan Year) and 10.04(a) (which provides that such Profit Sharing Contribution is then reduced by amounts that become forfeitures during the current or prior year) as providing a mechanism for forfeitures to fund Profit Sharing Contributions. (Id.). The SPD similarly provides that forfeitures may "either be used to pay administrative expenses or to fund

---

[5]     The Committee reviewed the statute (Section 411(d)(3) of the Internal Revenue Code), the applicable Treasury regulation (1.411(d)-2) and pertinent provisions of the IRS Manual (Section 7.12.1.2.6). (D-101).

Employer Contributions." (D-060).

For Plan year 2006, $544,511 in forfeitures were allocated to participants. (Weinstock Dep. 5).[6] Based on their interpretation that Plan Sections 6.01(a) and 10.04(a) provide a mechanism for forfeitures to fund Profit Sharing Contributions, the supporting language in the SPD, and the substantial forfeiture allocation, the Committee determined that a substantial Profit Sharing Contribution (as that term is defined in the Plan) had been made for 2006. (Id.).

> ### c. *The determination that a complete discontinuance of contributions would not have occurred absent the Committee's interpretation that the 2006 forfeiture allocation was a Profit Sharing Contribution under the Plan.*

The Committee considered whether, absent their interpretation that the Plan terms provide a mechanism for forfeitures to fund Profit Sharing Contributions, a complete discontinuance of contributions would have occurred. (D-103). Based on the Plan's history of substantial and recurring contributions prior to 2006, the requirement that Li & Fung continue to maintain the Plan for three (3) years following their acquisition of Briefly Stated, and the fact that the terms of the Plan provide for discretionary ongoing future contributions, they determined that it would it would not have. (D-103, D-104).

## H.   *PLAINTIFF HAD BOTH POSSESSION OF PLAN DOCUMENTS CONTAINING THE LIMITATIONS PERIOD AND KNOWLEDGE OF THE LIMITATIONS PERIOD.*

No later than April 2, 2007, Plaintiff had possession of both the Plan document, as amended and restated effective January 1, 2006, and the Plan's summary plan description that contained the one-year limitation provision. (Lavin-000247; see also D-074, referencing the title

---

[6]   "Weinstock Dep. __" refers to the transcript from the deposition of David Weinstock the Plan's third-party administrator during the relevant time period. Relevant portions from the transcript of Mr. Weinstock's deposition are attached as Exhibit F to the Kozak Affirmation.

"Briefly Stated, Inc. Profit Sharing Plan (*formerly known as the Briefly Stated, Inc. Employee Stock Ownership Plan*)," italics in original).    The initial claim for benefits submitted by Plaintiff's counsel dated May 30, 2007 refers to the Plan as the "Briefly Stated, Inc. Profit Sharing Plan, *formerly known as the Briefly Stated, Inc. Employee Stock Ownership Plan.*" (Id.).

## ARGUMENT

## POINT I

### SUMMARY JUDGMENT SHOULD BE GRANTED BECAUSE PLAINTIFF'S CLAIM IS TIME-BARRED.

Plaintiff's sole cause of action challenges the Committee's denial of his claim for benefits.    As demonstrated below, the clear and unambiguous terms of the Plan mandate that legal actions (such as this litigation) must be commenced no later than one year after the claim was denied.    Plaintiff, with knowledge of this limitations period, failed to so institute this action within one year following the final denial of his administrative claim.    As a result, this action is time-barred and must be dismissed on that basis as a matter of law.

**A.**    **The Plan Contains a One Year Limitations Period.**

Section 14.13 of the Plan provides that "any suit or legal action initiated by a claimant under the Plan must be brought, if at all, no later than one year following a final decision on the claim for benefits by the Administrator." (D-035).

Consistent with this, the Plan's summary plan description provides as follows:

**LIMITATION ON LEGAL ACTIONS**

As discussed in the section below entitled "Your Rights Under ERISA," you have the right to bring legal action if a claim for benefits is denied.    Any such action is subject to the following limitations:

11

- You cannot bring a legal action before the claims and review procedures described in the preceding paragraphs are exhausted.

- You cannot bring a legal action more than one (1) year <u>after</u> the date of the final decision on the appeal of your denied claim for benefits.

(Lavin-000025).

## B.   **Plaintiff Had Prior Knowledge of the Plan's One Year Limitations Period.**

The record clearly reflects that Plaintiff and his counsel had knowledge of the Plan's one year limitations period. Plaintiff produced the SPD describing the limitations period, in a section entitled "**LIMITATIONS ON LEGAL ACTIONS**". (Lavin-000040) (emphasis in original). In addition, e-mail messages produced by Plaintiff also reflect that the SPD was provided to him in April 2007, and that he was in possession of the Plan document, as amended and restated effective January 1, 2006 and containing the limitations period provision, at that time. (Lavin-000247). Further proof that Plaintiff and counsel had possession of the governing Plan documents containing the limitations period language is furnished by the initial claim for benefits made be Plaintiff's counsel, which refers to the Plan as the "Briefly Stated, Inc. Profit Sharing Plan," *formerly known as the Briefly Stated, Inc. Employee Stock Ownership Plan".* (D-074) (italics in original).

## C.   **Courts Have Universally Upheld Plan Limitations Periods.**

Plaintiff's claim is brought under Section 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B). (Complaint ¶25). ERISA does not provide a limitations period for actions brought under this section. <u>Miles v. N.Y. State Teamsters Conference Pension and Ret. Fund Employee Pension Benefit Plan</u>, 698 F.2d 593, 598 (2d Cir. 1983). In the absence thereof, courts apply the "most nearly analogous state limitations statute." <u>Id</u>. For claims brought under Section 502(a)(1)(B) of ERISA, the statute of limitations for breach of contract actions, contained in

12

Section 213 of the New York Civil Practice Law and Rules ("CPLR"), generally applies as the most analogous state limitations statute. Burke v. PricewaterhouseCoopers, 572 F.3d 76, 78 (2d Cir. 2009). Under New York law, breach of contract actions must generally be brought within six (6) years. N.Y. C.P.L.R. § 213.

Section 213 of the CPLR, however, is modified by Section 201 of the CPLR, which provides:

> **§ 201. Application of article.**
>
> An action, including one brought in the name or for the benefit of the state, must be commenced within the time specified in this article **unless a different time is prescribed by law or a shorter time is prescribed by written agreement**. No court shall extend the time limited by law for the commencement of an action.

N.Y. C.P.L.R. §201 (emphasis added).

It is well-settled that the term "written agreement" in Section 201 includes employee benefit plans (such as the Plan) that are governed by ERISA. Manginaro v. Welfare Fund of Local 771, I.A.T.S.E., 21 F. Supp. 2d 284, 293 (S.D.N.Y. 1998); Lugo v. AIG Life Ins. Co., 852 F. Supp. 187, 195 (S.D.N.Y. 1994) (holding that "there can be little doubt" that ERISA plans are written agreements and therefore can prescribe shorter limitations periods pursuant to Section 201 of the CPLR).

Based on this clear and unambiguous statutory construct, it is axiomatic that a limitations period shorter than the six (6) year period set forth in Section 213 of the CPLR may be prescribed by the terms of an ERISA-governed employee benefits plan such as the Plan. Tarallo-Brennan v. Smith Barney, Harris v. Pharm &Co., No. 97 Civ. 7257 (DAB), 1999 US

Dist. LEXIS 6787, at *6 (S.D.N.Y. May 7, 1999).[7]  Therefore, where an ERISA plan "provides a limitations period shorter than six years, the contractual period governs." Mitchell v. Shearson Lehman Bros., No. 97 Civ. 0526 (MBM), 1997 US Dist. LEXIS 7323, at *6 (S.D.N.Y. May 23, 1997); Smith v. First UNUM Life Ins. Co., No. 98 Civ. 2415 (JG), 1999 U.S. Dist. LEXIS 8381, at *9 (E.D.N.Y. June 2, 1999) ("It is well-settled in this circuit, however, that parties to an employee benefit plan governed by ERISA may contract for a shorter limitations period pursuant to N.Y. CPLR § 201.").

Every other Circuit Court of Appeals to consider the issue has also upheld contractual limitations periods in ERISA plans. See, e.g., Northlake Reg'l Med. Ctr. v. Waffle House Sys. Employee Benefit Plan, 160 F.3d 1301 (11th Cir. 1998) (holding that contract limitations in ERISA plans are enforceable provided they are reasonable and finding 90 day period reasonable and enforceable); Doe v. Blue Cross & Blue Shield United of Wis., 112 F.3d 869 (7th Cir. 1997) (upholding the plan's three-year limitations period instead of state's six-year breach of contract period).[8]  Further, as demonstrated in the preceding section, Plaintiff and counsel inarguably had prior knowledge of the Plan's one year limitations period.  The record clearly reflects that Plaintiff had possession of both the Plan document and the summary plan description that contained the one-year limitations period no later than April 2007.  (Lavin-000025, Lavin-000247. )

---

[7]     Copies of unreported decisions cited herein are attached as Exhibit G to the Kozak Affirmation.

[8]     Indeed, the Second Circuit (as well as four other Circuit Courts of Appeal) has expressly upheld a benefit plan limitations period that (unlike the Plan's limitations period) begins to run before a claimant has exhausted his administrative remedies and therefore before the claimant could commence legal action. Burke, 572 F.3d at 81 ("We join the Fifth, Sixth, Seventh, and Eighth Circuits in upholding written plan terms including limitations periods which may begin to run before a claimant can bring legal action.") (citations omitted).

**D.      Plaintiff Did Not Timely Commence This Action.**

Under the plain and unambiguous terms of the Plan and the SPD, Plaintiff had one (1) year from the final decision of a claim for benefits to bring a legal action challenging the decision.  The Committee's decision to deny Plaintiff's appeal, the "final decision on the claim for benefits by the Administrator," was issued on March 31, 2008.  (D-095).  Plaintiff had both possession of the Plan Document and the SPD and knowledge of the one year limitations period prior to this date (Lavin-000247).  Plaintiff, however, did not file suit until October 8, 2009, more than seventeen months from this date.  As a result, the Complaint is time-barred and must be dismissed.  See Scharff v. Raytheon Co. Short Term Disability Plan, 581 F.3d 899 (9th Cir. 2009) (upholding dismissal of time-barred claim where summary plan description contained a one-year limitations period from the denial of the appeal and suit was filed one year and twenty days after the appeal was denied).

## POINT II

**SUMMARY   JUDGMENT   SHOULD   BE GRANTED   TO   DEFENDANTS   BECAUSE THE   COMMITTEE'S   DECISION   WAS   NOT ARBITRARY AND CAPRICIOUS.**

**A.      The Express Terms of the Plan Grant to the Committee the Exclusive and Discretionary Authority to Interpret Plan Terms and Determine Benefit Claims and Appeals.**

Section 14.01 of the Plan provides as follows:

> The Company shall be the "Administrator" of the Plan within the meaning of Section (16)(A) of ERISA and the "Named Fiduciary" for purposes of Section 402(a)(2) of ERISA. Such duties shall be performed on behalf of the Company by the Retirement Committee or such other person or committee as may be appointed by the Board of Directors.

(D-032).

15

Section 14.14 further provides in this regard:

> The Administrator has full and absolute discretion in the exercise of each and every aspect of its authority under the Plan, including without limitation, the authority to determine any person's eligibility to participation in the Plan, any person's right to benefits under the Plan, the correct amount and form of any benefits, the authority to decide any appeal, the authority to review and correct the actions of any prior administrative committee, and all of the rights, powers, and authorities specified in the Plan.

(D-035).

The Plan's summary plan description contains a similar grant of discretionary authority.  (D-069).

## B.   The Arbitrary and Capricious Standard of Review Governs the Court's Review of the Committee's Claim Denial.

Acting pursuant to this full, absolute and discretionary authority to interpret the terms of the Plan, the Committee denied Plaintiff's claim for benefits.  (D-095 through D-105).  The review of this determination is the sole issue before the Court.  This review is governed by the arbitrary and capricious standard of review.  See Firestone Tire & Rubber Co., v. Bruch, 489 U.S. 101, 111 (1989); Pepe v. Newspaper & Mail Deliveries-Publishers' Pension Fund, 559 F.3d 140, 146 (2d Cir. 2009).

Plaintiff has previously argued that the Court should review the Committee's decision de novo.  The purported basis for Plaintiff's argument for de novo review seems to be that: (1) Plaintiff's claim hinges entirely on the occurrence of a complete discontinuance of contributions; (2) the occurrence of a complete discontinuance of contributions is a matter of legal interpretation; and (3) therefore, the arbitrary and capricious standard of review does not govern.  Plaintiff is misguided in this regard.

16

Defendants are cognizant of Second Circuit case law indicating that a denial of benefits that turns on a legal interpretation will be reviewed de novo. See Weil v. Terson, 913 F.2d 1045, 1048-49 (2d Cir. 1990), vacated in part, 933 F.2d 106 (2d Cir. 1991). However, "there are significant differences between plan interpretation and legal interpretation, and de novo review is required only if a plan administrator decided a legal question." Montesano v. Xerox Corp. Ret. Income Guar. Plan, 117 F. Supp. 2d 147, 158 (D. Conn. 2000), aff'd in part, vacated on other grounds, 256 F.3d 86 (2d Cir. 2001). Here, as discussed below, the Committee's denial was principally and primarily based on Plan interpretation.

The Committee interpreted Plan Sections 2.19, 6.01 and 10.04, and determined that these sections provide a mechanism for forfeitures to fund Profit Sharing Contributions. (D-103). The Committee then determined that the 2006 forfeiture allocation constituted a Profit Sharing Contribution. (Id.). Since it is undisputed that substantial and recurring contributions were made prior to 2006, the Committee's determination that a substantial Profit Sharing Contribution had been made for 2006 meant that contributions had been made for every relevant year. Since Plaintiff's claim for benefits was based on his assertion that he was entitled to full vesting as a result of a "complete discontinuance of contributions" under Section 411(d)(3) of the Internal Revenue Code (D-091), it is readily apparent that the Committee's decision turned on Plan interpretation, and not on a statutory interpretation.

In deciding the claim, the Committee first reviewed the applicable statute and regulations. (D-099 through D-101). As the court in Montesano held, however, reference to the Internal Revenue Code and the use of same as an aide to interpreting plan terms "does not turn plan interpretation into legal interpretation...Weil does not compel a contrary conclusion." Montesano, 117 F. Supp. 2d at 159. Other courts have similarly declined to apply de novo

17

review under similar circumstances. Heise v. Genuine Parts Co. Pension Plan, 900 F. Supp. 1137, 1146 (D. Minn. 1995) (affording deference to and upholding as reasonable the administrator's decision that plaintiff's disability benefit under a pension plan "was a retirement benefit, and thus subject to Section 415 [of the Internal Revenue Code]").

Since the Committee's decision was based upon a matter of plan interpretation, and not a statutory or legal interpretation, the arbitrary and capricious standard of review should govern the Court's review.

**C.** **Under The Arbitrary and Capricious Standard, the Committee's Decision Is Afforded Great Deference.**

Courts afford the plan administrator's determination great deference under the arbitrary and capricious standard of review, and cannot upset a reasonable interpretation by the plan administrator. See Pagan v. NYNEX Pension Plan, 52 F.3d 438, 442 (2d Cir. 1995). "Under this highly deferential standard of review, this Court cannot substitute its judgment for that of the Plan Administrator and will not overturn a decision to deny or terminate benefits unless it was without reason, unsupported by substantial evidence or erroneous as a matter of law." Fuller v. J.P. Morgan Chase & Co., 423 F.3d 104, 107 (2d Cir. 2005) (internal citations omitted). Moreover, "[w]here both the plan administrator and a spurned claimant offer rational, though conflicting, interpretations of plan provisions, the [administrator's] interpretation must be allowed to control." Pulvers v. First UNUM Life Ins. Co., 210 F.3d 89, 92 (2d Cir. 2000); see also Russo v. Health, Welfare & Pension Fund, 984 F.2d 762, 765 (7th Cir. 1992) ("Although it is an overstatement to say that a decision is not arbitrary and capricious whenever a court can review the reasons stated for the decision without a loud guffaw, it is not much of an overstatement.").

**D.    The Committee's Decision Was Neither Arbitrary Nor Capricious and Must be Upheld by the Court.**

Under the discretionary arbitrary and capricious standard, the Court may not overturn the Committee's decision to deny benefits unless there was a "clear error of judgment." Jordan v. Ret. Comm. of Rensselaer Polytechnic Inst., 46 F.3d 1264, 1271 (2d Cir. 1995). A clear error of judgment exists if the decision was without reason, unsupported by substantial evidence or erroneous as a matter of law. See Pagan, 52 F.3d at 442. It is clear from the record, however, that the Committee's decision to deny Plaintiff the benefits he seeks was well-reasoned, based upon a complete administrative record and consistent with the express terms of the Plan.

As noted above, Plaintiff claims to have become fully vested as a result of a "complete discontinuance of contributions" under Section 411(d)(3) of the Internal Revenue Code. (D-091). After reviewing the applicable guidance issued by the Internal Revenue Service, the Committee concluded that, for a complete discontinuance of contributions to occur, "substantial contributions must be lacking for *some* period of years,[9] and that such period must be sufficient to exceed a *suspension* (for which full vesting is not required) and reach the level of a *complete discontinuance* (for which full vesting is required)." (D-101).

The Committee determined that the Plan had a history of recurring and substantial contributions, specifically that the Company funded recurring and substantial contributions to the Plan for each Plan Year 2000 through and including 2005. (D-102; see also D-164, D-169 and D-183,). The Committee then noted that approximately $550,000, representing the maximum allocation permissible under Section 415 of the Internal Revenue, was allocated to eligible Plan participants for the 2006. (D-102, D-103; see also D-484).

---

[9]    See, e.g., *Reg. § 1.411(d)-2(d)(1)(iii)* (discussing whether the lack of contributions will "continue indefinitely").

The Committee next reviewed the terms of the Plan and determined that the 2006 forfeiture allocation constituted a "Profit Sharing Contribution" (as that term is defined in Plan Section 2.19 [D-011]).  (D-103).

This determination was based upon: (a) Section 6.01(a) of the Plan (D-017), which provides that Briefly Stated, in its sole discretion, will determine whether and to what extent a Profit Sharing Contribution is appropriate for a plan year; and (b) Section 10.04(a) of the Plan (D-023), which provides that forfeitures are either used to pay administrative expenses or to reduce the amount of Profit Sharing Contributions that are required to be made by Briefly Stated (as determined pursuant to Plan Section 6.01).   (D-102).  The Committee further noted that the SPD provides that forfeitures may "either be used to pay administrative expenses or to fund Employer Contributions."  (D-102, referring to D-060).  In sum, the Committee "interpret[ed] the foregoing Plan provisions as providing for forfeitures to fund Profit Sharing Contributions." (D-103).

The Committee further noted that Plaintiff had received a distribution of Plan benefits in March 2007 equal to 40% of his vested account balance,  and that as a result the alleged complete discontinuance of contributions had to have occurred before this date for Plaintiff to have become fully vested as a result thereof.  (D-102).

The Committee then concluded that a complete discontinuance of contributions had not occurred, and that Plaintiff was therefore not entitled to the additional Plan benefits sought, because (1) a complete discontinuance of contributions requires that contributions be lacking for some period of years, and (2) that contributions had in fact been made for every

relevant year,[10] based on (i) the Plan's history of recurring contributions funded by Briefly Stated through and including the 2005 plan year, and (ii) the Committee's interpretation that the 2006 forfeiture allocation constituted a "Profit Sharing Contribution" under the terms of the Plan.[11]  It cannot be said that this determination was "completely unreasonable" Seff v. Nat'l Org. of Indus. Trade Unions, 781 F. Supp. 1037, 1040 (S.D.N.Y. 1992).  As a result, the Committee's decision must be upheld.

**POINT III**

**EVEN IF THE COURT WERE TO DECIDE THAT DE NOVO REVIEW IS APPROPRIATE, SUMMARY JUDGMENT SHOULD BE GRANTED.**

Even if the Court were to determine that de novo review should apply to the Committee's determination that a "complete discontinuance of contributions" had not occurred (which it should not), for the reasons explained below, the result would be the same.

The Committee determined that the 2006 forfeiture allocation constituted a "Profit Sharing Contribution" (as that term is defined in Plan Section 2.19 [D-011]).  (D-103).  The Committee then determined that a complete discontinuance of contributions had not occurred, based on both the cash contributions for the years 2000 through 2005 and the "Profit Sharing Contribution" for 2006. (D-103).

---

[10]    Contributions are allocated each calendar year.  See Plan Sections 2.18 (D-011) and 6.01 (D-017).  Since Plaintiff received a distribution in March 2007, the last relevant year for these purposes is the 2006 year.

[11]    Defendants further note that the Committee also determined that, absent their determination that the 2006 forfeiture allocation constituted a "Profit Sharing Contribution" under the terms of the Plan, a complete discontinuance of contributions had still not occurred due to the Plan's history of substantial and recurring contributions prior to 2006, the requirement that Li & Fung continue to maintain the Plan for three (3) years following their acquisition of Briefly Stated, and the fact that the terms of the Plan provide for discretionary ongoing future contributions  (D-103, D-104), further illustrating the "full and fair" nature of their review in accordance with Section 503(2) of ERISA, 29 U.S.C. § 1133(2)).

Even if de novo review might arguably apply to the question of whether there was a "complete discontinuance of contributions," since a "complete discontinuance of contributions" is referenced in and determined under Section 411(d)(3) of the Internal Revenue Code and related regulations, de novo review still would not apply to the Committee's *interpretation* of Plan terms. Thus, the Committee's determinations that the Plan provided a mechanism for forfeitures to fund Profit Sharing Contributions, and that the 2006 forfeiture allocation was a Profit Sharing Contribution, would in any event remain subject to deferential review under the arbitrary and capricious standard. <u>Wetzler v. Ill. CPA Soc'y & Found. Ret. Income Plan</u>, 586 F.3d 1053, 1057 (7th Cir. 2009).

<u>Wetzler</u> involved a suit by a participant alleging that a plan amendment eliminating a plan provision allowing lump sum payments violated the "anti cut-back rule" contained in ERISA. <u>Id.</u> at 1055. To determine whether the amendment violated the "anti cut-back rule" (which prohibits the elimination of certain forms of payment, including lump sums), the administrator had to first determine whether a lump sum was available under the terms of the plan prior to the amendment. <u>Id.</u> at 1057. The Seventh Circuit held that the district court properly applied the arbitrary and capricious standard of review to the administrator's determination that lump sum payments were not available prior to the amendment, holding that "[t]his determination involved reviewing the administrator's interpretation of the provisions of the plan, which was appropriately conducted using the arbitrary and capricious standard." <u>Id.</u>

Here, just like <u>Wetzler</u>, a de novo review, if at all applicable, should be limited to the Committee's determination that a "complete discontinuance of contributions" had not occurred. Deferential review, however, would apply to the Committee's interpretations of Plan

provisions, including without limitation their determination that forfeitures fund Profit Sharing Contributions under the Plan.

For the reasons set forth above, the Committee's determination that the 2006 forfeiture allocation constituted a Profit Sharing Contribution inarguably reflects the plain meaning of the applicable Plan terms and would be upheld by the Court under the arbitrary and capricious standard. The Court would then be reviewing, de novo, whether a "complete discontinuance of contributions" had occurred where contributions had been made for every year relevant to Plaintiff's claim. Under such circumstance, the Committee's determination must be upheld.

## CONCLUSION

For the reasons set forth herein, Defendants respectfully requests that the Court grant their motion for summary judgment and dismiss Plaintiff's Complaint in its entirety.

Respectfully submitted,

JACKSON LEWIS LLP

One North Broadway, Suite 1502
White Plains, New York 10601
(914) 328-0404

By: _____
Robert R. Perry
Jonathan M. Kozak

*Attorneys for Defendant Briefly Stated, Inc. Profit*

SALANS LLP

Rockefeller Center
620 Fifth Avenue
New York, NY 10020-2457
(212) 632-8457
John J. Hay

Dated: May 17, 2010
      White Plains, New York

*Attorneys for Defendant Briefly Stated, Inc.*

23

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------x

JOHN E. LAVIN,

                              Plaintiff,

            -against-                              Case No.:  09-CIV-8610 (CM)

BRIEFLY STATED, INC. and BRIEFLY
STATED INC. PROFIT SHARING PLAN,

                              Defendants.

----------------------------------------------------x

### CERTIFICATE OF SERVICE

I hereby certify that on this the 17th day of May, 2010, I electronically filed and served a copy of a Memorandum Of Law In Support Of Defendants' Motion For Summary Judgment through the U. S. District Court for the Southern District of New York CM/ECF system and via Federal Express, overnight mail, postage prepaid and addressed as follows:

Peter D. DeChiara, Esq.
COHEN, WEISS AND SIMON LLP
330 West 42nd Street
New York, New York  10036
*Attorneys for Plaintiff*


                              Jonathan M. Kozak