Jani K. Rachelson (JK 0121)
Peter D. DeChiara (PD 0719)
Zachary N. Leeds (ZL 7353)
COHEN, WEISS AND SIMON LLP
330 West 42nd Street
New York, New York 10036-6976
Tel:  (212) 563-4100
Fax:  (212) 695-5436
jrachelson@cwsny.com
pdechiara@cwsny.com
zleeds@cwsny.com

Attorneys for Plaintiff John E. Lavin

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

 -----------------------------------------------------------------X
JOHN E. LAVIN,                                                    :
                                                                 :
                          *Plaintiff*,                           :
                                                                 :
              - v. -                                             :
                                                                 :
BRIEFLY STATED, INC. and BRIEFLY STATED                          :
INC. PROFIT SHARING PLAN,                                        :
                                                                 :   Case No. 09-Civ.-8610 (CM)
                          *Defendants*.                          :   (FM)
                                                                 :
                                                                 :
 -----------------------------------------------------------------X


**PLAINTIFF'S MEMORANDUM OF LAW**
**IN OPPOSITION TO DEFENDANTS' SUMMARY JUDGMENT MOTION**

# TABLE OF CONTENTS

**Page(s)**

TABLE OF CASES ................................................................................................................. iii

PRELIMINARY STATEMENT ........................................................................................... 1

ARGUMENT ........................................................................................................................ 3

I.      THE COURT SHOULD CONSIDER
        ALL THE FACTS AND CIRCUMSTANCES ............................................................ 3

II.     NO DEFERENCE IS DUE THE COMMITTEE'S DECISION ..................................... 5

        A.      The Committee Made The Legal Determination That
                No "Complete Discontinuance" Occurred Under IRC §411(d)(3)(B) .................. 5

        B.      The Committee's Determination That A Forfeiture Counts As A
                Contribution Was A Legal Determination Subject To *De Novo* Review .............. 8

        C.      No Deference Would Be Due Even If The Committee's
                Decision Were Reviewed Under The Arbitrary-And-Capricious Standard .......... 9

III.    THE UNDISPUTED FACTS SHOW THAT THERE WAS A
        "COMPLETE DISCONTINUANCE OF CONTRIBUTIONS" ..................................... 10

        A.      Defendants' Brief Fails To Address Two Of The Three Relevant Factors .......... 10

        B.      Contributions From 2005 And Before Are Irrelevant To Lavin's Claim ............ 11

        C.      The 2006 Forfeiture Allocation Does Not Count As A Contribution .................. 12

IV.     THE ONE-YEAR LIMITATIONS PERIOD
        CLAUSE ADOPTED BY THE PLAN AFTER LAVIN
        HAD LEFT EMPLOYMENT DOES NOT BAR HIS SUIT .......................................... 14

CONCLUSION ...................................................................................................................... 16

# <u>TABLE OF CASES</u>

<u>Page(s)</u>

*Bergt v. Retirement Plan For Pilots Employed By MarkAir, Inc.*,
    293 F.3d 1139 (9th Cir. 2002) ........................................................................14

*Heise v. Genuine Parts Co.*,
    900 F. Supp. 1137 (D. Minn. 1995)..................................................................8

*Jeffries v. Pension Trust Fund*,
    2007 WL. 2454111 (S.D.N.Y. 2007)..........................................................1, 4, 5

*Ludwig v. NYNEX Serv. Co.*,
    838 F. Supp. 769 (S.D.N.Y. 1993)....................................................................5

*Montesano v. Xerox Corp. Retirement Income Guarantee Plan*,
    117 F. Supp. 2d 147 (D. Conn. 2000)...............................................................7

*Northlake Regional Med. Ctr. v. Waffle House Sys. Employee Benefit Plan*,
    160 F.3d 1301 (11th Cir. 1998) ......................................................................15

*Shaw v. Connecticut Gen. Life Ins. Co.*,
    353 F.3d 1276 (11th Cir. 2003) ......................................................................14

*Weil v. Retirement Plan Admin. Comm.*,
    913 F.2d 1045 (2d Cir. 1990).........................................................................5, 6

*Wetzler v. Illinois CPA Soc'y*,
    586 F.3d 1053 (7th Cir. 2009) .........................................................................9

*Wilkins v. Mason Tenders Dist. Council Pension Fund*,
    445 F.3d 572 (2d Cir. 2006)..............................................................................5

Plaintiff John E. Lavin ("Lavin") submits this memorandum of law in opposition to Defendants' summary judgment motion.

## PRELIMINARY STATEMENT

Defendants argue that they should be granted summary judgment because, they assert, contributions were made to the Plan every year from 2000 through 2006, and, in their view, it was therefore reasonable for the Committee to conclude that no "complete discontinuance of contributions" occurred.  In effect, Defendants ask the Court to ignore the undisputed fact that no new employer money has been put into the Plan since 2005 and also to accept uncritically the Committee's conclusion that the 2006 allocation of forfeiture money already in the Plan counts as a contribution for purposes of finding no "complete discontinuance of contributions" under IRC §411(d)(3)(B).

But ignoring relevant facts and uncritically accepting the Committee's characterizations would be at odds with the task before the Court.  In a case arising under IRC §411(d)(3), a court must consider "*all* the facts and circumstances in the particular case," 26 C.F.R. §1.411(d)-2(d)(1) (emphasis added); *Jeffries v. Pension Trust Fund*, 2007 WL 2454111, at *6 (S.D.N.Y. 2007).  Lavin claims that a "complete discontinuance of contributions" occurred following LF's 2005 acquisition of BS.  In determining whether a "complete discontinuance" occurred therefore, the Court should review *all* the facts that followed the 2005 acquisition, including the undisputed absence of any new employer money contributed to the Plan since 2005.

In addition, far from uncritically accepting it, the Court should review *de novo* the Committee's legal conclusion that an allocation of forfeiture money *already in* a plan counts as a contribution *to* a plan for purposes of IRC §411(d)(3)(B).  As far as our research shows, no legal authority exists for this proposition, and Defendants cite none.  Indeed, rather than conflating

employer contributions and forfeitures, as the Committee did, the IRC considers employer

contributions and forfeitures to be separate and distinct.  *See* 26 U.S.C. §415(c).

Even if the Committee's conflating the 2006 forfeiture allocation with a contribution

were purely a matter of plan interpretation, as Defendants argue, the Court still need not, and

should not, accept the Committee's position, because it runs contrary to the terms of the Plan and

was also tainted by Egna's conflict of interest.  In particular, BS's Board of Directors ("BOD")

never authorized a contribution for 2006 and, as Defendants concede, under the Plan, the BOD is

the only body authorized to decide that there will be a contribution.  Moreover, the Committee

never considered Plan language defining contributions, without exception, as money paid *by* the

Company *to* the Plan, nor did it consider the Plan's practice, as indicated in its IRS filings and

Plan valuation reports, of deeming forfeitures as something other than employer contributions.

When "all the facts and circumstances" are considered, the record shows there has been a

"complete discontinuance of contributions" since LF's 2005 acquisition of BS.  The three factors

set out in the applicable regulation, 26 C.F.R. §1.411(d)-2(d)(1), compel this conclusion.  First,

far from "recurring and substantial" contributions since 2005, *see id*. §1.411(d)-2(d)(1)(ii), there

have been none.  Moreover, because the BOD has never even discussed adding new money to

the Plan, and for other reasons detailed in Lavin's opening brief, there is at least a "reasonable

probability," *id*. §1.411(d)-2(d)(1)(iii), that the lack of contributions will continue indefinitely.

And because both Egna and LF had an interest in BS retaining employees, there is a good chance

that the Committee denied Lavin's claim that a complete discontinuance occurred "in order to

avoid the requirement of full vesting."  *Id*. §1.411(d)-2(d)(1)(i).

In addition to failing on the merits, Defendants also fail in their argument that Lavin's

suit is barred by the one-year limitations period clause that was inserted into the Plan after Lavin

had already left employment with BS.  Defendants assert that Lavin knew about the one-year

limitations clause before he sued, but to shorten a statutory limitations period, CPLR §201

requires not just the parties' knowledge of the shortened period but their "agreement" to it.

Since Lavin never worked at BS when the one-year limitations clause was in place, there is no

basis for concluding that he ever agreed to it.  In fact, Defendants cite no case in which an

employee was deemed bound by a limitations period clause added after the employee's

employment had ended.

In any event, as Lavin explained in his opening brief, even if he could somehow be

deemed to have agreed to the clause, it would be unreasonable and unfair to apply the one-year

limitations period here, because, as Defendants themselves have explained, it takes a period of

years for an absence of contributions to blossom into a "complete discontinuance."  In particular,

in denying his claim, the Committee told Lavin that three years with no substantial contributions

was required.  Lavin waited before suing to see that no contributions were made to the Plan for

the three years after 2005.  In any event, dismissing Lavin's suit as time-barred would serve no

purpose since three other Plan participants with identical claims will sue as soon as their pending

Plan appeals are exhausted and, if they prevail, all Plan participants, including Lavin, will have a

right to the full amounts that were in their Plan accounts.

For these reasons, more fully set forth below, Defendants' summary judgment motion

should be denied and Lavin's granted.

## ARGUMENT

## I.      THE COURT SHOULD CONSIDER ALL THE FACTS AND CIRCUMSTANCES

Defendants would have the Court consider only the facts that the Committee considered

and ignore, for example, the undisputed fact that no new employer money has been added to the

Plan since 2005.  But IRC §411(d)(3) requires consideration of "*all* the facts and circumstances in the particular case," 26 C.F.R. §1.411(d)-2(d)(1) (emphasis added), not just those considered by the plan administrator.  In *Jeffries v. Pension Trust Fund*, 2007 WL 2454111 (S.D.N.Y.), for example, the plan denied the plaintiff's request for pension credit for certain years based on the fact that he had, in the plan's view, experienced a break in service.  *See id.* at *3.  In his suit challenging the denial, the plaintiff claimed that the plan had experienced a partial termination within the meaning of IRC §411(d)(3) and therefore that he had fully vested during those years. *See id.* at *1.  In analyzing the §411(d)(3) claim, the Court engaged in an extensive factual inquiry to determine whether there had been a partial termination, including regarding the percentage of plan participants who were terminated during the years in question.  *See id.* at **6-10.  The Court's inquiry went far beyond the narrow set of facts that the plan considered in denying the plaintiff's claim.

Here too, the Court should consider "all the facts and circumstances," 26 C.F.R. §1.411(d)-2(d)(1), not just those the Committee considered.  Most importantly, the Court should consider whether what might have been a "temporary cessation of contributions" after LF's acquisition of BS ripened over time into a "complete discontinuance."  26 C.F.R. §1.411(d)-2(d)(1).  As the Plan's counsel has explained, in an IRC §411(d)(3)(B) case a determination must be made whether there was "a cessation of employer contributions for some *period of years* sufficient to go beyond a 'temporary cessation' (for which full vesting is not required) and *blossom* into a 'complete discontinuance' (for which full vesting is required)."  DeChiara  Dec., Ex. A at 5 (letter from Plan counsel) (emphasis added).  Under this analysis, to determine whether Lavin's claim was correct, the Court should look at the "period of years" that followed LF's acquisition of BS in 2005, to see whether what might have been a temporary cessation of

contributions "blossom[ed]" into a "complete discontinuance."  The continued absence of contributions since 2005 shows that it did.

## II.    NO DEFERENCE IS DUE THE COMMITTEE'S DECISION

Because this case requires the Court to consider facts beyond those considered by the Committee, it would be impossible for the Court to simply defer to the Committee's decision, as Defendants argue it should.  But in any event, no deference is due the Committee's determination because that determination -- specifically, "that a complete discontinuance of contributions did not occur" within the meaning of IRC Section 411(d)(3)(B), *see* D99-101 -- was a legal determination subject to *de novo* review.  *See* Plaintiff's May 17, 2010 Memorandum Of Law In Support Of His Summary Judgment Motion [Docket No. 26] ("Pltf. Mem.") at 13.

### A.    The Committee Made The Legal Determination That No "Complete Discontinuance" Occurred Under IRC §411(d)(3)(B)

Defendants acknowledge, as they must, "Second Circuit case law indicating that a denial of benefits that turns on a legal interpretation will be reviewed de novo."  May 17, 2010 Memorandum Of Law In Support Of Defendants' Motion For Summary Judgment [Docket No. 31] ("Def. Mem.") at 17; *see Wilkins v. Mason Tenders Dist. Council Pension Fund*, 445 F.3d 572, 581 (2d Cir. 2006); *see, e.g.*, *Ludwig v. NYNEX Serv. Co.*, 838 F. Supp. 769, 773 n.5, 785 (S.D.N.Y. 1993) (applying *de novo* review even when plan administrator's determination was based on an agreement that was entered into in compliance with legislation).

In particular, *de novo* review applies in IRC §411(d)(3) cases, where the court must examine "all the facts and circumstances."  *Weil v. Retirement Plan Admin. Comm.*, 913 F.2d 1045, 1049, 1050 (2d Cir. 1990), *other sections of decision vacated*, 933 F.2d 106 (2d Cir. 1991); *Jeffries*, 2007 WL 2454111, at *6.

Defendants nonetheless claim that the arbitrary-and-capricious standard applies because,

they assert, "the Committee's denial was principally and primarily based on Plan interpretation." Def. Mem. 17.  This assertion ignores the Second Circuit caselaw (cited in the preceding paragraph) requiring *de novo* review in an IRC §411(d)(3) case.  But, in any event, the assertion that the Committee's decision was based principally on Plan interpretation is simply wrong.  The Committee in its denial letter made clear that it understood Lavin to have asserted a statutory claim for the balance in his account "as a result of 'complete discontinuance of contributions' *under Section 411(d)(3) of the Internal Revenue Code*." D99 (emphasis added).  And the Committee made its decision based on that statute, *see* D99 (denial letter citing "Code Section 411(d)(3)"), with references by the Committee to regulations interpreting the statute, *see* D99-D100, and to the Internal Revenue Manual, *see* D101.  The Committee's conclusion -- "that a complete discontinuance of contributions did not occur," D101 -- was thus clearly a determination based on the statute, not on Plan language.

Indeed, the Committee's decision that no "complete discontinuance of contributions" occurred could not have been based on Plan language since the Plan has no "complete discontinuance of contributions" language.  The Plan does have language concerning Plan termination, *see* May 17, 2010 Affirmation of Johathan M. Kozak [Docket No. 29], at Ex. D, at D36, but IRC §411(d)(3) makes clear that a plan termination and a complete discontinuance of contributions are separate and distinct.  *Compare* 26 U.S.C. §411(d)(3)(A) (referring to plan termination) *with id*. §411(d)(3)(B) (referring to complete discontinuance of contributions).  In any event, even if the Plan had "complete discontinuance" language, that would not change the conclusion that the Committee's determination was a legal one:  in *Weil*, the plan had language regarding a partial plan termination but the Second Circuit nonetheless held that the plan committee's decision that no partial termination occurred was a statutory determination under

IRC §411(d)(3) subject to *de novo* review.  *See* 913 F.2d at 1049.

The only Plan interpretation even arguably involved in the Committee's decision was its purported construction of certain Plan terms as "providing a mechanism for forfeitures to function as deemed Profit Sharing Contributions," D102, which led it to conclude that that there was a contribution made for 2006.  *See* D103.  However, far from this being "principally and primarily," Def. Mem. 17, the basis for the Committee's decision, it was, according to the Committee itself, not even *necessary* to the Committee's decision.  The Committee explained in its denial letter that, in its view, there would have been no "complete discontinuance of contributions" even absent a 2006 contribution.  *See* D103.  Thus, by the Committee's own admission, the Committee's finding that no "complete discontinuance" occurred was not dependent on *any* Plan interpretation.

Defendants' reliance on *Montesano v. Xerox Corp. Retirement Income Guarantee Plan*, 117 F. Supp.2d 147 (D. Conn. 2000), *aff'd in part, vacated in part*, 256 F.3d 86 (2d Cir. 2001) (cited at Def. Mem. 17), is unavailing.  In that case, the plans' administrator denied the plaintiffs' claim based on its determination that the plaintiffs were "leased employees" as that term was defined in the plans.  *See* 117 F.Supp.2d at 152, 158.  Concluding that *de novo* review was inapplicable, the court explained that "[m]erely because one of the Plans' definition of leased employee incorporated by reference the IRC's definition of that term does not turn plan interpretation into legal interpretation, even if the Plan Administrator referred to the IRC's definition as an aide in interpreting a Plan term."  *Id.* at 159.  Here, by contrast, the Committee was not using IRC §411(d)(3)(B) as an aide in interpreting a Plan term; indeed, it could not have been since the Plan has no "complete discontinuance" language.  Rather, the Committee was clearly interpreting IRC §411(d)(3)(B) itself, including through analysis of the regulations and

Internal Revenue Manual provision relevant to the statute.  *See* D99-101.

*Heise v. Genuine Parts Co.*, 900 F. Supp. 1137 (D. Minn. 1995) (cited at Def. Mem. 18),

is also distinguishable.  There, the court concluded that the decision of the plan committee did

not turn on a construction of the IRC.  *See id*. at 1145.  Rather, it explained, the case concerned

how the plaintiff's benefit was calculated under the plan, a calculation that "necessarily depends

on an interpretation of the plan terms."  *Id*.  Here, by contrast, the Committee's analysis rested

fully on IRC § 411(d)(3)(B), with only one subsidiary -- and, by the Committee's own

admission, unnecessary, *see* D103 -- part of the analysis (*i.e.*, that the 2006 forfeiture allocation

was a contribution) resting on purported Plan interpretation.

## B. The Committee's Determination That A Forfeiture Counts As A Contribution Was A Legal Determination Subject To *De Novo* Review

As a fall-back, Defendants argue that even if *de novo* review applies to the Committee's

overall determination that no "complete discontinuance of contributions" occurred, the arbitrary-

and-capricious standard applies to the Committee's subsidiary determination that the 2006

forfeiture allocation was a "Profit Sharing Contribution" within the meaning of the Plan.  *See*

Def. Mem. 23.  This argument fails because the Committee did not simply determine that the

2006 forfeiture allocation constituted a "Profit Sharing Contribution" under the Plan.  Rather, it

made the legal determination that the 2006 forfeiture allocation counted as a contribution for

purposes of whether there had been a "complete discontinuance of contributions" under IRC

§411(d)(3)(B).  In particular, the Committee found that due to the 2006 forfeiture allocation,

there was a "substantial" contribution to the Plan for that year, D103, satisfying one of the three

factors relevant to the statutory analysis under 26 C.F.R. §1.411(d)-2(d)(1), namely, that

contributions be "recurring and substantial."  *See* D100 (denial letter citing 26 C.F.R. §1.411(d)-

2(d)(1)(ii)).  This determination -- that an allocation of monies already in a plan count as a

contribution to a plan for purposes of avoiding a "complete discontinuance" under IRC

§411(d)(3)(B) -- is a legal determination subject to *de novo* review.

Wetzler v. Illinois CPA Soc'y*, 586 F.3d 1053 (7th Cir. 2009) (cited at Def. Mem. 22), is

not to the contrary.  There, the plaintiff claimed that the plan violated ERISA's anti-cutback rule

by denying his request for a lump-sum disbursement, a benefit which he claimed the plan

previously provided to other participants.  *See id*. at 1056.  The court held that arbitrary-and-

capricious review applied to the plan administrator's determination that the plan had not

previously provided the benefit, and that *de novo* review applied to the question of whether the

plan's denial of the plaintiff's claim violated ERISA's anti-cutback rule.  *See id*. at 1057.  In

*Wetzler*, the question of whether the plan had previously provided the lump sum benefit was a

purely plan-based question, severable from the ERISA issue.  Indeed, as far as the court's

opinion shows, the plan administrator never addressed the ERISA anti-cutback issue raised by

the plaintiff's suit, but decided only the plan-based issue.  Here, by contrast, the Committee

rendered a determination on the legal issue of whether there had been a "complete

discontinuance of contributions" within the meaning of IRC §411(d)(3)(B).  And its

determination that the 2006 allocation of forfeiture money already in the Plan counted as a

"substantial" contribution, so as to satisfy the "recurring and substantial contributions" factor

under 26 C.F.R. §1.411(d)-2(d)(1)(ii), was inextricably tied to that overarching legal

determination.

### C.      No Deference Would Be Due Even If The Committee's Decision Were Reviewed Under The Arbitrary-And-Capricious Standard

Even if the Court somehow concludes that the arbitrary-and-capricious standard applies

to the Committee's determination that the 2006 forfeiture allocation was a contribution, it need

not and should not defer to that determination.  As Lavin explained in his opening brief, Egna's

immediate financial interest in BS retaining employees created a conflict of interest with his fiduciary role on the Committee, *see* Pltf. Mem. 14, tainting the Committee's conclusion, articulated by Egna himself, that the Plan had a "mechanism for recharacterizing forfeitures as profit sharing contributions." D115.  Moreover, by Beckerman's own admission, the Committee failed even to consider applicable Plan language providing, without exception, that "Profit Sharing Contributions" are monies paid *to* the Plan, not money *already in* the Plan.  *See* Pltf. Mem. 14-15.  Finally, as already explained, to the extent the Committee concluded that a forfeiture allocation counts as a contribution for purposes of IRC §411(d)(3), that conclusion was an error of law, and an error of law is itself arbitrary and capricious.  *See id.* at 14 (citing cases).

In sum, no deference is due the Committee's decision.

## III.   THE UNDISPUTED FACTS SHOW THAT THERE WAS A "COMPLETE DISCONTINUANCE OF CONTRIBUTIONS"

In weighing Lavin's "complete discontinuance" claim, the Court should consider the following three factors:  (1) whether contributions have been "recurring and substantial"; (2) whether "there is a reasonable probability that the lack of contributions will continue indefinitely"; and (3) whether the Committee may have denied Lavin's "complete discontinuance" claim "in order to avoid the requirement of full vesting."  *See* 26 C.F.R. §1.411(d)-2(d)(1)(i)-(iii).

### A.   Defendants' Brief Fails To Address Two Of The Three Relevant Factors

Lavin demonstrated in his opening brief that the second and third factors weigh heavily in favor of finding a "complete discontinuance."  *See* Pltf. Mem. 18-21.

Regarding the second factor, there is every reason to believe -- but in any event, at least a "reasonable probability" -- that the lack of contributions will continue.  For one thing, at no point since 2005 has the BOD ever even discussed putting new employer money into the Plan.  *See*

DeChiara Dec. ¶¶3-6.  For another, since January 1, 2006 the Plan has been closed to new participants, D15 (§4.01(b)); additional contributions to the Plan, as Weinstock explained, could trigger an obligation under IRC §401(b) to include new participants.  D133.

Lavin explained in his opening brief, in regard to the third factor, that it is undisputed that both LF and Egna had an interest in BS retaining employees.  *See* Beckerman 34-36, 98-99.  Full vesting would have run directly counter to that interest by effectively eliminating the Plan's seven-year vesting schedule, which required BS employees to remain with the company in order to obtain the full amounts in their accounts.  *See* Pltf. Mem. 20.  This fact, coupled with the fact that full vesting would have eliminated the forfeiture account that served as an additional enticement for employees to stay, *see id*. 20-21, support the conclusion that the Committee may have denied Lavin's claim "in order to avoid the requirement of full vesting."

Nothing in Defendants' opening brief addresses these points or suggests that these two factors do not clearly weigh in Lavin's favor.

The only fact even remotely relevant to these points addressed in the Committee's decision is the fact that the stock purchase agreement required LF to maintain and not terminate the Plan during the three-year "earn-out" period.  D104; *see also* D386 (§6.8(b) of stock purchase agreement).  But the fact that LF and Egna agreed that the Plan would not be terminated *supports* Lavin's point that LF and Egna had an interest in avoiding full vesting; had the Plan been terminated, IRC §411(d)(3)(A) would have required full vesting.  *See* 26 U.S.C. §411(d)(3)(A).

### B.     Contributions From 2005 And Before Are Irrelevant To Lavin's Claim

It is on the first factor -- whether contributions were "recurring and substantial" -- that Defendants focus, claiming that contributions were made from 2000 through 2005, if not also for 2006.  *See* D101-03; Def. Mem. 19-21.  But contributions from 2005 and earlier are simply

11

irrelevant to Lavin's claim; the issue raised by Lavin's claim is whether a "complete discontinuance of contributions" began *after* 2005, following LF's acquisition of BS.  *See* D74 (Lavin's claim letter referencing "Company's decision to discontinue making contributions to the Plan *following* the Company's acquisition by [LF]") (emphasis added); *see also* D77 (same claim letter referencing cessation of contributions "ensuing" after Lavin left employment in 2005).

To resolve Lavin's claim, the Court should consider whether what might have been a "temporary cessation of contributions" after 2005 ripened over time into a "complete discontinuance."  26 C.F.R. §1.411(d)-2(d)(1).  As the Plan's own counsel explained, in an IRC §411(d)(3)(B) case, a determination must be made whether over "some period of years" a temporary cessation "blossom[ed]" into a complete discontinuance.  DeChiara  Dec., Ex. A at 5. The backward-looking analysis urged by Defendants, that focuses on contributions made in 2005 and earlier, is entirely irrelevant to that issue.

When one looks forward from 2005, as required by Lavin's claim, it is clear that there have not been "recurring and substantial" contributions to the Plan.  Indeed, it is undisputed that no new employer money has been put into the Plan since 2005.

C.    **The 2006 Forfeiture Allocation Does Not Count As A Contribution**

Moreover, there is no merit to Defendants' contention that the allocation for 2006 of forfeiture money already in the Plan counted as a contribution for purposes of avoiding a "complete discontinuance" finding under IRC §411(d)(3)(B).  Defendants cite no legal authority, and we are aware of none, for the proposition that a forfeiture counts as a contribution for purposes of IRC §411(d)(3)(B).  On the contrary, the IRC treats forfeitures and contributions as separate and distinct.  *See* 26 U.S.C. §415(c) (IRC defining "annual addition" to a plan participant's account to include -- separately -- employer contributions, employee contributions

12

and forfeitures).

But even if considered solely as a matter of plan interpretation, the Committee's position that the 2006 forfeiture constituted a "Profit Sharing Contribution," D102-03, cannot stand. As Beckerman admits, *see* Beckerman 90, the Committee failed to consider the plain language of Section 6.02 of the Plan, which provides without exception that "Profit Sharing Contributions, *if any*, shall be paid *by* the Company in cash *to* the Trust Fund." D17 (emphasis added). Plan Section 8.02 similarly makes clear that contributions are the payment of money "to" the Plan, D19, not the reallocation of money already in the Plan.

Defendants also ignore the fact that the Committee's position is inconsistent with both BS's 2006 Form 5500 and its 2006 Plan valuation report, both of which indicate that there was no employer contribution for 2006. *See* Pltf. Mem. 16. The Committee's position also runs contrary to the Plan's own past practice of reporting contributions and forfeitures separately, as it did in its 2005 Plan valuation report. *See id*. Finally, it is at odds with common understanding, as explained by BS's own experienced actuary, that "typically" contributions are understood to be "an injection of new money" into a plan. Weinstock 6.

Despite all this, Defendants argue, *see* Def. Mem. 20, that the Committee properly relied on Plan Section 10.04(a), which provides that forfeitures may be used "to *reduce* the amount of Profit Sharing Contributions which are *to be made* by a Participating Employer for the current or following Plan year." D23 (emphasis added). This argument necessarily assumes that there were contributions "to be made" for 2006, which the forfeitures served to "reduce." But there is no evidence that the BOD -- the sole body authorized to decide that a contribution would be made for a given year, *see* D17 (§6.01(b)); Beckerman 55 -- ever decided that there would be a contribution for 2006.

13

The Committee also relied, *see* D102, on language from the Plan's summary plan description ("SPD") that forfeitures can be used "to fund *Employer Contributions.*" D60 (italics in original).  However, this SPD language provides no more support for the Committee's decision than does the language in Plan Section 10.04(a) that it purports to summarize.  That forfeiture money can be used to "fund" employer contributions assumes that there were employer contributions to be funded.  Here, as explained, only the BOD had the authority to decide that there would be an employer contribution for 2006 and there is no evidence that it did.

In any event, to the extent the SPD could be construed as providing language less favorable to Lavin's claim than the language of the Plan itself, Defendants should not be permitted to rely on it.  It is the Plan document that sets the terms of the Plan; the SPD is intended to be no more than a summary of those terms.  *Bergt v. Retirement Plan For Pilots Employed By MarkAir, Inc.* 293 F.3d 1139, 1145 (9th Cir. 2002).  Courts have thus held that the plan document controls, and the SPD does not, when the Plan is more favorable to the employee's claim for benefits.  *See Bergt*, 293 F.3d at 1145; *see also Shaw v. Connecticut Gen. Life Ins. Co.*, 353 F.3d 1276, 1283-84 (11th Cir. 2003).

For all these reasons, based on both the law and the Plan, the Court should find that the 2006 allocation of forfeiture money does not count as a contribution for that year.  Because there were no employer contributions to the Plan after 2005, let alone "recurring and substantial" contributions, and because the two other factors also weigh heavily in Lavin's favor, the Court should find that a "complete discontinuance of contributions" occurred.

## IV.   THE ONE-YEAR LIMITATIONS PERIOD CLAUSE ADOPTED BY THE PLAN AFTER LAVIN HAD LEFT EMPLOYMENT DOES NOT BAR HIS SUIT

Defendants argue that the action is barred by the Plan's one-year limitations period clause because Lavin knew about the clause, *see* Def. Mem. 12, and because in other cases, court have

applied limitations periods set forth in employee benefit plans, *id*. 13-14.

This argument fails first because, regardless of whether Lavin *knew* about the limitations clause, there is no evidence that he ever *agreed* to it.  CPLR §201 allows parties to shorten a statutory limitations period but only by written "agreement."  The cases that Defendants cite, *see* Def. Mem. 13-15, show that an agreement to shorten a limitations period may be contained in an employee benefit plan.  However, a plan administrator cannot create an "agreement" simply by inserting a limitations clause into a plan document.  An employee benefit plan is "nothing more than a contract." *Northlake Regional Med. Ctr. v. Waffle House Sys. Employee Benefit Plan*, 160 F.3d 1301, 1303 (11th Cir. 1998) (cited at Def. Mem. 14).  As with any contract, for there to be an agreement on a limitation on the right to sue, the party to be bound by the limitation must accept it, either through words or conduct.  Employees are typically deemed to accept the plan's terms through their continued employment. *See* Pltf. Mem. 21-22 (citing cases).  Here, however, it is undisputed that Lavin had ceased employment in 2005 before the one-year limitations period clause became effective on January 1, 2006. *See id*. 22.  Because there is no evidence that he ever agreed to the clause, he cannot be bound by it.

Indeed, Section 1.03 of the Plan provides in relevant part that "[a]ll issues arising with respect to participation and rights and benefits under the Plan for any period prior to January 1, 2006 shall be determined by the terms and provision of the Plan as in effect prior to January 1, 2006 except as otherwise specifically provided in the Plan."  D7.  Because Lavin ceased employment before January 1, 2006, his rights and benefits under the Plan are not subject to the one-year limitations period clause that took effect on January 1, 2006.

The cases that Defendants cite holding plan participants bound by limitations periods found in plans, *see* Def. Mem. 13-15, are all inapposite; in none of them was a plan participant

15

held bound by a limitations period clause inserted into a plan *after* the participant ceased employment.

In any event, as Lavin explained in his opening brief, *see* Pltf. Mem. 23-24, even if he could somehow be deemed to have agreed that a one-year limitations period would apply to suits against the Plan, it would still be unreasonable to apply it to the IRC §411(d)(3)(B) claim at issue here. As the Plan's own counsel explained, it takes "some period of years" to determine whether a temporary cessation has "blossom[ed]" into a complete discontinuance. DeChiara Dec., Ex. A at 5. Applying a one-year limitations period would be particularly unjust here since in denying Lavin's claim, the Committee asserted that a "complete discontinuance" requires three years of no substantial contributions. *See* D86, D101. To make sure his suit had merit, Lavin thus waited before suing to see whether the post-2005 absence of contributions continued for three years, and filed suit promptly after the deadline passed for a contribution to be made for 2008. *See* Pltf. Mem. 23-24. Finally, applying the limitations clause to dismiss Lavin's claim would serve no purpose because three other Plan participants intend to file suit on identical claims as soon as their appeals pending before the Committee are exhausted. *See id.* at 24. If they prevail and the Court holds that there was a "complete discontinuance of contributions" to the Plan, the Plan will have to provide all participants, including Lavin, the full amounts that were in their Plan accounts.

## CONCLUSION

For the foregoing reasons, Defendants' summary judgment motion should be denied and Lavin's granted.

June 7, 2010

/s/ Peter D. DeChiara
Jani K. Rachelson (JK 0121)
Peter D. DeChiara (PD 0719)
Zachary N. Leeds (ZL 7353)
COHEN, WEISS AND SIMON LLP
330 West 42nd Street
New York, New York 10036-6976
Tel:  (212) 563-4100
Fax:  (212) 695-5436
jrachelson@cwsny.com
pdechiara@cwsny.com
zleeds@cwsny.com

Attorneys for Plaintiff John E. Lavin

17

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on this 7th day of June 2010, he caused a

copy of (1) Plaintiff's Memorandum of Law In Opposition To Defendants' Summary Judgment

Motion and (2) Plantiff's Response To Defendants' Statement Of Material Facts, to be served by

email and ECF upon:

> Jonathan M. Kozak
> JACKSON, LEWIS LLP
> One North Broadway, 15th Floor
> White Plains, New York 10601-2329
> kozakj@jacksonlewis.com
> Attorneys for the Briefly Stated, Inc. Profit-Sharing Plan
>
> and
>
> John J. Hay
> Salans LLP
> Rockefeller Center
> 620 Fifth Avenue
> New York, NY 10020-2457
> jhay@salans.com
> Attorneys for Briefly Stated, Inc.


/s/ Peter D. DeChiara
Peter D. DeChiara

00160293.DOC.1