UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------x

JOHN E. LAVIN,

                          Plaintiff,

        -against-

BRIEFLY STATED, INC. and BRIEFLY
STATED INC. PROFIT SHARING PLAN,

                          Defendants.

------------------------------------------------------x

Case No.:  09-CIV-8610 (CM)

## **DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

JACKSON LEWIS LLP

One North Broadway, 15th Floor
White Plains, New York 10601
Tel.: (914) 328-0404
Fax: (914) 328-1882
Robert R. Perry
perryr@jacksonlewis.com
Jonathan M. Kozak
kozakj@jacksonlewis.com

*Attorneys for Defendant Briefly Stated,
Inc. Profit Sharing Plan*

SALANS LLP

Rockefeller Center
620 Fifth Avenue,
New York, NY 10020-2457
Tele.: (212) 632-8457
Fax: (212) 307-3397
John J. Hay
jhay@salans.com

*Attorneys for Defendant Briefly Stated,
Inc.*

# TABLE OF CONTENTS

**PAGE**

PRELIMINARY STATEMENT .................................................................................1

ARGUMENT ............................................................................................................3

POINT I:  PLAINTIFF IS NOT ENTITLED TO SUMMARY JUDGMENT
BECAUSE HE CANNOT ESTABLISH THAT HIS LAWSUIT
WAS TIMELY FILED .................................................................................3

    A.  The Plan Contains a One Year Limitations Period. .........................................3

    B.  Plaintiff Did Not Timely Commence This Action. ..........................................4

    C.  The Fact That the Limitations Period Was Added to the Plan
After Plaintiff Terminated Employment Neither Renders the Provision
Inapplicable Nor Excuses Plaintiff's Failure to Timely Commence This
Action.......................................................................................................4

    D.  The Fact That Plaintiff "Did Not Agree" to the One Year Limitations
Period Does Not Excuse Plaintiff's Failure to Timely Commence This
Action.......................................................................................................7

POINT II:  THE COMMITTEE'S DECISION WAS NOT ARBITRARY
AND CAPRICIOUS AND MUST THEREFORE BE UPHELD
BY THE COURT .......................................................................................11

    A.  The Court's Review is Limited to the Administrative Recor. .......................11

    B.  The Express Terms of the Plan Grant to the Committee the
Exclusive and Discretionary Authority to Interpret Plan Terms
and Determine Benefit Claims and Appeals. ..................................................12

    C.  The Arbitrary and Capricious Standard of Review Governs
the Court's Review of the Committee's Claim Denial. ...............................13

    D.  Under The Arbitrary and Capricious Standard, the Committee's
Decision Should Be Afforded Great Deference.............................................16

    E.  The Committee's Decision Was Neither Arbitrary Nor Capricious
and Must be Upheld by the Court. .................................................................17

## **TABLE OF CONTENTS**

**PAGE**

POINT III:  EVEN IF THE COURT WERE TO DECIDE THAT
DE NOVO REVIEW IS APPROPRIATE, THE
COMMITTEE'S DETERMINATION MUST STILL
BE UPHELD ................................................................................................... 22

CONCLUSION ................................................................................................................... 23

## TABLE OF AUTHORITIES

### FEDERAL CASES

**PAGE**

*Alessi v. Raybestos-Manhattan, Inc.*, 451 U.S. 504 (1981) ............................................................. 5

*Bologna v. NMU Pension Trust*, 654 F. Supp. 637 (S.D.N.Y. 1987) ................................................ 9

*Burke v. PricewaterhouseCoopers*, 572 F.3d 76 (2d Cir. 2009) ............................................... 4, 7

*Conkright v. Frommert*, 130 S. Ct. 1640, 176 L. Ed. 2d 469 (2010) ........................................... 15

*Daisley v. Federal Ex Ground Package System, Inc.*, No. 08-CV-4063, 2008 U.S. Dist. LEXIS 97373 (E.D.N.Y. Dec. 1, 2008) ................................................................................................ 7

*Davis v. NMU Pension and Welfare Plan*, 810 F. Supp. 532 (S.D.N.Y. 1992) .............................. 9

*DeFelice v. America International Life Assurance Co.*, 112 F.3d 61 (2d Cir. 1997) .................... 11

*Del Greco v. CVS Corporation*, 337 F. Supp. 2d 475 (S.D.N.Y. 2004), <u>aff'd</u>, 164 Fed. Appx. 75 (2d Cir. 2006) ........................................................................................................... 10

*Denzer v. Purified Down Products Corp.*, 474 F. Supp. 773 (S.D.N.Y. 1979) .............................. 7

*Dioguardi v. Rochester Laborers Pension Fund*, 317 F. Supp. 2d 216 (W.D.N.Y. 2004) ............. 9

*Dittmann v. Dyno Nobel, Inc. Defined Benefit Pension Plan*, No. 97-CV-1724, 2000 U.S. Dist. LEXIS 1360 (N.D.N.Y. Sept. 10, 1999) ............................................................................ 5

*Doe v. Blue Cross & Blue Shield*, 112 F.3d 869 (7th Cir. 1997) ................................................. 17

*Firestone Tire & Rubber Co., v. Bruch*, 489 U.S. 101 (1989) ..................................................... 13

*Fitzpatrick v. Bayer Corporation*, No. 04 Civ. 5134 (RJS), 2008 U.S. Dist. LEXIS 3532 (S.D.N.Y. Jan 17, 2008) ............................................................................................................. 14

*Fuller v. J.P. Morgan Chase & Co.*, 423 F.3d 104 (2d Cir. 2005) ............................................... 16

*Geiger v. Alsom Signaling Inc.*, No. 06-CV-6561, 2010 U.S. Dist. LEXIS 36782 (S.D.N.Y. Apr. 14, 2010) ........................................................................................................... 12

*Jeffries v. Pension Trust Fund*, No. 99-CV-4174, 2007 U.S. Dist. LEXIS 61454 (S.D.N.Y. Aug. 20, 3007) ........................................................................................................... 12

*Jordan v. Retirement Committee of Rensselaer Polytechnic Institute*, 46 F.3d 1264 (2d Cir. 1995) ........................................................................................................................ 16

*Juliano v. Health Maintenance Organization of New Jersey, Inc.*, 221 F.3d 279 (2d Cir. 2000) ....................................................................................................................................... 12

*Lugo v. AIG Life Insurance   Co.*, 852 F. Supp. 187 (S.D.N.Y. 1994) .......................................... 8

*Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105 (2008) ............................................................. 15

*Miles v. N.Y. State Teamsters Conference Pension and Retirement Fund Employee Pension Benefit Plan*, 698 F.2d 593 (2d Cir. 1983) ................................................................. 7

*Miller v. United Welfare Fund*, 72 F.3d 1066 (2d Cir. 1995) ....................................................... 11

*Montesano v. Xerox Corp. Retirement Income Guaranty Plan*, 117 F. Supp. 2d 147 (D. Conn. 2000) ....................................................................................................................... 13, 15

*Morales v. Plaxall, Inc.*, 541 F. Supp. 1387 (E.D.N.Y. 1982) ....................................................... 7

*Paese v. Hartford Life Accident Insurance Co.*, 449 F.3d 435 (2d Cir. 2006) ............................ 12

*Pagan v. NYNEX Pension Plan*, 52 F.3d 438 (2d Cir. 1995) ....................................................... 16

*Pepe v. Newspaper & Mail Deliveries-Publishers' Pension Fund*, 559 F.3d 140 (2d Cir. 2009) ........................................................................................................................................ 13

*Perezaj v. Building Serv. 32B-J Pension Fund*, No. CV-04-3768, 2005 U.S. Dist. LEXIS 17178 (S.D.N.Y. Aug. 17, 2005) ....................................................................................... 3

*Porter v. Prudential Insurance Co.*, No. 05 Civ. 6113, 2006 U.S. Dist. LEXIS 49069 (S.D.N.Y. July 18, 2006) .................................................................................................... 11

*Pratt v. Petroleum Prod. Management Corp.*, 920 F.2d 651 (10th Cir. 1990) ..................... 5, 6, 7

*Pulvers v. First UNUM Life Insurance Co.*, 210 F.3d 89 (2d Cir. 2000) .................................. 16

*Robinson v. Sheet Metal Workers National Pension Fund*, 441 F. Supp. 2d 405 (D. Conn. 2006) ......................................................................................................................................... 22

*Russo v. Health, Welfare & Pension Fund*, 984 F.2d 762 (7th Cir. 1992) .................................. 16

*Scharff v. Raytheon Co. Short Term Disability Plan*, 581 F.3d 899 (9th Cir. 2009) ...................... 4

*Seff v. National Organization of Industrial Trade Unions*, 781 F. Supp. 1037 (S.D.N.Y. 1992) ......................................................................................................................................... 19

*Smith v. First UNUM Life Insurance Co.*, No. 98 Civ. 2415 (JG), 1999 U.S. Dist. LEXIS 8381 (E.D.N.Y. June 2, 1999) ...................................................................................... 8

*Weil v. Terson*, 913 F.2d 1045 (2d Cir. 1990), vacated in part, 933 F.2d 106 (2d Cir. 1991) .......................................................................................................................... 13

*Wetzler v. Ill. CPA Society & Foundation Retirement Income Plan*, 586 F.3d 1053 (7th Cir. 2009) ...................................................................................................................... 22

*Yuhas v. Provident Life & Casualty*, 162 F. Supp. 2d 227 (S.D.N.Y 2001) ................... 9

## <u>FEDERAL STATUTES</u>

29 U.S.C. § 1132(a)(1)(B) ................................................................................................. 7

29 U.S.C. § 1133(2) ........................................................................................................ 18

29 U.S.C. §§ 1002(23) .................................................................................................. 6, 7

Treas. Reg. § 1.411(d)-2(2) ............................................................................................ 14

Treas. Reg. § 1.411(d)-3(g)(i) .......................................................................................... 6

Treas. Reg. § 1.411(d)-3(g)(iv) ........................................................................................ 6

Treas. Reg. § 1.411(d)-4, A-1(a) ...................................................................................... 6

Treas. Reg. § 1.411(d)-4, A-1(b) ...................................................................................... 6

## PRELIMINARY STATEMENT

Defendants Briefly Stated, Inc. ("Briefly Stated") and the Briefly Stated, Inc. Profit Sharing Plan (the "Plan") (collectively "Defendants") respectfully submit this Memorandum of Law in opposition to the motion for summary judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure, filed by Plaintiff John Lavin ("Lavin" or "Plaintiff").[1]

Plaintiff was previously employed by Briefly Stated. When his employment was terminated in 2005, Plaintiff was credited with four (4) years of service and was therefore 40% vested under the Plan's vesting schedule. In March 2007, Plaintiff received a distribution of $598,600.20, representing 40% of his $1,496,500.50 account balance. Plaintiff now claims to have become fully vested prior to the receipt of this distribution as a result of a "complete discontinuance of contributions" under the Plan and claims entitlement to the unpaid balance.

Plaintiff submitted a claim for additional benefits from the Plan seeking additional benefits on this basis, advancing the same theories presented here. Acting pursuant to express authority under the terms of the Plan, an administrative committee appointed by Briefly Stated (the "Committee") considered and denied both Plaintiff's initial claim and subsequent appeal. More than seventeen (17) months after the Committee's final determination of Plaintiff's claim, Plaintiff commenced this action challenging the Committee's decision by filing the Complaint in this matter (the "Complaint").

Plaintiff's claim is untimely. The Plan contains a contractual limitations period for the commencement of legal actions contesting a claim denial. Both the Plan document and the summary plan description expressly and unambiguously provide that any such action must be brought, if at all, no later than one (1) year after the date of the final decision on appeal. Plaintiff

---

[1]    Defendants' motion for summary judgment was filed with the Court on May 17, 2010 and is currently pending.

was aware of the limitations period but chose to ignore it, commencing this action more than seventeen (17) months after the Committee's March 31, 2008 final decision on appeal. As a result, the Complaint is time-barred. In the face of well-settled Second Circuit precedent, Plaintiff advances several arguments seeking to excuse his failure to timely commence this action; they do not. Plaintiff's motion must therefore be denied, and Defendants' motion granted, on this basis.

However, assuming *arguendo* that the Court finds that the Complaint is not time-barred (and it should not), Plaintiff's motion nevertheless fails. Regarding the applicable standard of review, the Plan clearly and unequivocally grants to the Committee the discretionary authority to interpret the Plan and make binding determinations regarding entitlement to benefits. As a result, the Court's review is governed by the deferential arbitrary and capricious standard of review.

Plaintiff simplistically asserts that because the term "complete discontinuance of contributions" is contained in a statute (the Internal Revenue Code), the Court's review should be governed by the de novo standard of review. The Committee's determination, however, did not turn on (as the case law requires for de novo review to apply) their interpretation of the Internal Revenue Code, but rather on the Plan's definition of a "Profit Sharing Contribution" and their interpretation thereof. As a result, the arbitrary and capricious standard governs the Court's review.

Under this deferential standard, the Committee's decision must be upheld unless unreasonable, unsupported by substantial evidence or erroneous as a matter of law. As demonstrated below, the inherent reasonableness of the Committee's decision is readily apparent.

Even if the Court were to determine that de novo review was appropriate for some or all of the Committee's determinations, the Committee's claim denial must still be upheld by the Court because the Committee interpreted clear and unambiguous Plan terms and applied these terms in a manner consistent with the Plan and applicable law.

Based on the foregoing, Defendants respectfully request that the Court deny Plaintiff's motion for summary judgment, grant Defendants' motion, and dismiss the Complaint in its entirety with prejudice.

## ARGUMENT

For the reasons explained herein, Plaintiff is not entitled to summary judgment in his favor. To the contrary, summary judgment should be awarded to Defendants because "there is no genuine dispute regarding whether the decision was arbitrary and capricious." Perezaj v. Bldg. Serv. 32B-J Pension Fund, No. CV-04-3768, 2005 U.S. Dist. LEXIS 17178, at *10 (S.D.N.Y. Aug. 17, 2005).

## POINT I

## PLAINTIFF IS NOT ENTITLED TO SUMMARY JUDGMENT BECAUSE HE CANNOT ESTABLISH THAT HIS LAWSUIT WAS TIMELY FILED

**A.**    **The Plan Contains a One Year Limitations Period.**

Section 14.13 of the Plan provides that "any suit or legal action initiated by a claimant under the Plan must be brought, if at all, no later than one year following a final decision on the claim for benefits by the Administrator." (D-035). Consistent with this, the Plan's summary plan description (the "SPD") provides that a participant "cannot bring a legal action more than one (1) year after the date of the final decision on the appeal of your denied claim for benefits." (Lavin-000025).

**B.**  **Plaintiff Did Not Timely Commence This Action.**

Under the plain and unambiguous terms of the Plan and the SPD, Plaintiff had one (1) year from the final decision of a claim for benefits to bring a legal action challenging the decision.  The Committee's decision to deny Plaintiff's appeal, the "final decision on the claim for benefits by the Administrator," was issued on March 31, 2008.  (D-095).  Plaintiff had both possession of the Plan Document and the SPD and knowledge of the one year limitations period prior to this date (Lavin-000040, 000247).  Plaintiff, however, did not file suit until October 8, 2009, more than seventeen months from this date.  As a result, the Complaint is time-barred and must be dismissed.  See Scharff v. Raytheon Co. Short Term Disability Plan, 581 F.3d 899 (9th Cir. 2009) (upholding dismissal of time-barred claim where summary plan description contained a one-year limitations period from the denial of the appeal and suit was filed one year and twenty days after the appeal was denied).

**C.**  **The Fact That the Limitations Period Was Added to the Plan After Plaintiff Terminated Employment Neither Renders the Provision Inapplicable Nor Excuses Plaintiff's Failure to Timely Commence This Action.**

Prior to the Plan amendment at issue, the Plan did not contain a specific limitations period for judicially contesting a denial of benefits.  (D-245 through D-327).  Under the terms of the Plan in effect at that time, therefore, any such action would have been subject to the six (6) year statute of limitations contained in Section 213 of the New York Civil Practice Law and Rules ("CPLR").  Burke v. PricewaterhouseCoopers, 572 F.3d 76, 78 (2d Cir. 2009).

By amendment adopted December 27, 2006 (D-214) and effective January 1, 2006 (D-001), the Plan was amended and restated in its entirety; at this time the current one-year limitations period (D-035) was added.  Plaintiff maintains that the Plan's limitations period does

not apply to him because he cannot be bound by a Plan term that was added to the Plan after his employment terminated.[2]  Plaintiff is wrong.

   To prevail here, Plaintiff must demonstrate both that the right to the prior six year limitations period was an accrued benefit, and that the January 1, 2006 amendment adding the one year limitations period impermissibly reduced Plaintiff's accrued benefit under the Plan. Dittmann v. Dyno Nobel, Inc. Defined Benefit Pension Plan, No. 97-CV-1724, 2000 U.S. Dist. LEXIS 1360 (N.D.N.Y. Sept. 10, 1999) (citing Pratt v. Petroleum Prod. Management Corp., 920 F.2d 651 (10th Cir. 1990)).  Plaintiff cannot do so.

   The determination as to whether a benefit or right has accrued is determined in the first instance by the terms of the plan itself. Alessi v. Raybestos-Manhattan, Inc., 451 U.S. 504, 511 (1981)(noting that "ERISA leaves this question largely to the private parties creating the plan").  Section 8.1 of the Plan as in effect in March 2005[3] (the "Prior Plan Document") unequivocally reserved to Briefly Stated "the right at any time to amend the Plan" subject only to "the limitations of this Section."  (D-296).  These limitations (contained in subsections (b) and (c) of Section 8.1) are the sole limits on Briefly Stated's reserved and express authority to amend the Plan, including amendments adopted after a participant's termination of employment.

   Section 8.1(b) of the Prior Plan Document prohibits any amendment that "causes any reduction in the amount credited to the account of any participant."  (D-296).  This provision, incorporating ERISA'a general prohibition against the reduction of an accrued benefit

---

[2]    See Plaintiff's Memorandum of Law In Support of Motion for Summary Judgment ("Pl.'s SJ MOL") at 21-22.
[3]    Plaintiff's employment with Briefly Stated terminated in March 2005.  (Pl.'s SJ MOL at 4).

by amendment[4], does not limit Briefly Stated's ability to amend the Plan to add the limitations period because the limitations period is inarguably *not* an accrued benefit.[5]

Section 8.1(c) of the Prior Plan Document prohibits any amendment to the extent that "it eliminates or reduces a Section 411(d)(6) protected benefit." (D-296). "Section 411(d)(6) protected benefits" are defined as "benefits described in Section 411(d)(6)(A)" (i.e., accrued benefits), "early retirement benefits and retirement-type subsidies" and "optional forms of benefit."[6] It is equally clear that the limitations period at issue is not a "Section 411(d)(6) protected benefit."[7]   As a result, the amendment adding the limitations period was permissible under both the terms of the Prior Plan Document and applicable law.  In sum, the Plan's one year limitations period both applies to Plaintiff and bars his claim.

None of the cases cited by Plaintiff alter this result. In <u>Pratt v. Petroleum Prods. Mgmt. Inc.</u>, 920 F.2d 651 (10th Cir. 1990) (Pl.'s SJ MOL at 22), a post-termination amendment modified the date on which plan assets were valued and therefore resulted in a reduction in the value of the plaintiff's account balance. <u>Id.</u> at 652.   The district court found, and the Tenth Circuit agreed, that the amendment was invalid because it impermissibly reduced plaintiff's

---

[4]      See ERISA Section 204(g)(1), 29 U.S.C. § 1054(g)(1).
[5]      The Plan is a defined contribution plan. (See D-215, line 5, indicating that the Plan is a profit sharing plan). A participant's accrued benefit in a defined contribution plan consists of the account balance which reflects the monetary value of contributions, income and expenses, and gains and losses allocated to the account. Sections 3(23) and 3(34) of ERISA, 29 U.S.C. §§ 1002(23) and 1002(34),
[6]      Treas. Reg. § 1.411(d)-4, A-1(a).
[7]      See Treas. Reg. § 1.411(d)-3(g)(i) (defining "early retirement benefit" with reference to the right to commence distribution of a retirement-type benefits before normal retirement age not relevant here);  Treas. Reg. § 1.411(d)-3(g)(iv) (defining "retirement-type subsidy" with respect to certain employer-subsidized forms of pension benefits not relevant here); and Treas. Reg. § 1.411(d)-4, A-1(b) (defining "optional forms of benefit" as "differences in terms relating to payment schedule, timing, commencement, medium of distribution" and similar factors, none of which are relevant here)

accrued benefit[8] in violation of ERISA.   Id. at 658. The distinction between Pratt (which disallowed a post-termination amendment that reduced an accrued benefit) and the case at bar (where the limitations period, as demonstrated above, was clearly not an accrued benefit) are readily apparent.[9]   The other cases cited by Plaintiff all involved the prohibited reduction of accrued benefits and are similarly unavailing.[10]

**D.**   **The Fact That Plaintiff "Did Not Agree" to the One Year Limitations Period Does Not Excuse Plaintiff's Failure to Timely Commence This Action.**

Plaintiff's claim is brought under Section 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B).  (Complaint ¶25).  Since ERISA does not provide a limitations period for actions brought under this section, courts apply the "most nearly analogous state limitations statute."[11] The statute of limitations for breach of contract actions, contained in Section 213 of the New York Civil Practice Law and Rules ("CPLR"), generally applies as the most analogous state limitations statute. Burke v. PricewaterhouseCoopers, 572 F.3d 76, 78 (2d Cir. 2009).   Under New York law, breach of contract actions must generally be brought within six (6) years.   N.Y. C.P.L.R. § 213.

---

[8]     As noted above, a participant's accrued benefit in a defined contribution plan consists of the account balance which reflects the monetary value of contributions, income and expenses, and gains and losses allocated to the account. Sections 3(23) and 3(34) of ERISA, 29 U.S.C. §§ 1002(23) and 1002(34),

[9]     Further, the statute of limitations is procedural and does not impact Plaintiff's substantive entitlement to benefits under the terms of the Plan.  Under New York law, statutes of limitations are generally considered procedural.  See Daisley v. FedEx Ground Package Sys., Inc., No. 08-CV-4063, 2008 U.S. Dist. LEXIS 97373, at *6 n.3 (E.D.N.Y. Dec. 1, 2008) (applying contractual choice of law provisions to substitute law, but not to matters of procedure; regarding statute of limitations as procedural) (citing Tanges v. Heidelberg North Am., Inc., 93 N.Y.2d 48 (1999) affirmed, 2010 U.S. App. LEXIS 9462 (2d Cir. May 10, 2010).

[10]     See Morales v. Plaxall, Inc., 541 F. Supp. 1387, 1391 (E.D.N.Y. 1982) (invalidating post-termination amendment eliminating ability to receive optional form of payment following termination of employment); Denzer v. Purified Down Products Corp., 474 F. Supp. 773 (S.D.N.Y. 1979) (same).

[11]     Miles v. N.Y. State Teamsters Conference Pension and Ret. Fund Employee Pension Benefit Plan, 698 F.2d 593, 598 (2d Cir. 1983).

Section 213 of the CPLR, however, is modified by Section 201 of the CPLR, which provides:

> **§ 201.  Application of article.**
>
> An action, including one brought in the name or for the benefit of the state, must be commenced within the time specified in this article **unless** a different time is prescribed by law or **a shorter time is prescribed by written agreement**.  No court shall extend the time limited by law for the commencement of an action.

N.Y. C.P.L.R. §201 (emphasis added).

Plaintiff somewhat disingenuously argues that "[s]ince CPLR § 201 requires an "agreement"[12]  to shorten a limitations period" and Plaintiff never so agreed, the Plan's limitations period "does not bind him."  (Pl.'s SJ MOL at 22).  As demonstrated above, this theory directly contradicts the terms of the Prior Plan Document, pursuant to which the amendment adding the limitations period was inarguably permissible.[13]  Thus, contrary to Plaintiff's assertion, his employment under the Prior Plan (which permitted the Employer to unilaterally amend the Prior Plan except to the extent that such amendment would adversely impact his accrued benefits), constitutes agreement to the subsequent inclusion of the limitation period.

In addition, case law clearly establishes that the term "written agreement" in Section 201 of the CPLR includes employee benefit plans (such as the Plan) that are governed by ERISA.  Smith v. First UNUM Life Ins. Co., No. 98 Civ. 2415 (JG), 1999 U.S. Dist. LEXIS 8381, at *9 (E.D.N.Y. June 2, 1999) (describing as "well-settled" that an ERISA plan may provide for a shorter limitations period pursuant to N.Y. CPLR § 201); Lugo v. AIG Life Ins.

---

[12]    In fact, as noted in the preceding paragraph, CPLR § 201 provides that a shorter limitations period may be "prescribed by written agreement."
[13]    See also Plan Section 15.01 (D-036), permitting amendments by Briefly Stated "at any time and from time to time," "without the consent of any...Participant or Beneficiary."

Co., 852 F. Supp. 187, 195 (S.D.N.Y. 1994) ("there can be little doubt" that ERISA plans are written agreements and therefore can prescribe shorter limitations periods pursuant to Section 201 of the CPLR). Therefore, and contrary to Plaintiff's argument, Plaintiff's agreement was not required to implement the Plan's one-year limitations period.[14]  The purported lack of such agreement does not excuse his failure to timely commence this action.

Plaintiff further ignores the myriad of Second Circuit case law providing that where an ERISA plan "provides a limitations period shorter than six years, the contractual period governs." See, e.g., Yuhas v. Provident Life & Casualty, 162 F. Supp. 2d 227, 231 (S.D.N.Y 2001) (McMahon, J.) (when an ERISA plan document "stipulates a shorter limitations period, the shorter period governs"); Dioguardi v. Rochester Laborers Pension Fund, 317 F. Supp. 2d 216 (W.D.N.Y. 2004) (dismissing as untimely action commenced after expiration of plan's 90-day limitation period).

Plaintiff's other attempts to excuse his late filing are similarly ineffective.  For example, Plaintiff asserts that the application of the Plan's limitations period is unreasonable in the context of a complete discontinuance of contributions.  (Pl.'s SJ MOL at 23).  The Committee had determined that a complete discontinuance of contributions requires, as a matter of common sense, that there be a cessation of contributions for *some* period of years.  (D-103).

---

[14]    The cases cited by Plaintiff are readily distinguishable.  For example, in Davis v. NMU Pension and Welfare Plan, 810 F. Supp. 532, 534 (S.D.N.Y. 1992), the Court held that a plan-specific limitations period was not effective with respect to a collectively-bargained plan where the provision at issue was not even in the governing plan documents but in plan regulations. The Court specifically noted in this regard that "[t]he Plan's argument under CPLR 201 would be significantly stronger if the shortened limitations period was contained in the actual trust document establishing the Plan or in collective bargaining agreements"; see also Bologna v. NMU Pension Trust, 654 F. Supp. 637, 641(S.D.N.Y. 1987) (describing as "crucial" that the limitations period was not authorized by the governing plan documents).  The distinctions between these cases and the instant matter, where the Plan is not collectively bargained and Briefly Stated had expressly reserved the right to unilaterally amend the Plan, are readily apparent.

The Committee further determined that substantial contributions to the Plan had been made for each and every relevant year, and that therefore a complete discontinuance of contributions had not occurred. (Id.). Plaintiff contends that he was aware of the Plan's limitations period, but chose to ignore it "[t]o make sure his suit had merit"[15] by waiting "to see whether the post-2005 absence of contributions continued for three years: 2006, 2007 and 2008." (Pl.'s SJ MOL at 23). Plaintiff, however, "cannot simply ignore" the Plan's limitations period. Del Greco v. CVS Corporation, 337 F. Supp. 2d 475 (S.D.N.Y. 2004) (McMahon, J.) (dismissing claim where plaintiff failed to file claim within time mandated by summary plan description), aff'd, 164 Fed. Appx. 75 (2d Cir. 2006). This argument also fails as a matter of law. The denial of Plaintiff's claim turned on the Committee's determination that the 2006 forfeiture allocation constituted a "Profit Sharing Contribution" under the terms of the Plan. (D-102, D-103). This determination was made in March 2008, when the Committee denied Plaintiff's appeal and when the Plan's limitation period began to run. (D-095). Plaintiff's claim that he waited to see if a contribution would be made for 2008 before filing suit, in light of the irrelevant nature of that fact and the Plan's limitations period, defies both logic and reality.

Plaintiff next argues, again without any relevant or persuasive citation, that the Plan's limitations period does not bar Plaintiff's claim because other Plan participants have advanced administrative claims for Plan benefits on the same basis as Plaintiff. Defendants note that the Committee has not yet issued its final decision on these claims and therefore the Plan's limitations period for commencing an action disputing a denied claim has not yet begun to run, let alone expire for those other individuals. In any event, the existence of other claimants or

---

[15]  Plaintiff obviously had no such reservations about filing a meritless administrative claim for benefits under the Plan, since the arguments raised by Plaintiff here are exactly the same as the arguments advanced in the administrative claims phase. (D-074 through D-080 (claim); D-090 through D-094 (appeal)).

potential litigants asserting similar claims and legal theories does not excuse Plaintiff's late filing. Plaintiff's other attempts to justify the failure to timely file are similarly unavailing[16] and do not alter the fact that Plaintiff's claim is time-barred and subject to dismissal on that basis.

**POINT II**

**THE COMMITTEE'S DECISION WAS NOT ARBITRARY AND CAPRICIOUS AND MUST THEREFORE BE UPHELD BY THE COURT.**

**A.**    **The Court's Review is Limited to the Administrative Record.**

In determining whether the Committee acted in an arbitrary and capricious manner in denying Plaintiff's application, the Court's review is limited to the administrative record. Miller v. United Welfare Fund, 72 F.3d 1066, 1071 (2d Cir. 1995). The same limitation on evidence on admissible evidence is generally applicable where review is de novo. Porter v. Prudential Ins. Co., No. 05 Civ. 6113, 2006 U.S. Dist. LEXIS 49069 (S.D.N.Y. July 18, 2006)("Whether a de novo or an arbitrary and capricious standard is ultimately applied, the evidence to be considered by the trial court is generally limited to the administrative record").

In limited circumstances not present here, additional evidence may be considered upon a showing of good cause. "The decision whether to admit additional evidence is one which is discretionary with the district court, but which discretion ought not to be exercised in the absence of good cause." DeFelice v. Am. Int'l Life Assurance Co., 112 F.3d 61, 66 (2d Cir.

---

[16]     For example, Plaintiff implies that the Committee misled or deceived him by telling him that a complete discontinuance of contributions could not occur until some future date, citing a passage from the initial claim denial. (Pl's. SJ MOL at 23, referring to D-086.). This is blatantly false. The appeal (which is the focus of this action) in fact states that (i) the referenced stems from the Internal Revenue Manual ("IRM"); (ii) the IRM provides audit guidance for agents and is not legally binding; and (iii) that under the IRM, agents are "instructed to consider" a complete discontinuance of contributions as an audit issue only when there have been no contributions for 3 of 5 years. (D-101).

1997). Courts have universally limited "good cause" to alleged conflicts of interests[17] or procedural irregularities in the decision-making process.[18]  No such circumstances are present here.  Plaintiff cites Jeffries v. Pension Trust Fund, No. 99-CV-4174, 2007 U.S. Dist. LEXIS 61454 (S.D.N.Y. Aug. 20, 2007) as support. Jeffries, however, involved an attempt by the *plaintiff* to preclude the *defendant administrator* from introducing evidence outside the administrative record which he alleged was wrongfully withheld during discovery; it is clearly distinguishable on that basis.[19]  Plaintiff's further attempts to create a conflict of interest with bare unsubstantiated assertions similarly fail.[20]  As a result, the Court's review should be limited to the administrative record (D-001 through D-110) regardless of the standard of review.

**B.**   **The Express Terms of the Plan Grant to the Committee the Exclusive and Discretionary Authority to Interpret Plan Terms and Determine Benefit Claims and Appeals.**

Section 14.01 of the Plan provides as follows:

> The Company shall be the "Administrator" of the Plan within the meaning of Section (16)(A) of ERISA and the "Named Fiduciary" for purposes of Section 402(a)(2) of ERISA. Such duties shall be performed on behalf of the Company by the Retirement Committee or such other person or committee as may be appointed by the Board of Directors.

(D-032).

Section 14.14 further provides in this regard:

---

[17]   See, e.g., Paese v. Hartford Life Accident Ins. Co., 449 F.3d 435 (2d Cir. 2006) (permitting extrinsic evidence where insurance company was both payor and decision-maker).
[18]   Juliano v. Health Maint. Org. of New Jersey, Inc., 221 F.3d 279, 289 (2d Cir. 2000)(evidence outside administrative record permitted where insurer's claimed reason for denying a claim was not stated in its notices to the claimant).
[19]   Jeffries, supra at 5.
[20]   See Geiger v. Alsom Signaling Inc., No. 06-CV-6561, 2010 U.S. Dist. LEXIS 36782, at *22 (S.D.N.Y. Apr. 14, 2010) (noting that "a conflict of interest does not per se constitute good cause to consider evidence outside of the administrative record").

> The Administrator has full and absolute discretion in the exercise of each and every aspect of its authority under the Plan, including without limitation, the authority to determine any person's eligibility to participation in the Plan, any person's right to benefits under the Plan, the correct amount and form of any benefits, the authority to decide any appeal, the authority to review and correct the actions of any prior administrative committee, and all of the rights, powers, and authorities specified in the Plan.

(D-035).

The Plan's summary plan description contains a similar grant of discretionary authority. (D-069).

## C.  The Arbitrary and Capricious Standard of Review Governs the Court's Review of the Committee's Claim Denial.

Acting pursuant to this full, absolute and discretionary authority to interpret the terms of the Plan, the Committee denied Plaintiff's claim for benefits. (D-095 through D-105). The Court's review of this determination is governed by the arbitrary and capricious standard of review. See Firestone Tire & Rubber Co., v. Bruch, 489 U.S. 101, 111 (1989); Pepe v. Newspaper & Mail Deliveries-Publishers' Pension Fund, 559 F.3d 140, 146 (2d Cir. 2009).

Plaintiff, however, argues that de novo review is mandated because the Committee determined a legal issue. (Pl.'s SJ MOL at 13). Plaintiff is wrong.

Defendants acknowledge that de novo review may be appropriate where a denial of benefits *turns* on a legal interpretation. See Weil v. Terson, 913 F.2d 1045, 1048-49 (2d Cir. 1990), vacated in part, 933 F.2d 106 (2d Cir. 1991) (emphasis added). However, "there are significant differences between plan interpretation and legal interpretation, and de novo review is required only if a plan administrator decided a legal question." Montesano v. Xerox Corp. Ret. Income Guar. Plan, 117 F. Supp. 2d 147, 158 (D. Conn. 2000), aff'd in part, vacated on other

grounds, 256 F.3d 86 (2d Cir. 2001). As demonstrated below, however, the Committee's denial turned on Plan, not legal, interpretation.

It is readily apparent that the Committee's claim denial turned not on a statutory question or interpretation, but on the Committee's interpretation of relevant Plan terms and its determination that the 2006 forfeiture allocation constituted a "Profit Sharing Contribution" as that term is defined in the Plan. A "complete discontinuance of contributions" is effective on the last day of the year following the last year for which a contribution was made.[21] Plaintiff claims that the last year a contribution was made was 2005, and that the alleged complete discontinuance of contributions became effective December 31, 2006.[22] The Committee, however, determined that (1) substantial and recurring cash contributions were made each year prior to 2006; and (2) the 2006 forfeiture allocation was a "Profit Sharing Contribution" (as defined in the Plan)[23] and that a contribution had therefore been made for 2006. Based on the latter finding, the Committee determined that contributions had been made for every relevant year.[24] Since Plaintiff's claim for benefits was based on his assertion that he was entitled to full vesting as a result of a "complete discontinuance of contributions" under Section 411(d)(3) of the Internal Revenue Code (D-091) that was effective December 31, 2006, it is readily apparent that

---

[21]    Pl.'s SJ MOL at 15; Treas. Reg. § 1.411(d)-2(2).

[22]    Pl.'s SJ MOL at 15. As noted by the Committee, since Plaintiff received a distribution in March 2007, the vesting event (that is, the complete discontinuance) had to be effective before this date for Plaintiff to prevail. (D-099).

[23]    The Committee interpreted Plan Sections 2.19, 6.01 and 10.04, and determined that these sections provide a mechanism for forfeitures to fund Profit Sharing Contributions. (D-103).

[24]    Plaintiff asserts that contributions prior to 2006 are irrelevant, and that the complete discontinuance of contributions began after 2005. (Pl.'s SJ MOL at 16). Defendants do not agree with this assertion, rather it is only evidence existing at the time of the Commitee's decision that is relevant. The Court may not consider extrinsic matters but must remain within the bounds of the administrative record considered by the Committee. Fitzpatrick v. Bayer Corporation, No. 04 Civ. 5134(RJS), 2008 U.S. Dist. LEXIS 3532 (S.D.N.Y. Jan. 17, 2008). Since the *subsequent* contribution history was not (and could not) have been before the Committee, it is Defendant's position that it is beyond the scope of the Court's review.

the Committee's decision *turned* on Plan interpretation, and not on statutory interpretation..[25]  As such, the Committee's determination is afforded deference under the arbitrary and capricious standard.

Plaintiff further argues that Committee member Brad Egna had "a personal financial stake" in the Committee's holdings, including their interpretation that the 2006 forfeiture allocation was a "Profit Sharing Contribution," implying that this "conflict" somehow taints the Committee's findings.  (Pl's SJ MOL at 17).  Firstly, no such conflict existed.  The Plan's unallocated forfeitures will either be allocated to Plaintiff and others similarly situated or to the current Plan participants; they would not in any event inure directly to the benefit of Egna, Briefly Stated, or anyone else.[26]  The fact that Egna's "buy out" depended on Briefly Stated's pretax profits is similarly unpersuasive.[27]  Lastly, to the extent that a conflict has been demonstrated (and it has not), the conflict does not mandate de novo review, but rather serves as one more factor for the Court to evaluate when applying the arbitrary and capricious standard of review. Metropolitan Life Ins. Co. v. Glenn, 554 U.S. 105, 128 S. Ct. 2343, 2346 (2008) ("a reviewing court should consider that conflict as a factor in determining whether the plan administrator has abused its discretion in denying benefits"); see also Conkright v. Frommert, 130 S. Ct. 1640, 176 L. Ed. 2d 469 (2010) (describing Glenn as holding that a systemic conflict of interest (which is not present here) does not strip a plan administrator of deference).

---

[25]     The Committee's review of the applicable statute and regulations (D-099 through D-101) does not alter this result.  Reference to the Internal Revenue Code and the use of same as an aide to interpreting plan terms "does not turn plan interpretation into legal interpretation...Weil does not compel a contrary conclusion." Montesano, 117 F. Supp. 2d at 159.

[26]     See D-042 (Plan for exclusive benefit of Participants and Beneficiaries); D-036 (Trust Fund to be used for exclusive benefit of Participants).

[27]     As demonstrated below at subparagraph "E", the limitations of Section 415 of the Internal Revenue Code prohibited Briefly Stated from making cash contributions in addition to the Profit Sharing Contribution that was funded by the 2006 forfeiture allocation.  As a result, there was no possible impact on pre-tax profits.

**D.    Under The Arbitrary and Capricious Standard, the Committee's Decision Should Be Afforded Great Deference.**

Courts afford the plan administrator's determination great deference under the arbitrary and capricious standard of review, and cannot upset a reasonable interpretation by the plan administrator.  See Pagan v. NYNEX Pension Plan, 52 F.3d 438, 442 (2d Cir. 1995). "Under this highly deferential standard of review, this Court cannot substitute its judgment for that of the Plan Administrator and will not overturn a decision to deny or terminate benefits unless it was without reason, unsupported by substantial evidence or erroneous as a matter of law." Fuller v. J.P. Morgan Chase & Co., 423 F.3d 104, 107 (2d Cir. 2005) (internal citations omitted).  Moreover, "[w]here both the plan administrator and a spurned claimant offer rational, though conflicting, interpretations of plan provisions, the [administrator's] interpretation must be allowed to control." Pulvers v. First UNUM Life Ins. Co., 210 F.3d 89, 92 (2d Cir. 2000); see also Russo v. Health, Welfare & Pension Fund, 984 F.2d 762, 765 (7th Cir. 1992) ("[a]lthough it is an overstatement to say that a decision is not arbitrary and capricious whenever a court can review the reasons stated for the decision without a loud guffaw, it is not much of an overstatement").

Plaintiff's arguments essentially amount to disagreement with the Committee's decision. As such, they are woefully insufficient to warrant that it be overturned.  Even assuming arguendo that Plaintiff has offered a rational and logical alternative explanation of the Plan's terms (which it has not), the Committee's decision must be upheld unless there was a "clear error of judgment." Jordan v. Ret. Comm. of Rensselaer Polytechnic Inst., 46 F.3d 1264, 1271 (2d Cir. 1995). As demonstrated below, however, the Committee's decision to deny Plaintiff the benefits he seeks was well-reasoned, based upon a complete administrative record and consistent with the express terms of the Plan.

**E.**    **The Committee's Decision Was Neither Arbitrary Nor Capricious and Must be Upheld by the Court.**

As noted above, Plaintiff claims to have become fully vested as a result of a "complete discontinuance of contributions" under Section 411(d)(3) of the Internal Revenue Code. (D-091). The Committee determined that he had not. The Committee's determination is the sole issue before the Court.[28] The Court's review is limited to the information that was before the Committee (i.e., the administrative record) when it made its determination.[29]

The Committee first considered the applicable guidance issued by the Internal Revenue Service, concluding that, for a complete discontinuance of contributions to occur, "substantial contributions must be lacking for *some* period of years,[30] and that such period must be sufficient to exceed a *suspension* (for which full vesting is not required) and reach the level of a *complete discontinuance* (for which full vesting is required)." (D-101). The Committee next determined that the Plan had a history of recurring and substantial contributions, specifically that the Company funded recurring and substantial contributions to the Plan for each year through and including 2005. (D-102; see also D-164, D-169 and D-183).

The Committee then noted that approximately $550,000, representing the maximum allocation permissible under Section 415 of the Internal Revenue, was allocated to eligible Plan participants for the 2006. (D-102, D-103; see also D-484). Lastly, the Committee reviewed the terms of the governing Plan documents and determined that the 2006 forfeiture allocation constituted a "Profit Sharing Contribution" (as that term is defined in Plan Section 2.19 [D-011]). (D-103). This determination was based upon: (1) Section 6.01(a) of the Plan (D-

---

[28]    A suit under ERISA is a review proceeding, not an evidentiary proceeding. Doe v. Blue Cross & Blue Shield, 112 F. 3d 869, 875 (7th Cir. 1997).

[29]    Fitzpatrick, 2008 U.S. Dist. LEXIS 3532, at *25.

[30]    See Reg. § 1.411(d)-2(d)(1)(iii) (discussing whether the lack of contributions will "continue indefinitely").

017), which provides that Briefly Stated, in its sole discretion, will determine whether and to what extent a Profit Sharing Contribution is appropriate for a plan year; (2) Section 10.04(a) of the Plan (D-023), which provides that forfeitures are either used to pay administrative expenses or to reduce the amount of Profit Sharing Contributions that are required to be made by Briefly Stated (as determined pursuant to Plan Section 6.01); and (3) the SPD, which provides in relevant part (D-060) that forfeitures may "either be used to pay administrative expenses or to fund Employer Contributions." (D-102) (underscoring added.) Based on this clear and unambiguous language, the Committee interpreted the Plan as "providing for forfeitures to fund Profit Sharing Contributions." (D-103).

The Committee ultimately concluded that a complete discontinuance of contributions had not occurred because (1) a complete discontinuance of contributions requires that contributions be lacking for some period of years, and (2) that contributions had in fact been made for every relevant year,[31] based on (i) the Plan's history of recurring contributions funded by Briefly Stated through and including 2005, and (ii) the Committee's interpretation that the 2006 forfeiture allocation constituted a "Profit Sharing Contribution" under the terms of the Plan.[32] Indeed, at the time of the Committee's decision, there was no evidence that there was any intent to discontinue any contributions. Accordingly, it cannot be said that the Committee's

---

[31]   Contributions are allocated each calendar year. See Plan Sections 2.18 (D-011) and 6.01 (D-017). Since Plaintiff received a distribution in March 2007, the last relevant year for these purposes is the 2006 year.

[32]   Defendants further note that the Committee also determined that, absent their determination that the 2006 forfeiture allocation constituted a "Profit Sharing Contribution" under the terms of the Plan, a complete discontinuance of contributions had still not occurred due to the Plan's history of substantial and recurring contributions prior to 2006, the requirement that Li & Fung continue to maintain the Plan for three (3) years following their acquisition of Briefly Stated, and the fact that the terms of the Plan provide for discretionary ongoing future contributions (D-103, D-104), further illustrating the "full and fair" nature of their review in accordance with Section 503(2) of ERISA, 29 U.S.C. § 1133(2)).

determination was "completely unreasonable." Seff v. Nat'l Org. of Indus. Trade Unions, 781 F. Supp. 1037, 1040 (S.D.N.Y. 1992).

Plaintiff argues that the Committee's decision was arbitrary and capricious because of Plan language that "clearly defines contributions as payments to the Plan, not reallocations of money already in the Plan." (Pl.'s SJ MOL at 14). Plaintiff here points to Plan Sections 6.02 (D-017) and 8.02 (D-019). Plaintiff is misguided in this respect.

As demonstrated above, the Committee's decision turned on their determination that the 2006 forfeiture allocation constituted a "Profit Sharing Contribution" (as that term is defined in Plan Section 2.19 [D-011]). (D-103). This determination was based upon Sections 6.01(a) (D-017) and 10.04(a) (D-023) of the Plan and the relevant provisions of the SPD (D-060).[33] The Committee interpreted Plan Sections 6.01(a) (which reserves to Briefly Stated the discretion to determine if and to what extent a Profit Sharing Contribution is appropriate for each Plan Year) and 10.04(a) (which provides that such Profit Sharing Contribution is then reduced by amounts that become forfeitures during the current or prior year) as providing a mechanism for both forfeitures and cash contributions to fund Profit Sharing Contributions. (D-103). Section 6.02 of the Plan (D-017), which provides a deadline for the cash contribution component (if any) of Profit Sharing Contributions (that is, the amount not funded by forfeitures) was simply not relevant to this determination. Section 8.02 of the Plan (D-019), which provides that the cash component of a Profit Sharing Contribution will be paid to the Trustee and allocated accordingly, was similarly irrelevant to the Committee's interpretation. Plaintiff is basically arguing that the Committee's failure to consider irrelevant language was arbitrary or capricious. To the contrary,

---

[33]    Though completely immaterial, Plaintiff's suggestion that Committee Member Alan Beckerman had to be prompted at his deposition to provide any particular testimony regarding the section of the Plan the Committee relied upon (Pl.'s SJ MOL at 10), which is set forth clearly in the denial letter, is misleading. (See Beckerman Dep. 82-86).

the Committee interpreted Plan language that clearly and unambiguously indicated that Profit Sharing Contributions were funded either by a cash contributions or forfeitures, and determined accordingly that the 2006 forfeiture allocation constituted a Profit Sharing Contribution under the Plan.

Plaintiff further argues (Pl.'s SJ MOL at 16) that the Committee's failure to take into account the description by the Plan vendor of the 2006 forfeiture allocation as a "forfeiture" as opposed to a "contribution" when generating the 2006 participant benefit statements somehow renders their determination invalid.  Plaintiff here too misses the point.  Contrary to Plaintiff's assertions, the Committee did not determine that the 2006 forfeiture allocation was a contribution for purposes of purposes of Section 411(d)(3) of the Internal Revenue.  As explained above, the Committee determined that the 2006 forfeiture allocation was a "Profit Sharing Contribution," as that term is defined in the Plan.  The characterization of these amounts by the Plan's third-party vendor (who was not authorized[34] to, and in fact did not, interpret the Plan's terms) in no way impacts the Committee's interpretation in this regard.  The description of these amounts on the 2006 IRS Form 5500 is similarly irrelevant.[35]

Plaintiff further neglects to mention that Briefly Stated was prohibited, by law, from making any cash contributions to the Plan for 2006 and subsequent years.  Section 415 of the Code provides limitations amounts that can be allocated to participants in defined contribution plans (such as the Plan) in any given year.  For the 2006 Plan year, Briefly Stated

---

[34]    The Committee, and not the third-party vendor, is granted the exclusive authority to interpret the Plan (D-103).

[35]    Defendants do not dispute that the 2006 Profit Sharing Contribution allocation originated from a pool of previously unallocated forfeitures.  Thus, the entry cited by Plaintiff for the 2006 IRS Form 5500 (D-192, Line 2(a)(1)) would not in any event be reported as a "contribution received or receivable" on the Form 5500.  Plaintiff here once again fails to distinguish between a "contribution" and a "Profit Sharing Contribution."

used $544,511 of the unallocated forfeitures to fund a Profit Sharing Contribution. (D-111, D-112, and D-117). This amount represented the maximum permissible allocation under the limitations imposed by Section 415 of the Internal Revenue Code. (D-111). After the 2006 allocation, the Plan had remaining unallocated forfeitures in the amount of $500,926.09. (D-234). This represented amounts forfeited by terminated Plan participants other than Plaintiff. (See D-350, reflecting that Plaintiff's forfeiture occurred after March 1, 2007). Due to the pending litigation and potential claims by other participants, and consistent with its fiduciary responsibilities under ERISA, Briefly Stated suspended future Profit Sharing Contribution allocations regardless of source, effective with the 2007 plan year, pending the resolution of these claims. (D-115, D-117). In this context, Plaintiff's allegations that "there is a good reason to believe" that no "new money" will be contributed to the Plan (Pl's SJ MOL at 18) is irrelevant to the issue before the Court.

## POINT III

### EVEN IF THE COURT WERE TO DECIDE THAT DE NOVO REVIEW IS APPROPRIATE, THE COMMITTEE'S DETERMINATION MUST STILL BE UPHELD.

Even if the Court were to somehow find that the Committee's determination turned on Section 411(d)(3) of the Internal Revenue Code and related regulations, and that de novo review should apply (which it should not), the result would be the same. In such event, the Committee's interpretation of Plan terms (such as the determination that the Plan provided a mechanism for forfeitures to fund Profit Sharing Contributions, and that the 2006 forfeiture allocation was a Profit Sharing Contribution) would remain subject to deferential review under the arbitrary and capricious standard. Wetzler v. Ill. CPA Soc'y & Found. Ret. Income Plan, 586 F.3d 1053, 1057 (7th Cir. 2009).

Wetzler involved a suit by a participant alleging that a plan amendment eliminating a plan provision allowing lump sum payments violated the "anti cut-back rule" contained in ERISA. 586 F.3d at 1055. To determine whether the amendment violated the "anti cut-back rule" (an ERISA prohibition against the elimination of certain optional forms of payment), the administrator had to first determine what forms of payment were available prior to the amendment. Id. at 1057. The Seventh Circuit held that the district court properly applied the arbitrary and capricious standard of review to the administrator's determination that lump sum payments were not available prior to the amendment, holding that "[t]his determination involved reviewing the administrator's interpretation of the provisions of the plan, which was appropriately conducted using the arbitrary and capricious standard." Id.; see also Robinson v. Sheet Metal Workers National Pension Fund, 441 F. Supp. 2d 405, 416 (D. Conn. 2006) (implicitly recognizing a bifurcated standard of review, noting "*to the extent* that the parties

dispute the meaning or proper application of Plan provisions, an arbitrary and capricious standard of review applies" (emphasis added)).

Here, as in Wetzler, a de novo review, if at all applicable, should be limited to the Committee's determination that a "complete discontinuance of contributions" had not occurred. Deferential review, however, would apply to the Committee's interpretations of Plan provisions, including without limitation their determination that the 2006 forfeiture allocation was a "Profit Sharing Contribution" under the Plan.  For the reasons set forth above, this determination inarguably reflects the plain meaning of the applicable Plan terms and would accordingly be upheld by the Court under the arbitrary and capricious standard.  The Court would then be reviewing, de novo, whether a "complete discontinuance of contributions" had occurred where contributions had been made for *every relevant year* .  The Committee's determination would, therefore, unquestionably be upheld under any standard of review

## CONCLUSION

For the reasons set forth herein, Defendants respectfully requests that the Court deny Plaintiff's motion for summary judgment, grant their motion for summary judgment and dismiss Plaintiff's Complaint in its entirety.

23

Respectfully submitted,

JACKSON LEWIS LLP

    One North Broadway, Suite 1502
    White Plains, New York 10601
    (914) 328-0404

By: _____
    Robert R. Perry
    Jonathan M. Kozak

    *Attorneys for Defendant Briefly Stated, Inc. Profit*

SALANS LLP

    Rockefeller Center
    620 Fifth Avenue
    New York, NY 10020-2457
    (212) 632-8457
    John J. Hay

    *Attorneys for Defendant Briefly Stated, Inc.*

Dated: June 7, 2010
       White Plains, New York

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------x

JOHN E. LAVIN,

                         Plaintiff,

         -against-

BRIEFLY STATED, INC. and BRIEFLY
STATED INC. PROFIT SHARING PLAN,

                       Defendants.

------------------------------------------------------x

         Case No.: 09-CIV-8610 (CM)

## CERTIFICATE OF SERVICE

I hereby certify that on this the 7th day of June, 2010, I electronically filed and served a copy of Defendants' Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment through the U. S. District Court for the Southern District of New York CM/ECF system and via Federal Express, overnight mail, postage prepaid and addressed as follows:

Peter D. DeChiara, Esq.
COHEN, WEISS AND SIMON LLP
330 West 42nd Street
New York, New York 10036
*Attorneys for Plaintiff*

_____
Robert R. Perry