UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
╔══════════════════════════════╗
║ USDS SDNY                    ║
║ DOCUMENT                     ║
║ ELECTRONICALLY FILED         ║
║ DOC #: _____      ║
║ DATE FILED: __3_|_31_|_11_   ║
╚══════════════════════════════╝
```

JOHN E. LAVIN,

           Plaintiff,

    against

09 Civ. 8610 (CM) (FM)

BRIEFLY STATED, INC. and BRIEFLY STATED
INC. PROFIT SHARING PLAN,

           Defendants.

## DECISION AND ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

McMahon, J.

### INTRODUCTION

Plaintiff John Lavin commenced this action October 8, 2009 against his former employer Defendant Briefly Stated Inc. ("Briefly Stated") and Briefly Stated's ERISA benefits plan Briefly Stated Inc. Profit Sharing Plan (the "Plan"). Plaintiff was an employee of Briefly Stated for over four years, from October 2000 until March 30, 2005. Under the terms of the Plan, Plaintiff was 40% vested in his account at the time his employment ended. In 2007, Plaintiff requested a distribution of his Plan account balance and received a lump sum payment of $598,600.20 representing 40% of his Plan account balance. Plaintiff's remaining account balance was forfeited at that time.

Two months after receiving his distribution, Plaintiff filed a claim for the remainder of his Plan account balance with the administrative committee (the "Committee") appointed by

1

Briefly Stated to hear such claims in accordance with the terms of the Plan. Plaintiff asserted that he was entitled to the forfeited portion of his account balance because he had become fully vested in his account as a result of a "complete discontinuance of contributions." Plaintiff's claim was denied by the Committee, as was his appeal from that decision.

Seventeen months after the Committee's final decision, Plaintiff commenced this action asserting a single cause of action for benefits under Sections 502(a)(1)B) and 502(a)(3) of the Employee Retirement Income Security Act ("ERISA").

Before the Court are Plaintiff's and Defendants' cross motions for summary judgment.

Plaintiff argues that he is entitled to reversal of the Committee's decision because it was based on an erroneous interpretation of the plain language of the provisions governing the Plan and applicable law.

Defendants argue that the Committee's decision should be sustained for two reasons: Plaintiff's appeal to this Court is time-barred, and the Committee's decision (to which this Court should defer) was not arbitrary or capricious.

Defendants' motion is granted; Plaintiff's motion is denied.

2

## BACKGROUND

### I.  Plan History

From January 1, 2000 through December 31, 2005, the Plan was an "Employee Stock Ownership Plan, or ESOP." (D-096.)[1]  Prior to September 2005, the Plan's assets consisted primarily of shares of Briefly Stated stock.

As a result of the acquisition of Briefly Stated by another company – discussed in greater detail below – the Plan was amended and restated effective January 1, 2006.  It converted to a profit sharing plan and the name of the Plan changed to the "Briefly Stated, Inc. Profit Sharing Plan, formerly known as the Briefly Stated, Inc. Employee Stock Ownership Plan." (D-001 – D-050.)

For the years ending January 1, 2000 through December 31, 2005, Briefly Stated funded the Plan by making cash contributions.

### II.  Acquisition of Briefly Stated by Li & Fung

In September 2005, LF USA Inc. ("Li & Fung") purchased Briefly Stated from Brad Egna, the company's owner and president. (D-097.)  Under the stock purchase agreement, Li & Fung paid part of the purchase price initially; Egna's receipt of the balance of the purchase price was made contingent on Briefly Stated's achieving certain pretax profits of a three-year "earn out" period that followed the purchase. (Transcript of April 1, 2010 deposition of Alan Beckerman at 32, 34; D-362.)

---

[1] "D___" are citations to documents produced by Defendants in this action which were attached to Affirmation of Jonathan M. Kozak In Support of Defendants' Motion for Summary Judgment dated May 17, 2010.

As part of the purchase, Li & Fung acquired all of the issued and outstanding shares of Briefly Stated common stock, including shares owned by the Plan. (D-097.)  Li & Fung's initial payment put about $22.6 million into the ESOP. (Pl. 56.1 Statement ("Pl. 56.1") ¶ 8.)

The terms of the acquisition agreement required Li & Fung to continue to maintain the Plan for a period of three years. (D-386.)

After the acquisition, Briefly Stated made a contribution to the Plan for the year ending December 31, 2005. (D-183.)

III. **Pertinent Plan Provisions**

 A. *Vesting and Forfeiture*

Sections 3.06 and 3.07 of the governing Plan document ("Plan Document") provides that a participant will be credited with a "Year of Service" for vesting purposes for each Plan year in which the participant is credited with at least 1,000 hours of service. (D-013).

The vesting schedule laid out in Section 10.01(b) provides that a participant's vested interest in his/her account be determined in accordance with a three-to-seven-year graded vesting schedule upon termination of employment prior to normal retirement. (D-022.)  Under the vesting schedule, a participant with whose employment ends after four years of vesting service has a vested interest of 40% in his/her Plan account. (D-022.)

Section 150.3(a) of the Plan provides that the interest of each affected employee will become fully vested and nonforfeitable if the Plan is terminated in whole or in part. (D-036.) There is no explicit reference to a "complete discontinuance of contributions" in the Plan Document.  However, under Internal Revenue Code Section 411(d)(3), profit sharing plans such

4

as the Plan are required to provide for full vesting of all affected employees upon a "complete discontinuance of contributions" in order qualify as ERISA plans. Accordingly, the Committee has interpreted Section 15.03(a) of the Plan as encompassing a complete discontinuance of contributions as well as a termination. (D-085.)

Under section 10.02(a), a participant whose account is not 100% vested, and who either incurs a five-year break-in-service or receives a distribution of the vested balance of his account, forfeits the unvested balance of the account. (D-022.)

### B. Profit Sharing Contributions

Section 6.01 sets out that Briefly Stated, through its Board of Directors, may, but is not required to, make a "Profit Sharing Contributions" for each "Plan Year." (D-017.) In Section 2.19, "Profit Sharing Contributions" are defined as "the contributions if any made pursuant to Section 6.01." (D-011.) Section 6.02 entitled "Transfer of Funds" states that:

> Profit Sharing Contributions, if any, shall be paid by the Company in cash to the Trust Fund not later than the due date (including extensions) prescribed by law for filing the Company's federal income tax return for the taxable year for which the Profit Sharing Contributions are claimed as an income tax deduction.

(D-017.) Section 10.04(a) of the Plan provides that participant forfeitures can be used cover administrative expenses of the Plan "and/or to reduce the amount of [the participating employer's] Profit Sharing Contributions." (D-023.) The Plan's summary plan description (the "SPD") provides that forfeitures may "either be used to pay administrative expenses or to fund Employer Contributions." (D-060.)

5

### C. *Authority of the Administrator*

Sections 2.02 and 14.01 of the Plan authorize Briefly Stated to appoint a committee of

persons (the "Committee") to perform the duties of "Plan Administrator." (D-008; D-032.)

Section 14.14 of the Plan empowers the Administrator with "full and absolute discretion in the

exercise of each and every aspect of its authority under the plan, including ... the authority to

determine .... any person's right to benefits under the plan ... and the authority to decide any

appeal[.]" (D-035.)

### C. *Limitations Period for Legal Action Challenging a Denial of Benefits*

Section 14.13 of the Plan provides that "any suit or legal action initiated by a claimant

under the Plan must be brought, if at all, no later than one year following the final decision on

the claim for benefits by the Administrator." (D-035.) The statute of limitations period provided

for in Section 14.13 came into effect as of January 1, 2006, the date the Plan was amended,

which was after Plaintiff had already left employment at Briefly Stated. Section 8.1 of the Plan

which was in effect upon Plaintiff's departure in March 2005 (the "Prior Plan Document")

reserved to Briefly Stated "the right at any time to amend the plan" so long as such amendment

did not reduce "the amount credited to the account" of a participant nor eliminate a "protected

benefit" under applicable law. (D-296.)

### IV. **Forfeiture Allocations**

Prior to the allocation of forfeitures for the 2006 Plan year, the Plan held unallocated

forfeitures of approximately $1,000,000. (D-141.) This represented amounts forfeited by

terminated Plan participants other than Plaintiff. (See D-350.)

6

At a 2007 meeting of the Committee, the Committee allocated $544,511 of forfeiture money to the Plan. (D-111, D-112, and D-117.) Plaintiff and Defendants dispute whether this allocation constituted a "Profit Sharing Contribution," but it is undisputed that the allocated forfeitures were distributed appropriately among the accounts of Plan participants.

## V. Plaintiff's Administrative Claim for Benefits and Subsequent Appeal

On May 30, 2007, Plaintiff's counsel submitted a formal claim on Plaintiff's behalf for additional benefits from the plan. (D-074.) Plaintiff asserted that he became fully vested in his accrued benefit under the Plan as a result of a complete discontinuance of contributions to the Plan by Briefly Stated following its acquisition by Li & Fung. (D-074.) Plaintiff's letter claimed that the last Briefly Stated contribution of cash to the Plan occurred in 2005; as a result, he argued that a "complete discontinuance" became effective on the last day of the following year, December 31, 2006, as set forth in 26 C.F.R. § 1.411(d)-2(d)(2). (D-078.)

On November 19, 2007, the Committee, which included Brad Egna and Alan Beckerman, issued a letter denying Plaintiff's claim for benefits. (D-081 – D-089.) In the denial letter, the Committee cited the Internal Revenue Manual, which it read as providing that "a complete discontinuance of contributions cannot occur unless and until substantial contributions are not made for 3 out of five years." (D-086.) The denial letter pointed out that there had been contributions to the Plan each year from 2000 through 2005. The Committee's letter further asserted that, contrary to Plaintiff's assertion in his claim, there had been a contribution in 2006, since "forfeitures function as deemed Profit Sharing Contributions." (D-087.)

Lavin subsequently appealed the Committee's denial of his claim. (D-090 – D-094.) By letter dated March 31, 2008, the Committee denied his appeal on the same grounds that it had

7

denied his claim (D-095 – D-105), asserting, once again, its interpretation of the Internal

Revenue Manual as setting a minimum of no substantial contributions for three-out-of-five years

before a "complete discontinuance" can be found, and also opining that the 2006 forfeiture

allocation constituted a Profit Sharing Contribution to the Plan.  (D-101 – D-102.)

Dissatisfied with the finding of the Committee, Plaintiff filed the instant complaint,

asserting a claim under Section 502(a)(1)(B) of ERISA, 29 U.S.C. §1132(a)(1)(B), to recover

benefits due to him under the terms of the plan and under Section 502(a)(3) of ERISA

§1132(a)(3), to enforce his rights under the Plan and redress the violation of the terms of the Plan

and ERISA.

## VI. **Cross Motions for Summary Judgment**

Plaintiff and Defendants have cross moved for summary judgment.

Plaintiff contends that he is entitled to summary judgment because the Committee's

denial of his claim for additional benefits was based on an erroneous legal and factual finding

that the forfeiture allocation constituted a Profit Sharing Contribution.  Although Plaintiff argues

that the Committee's decision cannot withstand review under either the arbitrary and capricious

or *de novo* standards of review, he urges the Court to apply the *de novo* standard of review to the

Committee's decision.  Plaintiff argues that  the Committee's decision is owed no deference

because it turned on a pure question of law, and because Committee member Egna had a conflict

of interest.

Defendants argue that they are entitled to summary judgment on two grounds.

8

First Defendants argue that Plaintiff's claim before this Court is time-barred because it was filed outside of the one year statute of limitations prescribed by a 2006 amendment to the Plan.

Second, Defendants contend that summary judgment should be granted in their favor because the Committee's denial of Plaintiff's claim for additional benefits was valid under applicable law and the terms of the Plan. Although Defendants argue that the Committee's decision is valid regardless of whether a *de novo* or arbitrary and capricious standard of review is applied, Defendants' urge the Court to apply the deferential arbitrary and capricious standard of review.

## DISCUSSION

I. **Plaintiff's Claim is Timely**

Defendants argue that Plaintiff's action is barred by the Plan's one-year statute of limitations period. Plaintiff counters that Defendants' argument is without merit because Lavin never expressly or impliedly agreed to the modification of the governing statute of limitations time period since he was not working for Briefly Stated when the relevant amendment took effect in 2006.

ERISA does not provide a limitations period for actions brought under Section 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B) – the Section under which Plaintiff has brought his claim. Miles v. N.Y. State Teamsters Conference Pension and Ret. Fund Employee Pension Benefit Plan, 698 F.2d 593, 598 (2d Cir. 1983). In the absence of an ERISA prescribed statute of limitations, courts apply the "most nearly analogous state limitations statute." Id. For claims brought under Section 502(a)(1)(B) of ERISA, the statute of limitations for breach of

9

contract actions, contained in Section 213 of the New York Civil Practice Law and Rules

("CPLR"), generally applies as the most analogous state limitations statute. Burke v.

PricewaterhouseCoopers, 572, F.3d 76, 78 (2d Cir. 2009). Under New York Law, breach of

contract actions must generally be brought within six-years. N.Y.C.P.L.R. § 213.

Section 213 of the CPLR, however, is modified by Section 201 of the CPLR, which

provides:

§ 201.  Application of article.

> An action, including one brought in the name or for the benefit of the state, must
> be commenced within the time specified in this article unless a different time is
> prescribed by law or a shorter time is prescribed by written agreement.  No court
> shall extend the time limited by law for the commencement of an action.

N.Y.C.P.L.R. § 201.

It is well-settled that the term "written agreement" in Section 201 includes employee

benefit plans (such as the Plan) that are governed by ERISA.  Manginaro v. Welfare Fund of

Local 771, I.A.T.S.E., 21 F. Supp. 2d 284, 293 (S.D.N.Y. 1998); Lugo v. AIG Life Ins. Co., 852

F. Supp. 187, 195 (S.D.N.Y. 1994) (holding that "there can be little doubt" that ERISA plans are

written agreements and therefore can prescribe shorter limitations periods pursuant to Section

201 of the CPLR).

Based on this statutory construct, a limitations period shorter than the six-year period set

forth in Section 213 of the CPLR may be prescribed by the terms of an ERISA-governed

employee benefits plan such as the Plan.  Tarallo-Brennan v. Smith Barney, Harrisv. Pharm

&Co., No. 97 Civ. 7257 (DAB), 1999 US Dist. LEXIS 6787, at 6 (S.D.N.Y. May 7, 1999).

Accordingly, where an ERISA plan "provides a limitations period shorter than six years, the

10

contractual period governs." Smith v. First UNUM Life Ins. Co., No. 98 Civ. 2415 (JG), 1999 U.S. Dist. LEXIS 8381, at *9 (E.D.N.Y. June 2, 1999).

However, like any agreement, a contractual clause restricting an employee's right to sue must be accepted by the party to be bound. Express agreement is not required for such a clause to be binding; indeed, an employee benefit plan participant is deemed to have accepted a plan's newly adopted terms by his continuous employment before and after the adoption of the subject terms. See Prior v. Innovative Communication Corp., 360 F.Supp.2d 704, 714 (D.V.I. 2005); Morales v. Plaxall, Inc., 541 F. Supp. 1387, 1391 (E.D.N.Y. 1982).

Defendants argue that Plaintiff should be bound by the one-year statute of limitations because he knew about the modified statute of limitations at the time the Committee denied his claims, and because the original Plan Document in effect during his employment reserved to Briefly Stated the right to amend the Plan "at any time" (D-296) – subject only to restrictions that do not relate to the statute of limitations period. (See Def. Opp. at 5-6.)

While Defendants are correct that ERISA permits unilateral Plan amendments as long as they do not impact a participant's accrued benefit. But they do not come to grips with the issue raised by Plaintiff – which is whether any "written agreement" between Plaintiff and Defendants prescribes a shortened limitations period.

Here, it is true that courts typically enforce a limitations period clause contained in an employee benefit plan, even absent express agreement by the participant to be bound by such a clause. However, in every such case cited by Defendants, the plaintiff continued employment while the clause was in effect and thereby implicitly consented to it. See, e.g., Scharff, v. Raytheon Co., 581 F.3d 899, 902 (9th Cir. 2009); see also Morales v. Plaxall, Inc., 541 F. Supp.

11

1387, 1391 (E.D.N.Y. 1982) (employee accepts terms of plan "'by continuing in employment'") (citation omitted).

The crux of Defendants' argument with respect to the statute of limitations is that since the Prior Plan Document empowered Briefly Stated to amend the Plan unilaterally, the modified statute of limitations is binding on Plaintiff whether he agreed to it (either explicitly or by continuing to work for Briefly States) or not. However, Defendants point to no case – and the Court knows of none either – where a plaintiff was bound by a plan statute of limitations modification that became effective after the participant's employment had already ended. The only case cited by Defendants for the proposition that an amendment adopted after a participant terminated employment could be effective, Williams v. Rohm and Haas Pension Plan, 4:04-CV-0078, 2008 U.S. Dist. LEXIS 83377, at *3-4 (D. In. Oct. 17, 2008), is clearly distinguishable. In Williams, the benefit plan that was trying to avoid enforcement of the plan's statute of limitations, which it had adopted after the plaintiff left his job and received his final distribution from the plan. The Williams court held that the defendant was equitably stopped from avoiding the statute, because it had advanced a different position earlier in the case. Id. at 4. Williams does not provide substantive support for Defendants' contention that Plaintiff here is bound by a unilateral modification of the applicable statute of limitations that became effective after he left the Defendant's employ.

Contracts shortening a limitations period are "viewed with caution" and "construed strictly" against the party invoking them. Int'l Fidelity Ins. v. Rockland, 98 F.Supp.2d 400, 409 (S.D.N.Y. 2000); accord Nobel Ins. Co. v. New York, 2006 WL 2848121, at *8 (S.D.N.Y. 2006). They must be "'clearly and unequivocally set forth in the agreement itself,'" This Is Me, Inc. v. Taylor, 1996 WL 20745, *1 (S.D.N.Y. 1996) (citations, italics omitted), and cannot be

12

based on "'construction or implication.'" Nobel, 2006 WL 2848121, at *18 (citation omitted);

accord This Is Me, 1996 WL 20745, at *1. Given this, I am not persuaded that Plaintiff is bound

by Defendants' unilateral, post-employment modification of the statute of limitations period.

Thus, Plaintiff's claim is not time-barred. The Court will turn to the parties' respective positions

on the merits.

## II. **Standard of Review and Applicable Law**

### A. **Summary Judgment**

Summary judgment is appropriate "'if the pleadings, the discovery and disclosure

materials on file, and any affidavits show that there is no genuine issue as to any material fact

and that the movant is entitled to judgment as a matter of law.'" Sousa v. Roque, 578 F.3d 164

(2d Cir. 2009) (quoting Fed.R.Civ.P. 56(c)). "[T]he burden of demonstrating that no material

fact exists lies with the moving party…" SCR Joint Ventura L.P. v. Warshawsky, 559 F.3d 133,

137 (2d Cir. 2009) (quoting Roe v. City of Watervury, 541 F.3d 31, 34 (2d Cir. 2008)). "When

the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the

movant to point to a lack of evidence to go to the trier of fact on an essential element of the non[-

]movant's claim." Jarmillo v. Weyerhaeuser Co., 536 F.3d 140, 145 (2d Cir. 2008).

To defeat a motion for summary judgment, the non-moving party must raise a genuine

issue of material fact. See id. The non-moving party must do more than show that there is

"'some metaphysical doubt as to the material facts,'" Higazy v. Templeton, 505 F.3d 161, 169

(2d Cir. 2007) (quoting Matsushita Elec. Indus. V. Zenith Radio Corp., 475 U.S. 574, 586

(1986)), and it "'may not rely on conclusory allegations or unsubstantiated speculation.'"

Jeffreys v. City of N.Y., 426 F.3d 549, 554 (2d Cir. 2005) (quoting Fujitsu Ltd. v. Federal

Express Corp., 247 F.3d 423, 428 (2d Cir. 2001)).  Accord Fed.R.Civ.P. 56(e).  However, "'all

that is required [from a non-moving party] is that sufficient evidence supporting the claimed

factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the

truth at trial.'"  Kessler v. Westchester County Dep't of Soc. Servs., 461 F.3d 199, 206 (2d Cir.

2006) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986).

      In determining whether a genuine issue of material fact exists, the Court must "constru[e]

the evidence in the light most favorable to the non-moving party and draw all reasonable

inferences" in that party's favor.  Sledge v. Kooi, 564 F.3d 105, 108 (2d Cir. 2009) (citing

Anderson, 477 U.S. at 247-50.  However, "'only admissible evidence need be considered by the

trial court in ruling on a motion for summary judgment.'"  Presbyterian Church of Sudan v.

Talisman energy, Inc., 582 F.3d 244, 264 (2d Cir. 2009) (quoting Raskin v. Wyatt Co., 125 F.3d

55, 65 (2d Cir. 1997).  "'Credibility assessments, choices between conflicting versions of the

events, and the weighing of evidence are matters for the jury, not for the court on a motion for

summary judgment.'"  McClellan v. Smith, 439 F.3d 137, 144 (2d Cir. 2006) (quoting Fischl v.

Armitage, 128 F.3d 50, 55 (2d Cir. 1997)).  Summary judgment is therefore "appropriate only if

there is no genuine issue of material fact and the moving party is entitled to judgment as a matter

of law."  Pyke v. Cuomo, 567 F.3d 74, 76 (2d Cir. 2009).

### III. Defendants are Entitled to Summary Judgment

#### A.  Standard of Review

      Pursuant to section 502(a)(1)(B) of ERISA, a plan participant or beneficiary may bring a

civil action "to recover benefits due to [the plan participant] under the terms of [the] plan."  29

U.S.C. § 1132(a)(1)(B).  In Firestone Tire & Rubber Co. v. Bruch, the Supreme Court held that

"a denial of benefits challenged under § 1132 (a)(1)(B) is to be reviewed under a de novo

standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." 489 U.S. 101, 115 (1989). The Second Circuit has repeatedly held that when an ERISA-governed employee benefits plan grants the plan administrator authority to determine claimants' eligibility for benefits, "the standard governing the district court's review … is the arbitrary-and-capricious standard." Pepe v. Newspaper & Mail Deliveries'-Publishers' Pension Fund, 559 F.3d 140, 146 (2d Cir. 2009) (citing Firestone, 489 U.S. at 115). Accord Durakovic v. Building Serv. 32 BJ Pension Fund, 609 F.3d 133, 138 n. 2 (2d Cir. 2010) ("In an action under 29 U.S.C. § 1132(a)(1)(B), the district court conducts arbitrary-and-capricious review of ERISA-fund administrators' discretionary decisions." (citations omitted)). See also Hobson v. Metropolitan Life Ins. Co., 574 F. 3d 75, 82 (2d Cir. 2009); Giordano v. Thompson, 564 F.3d 163, 168 (2d Cir. 2009).

"Under the deferential standard a court may not overturn the administrator's denial of benefits unless its actions are found to be arbitrary and capricious, meaning 'without reason, unsupported by substantial evidence or erroneous as a matter of law.'" McCauley v. First Unum Life Ins. Co., 551 F.3d 126, 133 (2d Cir. 2008) (quoting Pagan v. NYNEX Pension Plan, 52 F.3d 438, 441 (2d Cir. 1995)). "Where both the plan administrator and a spurned claimant offer rational, though conflicting, interpretations of plan provisions, the administrator's interpretation must be allowed to control.'" McCauley, 551 F.3d at 132 (quoting Pulvers v. First Unum Life Ins. Co., 210 F.3d 89, 92 (2d Cir. 2000) (internal quotation marks and citations omitted). However, "'where the administrator … interprets the plan in a manner inconsistent with its plain words, its actions may well be found to be arbitrary and capricious.'" Pepe, 559, F.3d at 147 (quoting McCauley, 551 F.3d at 133).

15

B.    *Application of Law to this Case*

In this case, it is clear that the Plan explicitly grants discretion to the Plan administrator. The relevant part of the Plan language provides that the Plan Administrator shall have:

> full and absolute discretion in the exercise of each and every aspect of its authority under the plan, including ... the authority to determine ... any person's rights to benefits under the plan ... and the authority to decide any appeal[.]

(D-035.) Because the Plan grants the Administrator discretion to construe Plan terms and determine eligibility for benefits, the presumptive standard of review is the arbitrary and capricious standard.

The deferential Firestone standard ordinarily applies even when a plan administrator faces a conflict of interest.  Under the Supreme Court's decision in Metropolitan Life Insurance Co. v. Glenn, "'A Plan administrator's dual role of both evaluating and paying benefits claims creates the kind of conflict of interest .... [that should be] weighed as a 'factor'" in determining whether there was an abuse of discretion "but does not imply a change in the standard of review, say, from deferential to de novo." 554 U.S. 105, 106 (2008). "A plaintiff's showing that the administrator's conflict of interest affected the choice of a reasonable interpretation is only one of "several different considerations' that judges must take into account when 'review[ing] the lawfulness of benefit denials.'"  Hobson, 574 F.3d at 83-83 (quoting McCauley, 551 F.3d at 133).

Plaintiff's claim regarding Egna's conflict of interest in this case is circuitous and does not persuade the Court to reduce its deference to the Committee's decision or provide a basis to look beyond the administrative record.  Essentially Plaintiff contends that Egna, who was a Committee member and CEO of Briefly Stated, had an "immediate financial interest" in the

outcome of the Committee's decision because Egna was "us[ing] [the] forfeiture money as an enticement for employees to remain with the company." (Pl. Sj. Mot. at 7.)  While Plaintiff argues that this use of the forfeiture money motivated Egna's decisions as a Committee member, Plaintiff has provided no significant evidentiary proof that Egna was in fact operating under such a conflict of interest.

When a plan's determination of a plan participant's eligibility for benefits turns on a legal interpretation rather than an interpretation of the plain language of the plan, *de novo* review may also be appropriate. See Weil v. Terson, 913 F.2d 1045, 1048-49 (2d Cir. 1990), vacated in part, 933 F.2d 106 (2d Cir. 1991) (emphasis added).  However, "there are significant differences between plan interpretation and legal interpretation, and the *de novo* review is required only if a plan administrator decided a legal question."  Montesano v. Xerox Corp. Ret. Income Guar. Plan, 117 F. Supp. 2d 147, 158 (D. Conn. 2000), aff'd in part, vacated on other grounds, 256 F.3d 86 (2d Cir. 2001).

In this case, there is no reason to worry about any putative conflict of interest or about whether the Committee made a "legal" as opposed to a "Plan" interpretation, because under any standard of review, Defendants are right and Plaintiff is wrong.

Plaintiff contends that he became fully vested in his accrued benefit under the Plan as a result of the complete discontinuance of contributions to the Plan by Briefly Stated, Inc. following the acquisition of Briefly Stated by Li & Fung.  In its decision denying Plaintiff's claim, the Committee concluded that there had been no "complete discontinuance of contributions" for two separate reasons. Either one provides a sufficient basis for the Committee's conclusion that there had not been a "complete discontinuance" of contributions.

17

First, the Committee cited a provision from the IRS Manual, which provides: "If the employer has failed to make substantial contributions in 3 out of 5 years, and there is a pattern of profits earned, consider the issue of discontinuance of contributions." IRS Manual Section 7.12.1.2.6 -1C. Since the company indubitably made cash contributions to the Plan during three of the five years preceding Plaintiff's departure from the company – in fact, made cash contributions every year from 2000-2005 – it is plain that the IRS would not consider the company to have "completely discontinued" making contributions even if there had been no contribution during Plan year 2006.

Plaintiff's only response to this dispositive ruling, with which this Court can find nothing to quarrel, is to say that the only years that should be considered in determining whether a there was a complete discontinuance are the years after 2005– the year during which Plaintiffs allege the complete discontinuance began. However, as the Committee denied Plaintiff's claim in 2008 it was clearly reasonable for the Committee to consider years prior to 2005 in its analysis of whether contributions to the Plan had been recurring and substantial. Moreover, the Committee noted that the Briefly Stated purchase agreement provided for conversion of the Plan from an ESOP to a profit sharing plan, and required Li & Fung to maintain the Plan for three years following their acquisition of Briefly Stated (meaning until at least 2009). (D-103 – D-104.) The Committee appropriately deemed these provisions of the purchase agreement as evidence that there was no intention to discontinue contributions to or terminate the Plan. The evidence of a lack of intent to discontinue contributions combined with the Committee's finding that there had been a history of substantial and recurring contributions to the Plan prior to 2006 logically supported the Committee's finding that a complete discontinuance had not occurred.

Second, as the Committee advised Plaintiff, during Plan year 2006, "approximately

$550,000, representing the maximum allocation permissible under Section 415 of the Internal

Revenue Code, was allocated to eligible Plan participants" (D-102.) The Committee interpreted

Plan Sections 6.01(a) and 10.04(a) to provide a mechanism by which forfeitures could be used to

fund Profit Sharing Contributions. Because of the substantial amount that was reallocated from

the forfeiture account into the accounts of Plan participants, the Committee determined that a

substantial Profit Sharing Contribution (as that term is defined in the Plan) had in fact been made

for 2006. (D-103.)

Plaintiff contends that the Committee's determination that the 2006 forfeiture allocation

constituted a "Profit Sharing Contribution" was arbitrary and capricious, because Plan language

that "clearly defines contributions as payments to the Plan, not reallocations of money already in

the Plan." (Pl.'s SJ MOL at 14.) Plaintiff points to Plan Sections 6.02 (D-017) and 8.02 (D-

019). Section 6.02 of the Plan which is entitled "Transfer of Funds" states that:

> Profit Sharing Contributions, if any, shall be paid by the Company *in cash* to the
> Trust Fund not later than the due date (including extensions) prescribed by law for
> filing the Company's federal income tax return for the taxable year for which the
> Profit Sharing Contributions are claimed as an income tax deduction.

(D-017) (emphasis added). Section 8.02 of the Plan entitled "Contributions to Account"

states that:

> All contributions made on behalf of a participant shall be paid to the Trustee and
> shall be allocated to the Participant's account in accordance with the provisions of
> this Plan.

(D-019.) Plaintiff argues that these provisions contradict the Committee's finding that

the forfeiture allocation to the Plan constituted a Profit Sharing Contribution because they

requires the Company to "pay" money "in cash" into the Trust Fund. According to

19

Plaintiff, the Committee's failure to consider these provisions in its decision denying Plaintiff's claim rendered their decision arbitrary and capricious.

Defendants counter that the language of Section 10.04(a) – which specifically provides that Profits Sharing Contributions for each Plan year are to be reduced by the amounts that become forfeitures during that year – supports the Committee's conclusion that the reallocation of forfeited amounts qualified as a contribution to the Plan. (See D-102.) Nothing in Sections 6.02 or 8.02 suggests that the "cash" contribution cannot come in the form of an offset – indeed, the Plan specifically provides for such an eventuality – and the reference to cash is obviously intended to distinguish the restated Plan from the earlier ESOP Plan, which could be funded by stock as well as by cash. (Compare D-017 with D-268.) The Committee adequately articulated its findings and the Plan provisions that lent support to those findings. (See D-102 – D104.)

Plaintiff relies heavily on a statement by the Plan's actuary that "what is typically defined as a contribution ... is an injection of new money contributed to the Plan by the employer." (Pl. Ex. F at 6.) But the actuary's statements do not provide a sufficient basis for the Court overturn the Committee's well-articulated and logical finding that under provisions of the Plan, forfeiture allocations constituted Profit Sharing Contributions. Furthermore, the actuary did not opine that only "new money" qualified as a contribution – he only said that "new money" was typical. Typical is synonymous with usual – not with always. Here, the company made "new money" available to Plan participants by distributing amounts forfeited by departing employees. The Committee did not err in concluding that the Plan Document permitted a contribution in such form.

20

Plaintiff also argues that the language of Plan Section 10.04(a), which states that forfeitures may be used "to reduce the amount of Profit Sharing Contributions which are to be made by a Participating Employer," means that a contribution to the Plan by the Employer must be separate and distinct from a forfeiture allocation. (Pl. Opp. at 13) (citing D-023.) In essence, Plaintiff argues that, for the 2006 forfeiture allocations to qualify as a Profit Sharing Contribution to the Plan, Section 10.04(a) requires that Briefly Stated also make some contribution of additional cash.

Plaintiff's interpretation of Section 10.04(a) cannot possibly be correct because – at least for Plan year 2006, the year in question – it would have been illegal for the company to put any more money into the Plan. In its denial of Plaintiff's claim, the Committee noted that, "….approximately $550,000, representing the maximum allocation permissible under Section 415 of the Internal Revenue [Code], was allocated to eligible Plan participants" during Plan year 2006. (D-102.) Since the company could not legally have put another dime into the Plan, it would have been unreasonable and illogical for the Committee to interpret Section 10.04(a) in the manner suggested by Plaintiff.

In short, the Committee's determination that the forfeiture allocation for Plan year 2006 constituted a Profit Sharing Contribution under the terms of the Plan was reasonable and clearly supported by Plan provisions cited by the Committee. Even reviewing Plaintiff's arguments *de novo,* I am not persuaded to reach a different result than the Committee did – indeed, I conclude that the Committee could not logically have reached any other result. The Committee's denial of Plaintiff's claim and subsequent appeal were

21

based on a reasoned interpretation of the provisions of the Plan and of the law.

Accordingly, Defendant is entitled to summary judgment dismissing the complaint.

## CONCLUSION

For the reasons stated above Defendants motion for summary judgment is granted and Plaintiff's motion for summary judgment is denied. Plaintiff's Complaint is dismissed in its entirety. The Docket Clerk is instructed to Docket No. 23 and Docket No. 25 from the Court's list of pending motions.

Dated: March 31, 2011

U.S.D.J.

BY ECF TO ALL COUNSEL

22